DELIBERATIVE/PRE-DECISIONAl/PRTVILEGED

EXECUTIVE ORDER

- - - - - - - - - -

PREVENTING ONLINE CENSORSHIP

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the Federal Property and Administrative Services Act of 1949, as amended (40 U.S.C. 101 and 121(a)), it is hereby ordered as follows:

Section 1. Policy.

Free speech is the bedrock of American democracy. Our Founding Fathers protected this sacred right with the First Amendment to the Constitution, underscoring that the freedom to express and debate ideas is the foundation for all of our rights as a free people.

The emergence and growth of online platforms in recent years raises important questions about applying the ideals of the First Amendment to modern communications technology. Today, many Americans follow the news, stay in touch with friends and family, and share their views on current events through social media and other online platforms. As a result, these platforms function in many ways as a 21st-century equivalent of the public square.

As President, I have made clear my commitment to free and open debate on the Internet. Such debate is just as important online as it is in our universities, our businesses, our newspapers, and our homes. It is essential to sustaining our democracy.

In a country that has long cherished the freedom of expression, we cannot allow a limited number of online platforms to hand-pick the speech that Americans may access and convey online. This practice is fundamentally un-American and anti-democratic. When large, powerful social media companies censor opinions with which they disagree, they exercise a dangerous power.

Online platforms, however, are engaging in selective censorship that is hurting our national discourse. Tens of thousands of Americans have reported, among other troubling

1



DELIDERATIVFJPRE-DECISIONAUPRTVTLEGED

behaviors, online platforms "flagging" content as inappropriate, even though it docs not violale ony slated terms of service; making unannounced and unexplained chonge9 Lo policies Lhat have the effect of disfavoring certain viewpoints; and deleling content and entir.e accounts with no warning, no rationale, and no recourse.

At Lhe same time social media platforms are invoking inconsistent, irrational, and groundle:.is ju::itificalions to censor or otherwise punish Americans' speech here ot home, several online platforms are profiting from and promoting the aggression and disinfotmolion spread by foreign governments like China. Gooqlo, tor example, created a search engine for the Chinese Communist Party, which blacklistcd searches t(,r "human rights," hid data unfavorable to the Chinese Communist Porly, and tracked users delermj ned appropriate for surveiJ lance. Google has also established research partnershi ₒS in China Lhat provide direct benefits to the Chinese military. . For their parl, Facebook and Twitler have accepted advertisements paid for by the Chinese Government that spread false information about China's mass imprisonment of religious minorities. Twitter has also amplified China's propaganda abroad, including by allowing Chinese government officials lo use its platform to undermine pro-democracy prote::its in Hong Kong.

My commitment to free and open debate on the Internet remains as strong as ever. Therefore, ll remclllls Lhe poli<.:y of the United Stales that lawful conte,nl should be free from ceruiorship in our digital marketplace o,f ideas. As a Nation, we must fost.e,r and protect diverse viewpoi.Jlt,; in today· s digital corwnunicalions environment where all Americans can and should have a voice. We must seek transparency and accountability from onlinc platforms, and encourage standards and tools Lo protect and preserve the inteqrity and openness of American discourse and freedom of expi:-ession.

<u>Sec. - Protections Against Arbitrary Restrictions.</u>  (a) It is the policy of the United States to foster clear, nondiscriminatory ground rules promoting free and open debate on tho Internet. Prominent among those rules is the immunity from liability created by section 230(c) of the Communications Decency Act. (seclion 230). 47 U.S.C. 230. It is t.he policy of the United St.ates that the scbpe of that immunity should be cl,,rified.



**DELIBERATIVE/PRE-DECISIONAL/PRIVILEGED**

Section 230 (c) was designed to address court decisions from the early days of the Internet holding that an online platform that engaged in any editing or restriction of content posted by others thereby became itself a "publisher" of the content and could be liable for torts like defamation. As the title of sect/2.ol),, 230 (c) makes clear, the provision is intended to provide liability "protection" to a provider of an interactive computer service (such as an online platform like Twitter) that engages in "'Good Samaritan' blocking" of content when the provider deems the content (in the terms of subsection 230 (c) (2) (A)) obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable. Subsection 230 (c) (1) broadly states that no provider of an interactive computer service shall be treated as a publisher or speaker of content provided by another person. But subsection 230(c) (2) qualifies that principle when the provider edits the content provided by others. Subparagraph (c) (2) specifically addresses protections from "civil liability" and clarifies that a provider is protected from liability when it acts in "good faith" to restrict access to content that it considers to be "obscene, lewd, lascivious, filthy, excessively violent, harassing or otherwise objectionable." The provision does not extend to deceptive or pretextual actions restricting online content or actions inconsistent with an online platform's terms of service. When an interactive computer service provider removes or restricts access to content and its actions do not meet the criteria of subparagraph (c) (2) (A), it is engaged in editorial conduct. By making itself an editor of content outside the protections of subparagraph (c) (2) (A), such a provider forfeits any protection from being deemed a "publisher or speaker" under subsection 230(c) (1), which properly applies only to a provider that merely provides a platform for content supplied by others. It is the policy of the United States that all departments and agencies should apply section 230(c) according to the interpretation set out in this section.

