FILED 6/15/2020
EO
U.S. DISTRICT COURT
24-HOUR DEPOSITORY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

Sensa Verogna, Plaintiff,               )

    v.                                    )          Case #: **1:20-cv-00536-SM**

Twitter Inc.,    Defendant.             )

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT OR, ALTERNATIVELY, TRANSFER

## A. CLAIM I

1.  Plaintiff has alleged in the Complaint a claim under 42 U.S.C. § 1981 that he is white and of a protected class, Compl. ¶ 16. And that; the defendant Twitter intentionally discriminated against him because he was white, while simultaneously, similarly situated non-whites were treated differently even though they have committed similar or worse acts, which gives the appearance of racial disparity in the issuing of discipline for virtually the same or less infraction and invokes the notion of treating two persons differently on the basis of a certain characteristic that only one possesses. Compl. at ¶ 1179; And as a result, Plaintiff suffered equitable losses, Compl. ¶ 1232; compensatory damages, Compl. ¶ 1233; suffered damages, and continues to suffer, including, but not limited to, insult, pain, embarrassment, humiliation, emotional distress, mental suffering, and injury to his personal and professional reputations, including general or special damages, costs, and other out-of-pocket expenses. Compl. ¶ 1237;

2.  42 U.S.C. § 1981 guarantees to "all persons" the same general rights of contract and equal protection as "white citizens.'" 42 U.S.C. § 1981 guarantees to "all citizens" the same property rights as "white citizens.'" The Supreme Court of the United States has held that 42 U.S.C. § 1981 also protects white persons who have suffered discrimination because of their race. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273 (1976).

1

3.      42 U.S.C. § 1981 prohibits race discrimination in the making and enforcing of contracts. It prohibits racial discrimination against whites as well as nonwhites. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 295 (1976) (Section 1981 was intended to "proscribe discrimination in the making or enforcement of contracts against, or in favor of, any race"). In Runyon v. McCrary, 427 U.S. 160 (1976), the Supreme Court held that Section 1981 regulated private conduct as well as governmental action. See McGovern v. City of Philadelphia, 554 F.3d 114, 122 (3d Cir. 2009).

4.      Specifically, the Court ruled that "a [Section]1981 plaintiff bears the burden of showing that the plaintiff's race was a 'but-for cause' of its injury, and that burden remains constant over the life of the lawsuit," including during the initial pleading stage. The "but for" cause and the motivation for the above-described conduct by defendant Twitter' CEO, officers, directors, managers, employee's or other contractors or actors, was because Plaintiff is white and a member of the white race. Compl. ¶ 1246.

5.      § 1981, originally § 1 of the Civil Rights Act of 1866, 14 Stat. 27, has a specific function: It protects the equal right of "[a]ll persons within the jurisdiction of the United States" to "make and enforce contracts" without respect to race. 42 U.S.C. § 1981(a). The statute currently defines "make and enforce contracts" to "includ[e] the making, performance, modification, and *termination* of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 126 S.Ct. 1246, 163 L.Ed.2d 1069 (2006).

6.      It is now well established that § 1 of the Civil Rights Act of 1866, 14 Stat. 27, 42 U.S. C. § 1981, prohibits racial discrimination in the making and *enforcement of private contracts*. See Johnson v. Railway Express *169 Agency, 421 U.S. 454, 459-460; Tillman v. Wheaton-Haven

55  Recreation Assn., 410 U.S. 431, 439-440. Cf. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 441-
56  443, n. 78.

57        7.    "Twitter, purposely and discriminately locked and then banned Plaintiff's contract
58  and services, Twitter impaired the 'contractual relationship' under which Plaintiff had rights."
59  Twitter denied Plaintiff the right to these services, the right to make and expand the contract to
60  include these and other services and to the benefits or privileges of their contractual relationship.
61  And while Twitter purposely deprived Plaintiff of services, similarly, situated users outside
62  Plaintiff's protected class, who had signed identical contracts similar to Plaintiff, and were not
63  denied the same services. Twitter allowed non-Whites to speak their minds and behave as non-
64  whites, while denying whites like the Plaintiff this advantage and that he has alleged that his
65  suspension was the result of discriminatory animus." Compl. ¶ 1184-1191; "banned his account
66  and contract because he was white and/or behaving white", Compl. ¶ 1194; and "Additionally,
67  Twitters' CEO, officers, directors and/or managers knowingly participated in and condoned the
68  discriminatory conduct as they maliciously used their new Health Policy initiative as a pretext to
69  discriminately remove or ban for life, actual white persons from its public facilities", Compl. ¶
70  1279.

71        8.    Twitter, as a contractee, owed a duty not to discriminate against the Plaintiff while
72  enforcing their contract. The "but for" cause and the motivation for the above-described conduct
73  by defendant Twitter' CEO, officers, directors, managers, employee's or other contractors or
74  actors, was because Plaintiff is white and a member of the white race. See Compl. ¶ 16 and ¶ 32.

75        9.    For the reasons stated in Plaintiff's Complaint and herein, Plaintiff has alleged in
76  Claim I, a proper action for violations of his rights under 42 U.S.C. § 1981.

77

B. CLAIM II

10.     Plaintiff's Complaint states; "NH Rev Stat § 155:39-a, such as those described and display throughout Exhibit Q ; IT SHOULD READ "Exhibit P". Compl. ¶ 914.

