IN THE UNITED STATES DISTRICT COURT DISTRICT OF NH
FOR THE DISTRICT OF NEW HAMPSHIRE FILED

2020 JUN 19 P 5: 55

24 HOUR DEPOSITORY

Sensa Verogna, Plaintiff,              )
                                       )     Case #: **1:20-cv-00536-SM**
        v.                             )
                                       )
Twitter Inc.,   Defendant.             )

_____

**PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION
TO DECLARE TWITTER A STATE ACTOR UNDER LAW**

1.      Defendants' Default is "an admission of the facts cited in Plaintiff's Complaint, See Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); see also Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1204 (5th Cir. 1975), and is sufficient to establish Defendants liability on Plaintiffs stated legal theories in his claims. Here, the Plaintiff has established that Defendants acted on behalf of Congress and through §230 as "State" or "Federal" actor under law, through the well pled facts in his Complaint.

2.      Plaintiff does not allege that Twitters' computer network might be a place of public accommodation, but that Twitter operates in commerce and is a public accommodation under the law, and that it offers services through its computer network, which is a public forum.

3.      Plaintiff's Motion to Declare Twitter a State Actor under Law under 28 U.S. Code § 2201 should be treated as such, after reasonable notice or hearing under 28 U.S. Code § 2202, as the motion is cognizable, necessary and not redundant, and is "specific" and within the Federal or Local Rules. Plaintiff, through this particular Motion, is not asking for a remedial order that would command any action by the parties, such as an order to pay damages. There is no need for a command because the Plaintiff is seeking only a clarification of his legal position and does not seek to resolve Plaintiff's injuries through this motion.

Page **1** of **2**

4.      Plaintiff also understands that Declaratory relief is, under the Rules and Laws is discretionary. However the Plaintiff also understands that Judges are better suited than juries to understand and interpret the Laws and may have to resolve subsidiary factual disputes "that are part and parcel of the broader legal question," See Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc. And that Judges are better equipped "to evaluate the nature and scope of an agency's determination" because they are experienced in "[t]he construction of written instruments," Markman v. Westview Instruments, Inc. The question here is whether Twitter's acted as a "State Actor" and that it is a question of law. See United States v. Richberg, 398 F.2d 523, 526 (5th Cir. 1968). Declaratory relief is necessary and needed to adjudicate Plaintiffs' rights and to determine whether or not to add additional defendants to the Claims in Plaintiff's Complaint.

5.      As used in both supporting briefs and herein, "state action" refers to any governmental action that is Federal or State in nature.

6.      For the reasons stated in this herein and the attached Memorandum of Law in Support of this Reply and in Plaintiff's Motion and Brief in Support of Plaintiff's Motion to Declare Twitter a State Actor under Law, this Court should declare that Twitter, Inc. acted as a State Actor, and within the time frame of Plaintiff's Complaint.

Respectfully,

/s/ Plaintiff, Anonymously as Sensa Verogna
SensaVerogna@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June 2020, the foregoing document was made upon the Defendant, through its attorneys of record to Jonathan M. Eck  jeck@orr-reno.com and Julie E. Schwartz, Esq., JSchwartz@perkinscoie.com

Page 2 of 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Sensa Verogna, Plaintiff,          )

     v.                    )    Case #: **1:20-cv-00536-SM**

Twitter Inc.,   Defendant.   )

_____

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION TO PLAINTIFF'S MOTION TO DECLARE TWITTER A STATE ACTOR UNDER LAW

