**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| Sensa Verogna,<br><br>                *Plaintiff*,<br><br>   v.<br><br>Twitter, Inc.,<br><br>                *Defendant*. | Case No. 1:20-cv-00536-SM |

**TWITTER'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Twitter, Inc. files this Reply in support of its pending motion to dismiss [Doc. 3] (the "Motion"), and in response to Plaintiff's objection to same [Doc. 13] (the "Objection").

**I. SUMMARY OF THE REPLY**

Plaintiff's lawsuit is barred by the Communications Decency Act's provision of immunity under Section 230. Nothing in Plaintiff's Objection alters this result.

Plaintiff's Objection offers unexplained constitutional arguments for which he provides no legal support. To be clear, Section 230 is constitutional. The CDA, an internet regulation law, was passed well within Congress's Commerce Clause authority, as expressly recognized by the Third and Fourth Circuit Courts of Appeals two decades ago. And the protections afforded to Twitter in Section 230 do not amount to unconstitutional "viewpoint discrimination." They do not ban or restrict speech at all. Plaintiff's attempt to circumvent a clear application of a straightforward law should be denied. Section 230 is constitutional and shields Twitter from lawsuits arising out of its editorial decisions.

1

Separately, Plaintiff offers no response to Twitter's other complete defense in this case that Twitter's own First Amendment rights bar Plaintiff's claims. Because Twitter is a private party, its own free speech rights protect its editorial decisions and any imposition of civil liability for Twitter's exercise of those rights would be unconstitutional.

But even if the Court were to consider the merits of the allegations, which it need not, Plaintiff's claims each individually fail as a matter of law. His Section 1981 claim fails because his allegations of "political" discrimination do not establish that his suspension would not have occurred "but for" his race. Plaintiff's public accommodation claims fail because Plaintiff makes no allegations that Twitter's online platform is a "public accommodation" under the relevant statutes. And Plaintiff's constitutional claims fail because Twitter cannot be recognized as a "state actor" under existing precedent.

The Court should grant Twitter's Motion and dismiss Plaintiff's lawsuit with prejudice. If any claims survive Twitter's Motion, they should be transferred under 28 U.S.C. § 1404(a) pursuant to the valid forum selection clause Plaintiff agreed to prior to using Twitter's platform.

## II. REPLY

### A.   Section 230 Shields Twitter from Liability

This case should be dismissed on the pleadings because Section 230 bars Plaintiff's lawsuit. There is no merit to Plaintiff's arguments that Section is unconstitutional or that the decision to suspend Plaintiff's account was not "publisher" conduct.

#### 1.) Section 230 was Validly Enacted under Congress' Commerce Clause Authority

Plaintiff appears to argue that Section 230 of the CDA is unconstitutional because Congress did not have authority to pass legislation that is "entirely noneconomic" and therefore

beyond Congress's powers conferred by the Commerce Clause. Obj., ¶ 40. Plaintiff offers no authority in support of this argument and it is wrong.

The Commerce Clause confers on Congress the power "[t]o regulate Commerce...among the several States." U.S. Const., Art. I., § 8, cl. 3; *see also White v. Mass. Council of Constr. Emp'rs, Inc.*, 460 U.S. 204, 213 (1983) ("Commerce Clause is a grant of authority to Congress, and not a restriction on the authority of that body."). The Commerce Clause provides Congress with broad authority to regulate online activity and platforms. *See, e.g., U.S. v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce."). As a result, and as explicitly held by the Third and Fourth Circuit Courts of Appeals, Section 230 was validly passed under that authority. *See Zeran v. Am. Online, Inc.*, 129 F.3d 327, 334 (4th Cir. 1997) (holding that Section 230 was a "clear" exercise of Congress's commerce power); *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 n.4 (3d Cir. 2003) (citing *Zeran* in holding that "in passing the legislation that became section 230, Congress properly exercised its power to regulate interstate commerce").[1]

### 2.) Plaintiff's Claim That Section 230 is Unconstitutionally "Viewpoint Discriminatory" Fails As a Matter of Law

One sentence of Plaintiff's Objection alludes to a potential First Amendment challenge to Section 230. Obj., ¶ 40 (mentioning that Section 230 is "viewpoint discriminatory" by failing to

