IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Sensa Verogna, Plaintiff,   )
   v.   )  Case #: **1:20-cv-00536-SM**
Twitter Inc., Defendant.   )

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OBJECTION TO TWITTER'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

A. CLAIM I

1.    Plaintiff's Section 1981 claim IS NOT maintained based on discrimination against certain political beliefs as CLAIM III is. Compl, ¶ 171, Plaintiff's claims that the "but for" cause and the motivation for the above-described conduct by defendant Twitter' CEO, officers, directors, managers, employee's or other contractors or actors, was because the Plaintiff is white and a member of the white race. Compl. ¶ 153, and that "that race made a difference in Twitter's decisions and raises an inference that Twitters legitimate reasons such as Health Policies were not it's true reasons for locking and banning the contracts of a white Sensa and other white users, but were a devised pretext for mass discrimination as a result of the anti-white racial animus held by Twitters', CEO, officers, directors and/or managers, employees and/or agents". Compl. ¶ 140, by "knowingly and maliciously devised, participated in and condoned the discriminatory conduct as they used their new Health Policy initiative as a pretext to discriminately remove or ban for life the contracts, of perceived or actual white owned accounts like Sensa's". Compl. ¶ 140, and that great discrepancies in the punishments received by Sensa and by whites in these exhibits mentioned above, in contrast to Sensa's non-white peers, yields a reasonable inference that, in the fall and early winter of 2019, Twitter intentionally discriminated against Sensa because he was white, while simultaneously, similarly situated non-whites were treated differently even though

31  they have committed similar or worse acts, which gives the appearance of racial disparity in the
32  issuing of discipline for virtually the same or less infraction and invokes the notion of
33  treating two persons differently on the basis of a certain characteristic that only one possesses.
34  Compl. ¶ 141. (Compare Exhibit J, banning of whites (and Plaintiff) for seamlessly less violative
35  conduct, versus the more violent, Exhibits N and O posts by obvious non-whites who were not
36  banned for their postings nor were they made to remove the post. Twitter also allows "White Hate
37  by Blue Checkers", where the collective 53 Million followers of these Blue Checkers can receive
38  general messages that its ok to hate and kill white people. Including a quote stating, "I think we
39  should kill Trump & everything attached to his nuts". Complt. Exhibit L-73, and continuous White
40  Hate which includes quotes by obvious non-whites including "I'm so anti-white that I moved to
41  the US solely to commit #WhiteGenocide" Complt. Exhibit M-4, "I want to KILL all white babies"
42  Complt. Exhibit M-9, "Let's kill Jews and kill them for fun" #killjews, Complt. Exhibit M-10.
43       2.   Plaintiff appealed to Twitter to "un-lock" his account (contract) stating, inter alia,
44  "that other users (being Non-White) have posted similar tweets and that no actions were taken on
45  their accounts." Compl. ¶ 19;a. "The injury caused" by Twitter to Sensa and others —the
46  deprivation of free speech rights for posting political views is included in Claim III and not as the
47  basis of Claim I of the Complaint. See Compl, ¶ 171. Claim I is more than just about the Plaintiff's
48  first actioned "Bitch Slap" Tweet, Compl. ¶ 18, it alleges an elaborate method to remove whites
49  from Twitter's Public Forum under the guise of a new Health Policy created in part by algorithms
50  and Artificial Intelligence. Twitter employees making statements like "It's going to ban.. like a
51  way of talking" Compl, ¶ 49. Algorithms are the next great hope for platforms trying to moderate
52  the posts of their hundreds of millions, or billions, of users, Compl, ¶ 81, experimenting with these
53  techniques in developing roadmaps to ensure present and future machine-learning models, Compl,

¶ 54, Twitter devised this new Health Policy not only to remove abusers, but to target white users for removal. Ban their contracts because they are white and have a white way of talking or behaving. To say that race is not a determining factor in banning user contracts, like Sensa's, is a lie, as policing within Twitters Health Policy is asymmetrical [lopsided), Race motivated and motivated to treat Sensa unfavorably, as it did. Compl. ¶ 64.

3. Plaintiff's Complaint and Exhibits illustrate many instances to show how non-whites behave towards whites and many instances of how the Plaintiff's use of the word "Bitch Slap" and "Hung" were treated in a much more severe manner than were non-whites using the same words in their posts as the Plaintiff was made to remove his first actioned tweet, and then banned after his second actioned tweet, whereas the non-white users, using the same words, were not made to remove their tweets, nor were they banned for such postings as the posting were still on their Public Forum.

