# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

Sensa Verogna, Plaintiff,　　　　　)

　　　　v.　　　　　　　　　　　　)　　Case #: **1:20-cv-00536-SM**

Twitter Inc.,　Defendant.　　　　　)

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S RULE 52(b) OBJECTION
## TO THE COURTS' ORDER DENYING DEFENDANT'S DEFAULT

1.　　Generally, courts will reconsider a decision if a party can show new law, or  a clear error in the Court's prior decision. *See. e.g., School Dist. No. 1J, Multnomah County v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993); *Hydranautics v. FilmTec Corp.,* 306 F.Supp. 2d 958, 968 (S.D.Cal. 2003). Ultimately, the decision on a motion for reconsideration lies in the Court's sound discretion. *Navajo Nation v. Norris,* 331 F.3d 1041, 1046 (9th Cir.2003) *(citing Kona Enter., Inc. v. Estate of Bishop,* 229 F.3d 877, 883 (9th Cir.2000)). *See TEC Engineering Corp v Budget Molders Supply Inc,* 82 F3d 542,545 (1st Cir 1996).

2.　　The facts are that Plaintiff filed Complaint, [Doc.1], with 21 day follow up answer required by Fed. R. Civ. P. 12(a)(1)(A)(I). On the 21st day, an out of state attorney submitted to the court a pleading or brief, "Motion to Dismiss" [Doc.3]. The Plaintiff then moved the court [Doc. 7] to Default the Defendants who failed to secure pro hac vice for it's out of state attorney and therefore Doc. 3 is illegal and prohibited and therefore conforming [Doc. 7, attached Declaration @ 12]. The facts are indisputable as both parties agree that Attorney Schwartz was not so authorized to present anything the to the court on June 1, 2020. On June 1, 2020 Attorney Schwartz had not even asked the courts permission to appear on behalf of Twitter. [Doc. 7, attached

Declaration, attached Exhibit A, E-mail from Attorney Eck]. To this day, Attorney Schwarz is not authorized to practice law in this state or before this court, but continues to do so. [See Doc's. 9,10,11,17,18, 21, 22, 23, 24, 25, 26, 27]. The "Motion" and Memorandum [Doc. 3], are illegal and prohibited and therefore non-Conforming under Fed. R. Civ. P. 12(f), as scandalous material, [Doc. 7, Para 12]. and that by accepting the Motion, the Court to affixing an ex post facto imprimatur of approval of the unauthorized and prohibited practice of law in violation of N.H. RSA 311:7. [Doc. 25, Para 7]. Defendant has failed to plead or otherwise defend by June 1, 2020, in violation of Rule 12(a), 21 days, [Doc. 25, Para 7].

New Hampshire Law

3. New Hampshire's Statute 311:7 states; **"No person shall be permitted commonly to practice as an attorney in court unless he has been admitted by the court and taken the oath prescribed in RSA 311:6",** and is essentially unchanged since 1842. [1],[2], [3].

4. In New Hampshire there exists a strong public policy against the unauthorized practice of law. *See State v. Settle.* 124 N.H. 832, 835, 480 A.2d 6, 7 (1984) *(Settle I). Bilodeau v. Antal,* 123 N.H. 39, 43, 455 A.2d 1037, 1040 (1983), The only legislative authority for legal representation by anyone other than a duly licensed attorney is RSA 311:1, which provides that "[a] party in any cause or proceeding may appear, plead, prosecute or defend in his proper person or by any citizen of good character." We have interpreted the words "in his proper person" to mean pro se and to permit "self-representation by an individual. . . ." *State v. Settle. 129 N.H. 171, 176. 523 A.2d 124, 127 (1987) (Settle II). Knox Leasing v. Turner,* 132 N.H. 68, 72 (N.H. 1989).

[1]The revised statutes of the State of New Hampshire passed December 23, 1842 : to which are prefixed the constitutions of the United States and of the State of New Hampshire https://archive.org/details/revisedstatuteso00newh/page/352/mode/2up
[2]The compiled statutes of the state of New Hampshire Publisher G.P. Lyon, 1854
https://archive.org/details/compiledstatute00hampgoog/page/n471/mode/2up
[3] The general statutes of the state of New-Hampshire : to which are prefixed the constitutions of the United States and of the state. Published, Manchester :J.B. Clarke, state printer,1867.
https://babel.hathitrust.org/cgi/pt?id=nyp.33433009060181&view=1up&seq=434&q1=199

57  and in order to strengthen enforcement of this policy, the legislature enacted the statute relating

58  to the unauthorized practice of law, granting the attorney general broad investigative powers. RSA

59  311:7-a to :7-f (Supp. 1981). *See State v. Settle.* 124 N.H. 832, (N.H. 1984); *N.H. JUDICIAL*

60  *COUNCIL. ELEVENTH REPORT* 32 (1966); *Knox Leasing v. Turner*, 132 N.H. 68, (N.H. 1989).

61  N.H. RSA 311:7 encompasses the filing of documents in the court system." *State v. Settle*, 124

62  N.H. 832, 837 (N.H. 1984) and that "No person shall be permitted commonly to practice as an

63  attorney in court unless he has been admitted by the court and taken the [statutory] oath . . . ."

64  (Emphasis added.) *See Bilodeau v. Antal*, 123 N.H. 39, 43 (N.H. 1983).

65      5.    The New Hampshire Legislature has prohibited the unauthorized practice of law,

66  RSA 311:7,[7] vesting enforcement of such prohibition in the New Hampshire Attorney General

67  and the New Hampshire Bar Association. RSA 311:7-a;[8]. *State v. Settle*, 124 N.H. 832, *103

68  480 A.2d 6 (1984); *New Hampshire Bar Assoc. v. LaBelle,* 109 N.H. 184, 246 A.2d 826 (1968).

