## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW HAMPSHIRE

Sensa Verogna, Plaintiff,      )

      v.              )      **Case #: 1:20-cv-00536-SM**

Twitter Inc.,  Defendant.    )

---

### PLAINTIFF'S EMERGENCY MOTION TO SET ASIDE ORDERS

### UNDER RULE (60)(b)

1.      Sensa Verogna, "Plaintiff", challenges and seeks relief from all the District "Court(s)" "Orders", in their entirety, [*See* Attached Plaintiff's Exhibit 001], and pursuant to Federal Rule of Civil Procedure Rule 60(d) and Rule 60(b)(4), or (6). Rule 60(b) reads in part: (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On a motion and just terms, the court may relieve a party from a final judgment, order, or proceeding for the following reasons: (4) the judgment is void . . . (6) any other reason that justifies relief. Rule 60(d) allows the Court to set aside judgements for fraud on the court.

### DISTRICT COURT PROCEEDINGS

2.      The Plaintiff has previously challenged this Court's Orders on the grounds that the Court lacked question subject matter jurisdiction prior to adjudicating on the merits of the case and Orders made are therefore void. [*See* United States Court of Appeals for the First Circuit, Case # 20-1933, Document 00117675773, dated 12/02/2020].

3.      The Plaintiff has contended from the get-go that this Courts first Order dated 7/8/2020 which, denied the Plaintiff's motion for entry of default by clerk, [Dkt. 7], and in favor of the defendant Twitter, that the Court was not following its own rules and state laws. Inter alia, Plaintiff objected that the Order usurped and passed judgement contrary to the power of the

governing state authority, failed to apply State law or acknowledge the framework governing unauthorized practice of law, wrongly declared that the defendant had not violated New Hampshire law, that the judge was making his own law and legislating from the bench. [*See* Dkt. 39]. Plaintiff could plainly see bias in the Courts Orders, but had no actual proof of bias.

4.      The Plaintiff also contended that the Court's Order dated 8/27/2020 which denied several of the Plaintiff's motions, were "clearly wrong in view of reliable, probative and substantial undisputed evidence on the whole record. This Court knows or should know that the Defendant's Motion to Dismiss was submitted illegally and can't be used or relied upon by any party or the Court. The acts by the Judge contained in the Order could be seen as a deliberate action to interfere with the disposition of the Plaintiffs claims, extend the entire course of the litigation, and prejudices the Plaintiff severely and undeservingly as the Court's finding are not supported whatsoever by the substantial undisputed evidence in the record."

5.      Judge McAuliffe's 9/21/2020 Order was an act taken in complete absence of any jurisdiction and a clear violation of the Plaintiff's Fifth Amendment rights to Due Process as McAuliffe was in fact notified [See Dkt. 56] that the Plaintiff intended to file his Appeal and Notice to the Court by Sept. 28, 2020, and therefore the Court lacked any subject matter jurisdiction as no mandate had returned from the Appeals Court for this very issue. [See Dkt. 61].

6.      Judge McAuliffe's 9/28/2020 Order dismissing the Plaintiff's Complaint was an act taken in complete absence of any jurisdiction and a clear violation of the Plaintiff's Seventh Amendment guarantees the right to a jury trial in suits at common law, where the value in controversy exceeded twenty dollars.

7.      Judge McAuliffe's 03/08/2021 Order denying without prejudice docket numbers 3, 14, 45, and 46), to renewing them following resolution of plaintiffs interlocutory appeal, if

appropriate", appears to be facially biased in that it presumably pushes, for another time, Plaintiffs

motions for relief, in favor of the Defendant, Twitter.

## UNOFFICIAL PRO HAC VICE POLICIES

8.      What the Plaintiff did not know at these time of these Orders [1] was that starting

on April 26, 2018, Magistrate Judge "Johnstone" was, on a continuous basis, intentionally ignoring

New Hampshire law and established official court pro hac vice rules, and instead promulged,

implemented, managed and adopted her own non-public alternative admission procedures, within

her administrative case management duties, that make pro hac vice laws and rule provisions

unnecessary and for the specific reason of, allowing partner attorneys from the law firm of Perkins

Coie, LLP. "COIE", Ryan "Mrazik" and Julie "Schwartz", the  privilege of practicing before the

Court although they lacked the requirements of eligibility set forth in Local Rule 83.2 and in

violation of New Hampshire State RSA 311:7 and all to the benefit of the defendant, Twitter.

