FILED - USDC -NH
2021 APR 16 PM 12:50

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Sensa Verogna, Plaintiff,
v.

Twitter Inc., Defendant.

)
)
)
)
)
)
)
)
)

Case #: 1:20-cv-00536-SM

**Motion and MOL for Disqualification of the Honorable Steven M. McAuliffe, Pursuant to 28 US.C. §§ 144 and 455**

---

## PLAINTIFF'S MOTION AND MOL TO DISQUALIFY DISTRICT JUDGE AND DECLARATION IN SUPPORT THEREOF

Sensa Verogna, the "Plaintiff" moves to disqualify Honorable District Judge Steven J. McAuliffe, hereinafter as, "Judge McAuliffe", in accordance with 28 USC Sections 144, [1] as he has a personal bias or prejudice either against the Plaintiff or in favor of the Defendant, "Twitter", Inc. and in favor of Twitters Defense Council Attorneys, Jonathan M. Eck., hereinafter, "Attorney Eck" and Julie E. Schwartz, Esq., hereinafter, "Attorney Schwartz". In the alternative, Plaintiff respectfully requests that Judge McAuliffe, before whom this matter is pending, recuse himself from all future proceedings in this matter, *sua sponte* pursuant to Canon 3(E)(l) of the Code of Judicial Conduct and in accordance with 28 USC Section 455.[2]

---

[1] In relevant part, section 144 states: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before … whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias, or prejudice exists, and shall be

Pursuant to 28 U.S.C. §§ 455(a), (b)(1), and (b)(5)(i) and 28 USC Section § 144 the Plaintiff hereby moves to disqualify District Judge Steven J. McAuliffe from further participation in this case.

## I. BACKGROUND

1.  No motions for disqualification have been previously filed or granted.

2.  Based on the foregoing facts, the Plaintiff fears that Judge McAuliffe has prejudged his claims as being without basis and sanctionable, and as a result he fears that he will not receive a fair trial because of the prejudice or bias of Judge McAuliffe. *See* Attached Declaration in Support, attached herein. *See* also Doc. 74

3.  The fact that this motion is filed in good faith is supported by the signature of the Plaintiff's Declaration (Exhibit A), who is proceeding anonymously as Sensa Verogna, and as PRO SE Counsel of Record and to himself. *See* Attached Certificate of Counsel of Record.

4.  Twitter failed to consent to this motion.

5.  This is a case with national public policy implications. This Court should not permit this case to proceed to trial when it is certain that any outcome unfavorable

---

… filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time."

**[2]** In relevant part, section 455 states: (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. objective measurement depends upon an assessment of how a reasonable person would respond to the judicial conduct. (b)(1) He shall also disqualify himself where he has a personal bias or prejudice concerning a party, requires that a judge exhibit conduct which reveals an actual personal attitude of bias or prejudice toward a party. Some ill will or favoritism must be directed toward a party as opposed to an attitude toward the subject matter of the proceedings. 4. (5)(i) He is a party to the proceeding.

to the Plaintiff will be clouded by the appearance of bias. That cloud can still be prevented at this point, but not later.

6.     Although Judge McAuliffe is undoubtedly an excellent jurist and well-qualified to preside over numerous civil cases, the Plaintiff is compelled to file this Motion to Disqualify in conformity with § 144 and  § 455 because he has a reasonable fear that Judge McAuliffe may not be an independent jurist when it comes to his claims.

7.     Even if Judge McAuliffe's counsel and advocacy of the Defendant or Attorney Eck and Attorney Schwartz do not suffice to demonstrate actual bias, they certainly give rise to an appearance of partiality that itself requires recusal. And not each and every incident proves bias by the judge, but collaterally a reasonable person could come to the conclusion that Judge McAuliffe is unreasonably biased against the Plaintiff and is favoring Twitter and  its counsel Attorney Eck and Attorney Schwartz.