(b) To further advance the policy described in subsection (a) of this section, within **30** days of the date of this order, the Secretary of Commerce (Secretary), through the National Telecommunications and Information Administration (NTIA), shall file a petition for rulemaking with the Federal Communications Commission (FCC) requesting that the FCC expeditiously propose regulations to clarify:

3



DELIBERATIVE/PRE-DECISIONAL PRIVILEGED

(i) the conditions under which an action restricting access to or availability of material is not "taken in good faith" within the meaning of subparagraph (c)(2)(A) of section 230, particularly the conditions under which such actions will be considered to be:

(1) deceptive, pretextual, or inconsistent with a provider's terms of service; or

(2) the result of inadequate notice, the product of unreasoned explanation, or having been undertaking without a meaningful opportunity to be heard; and

(ii) Any other proposed regulations that the NTIA concludes may be appropriate to advance the policy described in subsection (a) of this section.

Sec 1. <u>Prohibition on Spending Federal Taxpayer Dollars on Advertising with Online Platforms That Violate Free Speech Principles.</u>  (a) The head of each executive department and agency (agency) shall review its agency's Federal spending on advertising and marketing paid to online platforms.  Such review shall include the amount of money spent, the online platforms impported, the viewpoint-based speech restrictions imposed by each online platform, an assessment of whether the online platform is  ppropriate for such agency's speech, and the statutory authorities available to restrict advertising dollars to online platforms not appropriate for such agency's speech.

(b) Within 30 days of the date of this order, the head of each agency shall report its findings to the Director of the Office of Management and Budget.

Sec. 7  <u>Federal Review of Unfair or Deceptive Practices.</u>   (a)  It is the policy of the United States that large social media platforms, such as Twitter and Facebook, as the functional equivalent of a traditional public forum, should not infringe on protected speech.  The Supreme Court has described that social media sites, as the modern public square, "can provide perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard." *Packingham v. North Carolina,* 137 S. Ct. 1730, 1737 (2017).  Communication through these channels has become important for meaningful participation in American democracy, including to petition elected leaders.  These sites are providing a

4



**DELIBERATIVE/PRE-DECIS10NAL/PRJV1LEGED**

public forum to the public for others to engage in free expression and debate. Cf. *Prune Yard Shopping Center v. Robins,* 447 U.S. 74, 85-89 (1980).

(b) In May of 2019, the White House Office of Digital Slralegy created a Tech Bias Reporting tool to allow Americans to report incidents of online censorship. In just weeks, the White House received over 16,000 complaints of online platforms censoring or otherwise taking action against users based on their poliUcal viewpojnts. The White House Office of Digital Strategy shall ree8tablish lhe White House Tech Bias Reporting Tool to collect complaints of online censorship and other potentially unfair or deceptive acts or practices by online platforms and shall submit complaints reccixed to the Department of Justice and the Federal Trade Commission (FTC).

(c) The FTC shall consider taking action, as appr:opriate and consistent with applicable law, to prohibit unfair or deceptive acts or practices in or affecting commerce, pursuant to 15 U.S.C. 45. Such unfair or deceptive acts or practice shall include practices by entities regulated by section 230 that restrict speech in ways that do not align with those enlities' public representat.i,ons about those practi.ces.

(d) For large internet platforms that arl;1 vast arenas, for public debate, including the social media platfcrm Twitter, the FTC shall also consider whether complaints allege violations of law that implicaLe the policies set forth in section 4(a) of this oi:der. The FTC shall develop a report describing such complaints and make Ihe report publ i.cly available, consistent with applicable law.

Sec. _- <u>State Review of Unfa·ir or Deceptive Practices.</u> (a) The Attorney General shall establish a working group regarding the potential enforcement of State statutes that prohibit online platform's from engaging in unfair: and deceptive acts and practices. The working group shall invite State Attorneys General for discussion and consultation, as appropriate and consistent w th applicable law.

(b) The White House Office of DWital Strategy shall submiL all complaints described in Section 4(b) of this order to lhe working group, consislent with applicable law. The working group shall also collect publicly available information regarding the following:

S



**DELIBERATIVE/PRE-DECISIONAL/PRIVILEGED**

(i) monitoring or creating watch-lists of users based on their interactions with content or users (e.g., likes, follows, time spent); and

(ii) monitoring users based on their activity off the platform.

Sec. 6. Definition. For purposes of this order, the term "online platform" means any website or application that allows users to create and share content or engage in social networking, or any general search engine.

Sec. 7. General Provisions.

(a) Nothing in this order shall be construed to impair or otherwise affect:

   (i) the authority granted by law to an executive department or agency, or the head thereof;

   (ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals; or

   (iii) existing rights or obligations under international agreements.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

6