11.     Plaintiff has alleged in the Complaint a claim under 42 U.S.C. § 2000a and NH Rev Stat § 354-A:17 that he is white and of a protected class: and that; Twitter is a place of public accommodation; that he attempted to exercise his right to full benefits and enjoyment of a place of public accommodation; but was denied those benefits and enjoyment because of his race; and was treated less favorably than similarly situated persons who are not members of the protected class; and was required to behave like a non-white person as a condition for admission; and that Twitter owed a duty and breached that duty not to discriminate against the Plaintiff in a place of accommodation as described within 42 U.S.C. § 2000a and NH Rev Stat § 354-A:17.

12.     Plaintiff has alleged in the Complaint that Twitter is a place of public accommodation within the meaning of 42 U.S.C. §2000a(b) and (c), (2), (3) and (4) and NH Rev Stat § 155:39-a, as its operation of cafeteria's, lunchrooms, lunch counters, soda fountains, motion picture houses, theaters, concert halls or other places of exhibition or entertainment within its many facilities or establishments affect commerce as a substantial portion of the food which it serves or other products which it sells, has moved in commerce within the meaning of 42 U.S.C. § 2000a(b) 2 and (c)2 and NH Rev Stat § 155:39-a, II. Additionally, Twitter customarily presents performances, exhibitions or other sources of entertainment which move in commerce through its live feed of events inside it's many facilities throughout the US within the meaning of 42 U.S.C. § 2000a(b)(3), (c)(3) and NH Rev Stat § 155:39-a III and additionally under 42 U.S.C. § 2000a(b) 4 and (c)(4), as any establishment that contains a covered establishment, and which holds itself out as serving patrons of that covered establishment. See @Bonnepetweet, a private bakery and

101  sandwich shop (Compl. ¶ 63, 899, 900-911, 913, 1259, 1264,  and Compl. ¶ Exhibit C- Bon

102  Appetite Business Registration and Exhibits P-5 and P-6. And Exhibits P-1 through P-33) (*Mis-

103  stated in Compl. ¶ 914 as Exhibit Q). (See also Plaintiff's Motion to Declare Twitter a Public

104  Accommodation Under Law and Brief and Memorandum in Support, filed with the Court on May

105  29, 2020).

106      13.     NH Rev Stat § 354-A:17 which creates plaintiffs private right of action and NH

107  Rev Stat § 354-A and NH Rev Stat § 354-A:21 stipulate no prerequisites of first bringing any claim

108  before an administrative agency and simply states "Any person claiming to be aggrieved by an

109  unlawful discriminatory practice may make, sign and file with the commission a verified

110  complaint". As such, Plaintiff need not hurdle and exhaust himself first through any State

111  administrative prerequisites to bring a claim under New Hampshire's anti-discrimination in public

112  accommodation law, NH Rev Stat § 354-A:17 or penalties described in NH Rev Stat § 354-B:3

113  (2016). (Compl. ¶ 76, 938, 1250, 1264 and 1412).

114      14.     If the New Hampshire legislature intended to make the administrative procedures

115  in N H NH Rev Stat §  354-A:21 exclusive having a preemptory effect, it would have included an

116  express preemption clause. NH Rev Stat § 354-A:25 does state that "[i]f such individual institutes

117  any action based on such grievance without resorting to the procedure provided in this chapter,

118  such person may not subsequently resort to the procedure in this chapter ..." It does not say,

119  however, that if a person first resorts to the procedures in this chapter, that person may not later

120  institute a civil action setting forth state common-law claims. See Douglas v. Coca-Cola Bottling

121  Co. of N. New England, Inc., 855 F. Supp. 518, 522 (D.N.H. 1994); In re Perkins, 147 N.H. 652

122  (2002). Additionally, Munroe v. Compaq Computer Corp., 229 F. Supp. 3d 52, 67 (D.N.H. 2002)

123  is irrelevant to the circumstances in this case.

124   15.    The only prerequisite to bring a 42 U.S.C. § 2000a claim is 42 U.S. Code § 2000a–
125   3(c.) which claimants must hurdle to obtain any injunctive relief under the statute.  Plaintiff has
126   provided written notice to the appropriate State Authority by registered mail, has waited the
127   duration of the 30 days prescribed, and is entitled to remedies available in 42 U.S. Code § 2000a–
128   3, such as injunctive relief. See Exhibit C- Notice to Attorney General and Receipt.

129   16.    Twitter purposely and discriminately locked and then *banned* Plaintiff's contract
130   and services, Twitter impaired the 'contractual relationship' under which Plaintiff had rights."
131   Twitter denied Plaintiff the right to these services, the right to make and expand the contract to
132   include these and other services and to the benefits or privileges of their contractual relationship.
133   And while Twitter purposely deprived Plaintiff of services, similarly, situated users outside
134   Plaintiff's protected class, who had signed identical contracts similar to Plaintiff, were not denied
135   the same services. Twitter allowed non-Whites to speak their minds and behave as non-whites,
136   while denying whites like Plaintiff this advantage and has alleged that his suspension was the result
137   of discriminatory animus, Compl. ¶ 1184-1191; "banned his account and contract because he was
138   white and/or behaving white", Compl. ¶ 1194; and "Additionally, Twitters' CEO, officers,
139   directors and/or managers knowingly participated in and condoned the discriminatory conduct as
140   they maliciously used their new Health Policy initiative as a pretext to discriminately remove or
141   ban for life, actual white persons from its public facilities", Compl. ¶ 1279.

142   17.    Plaintiff's complaint does not opine that Twitter's online forum is a "place of public
143   accommodation", but that Twitter's computer network is a public forum and a service Twitter
144   offers to the public.  Compl. ¶ 953, ¶ 963, ¶ 970 and ¶ 1481.

145   18.    At minimum, the stubborn fact that the Twitter facility in San Francisco contains

146  and houses a covered establishment within its facility, Bon Appetit Management Co., which holds

147  itself out as serving the public and patrons of that covered establishment would, in fact, bring it

148  within the reach and definition of 42 U.S.C. § 2000a(b) 4 and (c)(4).