1.      Plaintiff's claims stated in his Complaint are cognizable, not barred by Section § 230 or Twitter's own First Amendment rights, as alleged. In the instant Motion to Declare Twitter a "State" Actor under Law, Plaintiff's request for relief is procedurally proper under the Federal Rules. Plaintiff does in fact seek a ruling on individual elements, but states that the claims for relief are different and therefore not redundant. Plaintiff seeks a declaratory remedy from the Court that would clarify or advance the resolution of the dispute and that declaratory judgment is appropriate to declare the rights and legal relations of an interested party to an actual controversy. See Curran v. Camden Nat'l Corp., 477 F. Supp. 2d 247 (D. Me. 2007), Id. at 265. And that, unlike the motions made in Zajac, LLC., Plaintiffs' request through this Motion are not duplicative or redundant as it does seek damages, as Counts I, II and III do, it simply seeks a declaratory remedy from the Court that would clarify and advance the resolution of the dispute of whether Twitter was acting as a state or federal actor while under Congresses' directive, Section 230, or it wasn't, and that it has bearing on the ultimate question of damages for injuries.

2.      Rule 57 Declaratory Judgment allows the Court to order a speedy hearing of a declaratory-judgment action. 42 U.S. Code § 2000a–6 allows and permits the Plaintiff to present this Motion. Additionally, Plaintiff has requested for declaratory relief in each of his claims. Count I 1981, Declaratory Relief. Complaint ¶ 1242; Count II- Public Accommodation, Complaint ¶ 1316

30   Count III- Violation of Constitutional Rights, Complaint ¶ 1401. 42 U.S. Code § 2000a permits

31   the issuance of declaratory relief. See Newman v. Piggie Park Enters., 390 U.S. 400, 402 (1968)

32   (per curiam)

33         3.      Notes of Advisory Committee on Rules—1937,  Rule 57 Declaratory Judgment

34   state, in part; The fact that a declaratory judgment may be granted "whether or not further relief is

35   or could be prayed" indicates that declaratory relief is alternative or cumulative and not exclusive

36   or extraordinary. A declaratory judgment is appropriate when it will "terminate the controversy"

37   giving rise to the proceeding. Inasmuch as it often involves only an issue of law on undisputed or

38   relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing

39   the case for early hearing as on a motion, as provided for in California (Code Civ. Proc. (Deering,

40   1937) §1062a), Michigan (3 Comp. Laws (1929) §13904), and Kentucky (Codes (Carroll, 1932)

41   Civ. Pract. §639a–3). The "controversy" must necessarily be "of a justiciable nature, thus

42   excluding an advisory decree upon a hypothetical state of facts." Ashwander v. Tennessee Valley

43   Authority, 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936). The existence or

44   nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact

45   upon which such legal relations depend, or of a status, may be declared. The petitioner must have

46   a practical interest in the declaration sought and all parties having an interest therein or adversely

47   affected must be made parties or be cited. A declaration may not be rendered if a special statutory

48   proceeding has been provided for the adjudication of some special type of case, but general

49   ordinary or extraordinary legal remedies, whether regulated by statute or not, are not deemed

50   special statutory proceedings. When declaratory relief will not be effective in settling the

51   controversy, the court may decline to grant it. But the fact that another remedy would be equally

52   effective affords no ground for declining declaratory relief. The demand for relief shall state with

53    precision the declaratory judgment desired, to which may be joined a demand for coercive relief,

54    cumulatively or in the alternative; but when coercive relief only is sought but is deemed

55    ungrantable or inappropriate, the court may sua sponte, if it serves a useful purpose, grant instead

56    a declaration of rights. Hasselbring v. Koepke, 263 Mich. 466, 248 N.W. 869, 93 A.L.R. 1170

57    (1933). Written instruments, including ordinances and statutes, may be construed before or after

58    breach at the petition of a properly interested party, process being served on the private parties or

59    public officials interested. In other respects the Uniform Declaratory Judgment Act affords a guide

60    to the scope and function of the Federal act. Gully, Tax Collector v. Interstate Natural Gas Co., 82

61    F.(2d) 145 (C.C.A.5th, 1936); Ohio Casualty Ins. Co. v. Plummer, 13 F.Supp. 169 (S.D.Tex.,

62    1935); Borchard, Declaratory Judgments (1934), passim.