---

[1] Relatedly, the well-recognized dormant commerce clause—prohibiting state legislation encroaching on Congress's domain over interstate commerce—would prohibit the type of competing state legislation that Plaintiff advocates. *See* Obj., ¶ 40 (alleging, erroneously, that "regulating speech or behavior is possessed by the States and not by the Federal Government"); *cf. Healy v. Beer Institute, et al.*, 491 U.S. 324, 326, and n. 1 (1989) ("This Court long has recognized that this affirmative grant of authority to Congress also encompasses an implicit or "dormant" limitation on the authority of the States to enact legislation affecting interstate commerce."); *Backpage.com, LLC v. Hoffman*, No. 13—cv-03952 (DMC)(JAD), 2013 WL 4502097 (D.N.J. Aug. 20, 2013) (holding that state legislation contravening Section 230 was likely unconstitutional under dormant commerce clause).

inform "people of ordinary intelligence" of what conduct Section 230 prohibits). To the extent the Court construes that sentence as a distinct constitutional challenge to Section 230, it should reject it. The relevant immunity provision, 47 U.S.C. § 230(c)(1), "does not ban or restrict any speech," it merely states that a provider shall not be treated as the publisher or speaker of third-party content. *Lewis v. Google LLC*, No. 20-cv-00085-SK, 2020 WL 2745253, *8 (N.D. Cal. May 20, 2020) (rejecting claim that Section 230 is unconstitutional under First Amendment theory for failing to adequately define terms), *appeal filed*, No. 20-16073 (9th Cir.).[2] As a result, Section 230 is not an attempt to legislate "what conduct [Congress] prohibits," Obj., ¶ 40, but rather to enable providers to create and enforce the provider's own rules without liability. *See Green*, 318 F.3d at 472–73 (holding that Section 230 "does not *require* [a provider] to restrict speech; rather it allows [a provider] to establish standards of decency without risking liability for doing so.") (emphasis in original).

### 3.) Twitter is engaged in "publisher" conduct when it makes decisions about whether to remove third-party content

Plaintiff acknowledges that Twitter satisfies two of the three elements of CDA immunity, that Twitter is an interactive computer service, and Plaintiff is the information content provider. Obj., ¶ 63. Plaintiff wrongly claims however, that Twitter was not engaging in publisher conduct when it suspended Plaintiff's account because Twitter is a "state actor" or a "business owner." Obj., ¶ 63. That argument is meritless as Plaintiff's arbitrarily imposed labels are irrelevant to the inquiry. Any claim arising out of a provider's performance of traditional editorial functions necessarily treats the defendant as a publisher. Courts routinely find that a provider is treated as a publisher under the CDA where they make decisions about whether to maintain or remove third-

---

[2] To the extent the other CDA immunity provision becomes relevant, 47 U.S.C. § 230(c)(2) similarly *permits*, rather than requires, the removal of certain speech.

party content. *See* Motion, at 10 (collecting authorities). Twitter's decision to suspend Plaintiff's account is textbook publisher conduct under Section 230.

The CDA is not unconstitutional. Because (1) Twitter is a provider of an interactive computer service; (2) all of Plaintiff's claims arise out of Twitter's removal of content created by Plaintiff (another information content provider); and (3) all of Plaintiff's claims treat Twitter as a "publisher," Section 230 protects Twitter and this lawsuit should be dismissed with prejudice.

### B. The First Amendment Bars Plaintiff's Claims

Plaintiff's Motion leaves untouched the other complete bar to his claim raised in the Motion to Dismiss: Twitter's own First Amendment rights to decide what speech to permit and prohibit on its platform. "[T]he Supreme Court has long made clear that the First Amendment's protections extend to private suits for money damages based on the content of speech." *Jian Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 442 (S.D.N.Y. 2014) (citations omitted). Accordingly, "Plaintiff['s] efforts to hold [Twitter] accountable in a court of law for its editorial judgments about what political ideas to promote cannot be squared with the First Amendment." *Id.* at 443. And, as a result, this case should be dismissed *in toto*. *Id.* at 444 (dismissing suit exclusively on First Amendment grounds without addressing other bases for dismissal).

### C. Plaintiff Has Not Identified Allegations in the Complaint that State Viable Claims for Relief

While the Court needs not reach the question at all, because both Section 230 and the First Amendment act as complete legal bars to this lawsuit, the Complaint must also be dismissed because Plaintiff's causes of action each fail as a matter of law.

1. <u>Plaintiff Fails to Allege that He Would Not Have Been Suspended "But For" His Being White</u>

Plaintiff acknowledges that, to maintain a claim under 42 U.S.C. § 1981, he must allege that race was the "but-for" cause of his suspension from Twitter. Obj., ¶ 4. Plaintiff has done the

5

opposite; he blames his suspension on Twitter's alleged disagreement with his "political views." *See* Complaint, ¶ 171 (alleging that Plaintiff was "depriv[ed] of free speech rights for posting political views"); *id.* ¶ 21(b) (construing his Tweet that someone "should be hung" as a "larger political conversation of the death penalty"); *id*. ¶ 110 (describing his Tweet as "core political speech"). But, as described in the Motion, this District has already followed the Second Circuit in holding that a Section 1981 claim cannot be maintained based on discrimination against certain political beliefs, even where those beliefs are "favored by" a particular race. Motion, at 12-13.