4. "Plaintiff's Twitter account displayed a picture of a white man," and that his account "tweeted, posted, communicated, acted, represented, displayed, behaved and portrayed himself to be a white person and a member of the white race." Compl, ¶ 139, (See also Exhibit E, Sensa's Twitter Profile.) Obj., ¶ 28. At pleading stage, Plaintiff should not be expected to know how Twitter set up its algorithms or Artificial Intelligence or specifics used to single out or identify whites or white behaviors as "different content and behaviors require different approaches." Compl, ¶ 85. Additionally, Twitter has policies that work on conduct, not content. Compl, ¶ 58. Twitter is aggressively taking action by limiting, locking or suspending users' contracts for reasons such as abuse, hate and white nationalism. Complaint., ¶ 24.

5. Section 230 does not save Defendants from Plaintiff's 1981 claims as they are discriminatory and by nature discriminatory actions are not actions based in good faith. Allowing

Section 230 to forbid discrimination claims in contracts would contradict the laws intent, that contracts not be enforced through discriminatory practices.

B. CLAIM II

6. "Plaintiff's complaint does not opine that Twitter's online forum is a 'place of public accommodation.'" Obj., ¶ 17. It alleges that Twitter's facilities constitute public accommodations under the law and therefore must offer all of their services, including their Public Forum Computer Network to everyone on a non-discriminatory race basis. Defendant's continuing to compare offices to cafeterias or offices to places of entertainment. If you compared a lot of places to offices, most would not comport to the meaning of an "office". A simple comparison may be a Dominoes facility. Simply because a customer does not set foot in a Dominoes facility as the service may be delivered, Dominoes cannot discriminate against people because of their race, in the offering of any services they offer. Twitter live feed, profile editor, analytics, promote mode, or analytics services, including the purchase of any advertising or run ads to reach a larger audience or the use of various marketing, business, software & advertising products & services. Complt.., ¶ 17. Plaintiff alleges a 2.44 Billion-dollar income with only 2.11 Billion dollars consisting of advertising revenue. That leaves 33 Billion dollars of other income to which the Defendant's make their money. Complt., ¶ 6. Defendants conduct regular, sustained business activity at all their facilities. Complt., ¶ 5, with on-site food services company which is principally engaged in selling food for consumption on the premises. Compl., ¶ 7, an on-site auditorium Additionally, Twitter customarily presents performances, exhibitions or other sources of entertainment which move in commerce through its live feed of events inside it's many facilities throughout the US within the meaning of 42 U.S.C. § 2000a(b)(3), (c)(3) and NH Rev Stat § 155:39-a III and additionally under 42 U.S.C. § 2000a(b) 4 and (c)(4), as any establishment that

contains a covered establishment, and which holds itself out as serving patrons of that covered establishment. Compl., ¶ 99. Places of public accommodation" need not be physical structures, and discrimination may occur when the goods or services of a place of public accommodation are enjoyed by customers who never visit a physical location. Compl., ¶ 101. See National Federation of the Blind et al v. Scribd, Inc., No. 2:2014cv00162 - Document 30 (D. Vt. 2015) The Court further determined that the services Scribd offers fall within at least one of the general categories of public accommodations listed in the statute and that the Plaintiffs had therefore sufficiently alleged that Scribd owns, leases, or operates a place of public accommodation. ECF No. 30 at 24-25. The Defendant "is, and at all times material herein, was a corporation duly organized under the laws of the State of Delaware with its principal place of business, *owned, leased or operated* at 1355 Market St #900, in San Francisco, California. Additional facilities *owned, leased or operated* by Twitter are located in Washington, DC, New York, NY, Atlanta, Georgia, Los Angeles, California and in various other cities throughout the US." Compl., ¶ 101.

7. To compare Defendant's facilities just to office space is erroneous and naive, as they offer to the public much more than just office space for workers, as the Plaintiff has alleged in his Compl. ¶ Exh. P.

8. Section 230 does not save Defendants from Plaintiff's Public Accommodation claim as the intent under Plaintiff's claims are discriminatory and by nature discriminatory actions are not actions based in good faith. Allowing Section 230 to forbid discrimination claims for violations of Public Accommodations claims would contradict the laws intent, that persons not be discriminated by an owner, leases or establishment operated by private companies, who use discriminatory practices in Public Accommodations.