69  "This concern for protecting the public interest is further reflected in DR 6-101(A)(1), which

70  subjects to discipline any lawyer who undertakes a legal matter which he is incompetent to handle,

71  without associating with a lawyer who is competent to handle the case." *Bilodeau v. Antal,* 123

72  N.H. 39, 43 (N.H. 1983).

73      6.    The strong public policy against the unauthorized practice of law is embodied in

74  the American Bar Association Code of Professional Responsibility, which this court formally

75  adopted as the New Hampshire Code of Professional Responsibility on April 26, 1977.

76  Disciplinary Rule 3-101(A) of the Code prohibits a lawyer from aiding a nonlawyer in the

77  unauthorized practice of law. This rule reflects the ethical considerations listed under Canon 3,

78  which are aimed at protecting the public against unqualified individuals rendering legal services.

7.     It is uniformly held that many activities, such as appearing in court, writing and interpreting wills, contracts, trust agreements and the giving of legal advice in general, constitute practicing law. *See Ark. Bar Assoc. v. Union Nat'l Bank*, 224 Ark. 48, 53-54, 273 S.W.2d 408, 411-412 (1954). The "practice of law" is "providing professional legal advice or services where there is a client relationship of trust or reliance. One is presumed to be practicing law" when one does various enumerated acts, including "preparing or expressing legal opinions."

8.     The word "shall" is "a command which requires mandatory enforcement" (quotation omitted)) *See William Bovaird v. New Hampshire Department of Administrative Services* (N.H. 2014); *McCarthy v. Wheeler*, 152 N.H. 643, 645 (2005) (considering the legislature's use of the word "shall" as a command, indicating a mandatory intent); *Zadvydas v Davis*, 533 US 678, 697-97 (2001) (contrasting "may" with "must"). But while "may" suggests discretion. In 2007 the U.S. Supreme Court said ("The word `shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive"); Black's Law Dictionary 1375 (6th ed. 1990) ("As used in statutes ... this word is generally imperative or mandatory") *National Ass'n v. Defenders of Wildlife*, 127 S. Ct. 2518, 2531-2532 (US 2007).

9.     Courts have held court filings by a person not authorized to practice law are a nullity. In *Preston v. University of Arkansas*, 354 Ark. 666, 128 S.W.3d 430, 437-38 (2003), the Arkansas Supreme Court held that a complaint filed by Oklahoma attorneys in Arkansas constituted unauthorized practice of law, and the complaint was "a nullity." *See also Shipe v. Hunter*, 280 Va. 480, 699 S.E.2d 519, 520 (2010) ("[A] pleading, signed only by a person acting in a representative capacity who is not licensed to practice law in Virginia, is a nullity."); *Carlson v. Workforce Safety & Ins.*, 765 N.W.2d 691, 704 (N.D. 2009) (concluding the filing of a request for reconsideration by nonresident attorneys from Ohio, not admitted to practice in North Dakota,

102   was void). Therefore the safe harbor of N.D.R. Prof. Conduct 5.5(A)(2) does not apply."; *Blume*

103   *Constr., Inc. v. State*, 872 N.W.2d 312, 314, 316, 319, 320 (N.D. 2015) (holding that an appeal of

104   an administrative ruling was void because the Colorado lawyer who signed on behalf of appellant

105   had not taken any steps to be admitted pro hac in North Dakota).

106      10.    So if New Hampshire has a strong policy against the unauthorized practice of law,

107   why is the court willing to so accept Attorney Schwartz's Doc. 3 submittal? And, if F.R.C.P. Rule

108   55(a) directs that the clerk "must enter the parties default" or "the clerk shall enter a default" under

109   Local Rule 55.1, and in the manner provided by Fed. R. Civ. P. 12, why has the clerk not carried

110   out his directive and entered a default against Twitter? N.H. RSA 311:7 is clear, and the court must

111   give effect to the intent of the law, that no one should appear "unauthorized" before a court in *New*

112   *Hampshire. Miller v. French*, 530 U. S. 327, 336 (2000) (quoting *Sinclair Refining Co. v. Atkinson*,

113   370 U. S. 195,215 (1962)). N.H. RSA 311:7 is so substantive that the federal court has to give it

114   effect.[4]

115   Usurped State Law

116      11.    The Court usurped the power of the governing state authority when it passed

117   judgment contrary to the wisdom and efficacy of N.H. RSA 311:7. These are "extraordinary"

118   errors. *See In re Volkswagen of Am.*, 545 F.3d 304, 305 (5th Cir. 2008).

119      12.    The Court usurped the state's authority to craft unauthorized practice measures for

120   attorneys and private individuals. But "[i]t is no part of the function of a court" to decide which

121   measures are "likely to be the most effective for the protection of the public" *Jacobson v.*

122   *Massachusetts*, 197 U.S. 30 (1905), usurping judicial power occurs when courts act beyond its

---

124   [4] Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525, 535–36 (1958) (noting that a state rule may be so "bound up with
125   the definition of the rights and obligations of the parties" that "its application in federal court is required").

126    jurisdiction or fails to act when it had a duty to do so. Will v. United States, 389 U.S. 90, 95
127    (1967).

128    13.    The court's order threaten the separation of powers by 'embarrassing the
129    Legislative arm of the New Hampshire Legislature. *See Maryland v. Soper (No. 1)*, 270 U.S. 9
130    (1926) intrusion by the federal judiciary on a delicate area of federal-state relations.'"

131    14.    The court clearly abused its discretion by failing to apply (or even acknowledge)
132    the framework governing unauthorized practice of law in New Hampshire Courts. This
133    extraordinary error allowed the district court to create a blanket exception for unauthorized practice
134    of law for the Defendants attorneys. This was a patently erroneous result.

135    15.    The Order's result is patently wrong. Instead of applying New Hampshire State
136    Law, the court wrongly abused its discretion, instead of applying N.H. RSA 311:7. The Order
137    wrongly declared that the defendant had not violated New Hampshire law.