9.      Judge Johnstone's unwritten, illegal pro hac vice  "unofficial policies", allowed

COIE and partner attorneys of COIE, on 68 separate occasions, the privilege of practicing before

the Court, even though these attorneys lacked any of the requirements of eligibility demanded

under Local Rules 83.1 and 83.2 to practice before the Court and in violation of New Hampshire

Statute 311:7. The evidence suggests that Judge Johnstone assumed case management duties in all

these cases, including the Plaintiff's.

10.     In case number 1:17-cv-00749-JD, Judge Johnstone's unofficial pro hac vice

policies allowed COIE attorney Mrazik to file the following on behalf of and as counsel for

"Google" Inc., "YouTube", Inc. and "Twitter", Inc., on 6 separate occasions. [See Plaintiff's

Attached Exhibit 002- 008]. Judge Joseph A. DiClerico, Jr presiding.

---

[1] excludes the Courts 03/08/2021 Order.

11.     In case number 1:18-cv-00203-PB, Judge Johnstone's unofficial pro hac vice policies allowed COIE attorney Mrazik to file the following on behalf of and as counsel for Google, YouTube, and Twitter, on 30 separate occasions. [See id. 002, 009-038]. Judge Paul J. Barbadoro presiding.

12.     In case number 1:17-cv-00733-PB, Judge Johnstone's unofficial pro hac vice policies allowed COIE attorney Mrazik to file the following on behalf of and as counsel for Google, YouTube, and Twitter, on 31 separate occasions. [See id. 002, 039-69], Judge Paul J. Barbadoro presiding.

13.     In the Plaintiff's case number 1:20-cv-00536-SM, Judge Johnstone's unofficial pro hac vice policies allowed COIE attorney Schwartz to file the following on behalf of Twitter, Inc.. Exhibit 070 June 1, 2020, Document 3, Twitter Motion to Dismiss. [See id. 002 and 070]. Steven J. McAuliffe presiding.

14.     Judge Joseph N. Laplante and Landya B. McCafferty Chief Judge are the only judges remaining in the Court that are not implicated in any of these 68 pleadings.

15.     Judge Johnstone, in her official capacity and within her administrative duties;

        A.      implemented and executed an illegal policy that was officially and informally adopted as custom by the District Court. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell, 436 U.S. 658).

        B.      was the final policymaking authority when it came to implementing or deciding Pro Hac Vice policies. Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83 (1986).

        C.      Judge Johnstone, a federal official, in her individual, legislative and administrative capacities intentionally caused constitutional torts under color of her authority.

16.     Judge Johnstone, who was given the task of preliminary case review and pre-trial adjudication authorization by the court, was active in the Plaintiff's case to which Schwartz was a participant, as well as all cases in which Mrazik practiced unauthorized practice of law "UPL", in the District Court.

17.     Judge Johnstone's was duty-bound to at the very least disclose her unofficial policies and failed in those duties owed to the Plaintiff.

18.     Judge Johnstone who, through bias, unofficial policies or outright corruption, prevented the Plaintiff from getting a fair proceeding in the District Court.

## LOCAL DISTRICT COURT RULES

19.     The Supreme Court and all courts established by an Act of Congress may from time to time prescribe rules for the conduct of their business. Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title. See 28 U.S. Code § 2071(a).

20.     Any rule prescribed by a court, other than the Supreme Court, under subsection (a) shall be prescribed only after giving appropriate public notice and an opportunity for comment. See 28 U.S. Code § 2071(b).

21.     A rule of a district court prescribed under subsection (a) shall remain in effect unless modified or abrogated by the judicial council of the relevant circuit. See 28 U.S. Code § 2071(c)(1).

22.     If the prescribing court determines that there is an immediate need for a rule, such court may proceed under this section without public notice and opportunity for comment, but such court shall promptly thereafter afford such notice and opportunity for comment. See 28 U.S. Code § 2071(e).