8.     Judge McAuliffe, acting in his personal capacity, without personal or subject matter jurisdiction, and on behalf of Twitter and in favor of Twitters Defense Council Attorney Eck., used his position as a Federal District Judge, to make "Orders" which prejudiced the Plaintiff and has benefitted the Defendant and its Counsel, Attorney Eck and Attorney Schwartz. See Attached Declaration of the Plaintiff. (*See* also Doc. 74 and 74.1)

## II. JUDGE MCAULIFFE'S ORDERS

9.     Judge McAuliffe's 9/21/2020 Order was an act taken in complete absence of any jurisdiction and a clear violation of the Plaintiff's Fifth Amendment rights to Due Process as McAuliffe was in fact notified [See Dkt. 56] that the Plaintiff intended to file his Appeal and Notice to the Court by Sept. 28, 2020, and therefore the Court lacked any subject matter jurisdiction as no mandate had returned from the Appeals Court for this very issue. [See Dkt. 61].

10.     Judge McAuliffe's 9/28/2020 Order dismissing the Plaintiff's Complaint was an act taken in complete absence of any jurisdiction and a clear violation of the Plaintiff's Seventh Amendment guarantees the right to a jury trial in suits at common law, where the value in controversy exceeded twenty dollars.

11.     Judge McAuliffe's 03/08/2021 Order denying without prejudice docket numbers 3, 14, 45, and 46), to renewing them following resolution of plaintiff's interlocutory appeal, if appropriate", appears to be facially biased in that it presumably pushes, for another time, Plaintiffs motions for relief, in favor of the Defendant, Twitter.

12.     Judge McAuliffe's 3/19/2021 Order denying Plaintiff's Emergency Motion to Set Aside Orders Under Rule (60)(b) was decided within 24 hours and suggests lack of care or due diligence.

13.     Judge McAuliffe utilized Judge Johnstone's unofficial pro hac vice policies that allowed COIE attorney Schwartz to file the following on behalf of Twitter, Inc..

Exhibit 070 June 1, 2020, Document 3, Twitter Motion to Dismiss. [Dkt. 74, Exhibits 002 and 070 ].

14.    Judge McAuliffe allowed the Defendant's counsel the privilege of practicing before the Court, even though these out-of-state attorneys lacked any of the requirements of eligibility of the Court.

15.    Judge McAuliffe Orders decided on 7/8/2020 and 8/13/2020;

a.    utilized Judge Johnstone's illegal, unwritten. unofficial, pro hac vice policies and not official policies of the Court.

b. were contrary to law, biased in fact and based on unofficial policies and not by rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights.

c. allowed the Court to be compromised or predisposed to being biased in favor of Defendant. If it had decided in favor of the Plaintiff, Johnstone's unofficial policies would then be revealed to the public as Twitter would argue that the Court has allowed them the privilege of appearing 68 times, prior, despite lacking any of the requirements of eligibility.

d. were decided upon information outside the case that had a direct bearing on the Courts' decisions.

### Throughout the Plaintiff's Case Judge McAuliffe;

16.    knew that the Plaintiff was not receiving a fair opportunity to present his claims in any of these proceedings as he or tribunal were not impartial.

17.     knew the rules used did not come from official channels and therefore are unconstitutional and a violation of the Plaintiffs rights to equal protection and due process.

18.     allowed a demonstratable bias permeated ALL the Orders of the Court.

19.     knew Judge Johnstone lacked the authority to promulgate unofficial policies, by herself, and knew these unofficial policies favored the Defendant Twitter and it's attorneys.

20.     knew that Judge Johnstone's unofficial policies are unconstitutional and did nothing to alert the Plaintiff of these unofficial policies.

21.     knew Judge Johnstone's unofficial policies were not authorized by statute, operated with no restrictions, unlimited power, and did nothing to alert the Plaintiff or rectify these policies.

22.     acted in clear absence of any jurisdiction while making Court Orders.

23.     concluded upon merits of the case when he had no jurisdiction to do so.