149      19.      For the reasons stated in Plaintiff's Complaint, herein and in Plaintiff's Motion to

150  Declare Twitter a Public Accommodation under Law, this Court should declare that Twitter, Inc.

151  is a Public Accommodation effecting commerce under both Federal and New Hampshire laws, OR

152  minimally, that it was, within the time frame of Plaintiff's Complaint, and that Plaintiff has alleged

153  in Claim II, a proper action under 42 U.S.C. § 2000a and NH Rev Stat § 354-A:17.

154  C. CLAIM III

155  (1). <u>Claims</u>

156      20.      Defendant supposes that Plaintiff's allegations with respect to race are conclusory.

157  That could only be true should one surmise *without* looking any further to any foundation,

158  underlying logic, or reasoning included throughout the *entire* Complaint.

159      21.      Twitter banned Plaintiff from using many of the services offered at Twitter.com . .

160  . due to his race." Taken alone this may be taken as conclusory, but the Plaintiff's Complaint also

161  states that a lot more that bald assertions. Compl. ¶ 140.

162      22.      Defendant's Workforce was non-white or anti-white Compl. ¶ 855 biased and was

163  probably about 90% anti-Trump, maybe 99% anti-Trump as stated by a Twitter employee. Compl.

164  ¶ 492, and created an algorithmic solution to white supremacy, which would also catch Republican

165  politicians." Compl. ¶ 801; and that that race made a difference in Twitters decisions and raises an

166  inference that Twitters legitimate reasons such as "Health" were not it's true reasons for banning

167  tweets and the contracts of a white Sensa and other white users, but were a pretext for mass

168  discrimination as a result of racial animus held by Twitters Workforce. Compl. ¶ 1350.

169        23.        Defendants' CEO, officers, directors and/or managers knowingly: and maliciously

170   devised, participated in and condoned the discriminatory conduct as they used their new Health

171   Policy initiative as a pretext to discriminately remove or ban for life the contracts, of perceived or

172   actual white owned accounts like Plaintiff's. Compl. ¶ 116; knowingly participated in and

173   condoned the discriminatory conduct as they maliciously used their new Health Policy initiative

174   as a pretext to discriminately remove or ban for life, actual white persons from its public facilities.

175   Compl. ¶ 1280, that allows non-white users and Blue Check'ers to post racist and anti-white

176   propaganda because they [Twitter] themselves are anti-white and hate white people, Compl. ¶ 405,

177   Compl. Exhibits ¶ L, ¶ M and ¶ N;   and maliciously participated in and condoned the

178   discriminatory conduct as they used new "Health" initiative as a pretext to discriminately

179   remove tweets or replies based on Twitters viewpoint or ban for life the contracts, of perceived or

180   actual white owned accounts like Plaintiff's. Compl. ¶ 1360. "Health Policies which have shown

181   to have a strong bias against and have displayed a racially discriminatory animus toward

182   Republicans or Conservatives, who are, like Plaintiff, generally white." Compl. ¶257, Compl.

183   Exhibits ¶ J and ¶ K. Health policies created, in part, because white nationalists groups were

184   surging throughout 2019 Compl. ¶ 763, Congress was holding hearings concerning the impact of

185   white nationalist groups Compl. ¶ 787, 832, 836; inquiring as to what social media companies can

186   do to stem white nationalist propaganda and hate speech online and what the public forums are

187   doing to police their public forums, Compl. ¶ 790; and that because of public pressure Compl. ¶

188   846, and pressure from Congress, shareholders, and its own anti-white Workforce Compl. ¶ 856,

189        24.        Defendants wrote and trained its algorithms, set its agenda's, formulated and

190   implemented policies to track, police and regulate on the basis of going after and removing white

191   supremacists, white separatists and white nationalists knowing that it would effect or regulate

8

white Republicans, Conservatives and whites voices and white political views which, in fact, was demonstrated when Defendant regulated and shadow banned a majority of 600,000 Republicans and Conservatives who are mostly white, by Defendants' Workforce, who are, upon information and belief, mostly non-white or anti-white", therefore causing harm to the Plaintiff. Compl. ¶ 848.

25.     Which resulted in Trump supporters who according to a Pew Research Center Study to be overwhelmingly white. Compl. ¶ 236, and various other "white" users had their accounts banned by Defendant's also, by a "Health Policy" was built to find whites and not non-whites and was not designed to target non-whites" Compl. ¶ 403, Exhibits. ¶ K through ¶ O.

26.     Plaintiff's claims in Claim III allege that the Defendant should not be granted or be able to claim unconditional §230 immunity as they were out of their limits, overbroad in their role of "good Samaritan" and in "bad faith", used vague singular or plural forms of content-based or behavior-based speech suppression through its Health Policy, or tools thereof, in targeting and deleting Plaintiff's tweet and thereby controlling a white colored Plaintiff's third-party political speech on its website. Compl. ¶ 1063. And that even if political speech isn't covered under any Constitutional claims, Defendant deleted Plaintiff's free speech on a discriminatory content-based or subject matter viewpoint basis when it removed his tweet and banned his account in a public forum and not within the parameters of Section §230. Compl. ¶ 1074. And that Defendant also acted Twitter also acted under the color of State and acting as State Actor and operating a public forum and fulfilling functions ordinarily reserved to the State in a public forum, violated Plaintiff's free speech rights protected by Article 22 of the New Hampshire Constitution and the U.S. Constitution Article [I] Due Process and Equal Protections clauses within Articles [IV] and [XIV] when it regulated, imposed a viewpoint or behavior based restriction to delete his tweet Compl. ¶ 1328, and then violated Plaintiff's freedom to assemble protected by the U.S. Constitution Article

215   [I] and Article 32 of the New Hampshire Constitution and the Due Process and Equal Protections

216   clauses within Articles [IV] and [XIV] when it banned Plaintiff, from entering its public forum,

217   Compl. ¶ 1333, or that at a minimum, it violated his Constitutional rights for banning Plaintiff to

218   any DSF's within its public forum. Compl. ¶ 1336.