63        4.    A "controversy" in this sense must be one that is appropriate for judicial

64    determination. Osborn v. United States Bank, 9 Wheat. 738, 22 U. S. 819. A justiciable controversy

65    is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one

66    that is academic or moot. United States v. Alaska S.S. Co., 253 U. S. 113, 253 U. S. 116. The

67    controversy must be definite and concrete, touching the legal relations of parties having adverse

68    legal interests. South Spring Gold Co. v. Amador Gold Co., 145 U. S. 300, 145 U. S. 301; Fairchild

69    v. Hughes, 258 U. S. 126, 258 U. S. 129; Massachusetts v. Mellon, 262 U. S. 447, 262 U. S. 487,

70    262 U. S. 488. It must be a real and substantial controversy admitting of specific relief through a

71    decree of a conclusive character, as distinguished from an opinion advising what the law would be

72    upon a hypothetical state of facts. See Muskrat v. United States, supra; Texas v. Interstate

73    Commerce Comm'n, 258 U. S. 158, 258 U. S. 162; New Jersey v. Sargent, 269 U. S. 328, 269 U.

74    S. 339, 269 U. S. 340; Liberty Warehouse Co. v. Grannis, 273 U. S. 70; New York v. Illinois, 274

75    U. S. 488, 274 U. S. 490; Willing v. Chicago Auditorium Assn., 277 U. S. 274, 277 U. S. 289, 277

76  U. S. 290; Arizona v. California, 283 U. S. 423, 283 U. S. 463, 464; Alabama v. Arizona, 291 U.

77  S. 286, 291 U. S. 291; United States v. West Virginia, 295 U. S. 463, 295 U. S. 474, 295 U. S.

78  475; Ashwander v. Tennessee Valley Authority, 297 U. S. 288, 297 U. S. 324. Where there is such

79  a concrete case admitting of an immediate and definitive determination of the legal rights of the

80  parties in an adversary proceeding upon the facts alleged, the judicial function may be

81  appropriately exercised, although the adjudication of the rights of the litigants may not require the

82  award of process or the payment of damages. Nashville, C. & St.L. Ry. Co. v. Wallace, supra, p.

83  288 U. S. 263; Tutun v. United States, 270 U. S. 568, 270 U. S. 576, 270 U. S. 577; Fidelity

84  National Bank v. Swope, 274 U. S. 123, 274 U. S. 132; Old Colony Trust Co. v. Commissioner,

85  supra, p. 279 U. S. 725. And as it is not essential to the exercise of the judicial power that an

86  injunction be sought, allegations that irreparable injury is threatened are not required. Nashville,

87  C. & St.L. Ry. Co. v. Wallace, supra, p. 288 U. S. 264. Aetna Life Insurance Co. v. Haworth, 300

88  U.S. 227, 57 S.Ct. 461 (1937).

89       5.     With similar views to New Hampshire Courts regarding declaratory relief

90  Tennessee's highest court has consistently held that its provisions may only be invoked when the

91  complainant asserts rights which are challenged by the defendant and presents for decision an

92  actual controversy to which he is a party, capable of final adjudication by the judgment or decree

93  to be rendered. Miller v. Miller, 149 Tenn. 463, 261 S.W. 965; Goetz v. Smith, 152 Tenn. 451,

94  465, 278 S.W. 417; Hodes v. Hamblen County, 152 Tenn. 395, 277 S.W. 901; Cummins v. Shirp,

95  156 Tenn. 595; 3 S.W. (2d) 1062; Tennessee Eastern Electric Co. v. Hannah, 157 Tenn. 582, 587,

96  12 S.W.2d 372, Perry v. Elizabethton, 160 Tenn. 102, 106, 22 S.W.2d 359; Nashville Trust Co. v.

97  Drake, 162 Tenn. 356, 359, 36 S.W.2d 905 Nashville, Chattanooga & St. Louis Ry. v. Wallace,

98  288 U.S. 249 (1933). The Motion at bar here "To declare Twitter a State or Federal actor" presents

99    an actual controversy (Twitter states they are not a State actor, either Federal or State), is a

100   controversy to which he is a party, and that any judgement of whether or not Twitter is or was at

101   the time alleged in the Complaint would be a final adjudication of this controversy.