Moreover, Plaintiff fails to allege any facts to support the conclusory allegation that Twitter discriminates against white users. For instance, he states that "Twitter allowed non-Whites to speak their minds and behave as non-whites, while denying whites like the Plaintiff this advantage." Obj., ¶ 7. But Plaintiff fails to explain what it means to "behave as non-whites" and fails to allege any facts in support of such an allegation. Plaintiff does not provide instances, for example, where Twitter determined non-white users to have violated its rules but permitted those users to remain on the platform. It is wholly insufficient for Plaintiff to identify *what Plaintiff believes* to be rule-infringing Tweets by users that *Plaintiff believes* to be non-white.

Finally, Plaintiff responds to Twitter's argument that it did not know his race at the time it suspended his account by alleging that "Plaintiff's Twitter account displayed a picture of a white man," and that his account "tweeted, posted, communicated, acted, represented, displayed, behaved and portrayed himself to be a white person and a member of the white race." Obj., ¶ 28. That allegation cannot be added via objection. *Miller v. Suffolk Cnty. House of Corr.*, No. CIV.A.01-11331-DPW, 2002 WL 31194866, at *1 n.1 (D. Mass. Sept. 27, 2002) (refusing to consider allegation added in response brief and collecting cases from around the country

6

recognizing that consideration of such allegations would be inappropriate). But, even if considered, Plaintiff's new allegation does not cure the deficiencies in his Section 1981 claim because Plaintiff fails to allege the necessary concomitants that: Twitter viewed his "displayed [] picture" prior to making a suspension decision, it is possible to determine what it means for a person to "tweet…[as] a white person;" and Twitter saw such Tweets and interpreted them in that way. Any such allegations would be dismissible as baseless speculation.

> 2. Plaintiff's Public Accommodation Claims Fail Because Twitter's Platform is Not a "Public Accommodation"

In Plaintiff's own words, "Plaintiff's complaint does not opine that Twitter's online forum is a 'place of public accommodation.'" Obj., ¶ 17. Instead, Plaintiff argues at length that Twitter's *offices and cafeterias* are places of public accommodation. Obj., ¶ 18. But Plaintiff was suspended from Twitter's online forum; not its cafeteria or other physical space. *See Larson v. Liberty Mut. Fire Ins. Co.*, No. 09—00308 SOM/BMK, 2010 WL 1962942, at *3 (D. Haw. May 13, 2010) (deeming as futile an attempt to assert a public accommodation claim based on Liberty Mutual's maintenance of a physical office, because Plaintiff "fails to allege that he was discriminated against in his use or enjoyment of Liberty Mutual's physical office").[3] Plaintiff's arguments that Twitter's platform operates as a "public forum" are irrelevant to a determination

---

[3] Nor do Plaintiff's allegations even establish that Twitter's offices are places of public accommodation. For instance, while he has suggested that those office spaces contain cafeterias, he has not alleged that Twitter's offices are "*principally engaged* in selling food for consumption on the premises." 42 U.S.C. § 2000a(b)(2) (emphasis added). Nor has he alleged that Twitter's offices constitute "place[s] of exhibition or entertainment" under Section 2000a(b)(3), as that would require that Twitter's offices be maintained for the "particular purpose [] to entertain." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 431-32 (4th Cir. 2006). It cannot be plausibly alleged that Twitter's office spaces fit within the sphere of establishments enumerated by Section 2000a. Twitter's office spaces are principally maintained as places for Twitter's employees to work. *See Hecking v. Barger*, No. 1:08-cv-490-JL, 2010 WL 653553, at *1 (D.N.H. Feb. 23, 2010) ("unsupportable conclusions...need not be credited") (*quoting Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)).

of his rights under 42 U.S.C. § 2000a and N.H. RSA 354-A:17, which both use the term "public accommodation," which is interpreted to include only physical—rather than virtual—spaces. Motion, at 14–16, 18.

### 3. Plaintiff's State Public Accommodation Claim Remains Administratively Barred

Claims brought under N.H. RSA 354-A:17 can only be brought *after* a plaintiff files a complaint with the New Hampshire Commission on Human Rights. *Munroe v. Compaq Computer Corp.*, 229 F. Supp. 2d 52, 67 (D.N.H. 2002). Plaintiff's only response is to suggest that the administrative complaint procedure is optional, citing *Douglas v. Coca-Cola Bottling Co. of N. New England, Inc.*, 855 F. Supp. 518, 522 (D.N.H. 1994) and *In re Perkins*, 147 N.H. 652 (2002). But as Twitter noted in its Motion to Dismiss, that argument relies on an antiquated reading of the statute abrogated by the relevant statute's amendment. *See* Motion, at 17 n.7 (citing *Munroe*, 229 F. Supp. 2d at 67, for recognition of likely abrogation).