C. CLAIMS UNDER N.H. RSA 354-A:17

9. The Defendant Claims that actions brought under N.H. RSA 354-A:17 can only be brought *after* a plaintiff files a complaint with the New Hampshire Commission on Human Rights. *Munroe v. Compaq Computer Corp.*, 229 F. Supp. 2d 52, 67 (D.N.H. 2002). Defendant's arguments are misplaced. The Munroe Court concluded "There is no evidence in the record that suggests that Munroe appealed the NHCHR's adverse probable cause finding in the state courts. A litigant may not use supplemental jurisdiction to have a federal court instead of a state court to perform judicial review of a state administrative agency decision that a state statute assigns to state court". The Plaintiff here is asking for a first view, State law claim, under supplemental jurisdiction and is not asking for any review of any State Agency Decision. Plaintiff has not forfeited his state law claim because he did not follow the statutory procedure that created the private right of action for violations of N.H. RSA 354-A:17. The only Federal bar of common law claims being N.H. RSA 354-A:22 V. "If the complainant brings an action in federal court arising out of the same claims of discrimination which formed the basis of an order or decision of the commission, such order or decision shall be vacated and any appeal therefrom pending in any state court shall be dismissed". Source. 1992, 224:1, 4, 5. 2000, 277:7, eff. June 16, 2000. 2014, 204:12, eff. July 11, 2014.) See N.H. RSA 354-A:21-a (Supp.2002)

10. Additionally, 354-A:21-a, I. allows parties to bring State claims "at the expiration of 180 days after the timely filing of a complaint with the commission, or sooner if the commission assents in writing, but not later than 3 years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief or both, in the superior court for the county in which the alleged unlawful practice occurred or in the county of residence of the party." Allegations in the Complaint [Doc. 1] indicate that the Defendant first discriminated against the Plaintiff on November 7, 2019. May 4, 2020 adds up to 180 days and therefore the Plaintiff has a right, under

146 New Hampshire law to bring claims under N.H. RSA 354-A:17 in a Federal Forum under
147 Supplemental Jurisdiction without first seeking any judgement through the commission or other.

148 **D. CLAIM III**

149 11. At bare, Plaintiff's Constitutional claims are similar to shopping mall public forum
150 causes of action. See Pruneyard Shopping Center v. Robins, 447 U.S. 74 (1980). Private property
151 can be considered a public forum for many different reasons, including as alleged, self-
152 participation by the Private owner, and must be treated as such by the Private owner. Plaintiff
153 alleges that Defendant Twitter, unconstitutionally removed Plaintiff's free speech on a race or
154 politically based discriminatory content-based or subject matter viewpoint basis when it removed
155 his tweet and banned his account in a public forum and not within the parameters of Section §230.
156 Compl., ¶ 123 and 124. Defendant's First Amendment rights would not bar Plaintiff's claims
157 alleging race or political discrimination by a private owner of a public forum.

158 12. Plaintiff alleges, in short, that Congress, to regulate and/or police Americans speech
159 specifically through §230 as it is not a valid exercise of Congress' commerce powers as public
160 speech or the criminal nature of speech are entirely noneconomic. Compl., ¶ 125.

161 The Court's decision in *United States v. Morrison* 529 U.S. 598 (2000), however, suggests that
162 stricter scrutiny of Congress's commerce power exercises is the chosen path, at least for legislation
163 that falls outside the area of economic regulation. For an expansive interpretation in the area of
164 economic regulation, decided during the same Term as Lopez, see Allied-Bruce Terminix Cos. v.
165 Dobson, 513 U.S. 265 (1995). Lopez did not "purport to announce a new rule governing
166 Congress's Commerce Clause power over concededly economic activity." Citizens Bank v.
167 Alafabco, Inc., 539 U.S. 52, 58 (2003).

13. Section §230 is unconstitutional as it authorizes regulation of free speech traditionally reserved for federal or State policing. Federal statutes such as 18 U.S. Code § 1462. Which make it illegal obscene matters by use of interactive computer service, any (a)any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or (b)any obscene, lewd, lascivious, or filthy phonograph recording, electrical transcription, or other article or thing capable of producing sound, are criminal codes and subject exclusively to Federal Agency Policing such as the DOJ, the FBI and a function "exclusively reserved to the Federal Government,"

14. New Hampshire State Laws such as N.H. RSA 644:2 Disorderly Conduct already address actions of (a) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (b) Directs at another person in a public place obscene, derisive, or offensive words which are likely to provoke a violent reaction on the part of an ordinary person; or N.H. RSA 644:4 Harassment and communications at extremely inconvenient hours or in offensively coarse language with a purpose to annoy or alarm another; or insults, taunts, or challenges another in a manner likely to provoke a violent or disorderly response; or N.H. RSA 644:11 Criminal Defamation provides a class B misdemeanor if someone purposely communicates to any person, orally or in writing, any information which he knows to be false and knows will tend to expose any other living person to public hatred, contempt or ridicule. These are criminal statues and are all policed by local and state governments and the Executive Branch of State and Local governments and a function "exclusively reserved to State Governments.