138    16.    The Rules of Decision Act provided that in the absence of federal law, the "laws of
139    the states" should govern. *See Swift v. Tyson*, 41 U.S. (16 Pet.) 1, 18 (1842) (*quoting Judiciary Act
140    of 1789*, ch. 20, § 34, 1 Stat. 73, 92 (codified as amended at 28 U.S.C. § 1652 (2006)). If there is
141    no federal law on point (and leaving aside the disagreements about whether there could be in
142    various cases), a federal court must apply state law because that is the only law that could be
143    operative. To state the principle more generally, constitutional Erie tells us that if only one law
144    reaches the facts of a case, that law must supply the rule of decision. Erie also has some other
145    propositions that sound constitutional in nature—for instance, that a state's law is what that state's
146    courts say it is, not what someone else might think is a good idea. *See Erie*, 304 U.S. at 78
147    ("[W]hether the law of the State shall be declared by its Legislature in a statute or by its highest
148    court in a decision is not a matter of federal concern.").

149      17.    A choice-of-law problem, to put it generally, arises when there is more than one

150   sovereign whose law might create rights or obligations related to a particular event. *See* KERMIT

151   ROOSEVELT, III, CONFLICT OF LAWS *1* (2010).

152      18.    In this case, as there is only one law that reaches the facts of this case and the rights

153   they create, the Court need not decide which of the competing rights will get priority. Only one

154   law creates rights or obligations, that law will—indeed, must—supply the rule of decision. (setting

155   out a two-step process of identifying interested states and resolving cases accordingly). Larry

156   Kramer refined Currie's approach. *See Larry Kramer, Return of the Renvoi,* 66 N.Y.U. L. REV.

157   979, 982 (1991) (describing the two-step approach). Compare *Hanna v. Plumer,* 380 U.S. 460

158   (1965) (Federal Rule of Civil Procedure), with *Ragan v. Merchs. Transfer & Warehouse Co.,* 337

159   U.S. 530 (1949) (judge-made law).

160      19.    The federal government has the power to preempt state law, of course, but a federal

161   court exercising diversity jurisdiction does not purport to be exercising that power. *See, e.g.,*

162   *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941) (holding that federal courts

163   exercising diversity jurisdiction must apply state choice-of-law rules). The argument that state

164   choice-of-law rules are substantive in this sense—so much a part of state-created rights that a court

165   that ignores them is not really applying the law of that state—is both straightforward and strong.

166      20.    The Courts' order denies the existence of general law N.H. RSA 311;7, and this

167   law is the only law reaches the facts and thus must be the law to supply the rule of decision. *See*

168   *Erie Railroad v. Tompkins.* 304 U.S. 64 (1938). See CHARLES ALAN WRIGHT & MARY KAY

169   KANE, LAW OF FEDERAL COURTS § 55, at 378 (6th ed. 2002) ("It is impossible to overstate

170   the importance of the Erie decision."); *Craig Green, Repressing Erie's Myth*, 96 CALIF. L. REV.

171   595, 595 (2008) (describing Erie as one of the "cultural pillars of our legal architecture"). States

172  have the power to set the scope of their laws; federal courts do not, and legislation rests with

173  legislature, not judiciary.

174  Court Makes Its Own Law

175      21.     According to one, the difference is purely between two different government

176  functions, making legal rules and applying them. The Order denying default, creates a new law

177  rather than interpreting the existing law as the court's duty is interpreting and not making law or

178  making determinations of policy and morality that properly belong with legislators, (i.e.

179  "legislating from the bench").

180      22.     The Court failed to apply the law strictly and contrary to the facts present in this

181  case, [5] failed to be constrained by widely agreed upon legal canons of construction. [6]

182      23.     Judges engaged in this kind of decision making are really making law rather than

183  judging it, because their work is creative, political and personal, rather than constrained, legal, and

184  institutional.[7] At times, the charge that the courts are inappropriately engaged in rendering

185  "substantive due process" [8], closely parallels these sorts of contentions about legislating from

186  _____

187  [5] SUNSTEIN, supra note 4, at 25; 147 CONG. REC. 102, S7991 (daily ed. July 20, 2001) (statement of Sen. Allen); 152
188  CONG. REC. 67, S5192 (daily ed. May 25, 2006) (statement of Sen. Specter); Charles Wood, Term Limits for Justices Are
189  Rejected, MONT. LAW., Feb. 2003, at 9 (the Court "has embarked on an agenda of legislating from the bench, rather than
190  adjudicating the facts and law.").

191  [6] Lavoie, supra note 60, at 616; Antonin Scalia, The Rule of Law as a Law of Rules, 56 U. CHI. L. REV. 1175, 1176–79,
192  1182–83 (1989) (arguing that judges must apply general rules, formulated from legal texts, to advance legal equality, uniformity,
193  and predictability).

194  [7] SUNSTEIN, supra note 4; CHRISTOPHER WOLFE, THE RISE OF MODERN JUDICIAL REVIEW: FROM
195  CONSTITUTIONAL INTERPRETATION TO JUDGE-MADE LAW (1986) (discussing a "transitional" period beginning at the
196  end of the nineteenth century in which the Supreme Court purportedly began to use personal preferences and will, in a manner
197  reminiscent of legislators); E. Todd Wilkowski, The Defense of Marriage Act: Will It Be the Final Word in the Debate Over
198  Legal Recognition of Same-Sex Unions? 8 REGENT U. L. REV. 195, 229 (1997). See also Justice Antonin Scalia, Comments at
199  the Call for Reckoning Conference Session Three: Religion, Politics and the Death Penalty (Jan. 25, 2002) (stating that "my
200  [C]ourt made up that requirement [that mitigating evidence be considered in the sentencing phase of death penalty cases]. . . . I
201  don't think my Court is authorized to say, oh, it would be a good idea to have every jury be able to consider mitigating evidence
202  and grant mercy. And, oh, it would be a good idea not to have mandatory death penalties.").

203  [8] See, e.g., Roe v. Wade, 410 U.S. 113, 178 (1973) (Rehnquist, J., dissenting) (arguing that the majority has enunciated
204  "substantive constitutional law").

205  the bench.