23.     Johnstone's unofficial policies were not prescribed by the district court under section 28 U.S. Code § 2071(f).

24.     A federal court has the power to control admission to its bar and its decision whether to grant pro hac vice status is committed to the sound discretion of the Court and its Clerks if such motion is presented and unopposed.

25.     Although the practice of law is regulated by the judiciary, the United States District Courts have no uniform standard for admission *pro hac vice and r*egulation of the practice of law generally has been left exclusively to the States.

26.     Justices, Magistrates and Clerks possess the power to grant pro hac vice, the authority is not unlimited, but they **do not** possess the power to individually or unofficially promulgate and exercise rules of the court and in violation of New Hampshire law. The official rules of the court regulate the extent of which a judge may exercise their powers in the  course of legal proceedings and must be used according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights. To give such proceedings any validity, there must be a tribunal competent by its constitution -- that is, by the law of its creation -- to pass upon the subject matter of the suit.

## PRO HAC VICE ADMISSIONS

27.     The District Court is a court established by an Act of Congress and did so prescribed pro hac vice rules under LR 83.2(b), which were in effect at all times mentioned in this Complaint. Pro hac vice admissions in the District Court are governed by LR 83.2(b). To obtain the privilege of appearing in a particular case in the District Court, an applicant must;

A.      be a member in good standing of the bar of any court of the United States or the highest court of any state;

B.      have a member of the district's bar who is actively associated with the attorney
        file a motion for pro hac vice admission;

C.      attach to the motion an affidavit in compliance with LR 83.2(b)(1); and

D.      submit with the motion a $100 fee (per person) via credit card or ACH debit.

28.     A federal court has the power to discipline attorneys who appear before it, but only
if the attorney has been accepted to the bar of the court. See LR 83.3.

29.     In all these cases, to which Exhibits 002-070 were introduced to the Court, both
Mrazik and Schwartz invoked the processes of the Court in a matter pending before it, exercising
their legal training and judgment concerning the impact of the Plaintiff's pleadings upon Twitter.
[See Plaintiff's Exhibits 002-070]. These actions constituted UPL. When Mrazik and Schwartz
appeared before the Court of record for the purpose of transacting business with the court in
connection with Twitter's pending litigation or when Mrazik and Schwartz sought to invoke the
processes of the Court in a matter pending before it, both were engaging in the practice of law. It
is uniformly held that many of activities which Mrazik and Schwartz participated in and advised
Twitter, such as writing and interpreting contracts, agreements and the giving of legal advice in
general, constitute practicing law in New Hampshire. Ark. Bar Assoc. v. Union Nat'l Bank, 224
Ark. 48, 53-54, 273 S.W.2d 408, 411-412 (1954). Additionally, neither Mrazik or Schwartz
obtained permission to appear pro hac vice and therefore had engaged in the UPL when appearing
before the Court and acted as officers of the court and were rendering a service to the Court.

30.     Twitter hired COIE, Mrazik and Schwartz to represent its interests in New
Hampshire Federal Court cases and constitute the UPL, including within the interpretation of New
Hampshire laws.

31.     Attorney Mrazik did not apply to the Court, on the record, in any of these cases. It is undisputed that Attorney Schwartz did not apply to the Court until June 8, 2020, one week after her motion to dismiss was filed.  Applying to the Court is only the preliminary step to being granted pro hac vice status.

32.     Attorneys Mrazik and Schwartz who were not at the time members of the district's bar, must and failed to complete any of the requirements prior to appearing before the Court.

33.     The act of giving favors or privilege(s) to appear and plead before the Court to Twitter and their attorneys when they are not *entitled* too, is non-judicial because it does not require an exercise of judicial discretion or a determination of the parties' rights and are therefore ministerial, administrative, or legislative acts. Acts typically, a layperson could perform. Acts not to be confused with the act of adjudicating a pro hac vice motion entitling them to a judgement, after an objection.

## PLAINTIFFF'S DUE PROCESS RIGHTS

34.     Although the Fifth Amendment Due Process Clause is brief, important parts of the Supreme Court's constitutional doctrine rest on it. At the most general level, the clause reiterates the principle of the rule of law: the government must act in accordance with legal rules and not contrary to them. A more specific application of the Clause is the doctrine today called "procedural due process," which concerns the fairness and lawfulness of decision-making methods used by the courts and the executive. Governmental actors violate due process when they frustrate the fairness of proceedings, such as when a judge is biased against a party in a civil action. Likewise, fair notice and the opportunity to be heard are due process requirements in criminal, civil, and other proceedings.