**[3]** "For a court to pronounce upon [the merits] when it has no jurisdiction to do so,"

24.     acted as Counsel or as an advocate for the Defendant.

25.     neglected to bring any of these stated facts to the attention of the Plaintiff.

25.     decided Plaintiff's Doc. 74 Motion in less than 24 hours without stating

---

**[3]** Steel Co. held that Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case.

his reasons.

26.    has allowed an illegal motion to sit in record for over 10 months.

Steel Co. declared, "is ... for a court to act *ultra vires*." 523 U.S., at 101—102. *Steel Co.*

*v. Citizens for a Better Environment,* 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

28.    abused his discretion and failed its independent obligation to determine

whether personal, venue or subject-matter jurisdiction existed prior to making

judgments on the merits of the case, even though it has been challenged by the

Appellees. [4]

29.    acted clearly outside the subject matter jurisdiction of the court over which

he presided, acts done in the clear absence of all jurisdiction. *Ireland v. Tunis*, 113 F.3d

1435, 1441 (6th Cir.), cert. denied, ___ U.S. ___, 118 S. Ct. 560, 139 L. Ed. 2d 401

(1997).

30.    prejudicial Orders and conduct is unprecedented, and prejudicial— and

apparently influenced by extra—Non-Judicial Sources.

31.    obstinately ignoring the merit of the evidence produced by the Plaintiff,

throughout.

32.    failed to proceed with dispatch.

---

[4] Wright & Miller § 3522, p. 126 ("Even if the parties remain silent, a federal court, whether trial or appellate, is obliged to notice on its own motion its lack of subject matter jurisdiction, or the lower court's lack of subject matter jurisdiction when a case is on appeal."). All courts have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)) (jurisdiction upheld).

33.     repeatedly tortured law and procedure to punish the Plaintiff.

34.     repeatedly ordered dismissal in the clear absence of any jurisdiction, he abandoned any semblance of the neutrality required of a federal judge, by affirmatively and actively directing litigation against the Plaintiff, the district court created at least the "appearance of bias" that mandated its disqualification.

35.     Any reasonable person could conclude that submitting a pleading to the Court when you are self admittedly, not so authorized to do so, is illegal in the State of New Hampshire. The document submitted becomes a nullity, the Defendant has not answered the Complaint in the time subscribed and therefore *shall* be in default. But, because this District Court factually prefers one party over another, the Plaintiff is still waiting in the foyer and has yet to be allowed into the Courtroom. The facts demonstrate that the District Court utilized policies that were not promulgated through the Constitution, down to the Courts, through notice and rebuttal of the public, and then decided by member Justices of the Court. The unofficial policies used here, provided unyielding, unbridled and unconstitutional power. any established standards to govern its exercise.

36.     In acting in clear absence of jurisdiction, Judge McAuliffe was, in fact, Mr. McAuliffe, private citizen, and according American Bar Association **[5]** was a "person", (b)[2], before this Court, (b)(3), engaged in the "practice of law", (b)(1), by;

---

**[5]** See *Definition Of The Practice Of Law*, (9/18/02), All cites in this paragraph.

applying legal principles and judgment with regard to the circumstances or objectives of a person that require the knowledge and skill of a person trained in the law, (b)(1); by counseling the Defendant as to their legal rights or responsibilities, (c)(1); in drafting (c)(2); and filing, (c)(3), Order dated 7/8/2020 and 8/13/2020 that affected the legal rights of both parties and to the harm of the Plaintiff. Additionally, Mr. McAuliffe would not be exempt or excluded from the rules above as he was neither authorized by a limited license to practice, (d)(1); representing himself pro se, (d)(2); or serving as a mediator, arbitrator, conciliator or facilitator, (d)(3); or providing services under the supervision of a lawyer in compliance with the Rules of Professional Conduct. (d)(4); and should be subject to the civil and criminal penalties of this jurisdiction, (f), and may be guilty of a high misdemeanor. See 28 U.S. Code § 454. Mr. McAuliffe prejudice against the Plaintiff and advocacy in favor of the Defendant and Defendant's Counsel, Attorney Eck and Attorney Schwartz demonstrates a pervasive bias against the Plaintiff, and has violated the Plaintiff's right to a "neutral and detached judge."