219        27.    For the reasons stated in Plaintiff's Complaint and herein Plaintiff has alleged in

220   Claim III, a proper action for violations of his US and New Hampshire Constitutional rights.

221   (2). Anonymous

222        28.    Simply because the Plaintiff's account operated pseudonymously does not

223   automatically equate that Defendant had no other way of determining Plaintiff's race.  A Twitter

224   account includes so much more information than "by mail, by e-mail, or over the telephone."

225   Plaintiff's Twitter account displayed a picture of a white man, Compl. ¶ Exhibit E, Sensa tweeted,

226   posted, communicated, acted, represented, displayed, behaved and portrayed himself to be a white

227   person and a member of the white race who followed, replied and conversed directly, relaying his

228   many political views to many politicians, members of Congress, newspapers, other MAGA

229   followers, including the @realDonaldTrump and other DPF's on Twitters public forum,

230   Twitter.com. Compl. ¶ 1254, ¶ 1148.

231        29.    On September 5. 2018, Jack Dorsey, testified verbally to the United States House

232   Committee on Energy and Commerce, and stated, in part;

233   **1788    Mr. McNerney: "So when targeting ads, are advertisers able to**
234   **exclude certain categories of users on Twitter, which would be**
235   **discriminatory?**
236
237   **1791    Mr. Dorsey. I am sorry. Can you -- can you -- for political ads or**
238   **issues ads?**
239   **1793    Mr. McNerney. No, for non-political ads. Are advertisers able to**
240   **exclude groups or categories of users?**
241   **1795    Mr. Dorsey. Advertisers are able to build criteria that include and**
242   **exclude folks.**

243 **1797    Mr. McNerney. So that could be — end up being discriminatory?**
244 **1799    Mr. Dorsey. Perhaps, yes.**
245          See Compl. Exhibit ¶ Q-2.

246          30.    To say the Defendant's knew nothing of the Plaintiff's particular race is absurd as

247 they have the very equipment, resources, algorithms, machinery, artificial intelligence or other

248 devices to come to a well-informed determination regarding a user's race. Providing resources to

249 its advertisers which would enable them to build a discriminatory criterion suggests they have the

250 ability to determine race. Additionally, Defendant's use algorithms or artificial intelligence which

251 can narrow down a user's race by focusing on words used or behaviors of a particular race. Compl.

252 ¶ 452; Compl. ¶ 800-827; Compl. ¶ 1012.

253 (3). State Actor

254          31.    The Plaintiff has alleged that; Congress is "essentially relegating it's duties to

255 protect, police and regulate free speech" to private companies. Compl. ¶ 1012; Congress is "the

256 boss and Twitter the Executive with policing powers.", Compl. ¶ 1025; that Twitter "does "police"

257 it's public forum at the direction of the Federal Government and Congress which enables it to take

258 enforcement actions against those that Congress believes to be law breakers of obscenity,

259 disturbing the peace, fighting words, or in Twitters case in which it "police(s)" "behaviors"",

260 Compl. ¶ 1034; that "Twitter is a state actor who, for its own economic benefit of legal protection,

261 acted on behalf of Congress and through §230.", Compl. ¶ 1055; that "Congress, unlawfully,

262 unreasonably and contrary to law, exceeded its constitutional bounds granted by Articles [I] or

263 [XIV] of the Constitution, Part I, Article 22 of the New Hampshire Constitution and lacks authority

264 under Article I, Section 8 of the Constitution, specifically under the Commerce Clause, to regulate

265 and/or police and Americans speech specifically through §230 as it is not a valid exercise of

266 Congress' commerce powers as public speech or the criminal nature of speech are entirely

267  noneconomic.", Compl. ¶ 1078; that "Twitters' boardroom is led by executives who seek guidance

268  and directives from Congress", Compl. ¶ 1381; that "Twitters Workforce was in fact working

269  under the direction of Congress to aid in the policing and enforcement of §230", Compl. ¶ 1389;

270      32.      The Plaintiff also states in his Brief in Support of Plaintiffs Motion to Declare

271  Twitter a State Actor under Law that; "In this case, Congress would be specifically responsible for

272  the particular activity of which Plaintiff complains because they subbed Executive Authority to

273  Twitter, and Twitter would be held responsible for its own misuse of that authority. Docket 6. ¶

274  301; "Congress clearly indicated in the relevant regulation of §230 through its strong preference

275  for punishing, and its desire to share the fruits of such intrusions in the interests of a booming

276  internet; Docket 6. ¶ 352; this encouragement, endorsement and participation in the private activity

277  created state action." Docket 6. ¶ 354; that "where the state has exercised coercive power or has

278  provided such significant encouragement, either overt or covert that the action of the private party

279  must in law be deemed to be that of the state." Docket 6. ¶ 259; Congress has expressed its

280  "coercive power in threatening publicly to abolish or threating Anti-Trust Regulations or by

281  providing encouragement, either publicly or through Oversight Hearings or enforcement

282  meetings", and that "the choice must in law be deemed to be that of the Congress." Docket 6. ¶

283  356; "Twitters use of §230 suggests coercive power." Docket 6. ¶ 439; (See attached Exhibit A,

284  EXECUTIVE ORDER PREVENTING ONLINE CENSORSHIP signed by President Trump on

285  May 28, 2020, Brief in Support of Plaintiff's Motion to Declare Twitter a State Actor under Law,

286  "Executive exercise of coercive power."