102         6.      Clarification can only help moving forward. An order will provide clarification as

103   to how the law applies to certain facts in this case. The basic point has often been made that some

104   suits—such as declaratory judgment actions and quiet title actions—are different from suits

105   seeking damages and injunctions. This point, however, is radically underdeveloped, and a general

106   descriptive and normative theory has not been offered. For literature noting the basic point of

107   difference, with widely varying parameters and terminology, see James M. Fischer, Understanding

108   Remedies 6 (LexisNexis 2d ed 2006) ("declaratory relief"); Douglas Laycock, Modern American

109   Remedies: Cases and Materials 511 (Aspen 3d ed 2002) ("declaratory remedies"); Lord Woolf and

110   Jeremy Woolf, The Declaratory Judgment 1 (Sweet & Maxwell 3d ed 2002) ("declaratory

111   judgment" contrasted with "executory, in other words coercive judgement. Landes and Posner, 23

112   J Legal Stud at 685 (cited in note 2) ("anticipatory adjudication" contrasted with "ex post

113   adjudication"); Lazar Sarna, The Law of Declaratory Judgments 1, 13 (Carswell 1978)

114   ("declaratory relief" contrasted with "consequential relief"); Walter H. Anderson, 1 Actions for

115   Declaratory Judgments: A Treatise on the Pleading, Practice and Trial of an Action for a

116   Declaratory Judgment, from Its Inception to Its Conclusion 1 (Foote & Davies 2d ed 1951)

117   ("preventive or anticipatory remedies"); Borchard, Declaratory Judgments at 24 (cited in note 6)

118   ("declaratory judgment" contrasted with "executory judgment"). See also Amend the Judicial

119   Code, HR Rep No 1264, 73d Cong, 2d Sess 2 (1934) ("preventive relief" contrasted with "curative

120   relief"). The most rigorous normative treatment is by Landes and Posner, who have offered an

121   economic model of ex ante legal decision making. See generally Landes and Posner, 23 J Legal

122  Stud 683 (cited in note 2). For the distinction between the phenomenon they model ("anticipatory

123  adjudication") and "preventive adjudication," see note 100.

124        7.      Preventive adjudication, thus, has three characteristics and the Plaintiff here, seeks

125  an opinion that (1) is not accompanied by a remedial order commanding action by the parties, (2)

126  is prospective with respect to harm, and (3) resolves indeterminacy in the application of law. What

127  distinguishes the Plaintiff's Motion here is that all three are present. See Lawrence B. Solum,

128  Procedural Justice, 78 S Cal L Rev 181, 220 & n 93 (2004) (explaining that "factual and legal

129  determinations in every case" are "the functional equivalent of declaratory judgments"); Sarna,

130  The Law of Declaratory Judgments at 22 (cited in note 12) (noting that "all judgments are

131  declaratory in that they explicitly or implicitly recognize rights"). See also Marbury v Madison, 5

132  US (1 Cranch) 137, 177 (1803) (noting that courts "say what the law is" in "particular cases").

133        8.      The paradigmatic example of preventive adjudication, at least in modern American

134  law, is the declaratory judgment action. In this action the Plaintiff asks the court to issue an opinion,

135  usually a prospective one, that will resolve an indeterminacy in how the law applies. See, for

136  example, *MedImmune, Inc v Genentech, Inc*, 549 US 118, 137 (2007). In *MedImmune*, a drug

137  manufacturer sued a leading biotech firm for a declaration that one of the biotech firm's patents

138  was invalid, unenforceable, and not infringed. See *MedImmune, Inc v Genentech, Inc*, 2004 WL

139  3770589, *1 (CD Cal). The first characteristic of preventive adjudication is that it provides no