### 4. Plaintiff's Constitutional Claims Fail Because Twitter is Not a State Actor

Plaintiff argues that Twitter should be treated as a state actor because it has become "impregnated with government character." Obj., ¶ 33. Plaintiff appears to make two arguments in support. First, he contends that Section 230 operates to "relegat[e]" Congress's duties to "protect, police and regulate free speech" to Twitter, such that Twitter's invocation of Section 230 is, in fact, a congressional action. Obj., ¶ 31. And second, he argues that Twitter's platform is a "public forum." Obj., ¶¶ 36–38.

Plaintiff's initial argument, about Section 230, is a nonstarter for several reasons. First, Twitter does not moderate content on its platform because it has been "delegated" some governmental power to do so. Instead, Twitter created and maintains its own platform, and therefore has an inherent property and First Amendment right to moderate the content on that

8

platform. *Supra*, Part II.B. Section 230 merely protects Twitter from claims based on those content moderation decisions; a grant of immunity is not a delegation of government power. *Nat'l A-1 Adver., Inc. v. Network Solutions, Inc.*, 121 F. Supp. 2d 156, 168 (D.N.H. 2000) (McAuliffe, J.) ("The government's role in developing a privately accessible Internet was clearly one of facilitation and not one of delegation of a governmental function.").

Second, platform content moderation is not a function "*exclusively* reserved to the State," as required for a finding of "state action." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978) (emphasis added). To the contrary, the government is not typically permitted to exercise traditional editorial functions as those decisions would frequently violate the First Amendment. *See Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 82 (1st Cir. 2004) (recognizing that government entity's advertising program could be unconstitutional if "distinctions drawn are viewpoint based"). Plaintiff provides no explanation or support for his argument that content moderation on a private platform is somehow the exclusive function of the state. None exists. Twitter, like any private company, is free to create and enforce rules that govern behavior on its domain.

Plaintiff's arguments about Twitter operating as a "public forum" are just as easily dismissed. Every court to have reviewed this claim has rejected it. *See* Motion, at 20–21 (collecting cites). Plaintiff makes no novel arguments that might warrant a different result here; he merely parrots the oft-repeated premise that Twitter's being "open to the public" makes it a "public gathering place" that must host any speaker and message. Obj., ¶¶ 37–38. This Court should continue the judicial tradition of rejecting that argument. *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019) ("Facebook and Twitter, for example, are private

9

businesses that do not become 'state actors' based solely on the provision of their social media networks to the public."), *aff'd*, No. 19-7030 (D.C. Cir. May 27, 2020).

### D. If This Case is Not Dismissed, It Should Be Transferred

Plaintiff's only responses to Twitter's alternative motion to transfer are that: (1) indemnification provisions "are looked upon with disfavor in New Hampshire;" Obj., ¶ 46, and (2) "Defendant has waived its personal jurisdiction defense." Obj., ¶ 52. But Twitter has neither invoked any contractual indemnity nor contested this Court's exercise of personal jurisdiction over it. As a result, any surviving claim ought to be transferred under 28 U.S.C. § 1404(a).

### III. CONCLUSION

The Court should dismiss this lawsuit with prejudice because each of Plaintiff's claims are barred by both the CDA and Twitter's own First Amendment rights. Beyond those immunities, Plaintiff's lawsuit also fails because his Complaint lacks allegations sufficient to state claims upon which relief can be granted.

Respectfully submitted,

**Twitter, Inc.**

By its attorneys,

Dated: June 22, 2020   By:   */s/ Jonathan M. Eck*
Jonathan M. Eck, Esq. (NH Bar #17684)
Orr & Reno, Professional Association
45 S. Main Street, P.O. Box 3550
Concord, NH  03302
(603) 223-9100
jeck@orr-reno.com

Julie E. Schwartz, Esq. (*motion for pro hac vice admission pending*)
Perkins Coie LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
(650) 838-4490
JSchwartz@perkinscoie.com

**CERTIFICATE OF SERVICE**

 I, Jonathan M. Eck, certify that on this date service of the foregoing document was made upon the Plaintiff, *pro se*, via email.

Dated: June 22, 2020           */s/ Jonathan M. Eck*
                   Jonathan M. Eck, Esq. (NH Bar #17684)