15. 47 U.S.C. § 230(c)(2)(A) most definitely does, "ban or restrict speech or material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected.

191   16.    Even if Section 230 is found to be valid, Twitter should not be granted or be able
192 to claim unconditional §230 immunity as they were out of their limits, overbroad in their role of
193 "good Samaritan" and in "bad faith", used vague singular or plural forms of content-based or
194 behavior-based speech suppression through its Health Policy, or tools thereof, in targeting and
195 deleting Plaintiff's tweet and thereby controlling a white colored Plaintiff's third-party political
196 speech on its website and thereby undeservedly defeating the Constitutional claims of an injured
197 Plaintiff. Compl., ¶ 123. Plaintiff also demonstrates bad faith in Twitter administered §230 in an
198 unconstitutional manner when it removed Sensa's free speech on a discriminatory content-based
199 or subject matter viewpoint basis when it removed his tweet and banned his account in a public
200 forum and not within the parameters of Section §230. Compl., ¶ 124.

201   24.    The court in Halleck v. Manhattan Cmty. Access Corp determined that municipal
202 authorities, who traditionally operate public access television channels, had expressly "designated
203 [the private companies] to run the public access channels." Id. It added that, by running the
204 channels, the private companies were "exercising precisely the authority to administer" a public
205 forum "conferred on them by a senior municipal official." Id.. , 882 F.3d 300 (2d Cir.) The
206 regulation requires that such channels be "designated for noncommercial use by the public on a
207 first-come, first-served, nondiscriminatory basis." Id. (emphasis added). In other words, private
208 cable companies are required by law to provide public access channels for the public benefit. In
209 their absence, it would be the government that provided this service to its citizens. Freedom Watch,
210 Inc. v. Google, Inc., 368 F. Supp. 3d 30, 41 (D.D.C. 2019) "It is axiomatic that "the constitutional
211 guarantee of free speech is a guarantee only against abridgement by government, federal or state."
212 Hudgens v. NLRB , 424 U.S. 507, 513, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976)." Freedom Watch,
213 Inc. v. Google, Inc., 368 F. Supp. 3d 30, 40 (D.D.C. 2019) In other words, to "trigger First

Amendment protection, the infringement upon speech must have arisen from state action of some kind." Bronner v. Duggan, 249 F.Supp.3d 27, 41 (D.D.C. 2017) (citing Blum v. Yaretsky, 457 U.S. 991, 1002-03, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) ). Freedom Watch, Inc. v. Google, Inc., 368 F. Supp. 3d 30, 40 (D.D.C. 2019). Twitter's Dorcy, in his own words describes Twitter as public square and a public space. Compl., ¶ 104.

25. As to Nyabwa's claim of racial discrimination, he has not stated a plausible claim that Face Book's actions were based upon race. Prager Univ. illustrates creating a "video-sharing website" was not "exclusively reserved to the State." Davison v. Facebook, Inc., 370 F. Supp. 3d 621, 628 (E.D. Va. 2019). "a claim under 42 U.S.C. § 1983 requires that the defendant be fairly said to be a state actor." DeBauche v. Trani, 191 F.3d 499, 506 (4th Cir. 1999). The Plaintiff here submits much more of a connection that would illustrate that Twitter acts as a state actor through directly through Congress and Section 230.

26. Plaintiff disagrees with Defendants reasoning to move the case to California. Doc. 13. D, Compl., ¶ 13, or with its conclusions regarding Defendant's waiver of jurisdiction.

E. CONCLUSION

27. For the reason set forth in the Complaint and [Doc. 13] and herein Twitter's Forum venue clause should not be valid in any of the Plaintiff's claims, as it does not stipulate intentional negligence in its contract. Compl., ¶ 51, and if it did it would be illegal. Defendant's cannot stipulate to illegal activities in a contract. Plaintiff did not bargain to have his Constitutional rights violated, Compl., ¶ 13, or intentionally relinquish a known discriminatory right.

28. For the reason set forth in the Complaint and [Doc. 13] and herein Twitter's own First Amendment rights have been waived as it's computer network is a public forum or because

it acted as a state actor through Congress in the enforcement of Section 230 and therefore is not entitled to any immunities against any of the Plaintiff's 3 claims.

Respectfully,

/s/ Plaintiff, Anonymously as Sensa Verogna
SensaVerogna@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June 2020, the foregoing document was made upon the Defendant, through its attorneys of record to Jonathan M. Eck jeck@orr-reno.com and Julie E. Schwartz, Esq., JSchwartz@perkinscoie.com