206  24.  Legislating from the bench is so obviously detrimental that many opponents

207  dismiss it without elaboration. According to one scholar, "the whole idea [of our political scheme]

208  is for the Court to avoid legislating." *See Beth, supra note 22*, at 19. Loren P. Beth, The Supreme

209  Court and the Future of Judicial Review, 76 POL. SCI. Q. 11, 12 (1961).

210  25.  But this Court is not a legislature. Under the Constitution, judges have power to say

211  what the law is, not what it should be. The people who ratified the Constitution authorized courts

212  to exercise "neither force nor will but merely judgment." *The Federalist No. 78*, p. 465 (C. Rossiter

213  ed. 1961) (A. Hamilton) (capitalization altered); *Obergefell v. Hodges*, 576 U.S. 644 (2015)

214  CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

215  No. 14–556. Argued April 28, 2015—Decided June 26, 2015*.

216  Violates Plaintiffs N.H. and US Constitution Rights under the Fifth Amendment

217  26.  First, the district court ignored the framework governing unauthorized practice of

218  law. Only "[U]nder the pressure of great dangers," may constitutional rights be reasonably

219  restricted "as the safety of the general public may demand." *See Jacobson v. Commonwealth of*

220  *Massachusetts*, 197 U.S. 29 (1905).

221  27.  Substantive law, we could say, creates rights that can be asserted in any forum.[9]

222  substantive due process protects individuals against majoritarian policy enactments that exceed the

223  limits of governmental authority. Procedural law creates rights that are tied to a particular forum

224  and cannot be asserted elsewhere.[10] Procedural due process protects individuals from the

225

_____

226  [9] A tort claim, for instance, is uncontroversially substantive, and it should also be uncontroversial that a tort claim based on the
227  law of one state can be asserted in the courts of another.

228  [10] The right to use a certain number of pages in a reply brief, for example, is uncontroversially procedural, and it is also pretty
229  clear that one state's rule about permissible length will not govern litigation in the courts of another state.

230    coercive power of government by ensuring that adjudication processes, under valid laws, are fair
231    and constitutional.

232         28.    *Harlow v. Fitzgerald.* 457 U.S. 800, 818 (there can be no objective reasonableness
233    where officials violate clearly established constitutional rights such as the Fifth Amendment Due
234    Process and Equal Protections. The fifth amendment's due process clause prohibits arbitrary
235    discrimination by the federal government. *See also Bolling v. Sharpe*, 347 U.S. 497 (1954).

236         29.    *In Chicago, Burlington & Quincy Railroad Company v. City of Chicago* (1897),
237    the court incorporated the Fifth Amendment's Takings Clause. In the middle of the Twentieth
238    Century, a series of Supreme Court decisions found that the Due Process Clause "incorporated"
239    most of the important elements of the Bill of Rights and made them applicable to the states. If a
240    Bill of Rights guarantee is "incorporated" in the "due process" requirement of the Fourteenth
241    Amendment, state and federal obligations are exactly the same.

242         30.    Historically, the clause reflects the Magna Carta of Great Britain, King John's
243    thirteenth century promise to his noblemen that he would act only in accordance with law
244    ("legality") and that all would receive the ordinary processes (procedures) of law. It also echoes
245    Great Britain's Seventeenth Century struggles for political and legal regularity, and the American
246    colonies' strong insistence during the pre-Revolutionary period on observance of regular legal
247    order. The requirement that government function in accordance with law is, in itself, ample basis
248    for understanding the stress given these words. A commitment to legality is at the heart of all
249    advanced legal systems, and the Due Process Clause often thought to embody that commitment.

250         31. The clause also promises that before depriving a citizen of life, liberty or property,
251    government must follow fair procedures. Thus, it is not always enough for the government just to
252    act in accordance with whatever law there may happen to be. Citizens may also be entitled to have

253  the government observe or offer fair procedures, whether or not those procedures have been
254  provided for in the law on the basis of which it is acting. Action denying the process that is "due"
255  would be unconstitutional. Suppose, for example, state law gives students a right to a public
256  education, but doesn't say anything about discipline. Before the state could take that right away
257  from a student, by expelling her for misbehavior, it would have to provide fair procedures, i.e.
258  "due process."

259      32.    The Constitution does not require "due process" for establishing laws; the provision
260  applies when the state acts against individuals "in each case upon individual grounds" — when
261  some characteristic unique to the citizen is involved. Of course there may be a lot of citizens
262  affected; the issue is whether assessing the effect depends "in each case upon individual grounds."
263  *See  Bi-Metallic Investment Co. v. State Board of Equalization* (1915). What the Constitution
264  required would inevitably be dependent on the situation. What process is "due" is a question to
265  which there cannot be a single answer. *See Goldberg v. Kelly*, 397 U.S. 254 (1970).

266      33.    First, the private interest that will be affected by the official action; second, the risk
267  of an erroneous deprivation of such interest through the procedures used, and the probable value,
268  if any, of additional or substitute procedural safeguards; and finally, the Government's interest,
269  including the function involved and the fiscal and administrative burdens that the additional or
270  substitute procedural requirement would entail. *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

271      34.    The phrase due process, must include "equal protection of the laws." The Fifth
272  Amendment requires due process when the federal government is acting to take away the
273  Plaintiff's liberty. "Liberty under law extends to the full range of conduct which the individual is
274  free to pursue." Any legal conduct, such as going to school, is part of this constitutionally protected

275  liberty. Thus the government cannot restrict going to school--or any other personal conduct--

276  without a "proper" objective. *See Bolling v. Sharpe*, 347 U.S. at 499 347 U.S. 497, 499–500 (1954).

277  35.  Equal Protection refers to the idea that a governmental body may not deny people

278  equal protection of its governing laws. It places strict limits on the government's ability to infringe

279  fundamental constitutional rights of all classes of persons. And it requires that all government

280  actions be rationally related to legitimate purposes.

281  36.  The court's decision is not related to any proper governmental objective, and thus

282  it imposes on Pro Se litigants, such as the Plaintiff, a burden that constitutes an arbitrary

283  deprivation of the Plaintiffs liberty in violation of the Due Process Clause.