Another, more controversial application of the Clause is the doctrine today called "substantive due process," which extends beyond the methods government institutions use to make decisions, and places substantive limits on governmental authority. There are long-standing debates regarding whether the text and history of the Fifth Amendment Due Process Clause support the concept of "substantive due process" that has been embraced by most of the current Supreme Court justices in varying degrees. These differences of opinion necessarily are informed by interpretations of the meaning and relevance of the historical evidence, the meaning of the words used by the Framers in the Clause and whose understanding of that meaning is relevant, and more fundamental views of whether the meaning of the Constitution was fixed when written or can change over time. Despite the lack of consensus over the scope of substantive due process, the meaning of the Fifth Amendment Due Process Clause in the procedural context is relatively settled as a matter of Supreme Court jurisprudence.

Although both the Fifth and Fourteenth Amendments have Due Process Clauses (the Fifth Amendment Due Process Clause constraining the authority of the federal government and the identical Due Process Clause of the Fourteenth Amendment constraining only state governments), there is only one Equal Protection Clause, and it applies only to the States. The Court has also found that the Due Process Clause of the Fifth Amendment imposes on the federal government restrictions that are almost identical to those imposed on the States by the Equal Protection Clause of the Fourteenth Amendment.[2]

---

[2] See https://constitutioncenter.org/interactive-constitution/interpretation/amendment-v/clauses/633#:~:text=The%20Fifth%20Amendment's%20Due%20Process%20Clause%20does%20as%2 0much%20work,life%2C%20liberty%2C%20or%20property.&text=deserves%20greater%20attention.- ,The%20Fifth%20Amendment's%20Due%20Process%20Clause,understood%20to%20require%20fair%2 0notice.

35.     "Equal justice under law is not merely a caption on the facade of the Supreme Court building, it is perhaps the most inspiring ideal of our society. It is one of the ends for which our entire legal system exists...[I]t is fundamental that justice should be the same, in substance and availability, without regard to economic status." Lewis F. Powell, Jr., the late U.S. Supreme Court Justice.

36.     Access to the courts is a fundamental right protected by the Constitution. Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953, 959 (6th Cir.1986). Plaintiff was denied Due Process under the Fifth Amendment, which at a minimum requires an impartial tribunal. Mullane v. Central Hanover Bank (1950).

37.     The right to an impartial judge is based on the Due Process Clause of the United States Constitution and is expressly set forth in many state constitutions.[3] In addition, state codes of judicial conduct require that judges be impartial.

38.     The Supreme Court has deemed the due process guarantees of the Fifth and Fourteenth Amendments to protect certain substantive rights that are not listed (or "enumerated") in the Constitution. The idea is that certain liberties are so important that they cannot be infringed without a compelling reason no matter how much process is given.

39.     The Seventh Amendment guarantees the right to a jury trial in suits "at common law, where the value in controversy shall exceed twenty dollars." Despite the reference to suits "at common law," it is settled that the "right to a jury trial includes more than common law forms of action recognized in 1791" when the Seventh Amendment was adopted, and "extends to causes of

---

[3] *See* U.S. Constitution, Amend. XIV, § 1 ("No state shall . . . deprive any person of life, liberty, or property, without due process of law[.]"). *See, e.g.,* MA Const., art. XXIX, § 1 ("[I]t is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit.").

action created by Congress." The reference to "common law" suits refers to suits for legal, i.e., monetary, as opposed to equitable relief. The federal Constitution guarantees the right to jury trial in civil actions in federal courts. See U.S. Const. amend VII.

40.     The term "due process of law," when applied to judicial proceedings, means a course of legal proceedings according to those rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. Pennoyer v. Neff, 95 U.S. 714 (1878).

41.     Plaintiff had a right to due process and the privilege of being able to bring constitutional torts to this federal court and in front of a jury.