37. If the government is to act in accordance with legal rules and not contrary to them, it will adjudicate that the fairness and lawfulness of the decision-making methods used by the Court in this case are exceptional and compelling circumstances justifying reversal of these Orders. The acts by Judge McAuliffe, contained in the Orders could be seen as a deliberate action to interfere with the disposition of the Plaintiffs claims, extend the entire course of the litigation, and prejudices the Plaintiff severely and undeservingly. The judges decisions are not based on the facts that are in

the record or based upon the law or the official rules of the Court. As there is no factual basis, or good reason, for the judge's rulings, particularly in the Plaintiff's Motion to Default and Reconsideration of that Motion, all Orders should be voided. Additionally, the Plaintiff had no notice of the unofficial rules being employed or otherwise utilized by the Judges. Would it not be fraud for the Court to make one party believe that the official policies were being used, when in fact they were not?

## III. WHAT DO NON-ORDERS TELL US

38.    Additionally, Judge McAuliffe's aberrational behavior towards basic rules and laws, leans towards favoritism towards Twitter, the defendant here. A reasonable person could ascertain from the records that, after over 10 months of litigation, none of the Plaintiffs substantive motions have been answered. Plaintiff's Motions [Dkt. 5] Motion to Declare Twitter a Public Accommodation, [Dkt. 6] Motion to Declare Twitter a State Actor,  [Dkt 14] Motion to Strike, [Dkt. 16] Motion to Declare Twitters Platform a Public Forum [Dkt. 42] Judicial Notice,  [Dkt. 45], Motion Rule 5.1 Motion and MOL Challenging the Constitutionality of Title 47 USC Code § 230 [Dkt 46], and Motion for Default of Default By Clerk, [Dkt. 56] Motion to Delay Compulsion of True Name. All these motions were pushed, left unanswered on the merits and/or not substantively answered by the Court. Some of the motions would have allowed the Court to gain Jurisdiction. The only motion substantively answered by the Court was Plaintiff's Motion to Proceed Anonymously [Dkt. 15] where Judge McAuliffe turned a blind eye to the facts, misapplied current law, then attempted to judicially bully the

Plaintiff into revealing his true name with threats of dismissal when it clearly had notice of appeal and then set an appeals trap by doubling up on the dismissal Order. We also know that according to the Defendant, Twitter was directed by the District Court to file this Response, in the Appeals Court, by 12 p.m. on Monday, September 28. [See First Federal Circuit Court of Appeals, Case: 20-1933 Document: 00117648436 Page: 2, Filed: 09/28/2020].[6] This admittance by the Defendant indicates ex-parte communications and collaboration between the Court and the Defendant, where, here, the District Court is now advising and directing the Defendant to file a response to the appeals court in replying to the Plaintiff's Motion to Stay, which was filed in the Appeals Court and not in the District Court. The District Court certainly did not advice the Plaintiff that biases, unofficial policies and not the official policies would be utilized in determining motions before the Court.. A court that appears to be directing and giving marching orders to the Defendant undermines the public confidence in the judicial system that section 455(a) was designed to protect.

39.     Most courts would have dispatched and granted the motion to dismiss as a matter of routine on the record within days of its filing. Even though all precedent

---

[6] Twitter *was directed* to file this Response by 12 p.m. on Monday, September 28. Shortly before Twitter filed this Response, the District Court issued an order stating "Plaintiff did not comply with the court's extended disclosure order but instead filed an 'interlocutory' appeal on the final day allowed. As an appeal has been filed, and dismissal was inevitable for failure to comply - thus essentially a final order - this court will stay further action pending resolution of plaintiff's appeal." This stay likely moots Appellant's Motion but, *at the request of the Court,* Twitter nonetheless submits this Response on the merits of a stay.

requires granting the motion to dismiss, Judge McAuliffe did not grant the motion, instead, he litigated the issues himself.