287      33.      Twitter, willfully participating and acting in accordance with their authority

288  through §230, deprived Plaintiff of his Constitutional rights. Twitter, entwined with governmental

289  policies, members of Congress and the President has become so impregnated with government

character and therefore should be subject to constitutional limitations placed upon state action. It can also be fairly stated that Twitter, having to answer to Congress, the United States Attorney General, honorable, William Barr and the President of the United States regarding Twitters use of §230 suggests coercive power. Docket 6. ¶ 431. See Affidavit, Exhibit A, in support.

34.    It is because Congress delegated to Twitter Executive policing powers through 230 by which Plaintiff was injured. Twitter, endowed by §230 acted as an instrument of Congress. Twitter also has a symbiotic relationship with Congress through §230 to which it assumed the traditional Constitutional and Executive duties of policing speech and other criminal acts which are enforced by State and Local Law Enforcement Agencies, and was in fact acting for Congress and relied on governmental assistance to police its public forum and received many benefits for its work. Docket 6. ¶ 441.

35.    For the reasons stated in the complaint, herein, and in the supporting brief and memorandum of law, and all that is attached, this Court should declare that Twitter, Inc., a "State Actor" under the law, OR minimally, that it was, within the time frame of Plaintiff's Complaint.

(4). Public Forum

36.    Twitter's computer network is a public forum open to the public for the purpose of speaking in public and for the purpose of encouraging the patronizing of its advertisers. Although Twitter is privately organized, its computer network exhibits all the features of a public forum conducive to the public communication of views on issues of political and social significance and indeed has assumed law enforcement responsibilities normally reserved for State Actors through §230. By exercising public functions, this nominally private entity assumed the constitutional obligations of local government, specifically including the duty to permit exercise of expressive rights within the boundaries of its forum which serves as the functional equivalent of a business

313 block open to the general public and does not violate Twitter's property rights under the Fifth and
314 Fourteenth Amendments. Compl. ¶ 953-962.

315     37.    Twitter has intentionally transformed its computer network into a public forum,
316 square or market, a public gathering place, a downtown business district or community. They
317 cannot now deny their own implied invitation to use the space as it was clearly intended, a public
318 forum for public speech, whose nature, purpose and primary use is public and not private speech,
319 which is open to the public. Compl. ¶ 963-967.

320     38.    Defendant's First Amendment rights do not bar Plaintiffs claim III if Twitter is
321 declared a public forum as alleged: Twitter has intentionally transformed its computer network
322 into a public forum, square or market, a public gathering place. Compl. ¶ 963; Twitter has become
323 a critical public forum for the expression of protected speech and the federal courts of appeals has
324 held that the government can create public forums within Twitter's public forum computer
325 network. Compl. ¶ 968; That Twitter does "police" it's public forum at the direction of the Federal
326 Government and Congress. Compl. ¶ 1035; Executive status in the form of legal immunity and in
327 the savings of legal fees in return for policing it's designated public forum under the government
328 created §230. Compl. ¶ 1041.

329     39.    For the reasons stated in the Complaint, herein, and in Plaintiff's Motion to Declare
330 Twitter's Computer Network a Public Forum under Law and Brief and Memorandum in Support,
331 this Court should declare that Twitter's computer network is a Public Forum under the law, OR
332 minimally, that it was, within the time frame of Plaintiff's Complaint.

333 (5). Section §230

334     40.    Under the CDA or Section §230, Plaintiff alleges that: §230 is unconstitutionally
335 vague, overbroad and viewpoint discriminatory, Compl. ¶ 1118; §230 is also facially overbroad

because a substantial number of its applications such as removing speech "taken in good faith" and speech "otherwise objectionable" are unconstitutional and viewpoint discriminatory on their face because it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits and it authorizes or even encourages arbitrary and discriminatory enforcement." Compl. ¶ 1126, and that; Congress, unlawfully, unreasonably and contrary to law, exceeded its constitutional bounds granted by Articles [I] or [XIV] of the Constitution, Part I, Article 22 of the New Hampshire Constitution and lacks authority under Article I, Section 8 of the Constitution, specifically under the Commerce Clause, to regulate and/or police and Americans speech specifically through §230 as it is not a valid exercise of Congress' commerce powers as public speech or the criminal nature of speech are entirely noneconomic. Compl. ¶ 1178;  Congress has exceeded its constitutional bounds in passing §230 as in our federal system, the National Government possesses only limited powers where the States and the people retain the remainder. Police power, such as punishing street crime, regulating speech or behavior is possessed by the States and not by the Federal Government. Compl. ¶ 1093;  Additionally, Plaintiff would argue that §230 regulates people's speech and not commercial entities, and is therefore unconstitutional and that if this Court were to decide that §230 bars these type Claims, it would effectively abolish laws like 42 U.S.C. § 1981, 42 U.S.C. § 2000a and NH Rev Stat § 354-A:17 and other Constitutional claims in  the modern world of speech and rights to assemble and that the "Safe Harbors" provided in  §230, ought not to be used to evade public policies laws.

41.    Without these arguments being fully briefed, Plaintiff's claims that §230 is unconstitutional, with the reasons set forth in the Complaint, should be sufficient to state a cause of action at this stage of the proceedings that, Defendant's could be liable for any of claims should §230 be ruled unconstitutional for any of the reasons stated in the Complaint.