140  relief except for the adjudication itself. In other words, the plaintiff (or petitioner) seeks an opinion

141  that is not accompanied by a remedial order commanding action by the other party. See Fischer,

142  *Understanding Remedies* at 6 (cited in note 12) (noting that declaratory relief "lack[s] an 'operative

143  command'" and "does not . . . require or demand that the parties do anything"). To understand this

144  characteristic, consider what remedial and preventive adjudication have in common. Both end in

145 a judgment—"a final determination of the rights and obligations of the parties." *Black's Law*

146 *Dictionary* 858 (West 8th ed 2004). See generally William Baude, *The Judgment Power*, 96

147 Georgetown L J 1807 (2008). And this judgment is ordinarily accompanied by an opinion, which

148 is meant to clarify and justify the court's resolution of the case. See, for example, Frederick

149 Schauer, *Opinions as Rules*, 62 U Chi L Rev 1455, 1465–67 (1995) (explaining that "it is part of

150 our understanding of judicial practice that judges' opinions should be reached by a process of

151 'reasoned elaboration,' and that judges should explain, justify, and give reasons for their

152 decisions").

153     9.     But here the similarity ends. In remedial adjudication, the court gives the successful

154 plaintiff something more: a command to the defendant, either to pay damages or adhere to an

155 injunction. By contrast, in preventive adjudication, there is no command: the opinion only

156 expresses how the court has resolved the case. Preventive adjudication is only declaratory. This

157 Article usually describes the further relief provided in remedial adjudication as a "remedial order"

158 or a "command." Sometimes the phrase "coercive relief" has been used, but this is less apt for

159 three reasons. First, the coerciveness of preventive and remedial adjudication is a matter of degree;

160 both are "coercive" in the sense that someone is usually losing. Second, "rights declaration and

161 remedial formulation" are "interdependen[t]." Sabel and Simon, 117 Harv L Rev at 1054–55 (cited

162 in note 5). Third, the practical coerciveness of the two kinds of adjudication can becontingent on

163 the details of the case: a lengthy and detailed declaratory judgment might "coerce" the losing

164 litigant more than a narrowly worded injunction. For authorities distinguishing between coercive

165 and noncoercive relief, see, for example, Powell v McCormack, 395 US 486, 517 (1969)

166 (contrasting declaratory judgments with "coercive relief"); Owen M. Fiss, Dombrowski, 86 Yale

167 L J 1103, 1122 (1977) (contrasting declaratory judgments and injunctions).

168          10.     Preventive adjudication is useful primarily in circumstances where the nature and

169     timing of the case are not amenable to affirmative relief. A routine example is a quiet title action

170     brought by a plaintiff in possession of real property. What the plaintiff asks for is a declaration that

171     her claim to title is superior to the defendant's claim. The plaintiff needs nothing more than a

172     declaration because the problem she is trying to solve is one of *recognition*— she already possesses

173     the land. This recognition can usually be provided by a judgment and opinion without a command.

174     Thus, in any given dispute, the availability of preventive adjudication may be asymmetrical:

175     preventive adjudication includes an action to quiet title by the possessor, who needs only

176     recognition, but not an action to quiet title by a person out of possession, who needs recognition

177     and an order to transfer the property. Here, Plaintiff's Motion only seeks only a judgment and

178     prospective opinion without a command to the parties and that Twitter is, or was within the

179     timeframe of Plaintiff's Complaint, acting as a State or Federal Actor under the law and that the

180     kind of indeterminacy being resolved is highly significant as, it affects what the final "resolution"

181     would look like.  For a similar point, see Lawrence M. Solan, Vagueness and Ambiguity in Legal

182     Interpretation, in Vijay K. Bhatia, et al, eds, Vagueness in Normative Texts 73, 74–75 (Peter Lang

183     2005) See, for example, 10 Del Code Ann §§ 6502–03 (providing that a declaratory judgment

184     action may "determine[] any question of construction or validity arising under . . . [a] contract,"

185     "either before or after there has been a breach thereof"); Village of Wagon Mound v Mora Trust,

186     62 P3d 1255, 1260 (NM App 2002) (involving a suit to determine the validity of a contract and

187     indenture conveying water rights); Crossley v Staley, 988 SW2d 791, 798 (Tex App 1999)

188     (affirming the validity of a proposed settlement of claims to an estate).