284  37.  Even if the courts action is facially neutral, it still should be subject to equal

285  protection scrutiny if it has the effect of distributing burdens and benefits unequally. *E.g.. Shapiro*

286  *v. Thompson.* 394 U.S. 618 (1969) (durational residency requirement has the effect of dividing

287  applicants into two classes); *Harper v. Virginia Bd. of Elecs.,* 383 U.S. 663 (1966) (poll tax has

288  the effect of dividing potential voters into two classes). The court's order produced an unequal

289  effect.

290  38.  The theory that was to prevail seems first to have been enunciated by Chief Justice

291  Taft, who observed that the Due Process and Equal Protection Clauses are associated and that [i]t

292  may be that they overlap, that a violation of one may involve at times the violation of the other,

293  but the spheres of the protection they offer are not coterminous. . . . [Due process] tends to secure

294  equality of law in the sense that it makes a required minimum of protection for every one's right

295  of life, liberty and property, which the Congress or the legislature may not withhold. Our whole

296  system of law is predicated on the general, fundamental principle of equality of application of the

297  law. *See Truax v. Corrigan*, 257 U.S. 312, 331 (1921); See also *Hirabayashi v. United States*, 320

298   U.S. 81, 100 (1943). The guaranty was aimed at undue favor and individual or class privilege, on
299   the one hand, and at hostile discrimination. Page 257 U. S. 333 *Truax v. Corrigan*, 257 U.S. 312,
300   331 (1921). "Class legislation, discriminating against some and favoring others, is prohibited, P.
301   257 U. S. 332. *Truax* at 312 and 331. Thus, the guaranty was intended to secure equality of
302   protection not only for all, but against all similarly situated. Indeed, protection is not protection
303   unless it does so. Immunity granted to a class, however limited, having the effect to deprive another
304   class, however limited, of a personal or property right is just as clearly a denial of equal protection
305   of the laws to the latter class as if the immunity were in favor of, or the deprivation of right
306   permitted worked against, a larger class.

307   39.   U.S. and New Hampshire citizens should have like access to the courts of the
308   country for the protection of their persons and property, the prevention and redress of wrongs, and
309   the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone
310   except as applied to the same pursuits by others under like circumstances; that no greater burdens
311   should be laid upon one than are laid on others in the same calling and condition. *Truax v.*
312   *Corrigan*, 257 U.S. 312, 331 (1921).

313   40.   The Courts determination that Twitter is not in default violates Plaintiff's liberty
314   rights to 'equal protection of the laws' and also violates Plaintiff's due process rights as it is so
315   unjustifiable and without a governmental objective as it does not follow New Hampshire's RSA
316   311:7 which is intended to prevent anyone from the unauthorized practice of law in a court located
317   in New Hampshire. *See Bolling v. Sharpe,* 347 U.S. at 499 347 U.S. 497, 499–500 (1954). The
318   guaranty of "equal protection" entitles plaintiffs to treatment not less favorable than that given to
319   others similarly circumstanced. This the present statute gives them. denies to them the equal

320  protection of the laws within the meaning of the Fourteenth Amendment. *See Truax v. Corrigan,*
321  257 U.S. 312, 331 (1921). Or as in this case the Fifth Amendment.

322       41.     "Our whole system of law is predicated on the general fundamental principle of
323  equality of application for the law. 'All men are equal before the law,' "This is a government of
324  laws and not of men,' 'No man is above the law,' are all maxims showing the spirit in which
325  legislatures, executives, and courts are expected to make, execute and apply laws. But the framers
326  and adopters of the (Fourteenth) Amendment were not content to depend ... upon the spirit of
327  equality which might not be insisted on by local public opinion. They therefore embodied that
328  spirit in a specific guaranty." *See Truax v. Corrigan,* 257 U.S. 312, 332 (1921).

329       42.     The due process clause requires that every man shall have the protection of his day
330  in court, and the benefit of the general law -- a law which hears before it condemns, which proceeds
331  not arbitrarily or capriciously, but upon inquiry, and renders judgment only after trial, so that every
332  citizen shall hold his life, liberty, property, and immunities under the protection of the general
333  rules which govern society. *See Hurtado v. California.* 110 U. S. 516, 110 U. S. 535 (1884). It, of
334  course, tends to secure equality of law in the sense that it makes a required minimum of protection
335  for every one's right of life, liberty, and property which the Congress or the legislature may not
336  withhold. Our whole system of law is predicated on the general fundamental principle of equality
337  of application of the law. "All men are equal before the law," "This is a government of laws and
338  not of men," "No man is above the law," are all maxims showing the spirit in which legislatures,
339  executives, and courts are expected to make, execute, and apply laws. But the framers and adopters
340  of this amendment were not content to depend on a mere minimum secured by the due process
341  clause, or upon the spirit of equality which might not be insisted on by local public opinion. They

342   therefore embodied that spirit in a specific guaranty which sought an equality of treatment or the
343   oppression of inequality of all persons, even though all enjoyed the protection of due process.

344         43.    The equal protection clause was aimed at undue favor and individual or class
345   privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the
346   other; it secures equality of protection not only for all, but against all, similarly situated; it is a
347   pledge of the protection of equal laws. Mr. Justice Field, delivering the opinion of this Court in
348   *Barbier v. Connolly,* 113 U. S. 27, 113 U. S. 32 (1885).

349         44.    The Order violates Plaintiff's equal protection substantive rights to redress his
350   actionable injuries as it fails to guard against arbitrary and discriminatory infringements of basic
351   equal protection without discrimination.  N.H. CONST. pt. 1, art. 14." *Opinion of the Justices,* 137
352   N.H. 260, 261 (N.H. 1993).

353         45.    The trial court may properly act to prevent a person, such as an attorney
354   unauthorized to practice law, from acting "commonly" as legal counsel when it reasonably appears
355   that to do otherwise would be to sanction the unauthorized practice of law. *See Bilodeau v. Antal,*
356   123 N.H. 39, (N.H. 1983).