## DISCUSSION

42.     Judge Johnstone's self-promulgated unofficial pro hac vice policies, intentionally;

A.      circumvented the District Courts prescribed local rules governing practice and procedure which are governed by both statute and the Federal Rules of Practice and Procedure to benefit the Defendant in Plaintiff's case. See 28 U.S.C. §§ 2071(a)-(b); Fed. R. Civ. P. 83.2.

B.      were inconsistent and contrary with both Acts of Congress and the Federal Rules of Practice and Procedure as they were not prescribed;

1.) by the U.S. Supreme Court under the Rules Enabling Act of 1934;

2.) through recommendations from the Rules Advisory Committee. See 28 U.S.C. § 2071(b) ("Any rule prescribed by a court, other than the Supreme Court, under subsection (a) shall be prescribed only after giving appropriate public notice and an opportunity for comment."); or

3.) after notice and an opportunity for bench, bar, and general public, comments; or

4.) by the District Court who\*, has never determined that there was an immediate need for these unofficial policies, and to date the District Court has not\*, filed any such notice or opportunity for comment as prescribed by § 2071(e) regarding these unofficial policies. (\*according to Public Court records).

C.    were inconsistent with current laws, contrary to the rules announced by the judiciary, and were not governed in their operation by rules of procedure.

D.    denied the existence of general law N.H. RSA 311:7.

E.    usurped and preempted the power of the governing state authority when it passed judgment contrary to the wisdom and efficacy of N.H. RSA 311:7.

F.    were substantially biased in favor of COIE partner attorneys and the Defendant Twitter.

43.    Procedural due process," which concerns the fairness and lawfulness of decision-making methods used by the courts and the executive. Governmental actors violate due process when they frustrate the fairness of proceedings, such as when a judge is biased against a party in a civil action. Likewise, fair notice and the opportunity to be heard are due process requirements in criminal, civil, and other proceedings.

**Rule 60(b), Clause (4) the judgment is void**

44.    In considering whether a judgment should be set aside because it is a nullity, there is no discretion in the trial court. If a judgment is void it must be vacated.

45.    The Court acted in a manner inconsistent with due process of law, and therefore it's judgments are void. See: Wright and Miller, Federal Practice and Procedure: Civil, § 2862, pp. 199-200.

46.     The Court and it's Judges have demonstrated actual bias in favor of the Defendant Twitter, utilized unofficial policies in their decision making, and acted in a manner inconsistent with due process of law. The rendering of these judgments, preconceived in the Defendants favor, were reached without due process of law, are without jurisdiction and are void as the United States is forbidden by the fundamental law to take either life, liberty or property without due process of law, and its courts are included in this prohibition. Bass v. Hoagland, 172 F.2d 205 (5th Cir. 1949).

47.     Procedural due process," which concerns the fairness and lawfulness of decision-making methods used by the courts and the executive. Governmental actors violate due process when they frustrate the fairness of proceedings, such as when a judge is biased, or unofficial policies are utilized and promoted, as was here, against a party, like the Plaintiff, in a civil action. Likewise, the opportunity to be heard are due process requirements in criminal, civil, and other proceedings. Here, as its judgements were preconceived or rigged in favor of the Defendant, it doesn't appear that the Court has heard a word the Plaintiff has written.

**Rule 60(b), Clause (6) any other reason that justifies relief**

48.     "[A]ny other reason justifying relief from the judgment." is reserved for exceptional and compelling circumstances. Moore's Federal Practice, Vol. 1, § 60.27. It must be based on some other reason than the first five clauses, and it must be some ground which will justify relief from the final judgment. Moore terms it a "grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, or when it is uncertain that one or more of the preceding clauses afford relief." (P. 60-295) See also, Klaprott v. United States, 335 U.S. 601, 614-615, 69 S. Ct. 384, 390, 93 L. Ed. 266 (1949); Ackermann v. United States, 340 U.S. 193, 71 S. Ct. 209, 95 L. Ed. 207 (1950); Alvestad v. Monsanto, 671 F.2d 908 (5th Cir. 5th 1982);

Turner v. Salvatierra, 580 F.2d 199 (5th Cir. 5th 1978); Menier v. United States, 405 F.2d 245 (C.A. 5th 1968).