## IV. THE COURTS IMPROPER EX PARTE COMMUNICATIONS REQUIRE DISQUALIFICATION.

40.     According to Black's Law Dictionary, a judicial proceeding or communication is ex parte "when it is taken or granted at the instance and for the benefit of one party only, and without notice to, or contestation by, any person adversely interested." An ex parte communication is improper when it involves the merits of the case, and it is made without informing the opposing counsel. Most attorneys know that ex parte communications are improper, but some nevertheless proceed to argue their case outside the presence of opposing counsel.

41.     An ex parte discussion of the merits is improper not just because it is uncomfortable for the court, but also because it is prohibited by virtually every state's code of professional responsibility and the ABA Model Rules of Professional Conduct. Disciplinary Rule 7-110(B) ("Contact With Officials") commands in pertinent part that "[i]n an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending, except: (1) In the course of official proceedings in the cause; and (2) In writing if he promptly delivers a copy of the writing to opposing counsel or to the adverse party if he is not represented by a lawyer."

42.     Similarly, ABA Model Rule 3.5 ("Impartiality and Decorum of the Tribunal") specifies in pertinent part that "[a] lawyer shall not: (a) seek to influence a judge, juror, prospective juror or other official by means prohibited by law; (b) communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order;…"

43.     The United States uses an adversarial adjudicative system; courts are bound by the principle of party presentation. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). "In both civil and criminal cases, in the first instance and on appeal…, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." Id. (quoting *Greenlaw v. United States*, 554 U.S. 237 (2008)). Judges are to decide cases based solely upon the facts and arguments presented by the parties' counsel through the judicial process—not by ex parte emails or phone calls to counsel from chambers.

44.     Clearly, communication concerning the "Merits of the Case", by telephone, letter, e-mail and any other mode, occurred prior to Judge McAuliffe' 9/28/2020 Order dismissing Plaintiff's case which violated the Plaintiffs right to a fair hearing and shattered any illusions of impartiality or integrity of this Court.

45.     The court's blatant animosity against the Plaintiff and, its relentless and inappropriate effort to make this case disappear for the Defendant and the existence of ex-parte communications mandate production to the Plaintiff of the following records in support of this motion and the judge's immediate disqualification.

46.     "Recusal is required whenever there exists a genuine question concerning a judge's impartiality," regardless of whether the question arises from an extrajudicial source. Id., citing *Berger v. United States*, 255 U.S. 22, 28 (1921). Plaintiff reasonable believes Judge McAuliffe had unofficial and ex-parte communications. Twitter's first pleading to the Appellate Court states that;

"Twitter was directed to file this Response"…

even though it's "likely moot"…

but did so at the "request of the Court" **[7]**

### V. SECTION § 455

47.     28 U.S.C. § 455(a) requires that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and § 455(b)(1) states that a judge "shall disqualify himself… where he has a personal bias or prejudice concerning a party…" In both instances, the test is objective, because "what matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 548 (1994). And "a showing of an appearance of bias or prejudice sufficient to permit the average citizen reasonably to question a judge's impartiality is all that must be demonstrated to compel recusal under" § 455(a). *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981). Because "unbiased, impartial adjudicators are the cornerstone of any system of justice worthy of the label, [a]nd because '[d]eference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges,' jurists must avoid even the appearance of partiality." Al Nashiri, 921 F.3d at

233- 234. The court jettisoned any appearance of neutrality before and throughout the hearing. Judge Sullivan's words and conduct prior to and during the hearing have had a profound negative affect on "public confidence in the integrity of the judicial process" and require him to recuse himself under §455(a) and §455(b)(1). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988).

48.     28 U.S.C. § 455(b)(5)(i) requires a judge to disqualify himself when "he is a party to the proceeding." When the district Judge McAuliffe acted without any jurisdiction with regards to the Plaintiff's True Identity and aggressively ordered the case dismissed, it invoked the application of this section sufficiently to trigger the application of 455(a) for the appearance of bias and 455(b)(1) for personal bias against the Plaintiff himself.