**D. MOTION UNDER 28 U.S.C. § 1404(a)**

(1). Venue Forum Clause or UA

42.      Whether applying Compl., Ex. D-1, at § 6 General or Defendant's Attached

Contract at Docket. ¶ 3, Twitter's Contract Venue Forum Clause, "UA" provides that:

> **The laws of the State of California, excluding its choice of law provisions, will**
> **govern these Terms and any dispute that arises between you and Twitter. <u>All</u>**
> **<u>disputes</u> related to these Terms or the Services will be brought solely in the**
> **federal or state courts located in San Francisco County, California, United**
> **States, and you consent to personal jurisdiction and waive any objection as to**
> **inconvenient forum."**

43.      Additionally, the UA provides that:

> **"THE LIMITATIONS OF THIS SUBSECTION SHALL APPLY TO ANY**
> **THEORY OF LIABILITY, WHETHER BASED ON WARRANTY,**
> **CONTRACT, STATUTE, TORT (INCLUDING NEGLIGENCE)"**

44.      These clauses are ambiguous and do not include Negligence Per Se causes of action

and if these clause(s) do in fact cover Negligence Per Se claims, it would be illegal, against public

policy and unconscionable to include such a clause in any contract under NH Rev Stat § 382-A:2-

302 (2016), would undermine the policies and obligations of Good Faith under NH Rev Stat §

382-A:1-304 (2007), and would act as an impermissible prospective waiver of federal and state

statutory and Constitutional rights which would be against any State public policy to include such

a waiver of Discriminatory Negligence Per Se actions by the Defendants in suits including 42

U.S.C. § 1981, 42 U.S.C. § 2000a and NH Rev Stat § 354-A:17 claims, and therefore transferring

the case would be inconsistent with this state's public policy.

45.      A forum selection clause is unenforceable if "enforcement would be 'unreasonable'

under the circumstances." See Hendricks v. Bank of America, N.A., 408 F.3d 1127, 1137 (9th

386     Cir.2005). New Hampshire's long-arm statute must be construed in the broadest legal sense. See

387     Hall v. Koch, 119 N.H. 639, 406 A.2d 962 Id. at 644, 406 A.2d at 965 (1979).

388         46.     Contracts of indemnification which purport to indemnify a party against its own

389     wrongful acts are looked upon with disfavor in New Hampshire. See Merimac Sch. Dist. V. Nat'l

390     Sch. Bus. Serv., Inc., 661 A.2d 1197 (N.H. 1995). Indemnify and hold harmless a party from

391     personal injury or property damage arising from his own negligence per se is void as against public

392     policy and unenforceable and generally cannot require one party to indemnify another for the other

393     party's negligence per se, in whole or in part.

394         47.     In general, every contract contains an implied duty of good faith and fair dealing in

395     the performance and enforcement of the contract. This duty requires that neither party will do

396     anything that will destroy or injure the right of the other party to receive the benefits of the contract.

397     In general, the duty of good faith and fair dealing and cannot perform incorrectly on purpose,

398     Twitter abused its power when enforcing the terms of Plaintiff's contract.

399         48.     For example, a court will never enforce a contract promoting something already

400     against state or federal law (you can never enforce a contract for an illegal marijuana sale) or an

401     agreement that offends the "public sensibilities" An example of a forum selection that may violate

402     public policy may be found when a particular state has a strong interest in regulating a particular

403     industry or in protecting a certain class of persons. See e.g. High Life Sales v. Brown-Forman

404     Corp., 823 S.W. 2d 493 (Mo. 1992).

405         49.     When an action exists at common law, the negligence per se doctrine may define

406     the standard of conduct to which a defendant will be held as that conduct required by a particular

407     statute, either instead of or as an alternative to the reasonable person standard. See Marquay v.

408     Eno, 139 N.H. 708, 713, 662 A.2d 272, 277 (1995). The familiar test we apply to determine

409   whether a statutory standard of conduct may be offered in a particular case asks "(1) whether the

410   injured person is a member of the class intended by the legislature to be protected, and (2) whether

411   the harm is of the kind which the statute was intended to prevent." Id. at 715, 662 A.2d at 277

412   (quotation omitted). An implicit element of this test is "whether the type of duty to which the

413   statute speaks is similar to the type of duty on which the cause of action is based." Id. at 716, 662

414   A.2d at 278. Whether the elements of the negligence per se test have been met is a question of law.

415   See Lupa v. Jensen, 123 N.H. 644, 646, 465 A.2d 513, 514 (1983).

416        50.     The Court of Appeals, reversing a judgment of the Appellate Division, held that

417   "consistent with public morality and settled public policy" a party will be denied recovery upon a

418   contract valid upon its face, where immoral means were used to effect its purpose. See McConnell

419   v. Commonwealth Pictures Corp., 7 N.Y.2d 465, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960).

420        51.     Had the Plaintiff brought another Claim such as breach of contract or for negligence

421   under such a clause, the UA might have had effect, but because all 3 Claims made by the Plaintiff

422   can be described as "intentional torts", the forum selection clause, in this case, is not enforceable

423   as it is not applicable to the present Claims.

424        52.     Plaintiff did not anticipate that the Defendant would break the law and did not agree

425   to allow Twitter to discriminate against him or to intentionally give waiver to any illegal

426   performance under our bargain of future disputes. Defendant's UA portion of the contract should

427   be forbidden in this case.