189          11.     When a court decides if a rave is one to which the noise pollution statute applies

190     (whether in preventive or remedial adjudication), the court treats the rave not as a point on a

191 continuum to which the statute applies to some degree but rather as a rave to which the statute does
192 or does not apply. This characteristic of the legal process, that it takes inputs on a continuum and
193 gives outputs that are binary, is "juridical bivalence."

194    12.    All adjudication uses juridical bivalence as a "technical device" for resolving cases;
195 what preventive adjudication offers is accelerated juridical bivalence. See Endicott, *Vagueness in*
196 *Law* at 72 (cited in note 50) ("Lawyers talk as if everyone were either guilty or not guilty, either
197 liable or not liable. And courts yield one outcome or the other. We can call this way of treating
198 people's legal position 'juridical bivalence.'"); John Finnis, *Natural Law and Natural Rights* 279–
199 80 (Oxford 1980). Sometimes law allows for more possibilities, as in Scottish criminal trials,
200 which may result in a verdict of guilty, not guilty, or not proven. See Samuel Bray, Comment, *Not*
201 *Proven: Introducing a Third Verdict*, 72 U Chi L Rev 1299, 1299–1300 (2005). "Juridical
202 trivalence" and juridical bivalence raise similar theoretical issues. On vagueness and trivalence
203 generally, see sources cited in note 62. 73 Finnis, *Natural Law* at 280 (cited in note 72). See
204 Restatement (Second) of Judgments § 33, comment c ("The effect of such a declaration . . . is not
205 to merge a claim in the judgment or to bar it. Accordingly, regardless of outcome, the plaintiff or
206 defendant may pursue further declaratory or coercive relief in a subsequent action.").

207    13.    Preventive adjudication is a response to uncertainty—it removes uncertainty by
208 clarifying the application of law. A technical distinction is often made between "risk," in which
209 the probability distribution is known but the outcome is not (for example, a coin toss), and
210 "uncertainty," in which neither the probability distribution nor the outcome is known (for example,
211 a horse race). For the canonical formulation, see Frank H. Knight, *Risk, Uncertainty and Profit*
212 19–20, 197–232 (Riverside 1921). For a recent account of the distinction between uncertainty and
213 risk, see Mark J. Machina and Michael Rothschild, *Risk*, in Steven N. Durlauf and Lawrence E.

214  Blume, eds, 7 *The New Palgrave Dictionary of Economics* 190 (Palgrave Macmillan 2d ed 2008)

215  (defining risk as "randomness . . . in the form of *objective probabilities*" in contrast to uncertainty,

216  which involves "randomness . . . in the form of alternative possible *events*"). I use "uncertainty"

217  in this narrower, Knightian sense and note the distinction where it is especially relevant. See text

218  accompanying note 141.

219   14.   Preventive adjudication removes uncertainty by clarifying the law. In the words of

220  a Kentucky congressman in the debate on a federal bill to authorize declaratory judgments, "Under

221  the present law you take a step in the dark and then turn on the light to see if you stepped into a

222  hole. Under the declaratory judgment law you turn on the light and then take the step."88 Wrapped

223  in this homespun metaphor is a serious argument: individuals should not bear the costs of

224  uncertainty caused by legal indeterminacy. See Borchard, *Declaratory Judgments* at 58 (cited in

225  note 6), quoting 70th Cong, 1st Sess, in 69 Cong Rec H 2030 (Jan 25, 1928) (Rep Gilbert). See

226  also Borchard, *Declaratory Judgments* at 58 n 24 (cited in note 6) (noting that without declaratory