357         46. The Oder not only violated Plaintiffs due process of Law, but denied equal protection
358   under the law. While a Judge performing Judicial functions may enjoy Immunity. denial of
359   constitutional and civil rights are absolutely not a judicial function and conflicts with any definition
360   of a Judicial function. Response to denials were Motions to reinstate using the Constitutional
361   Articles as a major Guide, along with the Judges Oath of Office, and canons of Judicial Code of
362   Conduct. The responses also included page after page of case law where both appellate courts and
363   the Supreme Court did hold judges accountable when their knowing and willing actions fell outside
364   the boundaries of their job description. That failure to follow simple guidelines of their post makes

365  a judge's action no longer a Judicial act but an Individual act as the act represents their own

366  prejudices and goals. Case Law also states that when a judge acts as a trespasser of the law, when

367  a judge does not follow the law, he then loses subject matter jurisdiction and the Judges orders are

368  void, of no legal force or affect. In a limited government, a government limited by the constitution,

369  the violation of a citizens rights should never be justified due to the overriding government goals

370  or objectives, and that no branch of the government be allowed to extend its power beyond it's

371  legal limits.

372      47.     No man in this country is so high that he is above the law. No officer of the law

373  may set that law at defiance with impunity. All the officers of the government from the highest to

374  the lowest, are creatures of the law, and are bound to obey it. *See United States v. Lee*, 106 U.S.

375  196,220, 1 S.Ct. 240, 27 L.Ed. 171 (1882); *Buckles v. King County*, 191 F.3d 1127, *1133 (C.A.9

376  (Wash.), (1999)).

377      48.     The Eleventh Amendment was not intended to afford [judges] freedom from

378  liability in any case where; under color of their office, they have injured one of the State's citizens.

379  To grant them such immunity would be to create a privileged class free from liability from wrongs

380  inflicted or injuries threatened. Public agents must be liable to the law unless they are to be put

381  above the law. See *OLD COLONY TRUST COMPANY v. CITY SEATTLE ET AL.* (06/01/26) 271

382  U.S. 426, 46 S.Ct. 552, 70 L. Ed at page 431. No officer of the law may set that law at defiance

383  with impunity. See United States v. Lee, 106 U.S. 196,220 and *Burton v. United States*, 202U.S.

384  344. The Court in *Yates v. Village of Hoffman Estates,* Illinois. 209 F. Supp. 757 (N.D. Ill. 1962),

385  held that "not every action by a judge is in the exercise of his judicial function. . . it is not a judicial

386  function for a judge to commit an intentional tort even though the tort occurs in the courthouse.

387 When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses

388 subject-matter jurisdiction and the judges' orders are void, of no legal force or effect."

389    49.    "No man [or woman] in this country is so high that he is above the law. No officer

390 of the law may set that law at defiance with impunity. All the officers of the government from the

391 highest to the lowest, are creatures of the law, and are bound to obey it." *Butz v. Economou*, 98 S.

392 Ct. 2-894(197-8); *United States v: Lee,* 106- U.S. at 220, 1 S. Ct. at 261 (1882). Acts in excess of

393 judicial authority constitutes misconduct, particularly where a judge deliberately disregards the

394 requirements of fairness and due process. *Cannon v. Commission on Judicial Qualifications*,

395 (1975) 14 Cal. 3d 678, 694. Acts in excess of judicial authority constitutes misconduct, particularly

396 where a judge deliberately disregards the requirements of fairness and due process. *Gonzalez v.*

397 *Commission on Judicial Performance* 33 Cal.3d 359 , 188 Cal. Rptr. 880; 657 P.2d 372, (1983).

398 "The innocent individual who is harmed by an abuse of governmental authority is assured that he

399 will be compensated for his injury." *See Owen v. City of Independence*, 445 U.S. 622 (1980).

400    50.    When a judicial officer acts entirely without jurisdiction or without compliance

401 with jurisdiction requisites he may be held civilly liable for abuse of process even though his act

402 involved a decision made in good faith, that he had jurisdiction. *See U.S. Fidelity & Guaranty Co.*

403 (State use of), 217 Miss. 576, 64 So. 2d 697. *See also, Elliot v. Piersol.* 1 Pet. 328,340, 26 U.S.

404 328, 340 (1828). By law, a judge is a state officer. The judge then acts not as a judge, but as a

405 private individual (in his person). When a judge acts as a trespasser of the law, when a judge does

406 not follow the law, the Judge loses subject-matter jurisdiction and the judges' orders are not

407 voidable, but VOID, and of no legal force or effect. *See Scheuer v. Rhodes*, 416 U.S. 23 94 S.

408 Ct.1683. 1687 (1974).

51.     Under federal Law, which is applicable to all states, the U.S. Supreme Court stated that "if a court is without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification and all persons concerned in executing such judgments or sentences are considered, in law, as trespassers." "Federal tort law provides that judges cannot invoke judicial immunity for -acts--that violate litigants-civil-rights; *Robert-Craig-Waters. Tort & Insurance Law Journal*, Spr. 1986 21 n3, p509-516. [11]

52.     "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws when he receives an injury." *See Marbury v. Madison*, 5 US (1 Cranch) 137 (1803). "An orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights before a court having power to hear and determine the case. *See Kazubowski v. Kazubowski*, 45 Ill.2d 405,259, N.E.2d 282, 290." Black's Law Dictionary, 6th Edition, page 500. "Aside from all else, 'due process' means fundamental fairness and substantial justice. *Vaughn v. State*. 3 Tenn.Crim.App. 54,456 S.W.2d 879. 883." Black's Law Dictionary, 6th Edition, page 500. Due process of law and the equal protection of the laws are secured if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government." *See Duncan v. Missouri*, 152 U.S. 377,382 (1894).