49.     A party may move to set aside the judgment pursuant to Rule 60(b)(6) if there are "extraordinary and compelling" circumstances justifying relief. When ruling on a Rule 60(b)(6) motion, the trial court may consider the following factors: "(1) [t]hat final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) [omitted factor relevant only to default judgments]; (6) whether if the judgment was rendered after a trial on the merits-the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack." See Carpenter v. Berry, 58 So. 3d 1158, 1162 (Miss. 2011).

50.     The DOJ failed to properly supervise Judge Johnstone and allowed the illegal policy to ferment into an illegal policy which was administered by the Court. City of Canton v. Harris, 489 U.S. 378, 388 (1989), all but Judge Laplante and Landya B. McCafferty Chief Judge were presumably infected by these unofficial policies.

## CONCLUSION

51.     There is enough evidence to support a claim that;

A. the Court and its justices allowed COIE and partner attorneys of COIE, on 68 separate occasions, the privilege of practicing before the Court, even though these out-of-state attorneys lacked any of the requirements of eligibility and that this Court was, in fact biased in favor of the Defendant Twitter, long before and at the time Plaintiff filed his case on May 4, 2020 and the

subsequent Motion to Dismiss and the reconsideration of that motion. [See Attached Plaintiff's Exhibits 002-069].

    B. the Plaintiffs' Dkt. 7 Motion for Default and the reconsideration motion, Dkt. 39;

        1. were decided on 7/8/2020 and 8/13/2020, utilizing Johnstone's unofficial policies and not official policies of the Court.

        2. were contrary to law, biased in fact and based on unofficial policies and not by rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights.

        3. that the Court was compromised or predisposed to being biased in favor of Defendant. If it had decided in favor of the Plaintiff, Johnstone's unofficial policies would then be revealed to the public as Twitter would argue that the Court has allowed them the privilege of appearing 68 times, prior, despite lacking any of the requirements of eligibility.

        4. were decided upon information outside the case that had a direct bearing on the Courts decisions.

        5. the Court was predisposed so as to protect itself.

    C. the Courts' demonstratable bias permeated ALL the Orders of the Court.

    D. Johnstone lacked the authority to promulgate unofficial policies, by herself, that would favor the Defendant Twitter and it's attorneys.

    E. Johnstone's unofficial policies are unconstitutional.

    F. Johnstone's unofficial policies were not authorized by statute, operated with no restrictions, unlimited power, and without any established standards to govern its exercise.

G. that the Plaintiff did not receive a fair opportunity to present his claims in any of these proceedings as the judge or tribunal were not impartial.

H. the rules used did not come from official channels and therefore are unconstitutional and a violation of the Plaintiffs rights to equal protection and due process.

52.     Any reasonable person could conclude that submitting a pleading to the Court when you are self admittedly, not so authorized to do so, is illegal in the State of New Hampshire. The document submitted becomes a nullity, the Defendant has not answered the Complaint in the time subscribed and therefore *shall* be in default. But, because this District Court factually prefers one party over another, the Plaintiff is still waiting in the foyer and has yet to be allowed into the Courtroom. The facts demonstrate that the District Court utilized policies that were not promulgated through the Constitution, down to the Courts, through notice and rebuttal of the public, and then decided by member Justices of the Court. The unofficial policies used here, provided unyielding, unbridled and unconstitutional power. As if coming up with an argument up against a billion-dollar defendant who continually seeks to squash the little guy by whatever immoral means necessary, who employs some of the most powerful attorneys in the country isn't hard enough for the lay-person Plaintiff, he now has to provide arguments that will overcome established biases and unofficial, non-public policies employed by employees of a court with something of their own to hide.

53.     Additionally, the Courts aberrational behavior towards basic rules and laws, leans towards favoritism towards Twitter, the defendant here. When the Plaintiff speaks of not being allowed into the courtroom, a reasonable person could ascertain from the records that, after over 10 months of litigation, none of the Plaintiffs substantive motions have been answered. Plaintiff's Motions [Dkt. 5] Motion to Declare Twitter a Public Accommodation, [Dkt. 6] Motion to Declare

Twitter a State Actor, [Dkt 14] Motion to Strike, [Dkt. 16] Motion to Declare Twitters Platform a