49.     Even more fundamentally, due process guarantees "an absence of actual bias" on the part of a judge. In re *Murchison,* 349 U.S. 133, 136 (1955). Because bias is "easy to attribute to others and difficult to discern in oneself," the Supreme Court has imposed an objective standard here, too, that asks whether "as an objective matter, the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal citations omitted). Even more, "the Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams*, 136 S. Ct. at 1901. As described in Williams, Murchison dealt with a judge who "became convinced that two witnesses were

obstructing the proceeding" and who therefore charged and convicted the two of perjury and contempt, respectively. The Court determined that "[h]aving been a part of [the accusatory] process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused." Murchison, 349 U.S. at 137. Judge McAuliffe became personally attached to this case, against the Plaintiff and in favor of Twitter and it's Counsel, when ordering such dismissal without jurisdiction, ordering a stay without jurisdiction of subject matter and then presumably directing Twitter, ex-parte, to file a motion in the Appeals Court, and it is a violation of Plaintiff's due process right for him to remain the judge.

50.    "The test under Section 455(a) is whether an objective, disinterested, lay observer fully informed of the facts on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Chandler*, 996 F.2d 1073, 1104 (11th Cir. 1993)

51.    Although the Plaintiff has presented sufficient evidence of actual bias to warrant recusal of Judge McAuliffe under §144, the bar for recusal under 28 U.S.C. § 455 is actually much lower. In 1974, Congress rewrote 28 U.S.C. § 455 to broaden the grounds for disqualification in the federal courts from "actual bias" to "the appearance of partiality". The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists[.] *Liljeberg*, 486 U.S. 847, 860-61 (1988). "It is the

appearance of bias or partiality that matters here, not actual bias." *United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996).

52.    section 455 deals not only with actual bias as well as other specific conflicts of interest, but also with the appearance of partiality.

53.    section 455 not only may be invoked by motion but also requires judges to recuse sua sponte where appropriate. While section 455 covers "any justice, judge, or magistrate of the United States." Section 455(a), mandates recusal whenever a judge's impartiality "might reasonably be questioned," whether or not he is actually biased. 28 U.S.C. 455(a). (SEE ALSO JUDGE JOHNSTONE, Plaintiff's Doc. 74 Motion to Set-Aside).

54.    Judge McAuliffe directed defense counsel how the judge planned to rule and encouraged and directed that the Defendant's Counsel to file a Reply to the Plaintiff's Motion to Stay in the First Circuit Court. If so, this would obviously give one side a substantial advantage the proceedings and in any negotiations. Now this does not prove that the Judge McAuliffe revealed to defense counsel how he intended to rule on the pending motion, but it certainly casts reasonable doubts. (See Attached Production Request).

55.    455(b)(1)--does not require that bias or prejudice in fact be established. *United States v. Chantal*, 902 F.2d 1018, 1023 (1st Cir.1990). It does mean that where the appearance of partiality exists, recusal is required regardless of the judge's own inner conviction that he or she can decide the case fairly despite the circumstances. See

*Chantal*, 902 F.2d at 1023. See also *Liteky*, 510 U.S. at 548, 114 S.Ct. at 1153-54; *Blizard v. Frechette*, 601 F.2d 1217, 1220 (1st Cir.1979).

56.     The test under Section 455(a) is an objective one, based on all relevant circumstances. *Liteky*, 510 U.S. at ___; 114 S. Ct. at 1154. "[W]hat matters is not the reality of bias or prejudice but its appearance. Quite simply and quite universally, recusal [is] required whenever `impartiality might reasonably be questioned.'" Id.   Judge McAuliffe "cast an intolerable cloud of partiality over his subsequent judicial conduct" and "risk[ed] [] undermining the public's confidence in the judicial process." In re *Al Nashiri*, 921 F.3d 224, 237, 239 (D.C. Cir. 2019). ""[A]ll that must be demonstrated to compel recusal," then, is "a showing of an appearance of bias…sufficient to permit the average citizen reasonably to question a judge's impartiality."" Id. at 234.