428   F.   **Defendant has waived its personal jurisdiction defense through its conduct and**

429   **participation in this case.**

430        53.     On June 1, 2020, the Defendant submitted to this Court;

431   **4 As part of the Complaint, Plaintiff has also moved to proceed anonymously.**
432   **In determining whether to permit a litigant to proceed anonymously, courts in**

433 **this district consider: (1) whether the identity of the litigant has been kept**
434 **confidential; (2) the reasons disclosure is feared or sought to be avoided, and**
435 **the substantiality of these reasons; (3) the public interest in maintaining the**
436 **confidentiality of the litigant's identity, versus the public interest in knowing**
437 **the litigant's identity; (4) the undesirability of an outcome adverse to the litigant**
438 **and attributable to his refusal to pursue the case at the price of being publicly**
439 **identified; (5) whether the litigant has illegitimate ulterior motives; and (6)**
440 **whether the opposition to the litigant's use of a pseudonym by counsel, the**
441 **public, or the press is illegitimately motivated. See Doe v. Trustees of Dartmouth**
442 **College, No. 18-cv-040-LM, 2018 WL 2048385, at *4-5 (D.N.H. May 2, 2018)**
443 **(quoting Doe v. Megless, 654 F.3d 404 (3d Cir. 2011)). Twitter does not take a**
444 **position on Plaintiff's request, except to say that it is unclear whether the**
445 **standards for proceeding anonymously have been met. (See Motion and**
446 **Memorandum, Dkt. @3).**
447
448     54.    Defendant states that it does not take a position on Plaintiff's request to proceed

449 anonymously but in the same breath avers that [it] "is unclear whether the standards for proceeding

450 anonymously have been met", by "courts in this district" and that the leading law "in this district"

451 is held within "Doe v. Trustees of Dartmouth College" and should be "considered". Defendant,

452 availed itself of judicial resources in this forum in making these statements and manifests intent to

453 submit to this Court's jurisdiction in "this district" and "in New Hampshire" and weighs in favor

454 of defendants waiver of Personal Jurisdiction. Accordingly, the Court should find that defendant

455 waived its personal jurisdiction defense through its conduct in the case. Actively participating in a

456 case implicitly waives a jurisdictional objection when participation "manifests an intent to submit

457 to the court's jurisdiction." See Yeldell v. Tutt, 913 F.2d 533, 539 (8th Cir. 1990). This defense

458 "may be lost by submission through conduct." See Neirbo Co. v. Bethlehem Shipbuilding Corp.,

459 308 U.S. 165, 168, 60 S.Ct. 153, 155, 84 L.Ed. 167 (1939). Participation includes engaging in

460 discovery, taking part in settlement conferences, and filing and opposing motions for relief on the

461 merits. See id.; see also Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2nd Cir. 1999); Bel-Rey

462 Co. v. Chemrite (Pty) Ltd., 181 F.3d 435, 443-444 (3rd Cir. 1999) as quoted in Ramos v. Foam

463 Am., Inc., CIV No. 15-980 CG/KRS, 10-11 (D.N.M. Feb. 20, 2018). Defendant averred no such

464    argument that California Laws or any California Federal Court be used in any such determination

465    of the Plaintiff's Motion to Proceed Anonymously.

466        55.     The term "waiver" is best reserved for a litigant's intentional relinquishment of a

467    known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a

468    right, or, as here, a defense, the term "forfeiture" is more appropriate. See United States v. Olano,

469    507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("Waiver is different from forfeiture.

470    Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional

471    relinquishment or abandonment of a known right.' ''(quoting Johnson v. Zerbst, 304 U.S. 458,

472    464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); as quoted in Hamilton v. Atlas Turner, Inc., 197 F.3d

473    58, 61 (2nd Cir. 1999); Swaim v. Moltan Co., 73 F.3d 711, 718 & n. 4 (7th Cir.1996) See id.;

474    "Because the requirement of personal jurisdiction represents first of all an individual right, it can,

475    like other such rights, be waived." See Insurance Corp. of Ir., Ltd., et al. v. Compagnie des Bauxites

476    de Guinee, 456 U.S. 694, 703 (1982). Moreover, the "actions of the defendant may amount to a

477    legal submission to the jurisdiction of the court, whether voluntary or not." Id. at 704-705. In

478    particular, where a party seeks affirmative relief from a court, it normally submits itself to the

479    jurisdiction of the court with respect to the adjudication of claims arising from the same subject

480    matter. See Adam v. Saenger, 303 U.S. 59 (1938); Bel-Rey Co. v. Chemrite (Pty) Ltd., 181 F.3d

481    435, 443-444 (3rd Cir. 1999),

482        56.     One can waive service of process by various means and become a party to a

483    suit by voluntary appearance. "Id.(citing Vandegrift v. Knights Road Industrial Park, Inc., 490

484    Pa. 430, 416 A.2d 1011, 1013 (Pa. 1980)). "A defendant manifests an intent to submit to the court's

485    jurisdiction when the defendant takes 'some action (beyond merely entering a written

486    appearance) going to the merits of the case, which evidences an intent to forego objection to

487 the defective service.' "Id.(quoting Cathcart v. Keene Industrial Insulation, 471 A.2d 493, 499 (Pa.
488 Super. Ct. 1984).

489 **E. CONCLUSION**

490     57.    In this Circuit, "we treat a motion to dismiss based on a forum selection clause as
491 a- motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6),
492 (failure to state a claim upon which relief can be granted). Rivera v. Centro Médico de Turabo,
493 Inc., 575 F.3d 10, 15 (1st Cir.2009); see also, e.g., Silva v. Encyclopedia Britannica Inc., 239 F.3d
494 385, 387 (1st Cir.2001).

495     58.    Each of Plaintiff's claims is plausible on its face." See *Ashcroft v. Iqbal*, 556 U.S.
496 662, 678 (2009) (internal quotation marks omitted). Plaintiff need only allege and claim the statute
497 was violated. "It is enough to show that the vendors failed to perform it in the only way in which
498 the statute allows it to be performed." Anderson v. Daniel, 541K.B. 138, Ibid., at 144. (1924).