227  judgments "the only way to determine whether the suspect is a mushroom, or a toadstool is to eat

228  it"). See, for example, Uniform Declaratory Judgments Act (UDJA) § 12 (National Conference of

229  Commissioners on Uniform State Laws 1922) (noting that the Act's "purpose is to settle and to

230  afford relief from uncertainty and insecurity with respect to rights, status and other legal

231  relations"). Preventive adjudication is well suited to resolve uncertainties about legal status. See

232  sources cited in note 233. For an ancient example of preventive adjudication to resolve legal status,

233  see S.C. Todd, *The Shape of Athenian Law* 109, 182 (Oxford 1993) (describing the *graphē xenias*,

234  an action for a judicial declaration that someone was or was not a citizen).

235   15.   Plaintiff argues that relief by way of declaratory judgment is appropriate and within

236  the requirements of the Declaratory Judgment Act. As the court stated in Kunkel, "a court in the

237   exercise of its discretion should declare the parties' rights and obligations when the judgment will

238   (1) clarify or settle the legal relations in issue and (2) terminate or afford relief from the uncertainty

239   giving rise to the proceeding." Kunkel, at 1275 (citation and internal quotation marks omitted).

240   Both of these conditions are present in the case. Kunkel v. Continental Casualty Co., 866 F.2d

241   1269, 1273-1274 (10th Cir.1989) (citations and internal quotation marks omitted). Plaintiff here,

242   seeks to clarify or settle legal relations between the Plaintiff and the Defendants acting as State or

243   Federal Actors that a declaration may or may not terminate the Plaintiff's Claim II in the Complaint

244   or afford relief Plaintiff from the uncertainty giving rise to the Plaintiff's Complaints. See also

245   Preventive Adjudication Article, The University of Chicago Law Review, Volume 77, summer

246   2010, Number 3, by Samuel L. Bray, (referenced here and throughout).

247        16.    It is because Congress delegated to Twitter Executive policing powers through 230

248   by which Sensa was injured. Twitter, endowed by 230 acted as an instrument of Congress. Twitter

249   also has a symbiotic relationship with Congress through 230 to which it assumed the traditional

250   Constitutional and Executive duties of policing speech and other criminal acts which are enforced

251   by State and Local Law Enforcement Agencies, and was in fact acting for Congress and relied on

252   governmental assistance to police its public forum and received many benefits for its work.

253        17.    Plaintiff's Motion to Declare Twitter a State or Federal Actor under Law and 28

254   U.S. Code § 2201 should be treated as such, after reasonable notice or hearing under 28 U.S. Code

255   § 2202, as the motion is cognizable, necessary and not redundant, and is "specific" and within the

256   Federal or Local Rules. Plaintiff is not asking for a remedial order that would command any action

257   by the parties, such as an order to pay damages. There is no need for a command because the

258   Plaintiff is seeking only a clarification of his legal position as to whether further Defendants may

259  need to be added to his original Complaint and does not seek to resolve Plaintiff's injuries through

260  this motion.

261      18.     For the reasons stated in this herein and the attached Memorandum of Law in

262  Support of this Reply and in Plaintiff's Motion and Brief in Support of Plaintiff's Motion to

263  Declare Twitter a State Actor under Law, this Court should declare that Twitter, Inc. was acting

264  as a State or Federal Actor under both Federal and New Hampshire laws, OR minimally, that it

265  was, within the time frame of Plaintiff's Complaint.

266  Respectfully,

267
268
269                                     /s/ Plaintiff, Anonymously as Sensa Verogna
270                                     SensaVerogna@gmail.com

271

272

273                         **CERTIFICATE OF SERVICE**

274  I hereby certify that on this 19th day of June 2020, the foregoing document was made upon the

275  Defendant, through its attorneys of record to Jonathan M. Eck  jeck@orr-reno.com and Julie E.

276  Schwartz, Esq., JSchwartz@perkinscoie.com

277

278

279

280

281