53.     Undoubtedly it (the Fourteenth Amendment) protects against any arbitrary deprivation of life, liberty or property, and secures equal protection to all under like circumstances

---

[11] Tort & Insurance Law Journal, Spring 1986 21 n3, p 509-516. "Federal tort law: judges cannot invoke judicial immunity for acts that violate litigants' civil rights." - Robert Craig Waters. See also Cooper v. Aaron, 358 US. I, 78 S. Ct. 1401 (1958)

433  in the enjoyment of their rights ... It is enough that there is no discrimination in favor of one as

434  against another of the same class. . ... And due process of law within the meaning of the [Fifth and

435  Fourteenth] amendment is secured if the laws operate on all alike, and do not subject the individual

436  to an arbitrary exercise of the powers of government." *See Giozza v. Tiernan.* 148 U.S. 436 (1893).

437  54.     Therefore, Judges are bound by the Constitution, and a paragraph in a U.S. Code

438  does not relieve a Judge of this duty or allow for unconstitutional judgments to stand.

439  55.     For the purposes of review, it has been said that clear violations of laws on reaching

440  the result, such as acting without evidence when evidence is required, or making a decision

441  contrary to all the evidence, are just as much jurisdictional error as is the failure to take proper

442  steps to acquire jurisdiction at the beginning of the proceeding. *See Borgnis v. Falk Co.*, 147 Wis.

443  327. 133 N.W. 209 (1911) Without jurisdiction, the acts or judgments of the court are void and

444  open to collateral attack. *See McLean v. Jephson*, 25 N.E. 409, 123 (NY 1890).

445  56.     Under Federal law, which is applicable to all states, the U.S. Supreme Court stated

446  that if a court is "without authority, its judgments and orders are regarded as nullities. They are not

447  voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal in

448  opposition to them. They constitute no justification; and all persons concerned in executing such

449  judgments or sentences, are considered, in law, as trespassers. " *See Elliot v. Piersol*, I Pet. 328,

450  340. 26 U.S. 328, 340 (1828). When a judge acts as a trespasser of the law, when a judge does not

451  follow the law, the judge loses subject-matter jurisdiction and the judge's orders are void, of no

452  legal force or effect.

453  57.     The U.S. Supreme Court, in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1687

454  (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal

455  Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in

that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original]. By law, a judge is a state officer.  The judge then acts not as a judge, but as a private individual (in his person).

58.     The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it." [12]

Clear Error and Abuse of Discretion

59.     The Order misinterprets the law, misapplies it to the facts, or otherwise engaged in a clear abuse of discretion." In *re Lloyd's Register N. Am., Inc.,* 780 F.3d 283, 290 (5th Cir. 2015), that produced a patently erroneous result bestowing on the Defendant a blanket exemption to practice unauthorized law.

60.     The Courts Order disregarded and abuses Federal Rules and its own Rules, by "so permitting an unauthorized attorney to practice before this Court" as no member of the bar of this court had motioned the court on her behalf prior to her submittal, formally started the application procedure for admission; sought nor received this Courts approval to appear pro hac vice; paid any fees; taken any oath under Local Rule 83.1(b); 5), Nor motioned this court for a special admission under Local Rule 83.1(d), disregarded and failed to mandatorily enforce Local Rule 55.1(a) and Fed. R. Civ. P. 55 in not declaring the Defendant in Default, and arbitrarily and contrary to law

---

[12] Any judge who does not comply with his oath to the Constitution of the United States wars against that Constitution and engages in acts in violation of the supreme law of the land. The judge is engaged in acts of treason. The U.S. Supreme Court has stated that "no state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it". See also *In Re Sawyer,* 124 U.S. 200 (188); *U.S. v. Will,* 449 U.S. 200,216, IOI S. Ct. 471, 66 L. Ed. 2d 392,406 (1980); *Cohens* v. *Virginia,* 19 U.S. (6 Wheat) 264, 404, 5 L. Ed 257 (1821). Pulliam v. Allen, 466 U.S. 522 (1984); 104 S. Ct. 1781, 1980, 1981, and 1985.

Page **20** of 24

accepted a pleading not in compliance with  Fed. R. Civ. P. 12, as the pleading is illegal and prohibited by law and thus non-conforming and that a proper answer under Fed. R. Civ. P. 12 had not been received by the Court within the 21 days required. See [Doc. 7].

61.    The Courts Order disregarded Judicial Cannons of obeying the law and fair play and ignored established Federal case law, which in this case is "clear and indisputable" because it does not "followed numerous others" [courts] who had made the same decision. *See In re Volkswagen of Am..* 545 F.3d 304, 305 (5th Cir. 2008); See also Bilodeau v. Antal. 123 N.H. 39, (N.H. 1983) In ex rel. Courtney v. Association of Real Estate Tax-payers, 354 Ill. 102,. 187 N.E. 823 (1933), a nonprofit corporation was held in contempt for engaging in the unauthorized practice of law; *People ex rel. Courtney v. Association of Real Estate Taxpayers* 354 Ill. 102, 187 N.E. 823(1933) (Stating that the practice of law includes "the preparation of pleadings," "the management of actions," and "in general, all advice to clients"); Similarly, in *Allstate Insurance Co. v. West Virginia State Bar.* 233 F.3d 813 (4th Cir. 2000), the Fourth Circuit affirmed a West Virginia state legal disciplinary tribunal had ruled against Allstate for engaging in the unauthorized practice of law; *Davis v. Marcotte,* 193 Ohio App.3d 102, 2011-Ohio1189, 951 N.E.2d 117, ¶8 (10th Dist.); *Cleveland Bar Assn. v. Moore.* 87 Ohio St.3d 583, 584, 722 N.E.2d 514 (2000), "detracts from the dignity of the court." See 2A Moore's Federal Practice ¶ 12.21 at p. 2426 (1983) (footnotes omitted); *Skadegaard v. Farrell.* 578 F. Supp. 1209 (D.N.J. 1984) US District Court for the District of New Jersey - 578 F. Supp. 1209 (D.N.J. 1984).