Public Forum [Dkt. 42] Judicial Notice, [Dkt. 45], Motion Rule 5.1 Motion and MOL Challenging

the Constitutionality of Title 47 USC Code § 230 [Dkt 46], and Motion for Default of Default By

Clerk, [Dkt. 56] Motion to Delay Compulsion of True Name. All these motions were pushed, left

unanswered on the merits and/or not substantively answered by the Court. Some of the motions

would have allowed the Court to gain Jurisdiction. The only motion substantively answered by the

Court was Plaintiff's Motion to Proceed Anonymously [Dkt. 15] where it turned a blind eye to the

facts, misapplied current law, then attempted to judicially bully the Plaintiff into revealing his true

name with threats of dismissal when it clearly had notice of appeal and then set an appeals trap by

doubling up on the dismissal Order. We also know that according to the Defendant, Twitter was

directed by the District Court to file this Response, in the Appeals Court, by 12 p.m. on Monday,

September 28. [See First Federal Circuit Court of Appeals, Case: 20-1933 Document:

00117648436 Page: 2, Filed: 09/28/2020].[4] This admittance by the Defendant indicates ex-parte

communications and collaboration between the Court and the Defendant, where, here, the District

Court is now advising and directing the Defendant to file a response to the appeals court in replying

to the Plaintiff's Motion to Stay, which was filed in the Appeals Court and not in the District Court.

When is it ever ok for any court to direct or advise ex parte to any defendant that they should or

shouldn't file any motion with another court? The District Court certainly did not advice the

Plaintiff that biases, unofficial policies and not the official policies would be utilized in

determining motions before the Court.

[4 ]Twitter was directed to file this Response by 12 p.m. on Monday, September 28. Shortly before
Twitter filed this Response, the District Court issued an order stating "Plaintiff did not comply with
the court's extended disclosure order but instead filed an 'interlocutory' appeal on the final day
allowed. As an appeal has been filed, and dismissal was inevitable for failure to comply - thus
essentially a final order - this court will stay further action pending resolution of plaintiff's appeal."
This stay likely moots Appellant's Motion but, at the request of the Court, Twitter nonetheless
submits this Response on the merits of a stay.

54.     If the government is to act in accordance with legal rules and not contrary to them, it will adjudicate that the fairness and lawfulness of the decision-making methods used by the Court in this case are exceptional and compelling circumstances justifying reversal of these Orders. The acts by both Judges, McAuliffe and Johnstone, contained in the Orders could be seen as a deliberate action to interfere with the disposition of the Plaintiffs claims, extend the entire course of the litigation, and prejudices the Plaintiff severely and undeservingly. The judges decisions are not based on the facts that are in the record or based upon the law or the official rules of the Court. As there is no factual basis, or good reason, for the judge's rulings, particularly in the Plaintiff's Motion to Default and Reconsideration of that Motion, all Orders should be voided. Additionally, the Plaintiff had no notice of the unofficial rules being employed or otherwise utilized by the Judges. Would it not be fraud for the Court to make one party believe that the official policies were being used, when in fact they were not?

55.     The conduct of this Court is clearly repugnant to the concept of due process and does not look like an impartial tribunal or due process of law under the Constitution. Because it is absolutely imperative that people have full faith and confidence in the judicial process, and because there is evidence of actual bias, the District Court should void all judgements and Orders made in this case as prescribed by Rule 60(b) and Rule 60(d) and allow a different and uncompromised judge to take over.

56.     Plaintiff's Exhibits 003-070 were retrieved using public records.

57.     No memorandum of law is necessary because Plaintiff cites herein the authority in support of his objections. Consent was sought, but Defendant has not yet replied.

WHEREFORE, for the reasons set forth above, Plaintiff requests that this Court "void" and set aside under Rule 60(b)(4), (6) or Rule 60(d), all or some of the Orders of the Court that are contained in Plaintiff's Attached Exhibit 001.

Respectfully,

/s/ Plaintiff, Anonymously as Sensa Verogna
SensaVerogna@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March 2021, the foregoing document was made upon the Defendant, through its attorneys of record to Jonathan M. Eck jeck@orr-reno.com and Julie E. Schwartz, Esq., JSchwartz@perkinscoie.com and of an interested party, indraneel.sur@usdoj.gov.