57.     The circumstances of this case lead any reasonable observer to believe that the current judge has a personal interest in the outcome, is irreparably biased against the Plaintiff, and is actively litigating against him. His continued presence in the case undermines the confidence in the impartiality of the federal judicial system and faith in the rule of law writ large. The Constitution compels, and all statutory bases require ("shall recuse"), that Judge McAuliffe recuse himself from any further proceedings.

## VI. SECTION § 144

58.     Section 28 U.S.C. "144" aims exclusively at actual bias, is triggered by a party's timely and sufficient affidavit, [and] applies only to district judges and "must convince a reasonable person that bias actually exists." *Christo v. Padgett*, 223 F.3d 1324,

1333 (11th Cir. 2000), or the judge has a personal bias or prejudice either against him

or in favor of any adverse party." See 28 U.S.C. 144. It is well established that the facts

must give fair support to the charge of a bent mind that may prevent or impede

impartiality. The basis of the disqualification is that personal bias or prejudice exists, by

reason of which the judge is unable to impartially exercise his functions in the particular

case. The factual allegations must establish by more than a prima facie case, but not

beyond a reasonable doubt that the mind of the judge is closed to justice.

59.     An affidavit is only considered sufficient to support disqualification if the

facts and reasons provided "give fair support to the charge of a bent of mind that may

prevent or impede impartiality of judgment" *Berger v. United States*, 255 U.S. 22, 24

(1921), or when a "reasonable man would conclude on the facts stated [in the affidavit]

that the district judge had a special bias against the defendant." *United States v. Thompson*,

483 F.2d 527 (3d Cir. 1973); see also 28 U.S.C. § 144.

60.     Section 144 is unusual because it requires that the district judge accept the

affidavit as true even though it may contain averments that are false and may be known

to be so to the judge. See *United States v. Kelley*, 712 F.2d 884, 889 (1st Cir.1983).

However, penalties for perjury and the certificate of counsel tend to discourage outright

falsehood.

61.     When a judge receives a timely motion under Section 144, the judge must

evaluate the sufficiency of the motion and affidavit, but not their truth or falsity. The

judge must disqualify himself or herself if the motion alleges facts sufficient to show

judicial bias, even if the judge knows the factual allegations to be false. E.g., *United States v. Barnes*, 909 F.2d 1059, 1071 (7th Cir. 1990); *United States v. Jeffers*, 532 F.2d 1101, 1112 (7th Cir.1976), vacated in part on other grounds, 432 U.S. 137, 97 S. Ct. 2207, 53 L. Ed. 2d 168 (1977). At the same time, however, the facts alleged must be sufficiently definite and particular to convince a reasonable person that bias exists. Conclusions, opinions, or rumors are not sufficient. *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir.1993) (citing *United States v. Balistrieri,* 779 F.2d 1191, 1199 (7th Cir.1985)). In addition, the Seventh Circuit has instructed, because Section 144 is weighted in favor of recusal, its requirements must be construed strictly to prevent abuse. Sykes, 7 F.3d at 1339.

62. "[T]he conduct of a judge surely does not become a judicial act merely on his own say-so. A judge is not free, like a loose cannon, to inflict indiscriminate damage whenever he announces that he is acting in his judicial capacity.

63. Plaintiff argues that any order on the merits made by Judge McAuliffe were not judicial, as he lacked personal and subject matter jurisdiction. Additionally, ordering dismissal of Plaintiff's claims were not judicial acts as Judge McAuliffe was notified that the appeal would be filed withing the 30 days allowed to file an appeal and that he lacked subject matter jurisdiction while the Circuit Court of Appeals had jurisdiction. In all these Orders, Judge McAuliffe lacked either personal or subject matter jurisdiction. These non-judicial actions, i.e., actions not taken in the judge's judicial capacity, demonstrate a clear absence of jurisdiction. Additionally, if a District

Court Judge, without jurisdiction, dismisses an action while jurisdiction lies with the Appellate Court, he would be acting in the clear absence of jurisdiction. Judges of courts of record of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction as to their liability made between acts done by them in excess of their jurisdiction and acts done by them in the clear absence of all jurisdiction over the subject matter. *Bradley v. Fisher*, 80 U.S. 335 (1871).