499     59.    This requires Plaintiff to plead "factual content that allows the court to draw the
500 reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Tringali*
501 *v. Mass. Dep't of Transitional Assistance*, No. 12-cv-124-PB, 2012 WL 5683236, at *4 (D.N.H.
502 Nov. 13, 2012) (dismissing pro se plaintiff's claims because "she has not pleaded sufficient facts"
503 in support).

504     60.    Plaintiff has alleged that the Defendant(s):

505     A.    Discriminatively suspended Plaintiff's contract, restricted his access to services in
506 a public accommodation and deleted restricted his access to a public forum, on a discriminatory
507 basis because Plaintiff is white and behaving like a white person and on a racial discriminatory
508 basis and in violation of Plaintiff's New Hampshire and US Constitutional rights.

509   B.  UA is not applicable in any of the claims as the UA covers Negligence and not Per

510 Se, Statutory or Intentional Negligence, as it would be against public policy and illegal for the UA

511 to contain such a clause.

512   C.  §230, as alleged, cannot save Defendant's from their actions in any claim as it is

513 unconstitutionally vague; overbroad and viewpoint discriminatory on its face; authorizes and

514 encourages arbitrary and discriminatory enforcement; enables State Actors to administer a policy

515 on the basis of impermissible factors; lacks any plain legitimate sweep; allows the removal of free

516 speech irregardless of whether the speech is "constitutionally protected or not". Or that

517 Defendants, while acting as a state actor, under the direct supervision of directive of Congress,

518 applied §230, overbroadly and on a discriminatory viewpoint, based on race.

519   D.  The Plaintiff has elaborated on the who, what and where. Defendants workforce,

520 including upper management, who mostly consisted of bias non-white or anti-white employees

521 who hate whites; who were under presser from various groups, Congress and their own employees

522 to go after white supremacists, created a health policy to target white users for removal from

523 Twitter's public forum, using algorithms or artificial intelligence. Further alleged is discriminatory

524 motive such as banning other whites, allowing users and promoters to post disparaging remarks

525 regarding whites or the white race without retribution by Defendants and treating others similarly

526 situated better than the Plaintiff for similar tweets; and that Defendants have shown a pattern of

527 targeting Republicans and Conservatives which demonstrates that Defendants workforce has

528 crossed the line from bias to discriminatory acts in the past, and then lied to the public for 2 years

529 or longer, but then in their own words revealed that they had lied in the past concerning the

530 targeting and then shadow banning over 600,000 accounts.

531           61.     Plaintiff has alleged enough to raise a right to relief above the speculative level[.]"

532    See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Proof of discriminatory motive is

533    critical", "In some situations, motive "can be inferred from the mere fact of differences in

534    treatment." Teamsters v. United States, 431 U.S. 324, 335-36 n.15 (1977).

535          62.     Plaintiff has alleged that Twitter "Health" policies, the constant insistence that

536    Twitter was going find and remove whites shows intent to discriminate on the basis of race. Had

537    Twitter not come looking for whites, it would have never found the Plaintiff. See Hayes v.

538    Michigan Cent. R.R., 111 U.S. 228, 241 (1884) (defining causa sine qua non as "a cause which if

539    it had not existed, the injury would not have taken place").

540          63.     Plaintiff would agree that Twitter is an interactive computer service under 230 and

541    that The content was posted by another information content provider. But would disagree that

542    Plaintiff's claims treat twitter as a publisher. Claims I and II treat the Defendant as a business

543    owner and the 3rd claim treats them like they are a state actor, policing and enforcing laws for

544    Congress, in a public forum.

545          64.     Great discrepancies in the punishments received by the white non-supervisors in

546    these cases, in contrast to their black peers, yields a reasonable inference that, in the summer of

547    2005, heiserman intentionally discriminated against them because they are white. When similarly

548    situated workers are treated differently even though they have committed similar acts.

549    Plaintiff was fired at the time Twitter was committing these reasonably inferable acts of

550    discrimination against white users.

551          65.     Defendant reasons that the Plaintiff has not exhausted all his Administrative claims

552    prior to bringing an action under NH Rev Stat § 354-A. If that held true, that would create

553    additional ambiguities to the UA clause as the clause now would require any claims go to a court

554    in San Francisco first and prior to any New Hampshire Administrative agency?

555    For the reasons above, Plaintiff respectfully objects to the Court dismissing Plaintiff's

556    claims with prejudice or in the alternative, transfer any claims to the Northern District of

557    California.

558
559    WHEREFORE, the Plaintiff, respectfully requests that this Honorable Court:
560
561        A. Deny Twitter's Motion to Dismiss Complaint in its entirety and proceed with
562        discovery in the case;
563
564        B. Declare Twitter's CDA is not applicable in these types of actions;
565
566        C. Allow Plaintiff to leave and amend complaint to include the newer version of Twitters
567        User Agreement May 25, 2018 version (See Compl., Ex. D-1, at § 4) and to amend any
568        deficiencies in the Complaint; and
569
570        D. Grant such other and further relief as may be just and equitable.
571
572
573    Respectfully,
574
575
576        /s/ Plaintiff, Anonymously as Sensa Verogna
577        SensaVerogna@gmail.com
578
579
580                        **CERTIFICATE OF SERVICE**

581    I hereby certify that on this 15th day of June 2020, the foregoing document was made upon the

582    Defendant, through its attorneys of record to Jonathan M. Eck  jeck@orr-reno.com and Julie E.

583    Schwartz, Esq., JSchwartz@perkinscoie.com

24