62.    The Courts Order ignored and usurped New Hampshire law and its strong policy regarding the unauthorized practice of law which left no room for any judicial discretion. Where a trial court must exercise discretion in deciding a question, it must do so in a way that is not clearly against logic and the evidence. An improvident exercise of discretion is an error of law and grounds

505    for reversing a decision on appeal. It does not, however, necessarily amount to bad faith,

506    intentional wrong, or misconduct by the trial judge. Plaintiff has a "definite and firm conviction

507    that a mistake has been committed." *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456

508    U.S. 844, 855 (1982); (relevant evidence as a reasonable mind might accept as adequate to support

509    a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

510    63.    The Courts Order did not adhere to the controlling standards established  by the

511    Rules of Decision Act. As the Supreme Court put it later in *Byrd v. Blue Ridge Rural Electric*

512    *Cooperative.* "[F]ederal courts  .  .  .  must respect the definition of state-created rights and

513    obligations by the state courts." 356 U.S. 525, 535 (1958).

514    64.    The Courts Order creates a new law rather than interpreting the existing law and

515    cannot be related to any proper governmental objective as the objective of the New Hampshire

516    Legislature is to forbid the unauthorized practice of law within Courts in this state by any one of

517    any class. As it stands and has stood for nearly 200 years, N.H. RSA 311:7 is not discriminatory

518    against any one type of class or person. The Courts Order injects discrimination in its reading of

519    the law and thereby establishing new (case) law that it is NOT unauthorized practice of law IF you

520    are of the Attorney Class, but would be if you were a non-attorney.

521    65.    The Courts Order, arbitrarily, based on a personal whim, rather than any reason or

522    system, failed to apply the law strictly and contrary to the facts present in this case. Judicial

523    discretion is not to be exercised at the arbitrary will of the judge and not invoked arbitrarily or

524    against logic and the effect of facts. *See Neal v. State,* 214 Ind. 328, 14 N. E. (2d) 590, 593 (1938),

525    and not applied against reasonable, probable and actual deductions; *McFarland v. Fowler Bank*,

526    214 Ind. 10, 12 N. E. (2d) 752 (1938) and are not employed to defeat the ends of justice. *Deeds v.*

527    *Deeds,* 108 Kan. 770, 196 Pac. 1109 (1921), "discretion to be expressed in discerning the course

528    prescribed by law."; *Osborn v. Bank of the United States*, 22 U.S. 738 (1824) ("clearly against

529    reason and evidence" or against established law) an error of judgment by a trial court in making a

530    ruling that is clearly unreasonable, erroneous, or arbitrary and not justified by the facts or the law

531    applicable in the case — compare clearly erroneous.

532         66.    The Courts Order violated the Plaintiffs substantive due process rights by exceeding

533    its judicial authority. Additionally this Court is allowing the Defendants counsel Attorney

534    Schwartz to continue representing her corporate Defendant, Twitter when she is still unauthorized

535    to do so under New Hampshire Law.

536         67.    The Courts Order violated the Plaintiffs procedural due process rights by failing to

537    ensure that the adjudication process, under valid laws and rules, was fair and impartial and in

538    violation of the Plaintiff's State and Federal Constitutional Fifth Amendments Rights to due

539    process whereby expanding the liberty of the Defendant and their "Attorney Class" at the expense

540    of the Pro Se Plaintiff's liberty (e.g. as in the *Dred Scott case*).

541         68.    The Courts Order failed to equal protect the "Non-professional" Plaintiff and in

542    favor of the "Professional" class of Attorneys in violation of the Plaintiff's State and Federal

543    Constitutional Fifth Amendments Rights as it denies the Plaintiff equal protection of the laws

544    (which clearly New Hampshire Law was intended to accomplish with statute 311:7) whereby

545    expanding the liberty and protection of the Defendant and their "Attorney Class" at the expense of

546    the Pro Se Plaintiff's liberty and protections. (e.g. as in the Dred Scott case). Is the Court abolishing

547    the law? Or abolishing it under Federal Law? Or is it just not applying it in the Plaintiff's case?

548         69.    The Courts Order unjustly protects the Defendant Twitter, Inc, who according to

549    Forbes is worth $4.9 billion, its New Hampshire Attorney, Jonathan M. Eck, who has extensive

550    involvement specifically with this Court and Attorney Julie E. Schwartz, who failed to motion or

551  alert the Court prior to her submittal, failed to amend or otherwise remove and replace the submittal

552  after being alerted of its illegality, and continues to represent the Defendant Twitter when she is

553  not so authorized under New Hampshire Law to do so.

554       70.      In Conclusion , the Plaintiff does pray that this Court observe the practice of

555  fundamental fairness that is substantial justice and not act as bystanders while a New Hampshire

556  and U.S. citizen is denied the right to redress his liberties while due process rights and equal

557  protections have been denied under color of law.

558       71.      The courts provide pro se parties wide latitude when construing their pleadings and

559  papers. When interpreting pro se papers, the Court should use common sense to determine what

560  relief the party desires. *See S.E.C. v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992); *See also, United*

561  *States v. Miller,* 197 F.3d 644, 648 (3rd Cir. 1999) (Court has special obligation to construe pro se

562  litigants' pleadings liberally); *Poling v. K. Hovnanian Enterprises,* 99 F.Supp.2d 502, 506-07

563  (D.N.J. 2000).

564       WHEREFORE, the Plaintiff, prays that the Court amend its findings and/or make

565  additional findings to prevent a manifest injustice and amend the judgment accordingly and find

566  the Defendant in Default as the Court's previous Order is clearly erroneous and contrary to law.

567

568  Respectfully,

569

570                                   /s/ Plaintiff, Anonymously as Sensa Verogna

571                                   SensaVerogna@gmail.com

572

573

574

575                        **CERTIFICATE OF SERVICE**

576

577  I hereby certify that on this 22nd day of July 2020, the foregoing document was made upon the

578  Defendant, through its attorneys of record to Jonathan M. Eck  jeck@orr-reno.com and Julie E.

579  Schwartz, Esq., JSchwartz@perkinscoie.com