64.     "[I]t is apparent that the two sections are not redundant but are complementary...." United States v. Silba, 624 F.2d 864, 868 (9th Cir. 1980).

## VII. CONCLUSION

65.     All that must be demonstrated to compel recusal, then, is a showing of an appearance of bias ... sufficient to permit the average citizen reasonably to question a judge's impartiality. The appearance of bias here is terrifying and mandates disqualification.

66.     In the instant case, based upon the declarations attached hereto, a "reasonable person" would be convinced that bias existed and, certainly, that person "would harbor doubts" about Judge McAuliffe's impartiality.

67.     First, Judge McAuliffe acted without personal or subject-matter jurisdiction which demonstrates a high degree of favoritism or partiality towards Twitter to justify disqualification.

68.    Second, Judge McAuliffe did not decide Plaintiff's Doc. 7 or 39 within the rules, statutes or current laws or polices, he instead used and allowed to be used, Judge Johnstone's unofficial policies.

69.    Third, Judge McAuliffe's act of dismissing the case when he knew the Plaintiff was giving him notice that he was to appeal, demonstrates a deep-seated antagonism that would make a fair judgment impossible.

70.    Fourth, Judge McAuliffe failed to find any fraud upon the Court when the unofficial polices are clear as day.

71.    When the Court came down with its decision concerning Default, Plaintiff was concerned and taken aback that the laws and rules were not being followed, standing alone, it was not sufficient to cause Plaintiff to take the unusual step of moving to disqualify Judge McAuliffe.

72.    Appellant submits that because Judge McAuliffe failed to apply the statutes and rules when deciding Doc. 7 and Doc. 39, he <u>usurped his judicial power</u> by using unofficial policies to decide, in the least, Doc. 7 and Doc. 39.

73.    Plaintiff has shown that a reasonable person would harbor doubts about Judge McAuliffe's impartiality.'" *Phillips v. Join Legislative Committee on Performance & Expenditure Review*, 637 F.2d 1014, 1019 (5th Cir. 1981), cert denied, 456 U.S. 960 (1982). Given the allegations contained in the attached declarations, which the Court must presume to be true and which hopefully should be undisputed, as well as the totality of the facts (especially the determination to use unofficial policies and acting with clear

absence of law), it would appear that a reasonable person would conclude that bias exists in this case and, therefore, Judge McAuliffe must recuse himself under 28 U.S.C. § 144. Nevertheless, putting aside the question of whether actual prejudice exists, there can be no doubt that a reasonable person looking at the totality of the circumstances would harbor doubts" about Judge McAuliffe's impartiality and, therefore, Judge McAuliffe should certainly recuse himself under 28 U.S.C. § 144 as his immediate disqualification is Mandatory.

74.    The Plaintiff incorporates all arguments and exhibits presented in his March 18, 2021 Motion to Set Aside Orders under Rule 60B.


Respectfully,

Plaintiff, Anonymously as Sensa Verogna
SensaVerogna@gmail.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of April 2021, the foregoing document was made upon the Defendant, through its attorneys of record to Jonathan M. Eck jeck@orr-reno.com and Julie E. Schwartz, Esq., JSchwartz@perkinscoie.com and David A. Perez, DPerez@perkinscoie.com and Indraneel Sur, Lead Attorney. U.S. DOJ, indraneel.sur@usdoj.gov.

Dated: April 15, 2021                    By: _____

Plaintiff, Anonymously as Sensa Verogna
SensaVerogna@gmail.com
PRO SE Counsel of Record