IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Anonymously as, Sensa Verogna,
Plaintiff,

v.                                    )          Case #:

JUDGE ANDREA JOHNSTONE,
in her personal capacity; JUDGE
STEVEN J. MCAULIFFE, in his           )          VERIFIED COMPLAINT
personal capacity;
JULIE E. SCHWARTZ,Esq.;
JONATHAN M. ECK, Esq,                  )          TRIAL BY JURY
Defendants.                           )          DEMANDED

---

## PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff, proceeding anonymously as Sensa Verogna, ("PLAINTIFF"), brings

this Verified Complaint for Civil Violations of 42 U.S.C. § 1985(2)(clause i), ("Section

1985(2)"), under remedies provided through Section 1985(3) (clause iii), ("Section

1985(3)"), and for civil violations of 42 U.S.C. § 1986, ("Section 1986"), and against all

Defendants, Magistrate Judge Andrea Johnstone, ("JOHNSTONE"), in her personal

capacity, and District Judge Steven, J. McAuliffe, ("MCAULIFFE"), in his personal

capacity,  Julie E. Schwartz, Esq., ("SCHWARTZ"), and Jonathan M. Eck, Esq.,

"ECK"), (individually as "CONSPIRATOR" or collaboratively as "DEFENDANTS"

or  "CONSPIRATORS"  or  "CO-CONSPIRATORS"),  for  violations  of

PLAINTIFF'S  (1)substantive due process fundamental right of access to the Courts

Page 1 of 107

ATTACHED EXHIBIT A-1

guaranteed by the First and Fourteenth Amendments to the United States Constitution; (2) due process rights under the Fifth Amendment, which at minimum requires an impartial tribunal; (3) right to a jury trial under the Seventh Amendment, and; (4) his right to equal protection of the laws guaranteed by the Fourteenth Amendment, against JOHNSTONE, in her personal capacity and MCAULIFFE, in his personal capacity, SCHWARTZ and ECK as all which substantially damaged PLAINTIFF in his person and property, alleges as follows:

## JURISDICTION AND VENUE

1.      This District Court has jurisdiction as a substantial part of this action arises under the laws of the United States, 28 U.S.C. §§ 1331, 1343(a) and 42 U.S.C. § 1988, and through Article III § 2 which extends the jurisdiction to cases arising under the U.S. Constitution. This District Court also has jurisdiction of PLAINTIFF'S Section 1986 claims, as PLAINTIFF has brought the action within 1 year of the PLAINTIFF'S reasonable discovery of the fraud upon the COURT, JOHNSTONE'S ILLEGAL POLICY, and the bias of the COURT in favor of TWITTER on December 9, 2020.

2.      Venue is proper in this District Court under 28 U.S.C. § 1391 because a substantial part of the events, overt acts or omissions giving rise to the claims herein took place within this district.

ATTACHED EXHIBIT A-1

## PARTIES

3.      PLAINTIFF, at all times material herein, was a United States citizen, over the age of 18, residing and working in Hillsborough County, New Hampshire. These claims stem from the PLAINTIFF'S federal legal proceeding in Case #: 1:20-cv-00536-SM, ("Herein after as "CASE"), alleging Discrimination and Constitutional claims against TWITTER  in the United States District Court for the District of New Hampshire, (hereinafter as "COURT").  As PLAINTIFF'S CASE is still ongoing in the Appeals Court, #20-1933 regarding PLAINTIFF'S true identity, he wishes to remain anonymous until such time as the Appeals Court has had time to adjudicate the matter, and for the same reasons put forth in the PLAINTIFF'S CASE and his appeal pleadings, objections or briefs.

4.      Judge Andrea K. Johnstone, ("JOHNSTONE"), in her individual capacity, was at all times material herein, employed as a Magistrate Judge by the United States Department of Justice (hereinafter as "DOJ") and acting under the color or pretense of law.

5.      Judge Steven J. McAuliffe, ("MCAULIFFE"), in his individual capacity, was at all times material herein, employed as a District Judge by the DOJ, serving in the COURT and acting under the color or pretense of law.

6.      Julie E. Schwartz, Esq., ("SCHWARTZ"), was at all times material herein, an attorney and partner with the law firm of COIE with a business address of 3150 Porter Drive, Palo Alto, CA 94304-1212.

ATTACHED EXHIBIT A-1

7.     Jonathan M. Eck, Esq., ("ECK"), was at all times material herein, an attorney and partner with the law firm of Orr and Reno, Professional Association, (hereinafter as "O&R"), with a business address of 45 S. Main Street Suite 400, Concord, NH, 03301-3550. Upon information and belief, ECK is a Member of the Federal Court Advisory Committee, for the COURT, The United States District Court for the District of New Hampshire, a Board Member of Governors, New Hampshire Bar Association, is Chair of the New Hampshire Bar Association Committee on Cooperation With the Courts, an Executive Committee Member of the New Hampshire Estate Planning Council, and is the Vice President and Trustee, New Hampshire Supreme Court Society and past President of the Manchester Bar Association. Through this extensive training, ECK has established personal relationships with 1 or more of the Justices, Clerks or employees of the COURT and is thought to have aspirations of becoming a judge or other public official within the State. ECK'S background prior to PLAINTIFF'S CASE mainly included disputes over inheritance and concerning fiduciary duties, commercial and residential leasing disputes.

## NON-PARTIES AFFILIATED WITH CONSPIRATORS

8.     Twitter, Inc. ("TWITTER"), a pre-discovery non-defendant, was at all times material herein, headquartered in San Francisco County, California and has sufficient contacts and is regularly, continuously and systematically engaged in the

ATTACHED EXHIBIT A-1

pursuit of general business activities in Hillsborough County, New Hampshire, where the injuries to PLAINTIFF occurred.

9.      Ryan Mrazik, ("MRAZIK"), a pre-discovery non-defendant, was at all times material herein, an attorney and partner with the law firm of Perkins Coie, LLP., (hereinafter as "COIE"), with a business address of 3150 Porter Drive, Palo Alto, CA 94304-1212.

10.      David A. Perez, (hereinafter as "PEREZ"), a pre-discovery non-defendant, was at all times material herein, an attorney and partner with the law firm of COIE with a business address of 1201 Third Avenue, Suite 4800, Seattle 98101-343099.

## NATURE OF THE CASE

11.      On or around April 26, 2018, and reasonably unknown to the PLAINTIFF until December 9, 2020, in the United States District Court for the District of New Hampshire, ("COURT"),    JOHNSTONE disregarded New Hampshire law and established court pro hac vice COURT rules, and promulged, implemented and managed and adopted unofficial alternative admission procedures or the COURT rule(s) ("ILLEGAL POLICY"), that make current pro hac vice laws and rule provisions unnecessary and for the specific reason of allowing TWITTER attorneys, from the law firm of COIE and any associated local attorney, and specifically utilized by MRAZIK and SCHWARTZ, the privilege of practicing before the COURT on 68 separate occasions [Attached Exhibits 001-068], although both

Page 5 of 107

ATTACHED EXHIBIT A-1

lacked the requirements of eligibility demanded under Local Rules ("LR") 83.1 and 83.2 to practice before the COURT and in violation of New Hampshire RSA 311:7, and for the exclusive benefit of TWITTER 58 times.

12.     On May 4, 2020, PLAINTIFF, filed claims against TWITTER for discrimination and for violations of his constitutional rights in the COURT. See CASE [Complaint, at 1]. (CASE Docket described hereinafter as "[Motion, at #]").

13.     On June 1, 2020, the sole Defendant in the CASE, TWITTER, filed an illegal [Motion to Dismiss, at 3].

14.     On June 8, 2020, PLAINTIFF filed a [Default Motion, at Dkt. 7] challenging the legality and form of the [Dismiss Motion, at 3] as it was submitted by a non-member attorney of the bar and therefore illegal, void, non-conforming and therefore non-existent which caused TWITTER to be in default.

15.     In violation of Section 1985(2), [1] starting on June 8, 2020, or soon thereafter, PLAINTIFF filed his [Default Motion, at Dkt. 7], and prior to any order on the merits by the COURT, JOHNSTONE, MCAULIFFE, ECK and SCWARTZ, conspired to scheme and explicitly privately agreed, in part, to: (1) conceal from PLAINTIFF; (a) the fraud upon the COURT; (b) JOHNSTONE'S ILLEGAL

---

[1] Each and every act(s), or act(s) of concealment or omission, or illegal acts by JOHNSTONE, MCAULIFFE, ECK and SCWARTZ, described and contained within this Verified Complaint and attempted or completed after June 8, 2020, is stated to be an overt act(s), or act(s) of concealment and omission, or illegal acts to further the SCHEME or CONSPIRACY and all of its objectives described herein, and completed knowingly and willingly.

ATTACHED EXHIBIT A-1

POLICY; (c) the bias of the COURT in favor of TWITTER; (d) past, present and ongoing use of JOHNSTONE'S ILLEGAL POLICY by COIE, MRAZIK, and SCHWARTZ; (e) JOHNSTONE'S and MCAULIFFE'S ex-parte legal advice given to TWITTER'S counsel; (2) defeat PLAINTIFF'S [Default Motion, at 7], and other motions, by using preconceived motions, objections or orders; (3) defeat the PLAINTIFF'S [Complaint, at 1] prior to addressing the merits of his claims by using preconceived motions, objections or orders; (4) wrongly interfere with PLAINTIFF'S access to federal court to pursue his discrimination and constitutional claims by: (a) judicially intimidating, coercing, forcing, and deterring PLAINTIFF from attending and continuing his CASE in the COURT; (b) retaliating against PLAINTIFF for bringing his CASE before the COURT; (c) retaliating and punishing PLAINTIFF for discovering  and bringing to light or public scrutiny, the fraud that was being perpetrated against the COURT, JOHNSTONE'S ILLEGAL POLICY, and the bias of the COURT in favor of TWITTER through his various default claims in the COURT. (5) share the true identity of PLAINTIFF in an effort to monitor PLAINTIFF's actions or strategies.

16.    CONSPIRATORS, directly targeted PLAINTIFF, by using force, judicial intimidation, coercion or threats, to deter or stop the PLAINTIFF from attending and continuing his CASE in the COURT, and from testifying to any matter pending therein, freely, fully, and truthfully. PLAINTIFF has a substantive right to

ATTACHED EXHIBIT A-1

participate in federal judicial proceedings and to be free from conspiracies that interfere with federal witnesses and parties through intimidation and retaliation, and conspiracies that interfere with the administration of justice in the COURT. Section 1985(2)(Clause i and Section 1985(3), [2] specifies a remedy for conspiracies proscribed by Section 1985(2), [3] PLAINTIF'S; (1)substantive due process fundamental right of access to the Courts and all arising from this CONSPIRACY between each individual CONSPIRATOR that was designed and implemented to defraud the PLAINTIFF and the COURT.

17.    In violation of Section 1986, each individual CONSPIRATOR had the knowledge of CONPIRACY to be done or that were about to be committed against the PLAINTIFF in violation of Section 1985, had the power to prevent or aid in preventing these violations, but neglected or refused to do so, even though a person with reasonable diligence could have prevented these violations.

18.    In concealing or omitting the material facts of the fraud upon the COURT, JOHNSTONE'S ILLEGAL POLICY, the bias of the COURT, and ex-parte legal advice to TWITTER'S counsel, JOHNSTONE and MCAULIFFE violated

[2] Section 1985(2)(Clause i) proscribes the following conspiracies: "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified….

[3] Section 1985(3) contains the remedial provision granting a cause of action for damages to those harmed by any of the conspiracies prohibited in § 1985.

ATTACHED EXHIBIT A-1

PLAINTIFF'S: (1) due process and adequate, effective, and meaningful access to the Courts and justice guaranteed by the First and Fourteenth Amendments to the United States Constitution; (2) due process rights under the Fifth Amendment, which at minimum requires an impartial tribunal; (3) right to a jury trial under the Seventh Amendment, and; (4) his right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution because COURT permits other litigants who do not question JOHNSTONE'S ILLEGAL POLICY to continue, unhindered by these biases, in their pursuit to equitable relief against other defendants in Federal Court. The Bivens doctrine (Bivens v. Six Unknown Narcotics Agents 403 U.S. 388 (1971)), provides for private rights of action for violations of a person's constitutional rights by a federal official under the color of law and may give rise to an action for monetary damages in federal court pursuant to 28 U.S.C. § 1331, the statute that provides for federal question jurisdiction. A Bivens action is analogous to an action under §1983 – the only difference being that § 1983 applies to constitutional violations by state, rather than federal officials. The purpose of Bivens is to deter individual federal officers from committing constitutional violations and to test the legality of government conduct, to define the legality of government action and restrain its excesses and deter official behavior incompatible with constitutional norms.

19.     By means of this lawsuit, PLAINTIFF seeks that all DEFENDANT CONSPIRATORS be jointly and severally found liable to the extent of (1) damages

ATTACHED EXHIBIT A-1

incurred by PLAINTIFF due to CONSPIRATORS unlawful activity or overt acts, including, in part, diminished leverage in any contract settlement negotiations, diminished leverage in his discrimination claims and other loss of economic advantages, direct expenses incurred, loss of time, mental agony, indignity suffered, costs spent in bringing his claims before the COURT in his CASE, and his subsequent 4 Appeals of that CASE, (2) any attorneys' fees spent bringing this lawsuit, and (3) **$250,000,000.00** or an amount otherwise to be decided by a jury in any form including punitive damages for CONSPIRATORS' illegal, fraudulent, concealment or privately preconceived judicial acts.

20.     When discovery opens in this case, additional co-conspirators may be named as co-defendants, including TWITTER, attorneys, other corporate executives or others who conspired, schemed, drafted, negotiated or signed relevant documents or otherwise participated in the fraud upon the COURT, or in the concealment of JOHNSTONE'S ILLEGAL POLICY, the fraud upon the Court, and the bias of the COURT in favor of TWITTER.

## STATEMENT OF FACTS

## I.     FRAUD UPON THE COURT

21.     On April 26, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, submitted to the COURT, a Motion, at 22, stating "(motion for pro hac vice admission to be filed)". See [PE 001]

ATTACHED EXHIBIT A-1

22.     On April 26, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, submitted to the COURT, a Disclosure, at 23, stating "(motion for pro hac vice admission to be filed)". See [PE 002]

23.     On April 30, 2018, in case 1:17-cv-00749-JD, COIE and MRAZIK, as Counsel for TWITTER, submitted to the COURT, a Motion, at 8, "(motion for pro hac vice admission to be filed)". See [PE 003]

24.     On April 30, 2018, in case #1:17-cv-00749-JD, COIE and MRAZIK, as Counsel for TWITTER, submitted to the COURT, a Disclosure, at 9, stating "(motion for pro hac vice admission to be filed)". See [PE 004]

25.     On April 30, 2018, in case #1:17-cv-00749-JD, Dkt. 22, COIE and MRAZIK, as Counsel for TWITTER, Google, and YouTube, submitted to the COURT, a Motion. at 22, stating "(motion for pro hac vice admission to be filed)". See [PE 005]

26.     On May 3, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER and Google, submitted to the COURT, a Memorandum, at 22-1, stating "(motion for pro hac vice admission to be filed)". See [PE 006]

27.     On May 3, 2018, in case #1:18-cv-00203-PB, Dkt. 16, COIE and MRAZIK, as Counsel for Google, submitted to the COURT, a Disclosure. at 16, stating "(motion for pro hac vice admission to be filed)". See [PE 007]

ATTACHED EXHIBIT A-1

28.    On May 3, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, submitted to the COURT, a Disclosure, at 17, "(motion for pro hac vice admission to be filed)". See [PE 008]

29.    On May 8, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, submitted to the COURT, a Motion, at 24 stating "(motion for pro hac vice admission to be filed)". See [PE 009]

30.    On May 8, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER,  submitted to the COURT, a Memorandum, at 24-1, stating "(motion for pro hac vice admission to be filed)". See [PE 010]

31.    On May 8, 2018, case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for Google and YouTube, illegally submitted to the COURT, a Motion, at 25, stating "(motion for pro hac vice admission to be filed)". See [PE 011]

32.    On May 8, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for Google and YouTube, submitted to the COURT, a Memorandum, at 25-1, stating "(motion for pro hac vice admission to be filed)". See [PE 012]

33.    On May 8, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for YouTube, submitted to the COURT, a Disclosure, at 26, stating "(motion for pro hac vice admission to be filed)". See [PE 013]

34.    On May 8, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for Google and YouTube, submitted to the COURT, a Reply, at 27, stating "(motion for pro hac vice admission to be filed)". See [PE 014]

ATTACHED EXHIBIT A-1

35.     On May 10, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, submitted to the COURT, a Reply, at 36, stating "(motion for pro hac vice admission to be filed)". See [PE 015]

36.     On May 15, 2018, in case #1:17-cv-00749-JD, COIE and MRAZIK, as Counsel for TWITTER, Google and YouTube, submitted to the COURT, a Motion, at 22, stating "(motion for pro hac vice admission to be filed)". See [PE 016]

37.     On May 15, 2018, in case #1:17-cv-00749-JD, COIE and MRAZIK, as Counsel for TWITTER, Google, and YouTube, submitted to the COURT, a Memorandum, at 22-1, stating "(motion for pro hac vice admission to be filed)" See [PE 017]

38.     On May 15, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Motion, at 56, stating "(motion for pro hac vice admission to be filed)" See [PE 018]

39.     On May 15, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Memorandum, at 56-1, stating "(motion for pro hac vice admission to be filed)" See [PE 019]

40.     On May 15, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Reply, at 57, stating "(motion for pro hac vice admission to be filed)" See [PE 020]

ATTACHED EXHIBIT A-1

41.     On May 16, 2018, in case number 1:17-cv-00749-JD, COIE and MRAZIK, , as Counsel for Google, submitted to the COURT, a Reply, at 23, stating "(motion for pro hac vice admission to be filed)" [PE 021]

42.     On May 16, 2018, in case #1:17-cv-00749-JD, COIE and MRAZIK, as Counsel for YouTube, submitted to the COURT, a Disclosure, at 24. stating "(motion for pro hac vice admission to be filed)" See [PE 022]

43.     On May 16, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for Google,  submitted to the COURT, a Disclosure, at 58, stating "(motion for pro hac vice admission to be filed)" See [PE 023]

44.     On May 16, 2018, case #1:17-cv-00733-PB, Dkt. 59, COIE and MRAZIK, as Counsel for YouTube, submitted to the COURT, a Disclosure, at 59, stating "(motion for pro hac vice admission to be filed)" See [PE 024]

45.     On May 17, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 62, stating "(motion for pro hac vice admission to be filed)" See [PE 025]

46.     On May 17, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 49, stating "(motion for pro hac vice admission to be filed)" See [PE 026]

47.     On May 22, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube,  submitted to the COURT, an Objection, at 55, stating "(motion for pro hac vice admission to be filed)" See [PE 027]

ATTACHED EXHIBIT A-1

48.     On May 24, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube,  submitted to the COURT, an Objection, at 60, stating "(motion for pro hac vice admission to be filed)" See [PE 028]

49.     On May 24, 2018, case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 74,  stating "(motion for pro hac vice admission to be filed)" See [PE 029]

50.     On May 24, 2018, case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 75, stating "(motion for pro hac vice admission to be filed)" See [PE 030]

51.     On May 25, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER,  Google, YouTube, submitted to the COURT, a Reply, at 66, stating "(motion for pro hac vice admission to be filed)" See [PE 031]

52.     On May 25, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel  for  TWITTER,  submitted  to  the  COURT,  an  Objection,  at  67,  stating "(motion for pro hac vice admission to be filed)" See [PE 032]

53.     On May 25, 2018, case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Reply, at 80, stating "(motion for pro hac vice admission to be filed)" See [PE 033]

54.     On May 29, 2018, In case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 81, stating "(motion for pro hac vice admission to be filed)" See [PE 034]

ATTACHED EXHIBIT A-1

55.     On May 29, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 82, stating "(motion for pro hac vice admission to be filed)" See [PE 035]

56.     On May 29, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT,  an Objection, at 83, stating "(motion for pro hac vice admission to be filed)" See [PE 036]

57.     On June 1, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 89, stating "(motion for pro hac vice admission to be filed)" See [PE 037]

58.     On June 1, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 90, stating "(motion for pro hac vice admission to be filed)" See [PE 038]

59.     On June 1, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 91,  stating "(motion for pro hac vice admission to be filed)" See [PE 39]

60.     On June 1, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 73, stating "(motion for pro hac vice admission to be filed)" See [PE 040]

61.     On June 1, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 74, stating "(motion for pro hac vice admission to be filed)" See [PE 041]

ATTACHED EXHIBIT A-1

62.     On June 1, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 75, stating "(motion for pro hac vice admission to be filed)" See [PE 042]

63.     On June 6, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 76,  stating "(pro hac motion to be filed)" See [PE 043]

64.     On June 6, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 77, stating "(pro hac motion to be filed)" See [PE 044]

65.     On June 6, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Motion, at 78, stating "(pro hac motion to be filed)" See [PE 045]

66.     On June 6, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Memorandum, at 78-2, stating "(pro hac motion to be filed)" See [PE 046]

67.     On June 6, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Motion, at 92,  stating "(pro hac motion to be filed)" See [PE 047]

68.     On June 6, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 93, stating "(pro hac motion to be filed)" See [PE 048]

ATTACHED EXHIBIT A-1

69.     On June 6, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Motion, at 95, stating "(pro hac motion to be filed)" See [PE 049]

70.     On June 6, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Memorandum, at 95-2, stating "(pro hac motion to be filed)" See [PE 050]

71.     On June 12, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Motion, at 97, stating "(pro hac motion to be filed)" See [PE 051]

72.     On June 12, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Memorandum, at 97-2,  stating "(pro hac motion to be filed)" See [PE 052]

73.     On June 12, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, a Motion, at 80, stating "(pro hac motion to be filed)" See [PE 053]

74.     On June 12, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube submitted to the COURT, a Memorandum, at 80-2, stating "(pro hac motion to be filed)" See [PE 054]

75.     On June 15, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube submitted to the COURT, an Objection, at 87, stating "(pro hac motion to be filed)" See [PE 055]

ATTACHED EXHIBIT A-1

76.     On June 15, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, submitted to the COURT, an Objection, at 88, stating "(pro hac motion to be filed)" See [PE 056]

77.     On June 15, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, submitted to the COURT, an Objection, at 103, stating "(pro hac motion to be filed)" See [PE 057]

78.     On June 15, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER,  illegally submitted to the COURT, an Objection, at 104, stating "(pro hac motion to be filed)" See [PE 058]

79.     On June 29, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube submitted to the COURT, an Objection, at 93, stating "(pro hac motion to be filed)" See [PE 059]

80.     On June 29, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 94, stating "(pro hac motion to be filed)" See [PE 060]

81.     On June 29, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, an Objection, at 95, stating "(pro hac motion to be filed)" See [PE 061]

82.     On June 29, 2018, in case #1:18-cv-00203-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube submitted to the COURT, an Objection, at 99, stating "(motion for pro hac vice admission to be filed)" See [PE 062]

ATTACHED EXHIBIT A-1

83.     On June 29, 2018, case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 109, stating "(pro hac motion to be filed)" See [PE 063]

84.     On June 29, 2018, case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 110, stating "(pro hac motion to be filed)" See [PE 064]

85.     On June 29, 2018, case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 111, stating "(pro hac motion to be filed)" See [PE 065]

86.     On July 16, 2018, in case #1:17-cv-00733-PB, COIE and MRAZIK, as Counsel for TWITTER, Google, YouTube, submitted to the COURT, an Objection, at 116, stating "(motion for pro hac vice admission to be filed)" See [PE 066]

87.     On June 1, 2020, in PLAINTIFF'S CASE, SCHWARTZ and COIE, as Counsel for TWITTER, submitted to the COURT, a [Dismiss Motion, at 3], stating "(motion for pro hac vice admission to be filed)" See [PE 067]

88.     On June 1, 2020, in PLAINTIFF'S CASE, SCHWARTZ and COIE as Counsel for TWITTER, submitted to the COURT a [MOL, at 3], stating "(motion for pro hac vice admission to be filed)" See [PE 068]

## II.     ILLEGAL PRO HAC VICE POLICY

89.     In case #1:17-cv-00749-JD, JOHNSTONE, through her ILLEGAL POLICY allowed COIE and MRAZIK to submit 6 pleadings to the COURT on

ATTACHED EXHIBIT A-1

behalf of and counsel of TWITTER although MRAZIK was not, at the time of these pleadings, admitted to practice in the COURT.

90.    In case #1:18-cv-00203-PB, JOHNSTONE, through her ILLEGAL POLICY allowed COIE and MRAZIK to submit 30 pleadings to the COURT on behalf of and counsel of TWITTER, Google and YouTube although MRAZIK was not, at the time of these pleadings, admitted to practice in the COURT. JOHNSTONE, was noticed by the plaintiff in this case on May 10, 2018, that MRAZIK was acting as an attorney for TWITTER within the State of New Hampshire, See [PE 069], but did nothing about it then or in the remaining 10 or so months until the case was closed on March 13, 2019. In this March 13, 2019, order, See [PE 070], JOHNSTONE, with the knowledge of MRAZIK'S illegal behavior in 3 cases to date,  buries MRAZIK'S existence in the case and provides MRAZIK cover for his illegal behavior when she states;

> **"counsel has properly appeared and timely responded to the complaint. Accordingly, no defendant has defaulted, and no document in this case should be stricken or quashed on the basis of the improper appearance of counsel"**

91.    In case #1:17-cv-00733-PB, JOHNSTONE, through her ILLEGAL POLICY allowed COIE and MRAZIK to submit 30 pleadings to the COURT on behalf of and counsel of TWITTER and YouTube although MRAZIK was not, at the time of these pleadings, admitted to practice in the COURT. MRAZIK was clearly

ATTACHED EXHIBIT A-1

participating in unauthorized practice of law, ("UPL") when the Plaintiff in the case states in a May 23, 2018, **See [PE 71],** Docket 71 filing;

> **"Defendants attorneys"**

> **"Lyin Ryan [MRAZIK] failed to reactivate the Plaintiff's virtual property, and despite that effort of Plaintiff Natasha to work with "Lyin Ryan", he failed to have any attorney file for appearances on behalf of his remaining clients.**

So while the plaintiff in this case sought to strike the illicit answers of the defendants, or [MRAZIK'S] pleadings on other grounds, JOHNSTONE, knowing the material facts of MRAZIK representation of TWITTER, now in 3 separate cases, conceals from the respective Plaintiff, the material fact that MRAZIK is practicing UPL as he is not a member of the bar of the COURT, and has repeatedly stated that [he plans] to **"(motion for pro hac vice admission to be filed)",** but facts of the record demonstrate he never did so in any IP CASE. JOHNSTONE, was noticed by the plaintiff in this case on May 23, 2018, that MRAZIK was acting as an attorney for TWITTER within the State of New Hampshire, but did nothing about it then or in the remaining months until the case was closed in late 2019.

92.    In PLAINTIFF'S CASE, MCAULIFFE and JOHNSTONE, through JOHNSTONE'S ILLEGAL POLICY, allowed COIE attorney SCHWARTZ to file a [Dismiss Motion, at 3], and [MOL, at 3.1] on behalf of and counsel of TWITTER, See [PE 067-68] although SCHWARTZ was not, at the time of these pleadings, admitted to practice in the COURT.

ATTACHED EXHIBIT A-1

93.     In all these above cases (1:17-cv-00749-JD, 1:18-cv-00203-PB, 1:17-cv-00733-PB), (Collectively hereinafter as, "IP CASES"), and in PLAINTIFF'S CASE, See [PE 001-068], which were submitted to the COURT, both MRAZIK and SCHWARTZ invoked the processes of the COURT in a matter pending before the COURT, with both MRAZIK and SCHWARTZ exercising their legal training and judgment concerning the impact of the respective plaintiff or PLAINTIFF'S pleadings against TWITTER. These actions constituted the unauthorized practice of law (UPL). When MRAZIK and SCHWARTZ appeared before the COURT of record for the purpose of transacting business with the COURT in connection with TWITTER'S pending litigation or when MRAZIK and SCHWARTZ sought to invoke the processes of the COURT in a matter pending before it, both were engaging in the practice of law. It is uniformly held that many of activities which MRAZIK and SCHWARTZ participated in and advised TWITTER, such as writing and interpreting contracts, drafting and writing pleadings, and the giving of legal advice in general, constitute practicing law. Additionally, JOHNSTONE, conceals from the respective Plaintiffs, and PLAINTIFF, the material facts of; (1) the fraud upon the COURT and that MRAZIK and SCHWARTZ are practicing UPL as they are not members of the bar of the COURT, and MRAZIK repeatedly states that [he plans] to "(motion for pro hac vice admission to be filed)", but facts of the record demonstrate he never did so in any IP CASE; (2) her ILLEGAL POLICY; (3) the bias of the COURT in favor of TWITTER, COIE, MRAZIK and SCHWARTZ.

ATTACHED EXHIBIT A-1

94.     By adopting JOHNSTONE'S ILLEGAL POLICY, the COURT bypassed the COURT'S established rule promulgating procedures that usually include either public comment or recommendations or both from the Rules Advisory Committee. See 28 U.S.C. § 2071(b) ("Any rule prescribed by a court, other than the Supreme Court, under subsection (a) shall be prescribed only after giving appropriate public notice and an opportunity for comment."); 28 U.S.C. § 2071(e) ("If the prescribing court determines that there is an immediate need for a rule, such court may proceed under this section without public notice and opportunity for comment, but such court shall promptly thereafter afford such notice and opportunity for comment."); U.S. VET. APP. R. 40(a) ("The Court will have a Rules Advisory Committee . . . for the study of, and advice to the Court on possible changes to, rules of the Court, either sua sponte or at the request of the Court."). The COURT'S bar, PLAINTIFF and the public were not given the opportunity to provide input – indeed, the entire COURT should have the benefit of such input – on such a far-reaching change in the COURT'S practice and proceedings.

95.     The Bar Association of the State of New Hampshire is integrated (Article II, Sec. 1, Constitution of N.H.B.A.). (See also In re Unification of New Hampshire Bar, 109 N.H. 260.) "Except for the right reserved to litigants by statute no person other than an active member of this association shall practice law in this state or in any manner hold himself out as authorized or qualified to practice law in this state." (Art. II, Sec. 4, Constitution of N.H.B.A.).

ATTACHED EXHIBIT A-1

96.     JOHNSTONE'S ILLEGAL POLICY: (1) was inconsistent with and contrary to Acts of Congress; (2) was not prescribed by the Enabling Act of 1934 and rules of practice and procedure prescribed under 28 U.S.C. § 2071(a) and (b) and 28 U.S.C. § 2072 and is therefore unconstitutional; (3). violates 28 U.S.C. § 2071(f) as they were not prescribed by the COURT, and are therefore unconstitutional; (4) circumvented the COURTS' prescribed LR's governing practice and procedure; (5) was not authorized by any federal statute; (6) was not recommended by any rules advisory committee; (7) was inapposite with N.H.R.S.A. 311:6 and 311:7; (8) usurped and preempted the power of the governing State Authority; (9) was not created as an immediate need under 2071(e); (10) lowered attorney eligibility required under LR 83.2 only for attorneys representing TWITTER or employed by COIE; (11) operated with unlimited power; (12) operated with no restrictions; (13) operated without any established standards and was secretive to the public and PLAINTIFF; (14) was substantially biased in favor of COIE attorneys and TWITTER and are therefore unconstitutional; (15) was a moving force behind the CONSPIRACY; (16) was the moving force behind all of the COURTS' preconceived orders or pleadings, in PLAINTIFF'S CASE.

97.     The COURT, JOHNSTONE and MCAULIFFE: (1) had the power to control admission in all cases at bar; (2) regulated the practice of law in the COURT in all cases at bar; (3) had not determined that there was an immediate need for JOHNSTONE'S ILLEGAL POLICY in any IP CASE under 28 U.S.C. § 2071(e);

ATTACHED EXHIBIT A-1

(4) lacked any discretion to allow MRAZIK to appear, as he had not filed any pro hac vice motion to the COURT prior to submitting the pleadings to the COURT;

(5) lacked any discretion to allow SCHWARTZ to appear, as she had not filed any pro hac vice motion to the COURT prior to submitting her [Dismiss Motion, at 3] pleading to the COURT; (6) allowed and accepted COIE and MRAZIK'S and SCHWARTZ submittal of all pleadings in [Attached Exhibits 001 to 068]; (7) lacked the power to discipline MRAZIK at the time of his pleadings to the COURT in all IP CASES, as MRAZIK never applied and was not at any time, material herein, admitted to practice law in the COURT or in the State of New Hampshire when he submitted his pleadings to the COURT; (8) lacked the power to discipline SCHWARTZ prior to June 8, 2020; (9) lacked the power to discipline MRAZIK prior to December 24, 2021; (10) failed in their duties to govern Pro hac vice admissions in the COURT through LR 83.2, in all IP CASES.

98.    COIE and MRAZIK: (1) made material misrepresentations to the COURT; (2) failed to motion or apply to the COURT for pro hac vice under LR 83.2 in any IP CASE as JOHNSTONE'S ILLEGAL POLICY allowed this, although he repeated the phrases "motion for pro hac vice admission to be filed" or "pro hac motion to be filed" or  in all his IP CASES where he represented TWITTER. (3) had not been granted by the COURT, any pro hac vice status or special permission under the legal rules to appear prior to his submittal of pleadings to the COURT in any IP CASE. (4) upon information and belief, has not to date been disciplined by the

ATTACHED EXHIBIT A-1

COURT regarding his pleadings submitted to the COURT which contain material misrepresentations.

99. SCHWARTZ: (1) failed to motion or apply to the COURT for pro hac vice under LR 83.2 in PLAINTIFF'S CASE until June 8, 2020, one week after SCHWARTZ filed TWITTER'S [Dismiss Motion, at 3], and after PLAINTIFF had filed his [Default Motion, at 7]; (2) had not been granted by the COURT, any pro hac vice status or special permission to appear prior to submitting TWITTER'S [Dismiss Motion, at 3] to the COURT; (3) may have satisfied some of the requirements of LR 83.2(b), but none of these actions were satisfied on June 1, 2020; (4) silently relied upon the ILLEGAL POLICY to save her from having caused her client TWITTER, to default.

100. Both MRAZIK and SCHWARTZ, who were not members of the district's bar, must have and failed to complete any of the requirements such as filing a motion, attaching an affidavit, submitting a fee and taking an oath, prior to appearing before the COURT and submitting pleadings on behalf of TWITTER, in PLAINTIFF'S CASE, and in all IP CASES.

101. TWITTER hired COIE and MRAZIK to represent its interests in the COURT each of the IP CASES, See [PE 01 to 66], and in Delima 2.

102. TWITTER hired COIE, SCHWARTZ, O&R and ECK to represent its interests in the COURT in PLAINTIFF'S CASE. See [PE 67-68].

ATTACHED EXHIBIT A-1

103.   LR 83.2 was proscribed by 28 U.S.C. § 2071(a), was in effect in all IP CASES and had not been modified or abrogated by the judicial council of the relevant circuit under 28 U.S.C. § 2071(c)(1).

104.   In contradiction to 28 U.S.C. § 2071(b), no notice or an opportunity for comment was given to PLAINTIFF, in his CASE regarding JOHNSTONE'S ILLEGAL POLICY by either JOHNSTONE or MCAULIFFE.

105.   JOHNSTONE'S ILLEGAL POLICY bears zero resemblance to characteristics of the judicial process that would give rise to the recognition of absolute immunity for JOHNSTONE, as promulgating illegal policies is not an exercise of discretion nor is it a normal element of a judicial proceeding. These acts of promulgating, implementing, managing and concealing illegal pro hac vice and bar admission rules and unofficial COURT policies has zero bearing on the independent decision making in the adjudication process. The same reasoning applies to legislative acts, such as JOHNSTONE promulgating bar admission rules, which favored COIE, it's attorneys, and particularly TWITTER, the defendant in PLAINTIFF'S CASE. This indifferent unofficial pro hac vice ILLEGAL POLICY towards the PLAINTIFF'S rights did not arise out the adjudication of his CASE. JOHNSTONE acted outside the judicial relationship between herself and the PLAINTIFF, and is not entitled to any immunity. Additionally, this ILLEGAL POLICY did not stem from this CASE, and would have had no effect on the finality of judicial proceedings, absent SCHWARTZ attempting to utilize the ILLEGAL POLICY in PLAINTIFF'S

ATTACHED EXHIBIT A-1

CASE, and absent the fraud upon the COURT, the bias of the COURT, and the CONSPIRACY to conceal JOHNSTONE'S ILLEGAL POLICY, in this CASE. Policy reasons favoring absolute immunity do not apply under these circumstances as liability arising from these actions can hardly cause fear in the judicial decision-making process.

## III.    A PRIVATE CONSPIRACY AGREEMENT

### A.    COMMUNICATED

106.    Starting on June 8, 2020, and ongoing, CONSPIRATORS, each of them, communicated with each other through either: (1) ECK'S established communication using his connections within the COURT through JOHNSTONE, MCAULIFFE, or other unknown judges, clerks or other employees within the COURT; or (2) established channels of communication similarly used in the 2018 fraud, or; (3) established channels of communication similarly used in Delima 2; or (4) established channels of communication used to direct PEREZ to file an answer with the Appeals Court to the PLAINTIFF'S [Notice of Appeal, at 57] on August 10, 2021; or (5) through ECK'S established communication via phone or e-mail with SCHWARTZ; or (6) established channels of communication to which judges in the COURT would normally communicate with each other, including face to face or; (7) a combination of any of the above methods, a meeting of the minds, or other method(s) unknown without any discovery being completed.

ATTACHED EXHIBIT A-1

## B.    UNITY OF PURPOSE

107.    CONSPIRATORS, each of them, shared in the general objective concealment and deterrence of PLAINTIFF'S CASE and shared the same motives for desiring the same conspiratorial result in seeing the PLAINTIFF'S [Default Motion, at 7], and his [Complaint, at 1], and his other claims, dismissed sooner than later, and preferably prior to any need to adjudicate on the merits of PLAINTIFF'S original claims, and prior to any witnesses testifying or any trial of the merits.

108.    JOHNSTONE'S independent motive for joining in the CONSPIRACY was to ensure that the material facts of the fraud upon the COURT, her ILLEGAL POLICY and conduct of promulgating, administering and concealing this POLICY, would remain concealed as her own conduct undermined confidence in the integrity of the judiciary and if exposed would give the appearance of non-impartiality of the judiciary in favor of TWITTER and that she might lose her job or be disciplined for promulgating and administering an ILLEGAL POLICY on behalf of the COURT, and by herself, when not so authorized to legally do so.

109.    MCAULIFFE'S motive for joining in the CONSPIRACY was to ensure that the fraud upon the COURT, the bias of the COURT, and JOHNSTONE'S ILLEGAL POLICY, and JOHNSTONE'S conduct would remain concealed as her conduct, if revealed, would undermined confidence in the integrity of the judiciary and expose the non-impartiality of the judiciary in favor of TWITTER. Upon information and belief, MCAULIFFE and ECK shared a personal relationship which

ATTACHED EXHIBIT A-1

compelled MCAULIFFE to join the CONSPIRACY in an effort to save ECK from any professional damage to his career.

110.    ECK was economically motivated to represent O&R to the best of his abilities and to make money for O&R and himself. If ECK represented TWITTER successfully, and concealed the fraud upon the COURT, the bias of the COURT, and JOHNSTONE'S ILLEGAL POLICY, he would receive more business from TWITTER or other big tech related clients, more prestige and thus more money and the chance of enhancing his status within O&R and with the public at large.

111.    SCHWARTZ was motivated to represent COIE to the best of her abilities and to make money for herself. If SCHWARTZ represented TWITTER successfully, and concealed the fraud upon the COURT, the bias of the COURT, and JOHNSTONE'S ILLEGAL POLICY, she would receive more work from TWITTER and potentially other big tech related clients, prestige and thus more money and for the chance of enhancing her Partner status within COIE.

112.    Both ECK and SCHWARTZ had an economic motive to join the CONSPIRACY and acted in furtherance of their own financial gain, as they might not be paid by TWITTER for their work if TWITTER was to default due to their negligence or participation in the fraud.

113.    Both ECK and SCHWARTZ also wanted to save their reputations. Causing a client like TWITTER to be defaulted in a case or in losing the CASE would

certainly damage their reputations within the legal community and with the public at large.

114.    CONSPIRATORS, each of them, starting on June 8, 2020, and ongoing: (1) shared a common plan and would benefit directly from the illegal activity; (2) received a direct benefit from the illegal activity; (3) had an explicit understanding of the entire CONSPIRACY; (4) had an explicit understanding between each other which was to collude or conspire against the PLAINTIFF; (5) intended to aid in the CONSPIRACY and in achieving its objective; (6) formed and reached a private agreement with each other to violate PLAINTIFF'S constitutional rights. (7) was motivated by evil motive or intent, involving reckless or callous indifference to the federally protected rights of PLAINTIFF; (8) had motive to act independently and in an egregious manner as the CASE was lawless.

### C.    WITH KNOWLEDGE

115.    Each individual CONSPIRATOR, starting on June 8, 2020, or soon thereafter and ongoing, knew the interests and motivations of each other individual CONSPIRATOR and the material facts that; (1) JOHNSTONE and MCAULIFFE would provide legal advice to TWITTER through its counsel SCHWARTZ and ECK, in the CASE; (2) PLAINTIFF, in his CASE, was pursuing discrimination claims against TWITTER in the COURT and that these claims could not be easily dismissed through LR 4.3 because his claims were meritorious; (3) PLAINTIFF had an economic and contractual relationship with TWITTER which was in dispute; (4)

ATTACHED EXHIBIT A-1

PLAINTIFF'S CASE was pending at the time; (5) PLAINTIFF had asked for a jury trial; (6) JOHNSTONE'S ILLEGAL POLICY and the previous fraud upon the COURT was unknown to PLAINTIFF until December 9, 2020; (7) PLAINTIFF would likely be a witness at any jury trial in the CASE; (8) JOHNSTONE herself had promulgated an ILLEGAL POLICY; (a). which was used to regulate pro hac vice admissions exclusively for TWITTER'S counsel; (b). which had been previously utilized by COIE and MRAZIK; (c). which SCHWARTZ attempting to utilize in PLAINTIFF'S CASE; (d). which had previously defrauded the COURT; (9) JOHNSTONE'S ILLEGAL POLICY as described above in II. ILLEGAL PRO HAC VICE POLICY, was illegal and unethical; (10) the COURT was bias in favor of TWITTER because of JOHNSTONE'S ILLEGAL POLICY and the use of said POLICY in past or present cases in the COURT; (11) the COURT was now compromised in the CASE because of; (a). JOHNSTONE'S ILLEGAL POLICY; (b). the bias of the COURT in favor of one defendant, TWITTER; (c). the past and present fraud upon the COURT. See [PE 001-068]. (12) the ILLEGAL POLICY would be utilized in PLAINTIFF'S CASE; (13) had the laws and rules been followed, TWITTER should be in default and that PLAINTIFF had an opportunity to control the litigation; (14) TWITTER was in fact in default; (15) if CONSPIRATORS disclosed the existence of the illegal practice of law by MRIZAK and SCHWARTZ, JOHNSTONE'S ILLEGAL POLICY of allowing COIE attorneys to practice law in the COURT illegally, they would be exposed and that some or all of the

ATTACHED EXHIBIT A-1

CONSPIRATORS may be liable to others in some shape or form; (16) this CONSPIRACY existed; (17) the CONSPIRACY'S objective was to deter, punish, and injure PLAINTIFF; (18) the CONSPIRACY existed for each CONSPIRATORS own benefits and TWITTER'S benefit; (19) there was a connection between the CONSPIRACY and PLAINTIFF'S CASE; (20) each CONSPIRATOR shared in a common purpose to conspire against the PLAINTIFF in his CASE; (21) a tort was planned and concurred in the tortious scheme with knowledge of its unlawful purpose and objective; (22) the conduct to be committed was willful, wanton, malicious, and oppressive to PLAINTIFF; (23) all substantial orders of the COURT would be preconceived and for the benefit of TWITTER and it's counsel; (24) any preconceived orders would be unlawful and not necessarily based on the law; (25) the nature of the illegal acts to be done acts were to be in furtherance of the CONSPIRACY; (26) any act in the furtherance of the CONSPIRACY would violate PLAINTIFF'S due process, petition and access rights; (27) one or more of the CONSPIRATORS would engage in unlawful conduct or commit an overt act in furtherance of said CONSPIRACY; (28) each CONSPIRATOR was acting with the common intent to defraud PLAINTIFF; (29) PLAINTIFF would rely on or be pressured to rely on these preconceived orders of the COURT to his detriment; (30) that such reliance upon preconceived orders would be justifiable or reasonable as they were "orders" of the COURT; (31) PLAINTIFF would be and was being damaged as a result of these omissions and other acts of the CONSPIRACY; (32) the result of his

ATTACHED EXHIBIT A-1

or her actions or omissions would damage PLAINTIFF. (33) that JOHNSTONE'S ILLEGAL POLICY could not be fully utilized in Delima 2; (34) that if the CASE continued upon the merits, the US Attorney General would enter the CASE; (35) PLAINTIFF'S discrimination claims were meritorious.

### D. PRIVATE CONSPIRACY AGREEMENT

116. On June 8, 2020, or soon thereafter, JOHNSTONE and MCAULLIFE, having reviewed the substance and analyzed the facts of TWITTERS'S legal position based on current applicable law in PLAINTIFF'S CASE, illegally or legally advised TWITTER'S counsel, COIE, SCHWARTZ, O&R and ECK, through established channels of communication, a scheme or strategy of concealment and of preconceived orders, in which COIE, SCHWARTZ, O&R and ECK would put forth material misrepresentations and/or misconstrue PLAINTIFF'S arguments or position, with the intent to deceive, mislead and steer the arguments so that any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to be legitimate and not preconceived.

117. On June 8, 2020, or soon thereafter PLAINTIFF filed his [Default Motion, at Dkt. 7], in a matter before a COURT of the judicial branch of the United States, and in violation of Section 1985(2), CONSPIRATORS, each of them, and at all times material hereto, and ongoing, together, done intentionally, knowingly, willingly, maliciously, purposely and conscious of what the other CONSPIRATORS independent actions were to be, conspired, joined together, combined, positively or

ATTACHED EXHIBIT A-1

tacitly or, came to an agreement of privity or a mutual understanding with each other and/or others, or a had a meeting of minds and explicitly agreed or agreed- expressly to adhere to JOHNSTONE'S and MCAULIFFE'S illegal or legal advice, and privately agreed with each other that the object of the CONSPIRACY was to: (1) form a CONSPIRACY against the PLAINTIFF to violate, injure, oppress, threaten and intimidate PLAINTIFF in the free exercise of rights and privileges secured to him by the US Constitution of due process to access to the COURT, a non-bias tribunal, equal protection of the laws and his right to a jury trial of over twenty dollars in his claims against TWITTER; (2) judicially intimidate, coerce, compel, pressure, force and threaten the PLAINTIFF to; (a). give up on his CASE; (b). give up on his default motions; (c). stop attending and continuing his CASE in the COURT; (d). not to testify in any matter regarding the CASE; (3) deny any hearings, deter or delay PLAINTIFF from bringing forth his CASE on the merits and from becoming a witness at any jury trial and testifying to any matter pending therein, freely, fully, and truthfully in his CASE; (4) follow JOHNSTONE'S and MCAULIFFE'S illegal or legal advice to have SCHWARTZ and ECK submit arguments using material misrepresentations, so that any preconceived order by MCAULLIFFE would appear on its face to be legitimate. (5) JOHNSTONE and MCAULIFFE would provide illegal or legal advice to TWITTER through its counsel SCHWARTZ and ECK, in the CASE, through established communications; (6) all orders of the COURT would be preconceived and agreed in advance to rule favorably for and for the benefit of

ATTACHED EXHIBIT A-1

TWITTER and it's counsel; (7) intentionally and deliberately conceal or cover up from the PLAINTIFF, the COURT and the public; (a). all material facts known to the CONSPIRATORS, (b). any ex-parte communications between CONSPIRATORS regarding PLAINTIFF'S CASE; (c). JOHNSTONE'S and MCAULIFFE'S legal advice given to TWITTER'S counsel. (d). JOHNSTONE'S indiscretions; (e). JOHNSTONE'S ILLEGAL POLICY; (f). that JOHNSTONE herself had promulgated an ILLEGAL POLICY: i. which was used to regulate pro hac vice admissions exclusively for TWITTER'S counsel; ii. which had been previously utilized by COIE and MRAZIK; 3. which SCHWARTZ attempting to utilize in PLAINTIFF'S CASE; 4. which had previously defrauded the COURT. (g). CONSPIRATORS objectives and their unity of purpose; (h). the CONSPIRACY and its members. (i). that the CONSPIRACY was also directed at the judicial machinery itself. (8) conceal that the COURT was bias in favor of TWITTER because of JOHNSTONE'S ILLEGAL POLICY and the use of said POLICY in past cases in the COURT; (9) conceal that the COURT was now compromised in the CASE because of: (a). JOHNSTONE'S ILLEGAL POLICY; (b). the bias of the COURT in favor of one defendant, TWITTER; (c). the past and present fraud upon the COURT. See [PE 001-068]; (10) retaliate against PLAINTIFF; (a). for filing and continuing his discrimination CASE; (b). to persuade him to give up on his CASE; (c). for having so attended or having brought his discrimination claims or default claims into the COURT; (d). for the purpose of impeding, hindering, obstructing, or to defeating the

ATTACHED EXHIBIT A-1

due course of justice in PLAINTIFF'S CASE through some overt act; (e). or through intimidation and fear through unpredictable and inconsistent behavior; (f). to inhibit PLAINTIFF from knowing or discovering the material facts of the CONSPIRACY and known to the CONSPIRATORS; (11) inflict punishment, loss, or pain to PLAINTIFF for filing and continuing  his CASE; (12) inflict punishment to abuse PLAINTIFF psychologically, physically, and financially;(13) violate PLAINTIFF'S constitutional right to due process; (14) violate PLAINTIFF'S constitutional right to a jury trial; (15) deprive PLAINTIFF of a constitutional right to due process, equal protection and a jury trial; (16) wrongly interfere with PLAINTIFF'S access to the COURT to pursue his discrimination and constitutional claims; (17) wrongly interfere with PLAINTIFF'S economic and contractual relationship with    TWITTER;    (18) wrongly interfere with the administration of justice in the COURT; (19) obstruct a lawful function of the COURT; (20) deny PLAINTIFF any pre-trial conferences or opportunities for settlement; (21) impede PLAINTIFF'S access to the COURT; (22) influence any appeal verdict; (23) make PLAINTIFF'S arguments appear unlikely or unmeritorious; (24) absolve TWITTER from any default in PLAINTIFF'S CASE; (25) absolve TWITTER from any of PLAINTIFF'S claims in his CASE; (26) fast track PLAINTIFF'S CASE for dismissal prior to any claim judgments; (27) ignore issues within the orders without explanations; (28) make an example of PLAINTIFF who challenged CONSPIRATORS actions; (29) cause PLAINTIFF additional appeal fees; (30) deter and punish others who contemplate bringing complaints to Federal

ATTACHED EXHIBIT A-1

Court against TWITTER; (31) dismiss or defeat the PLAINTIFF'S [Complaint, at 1]
prior to adjudication of the merits of his discrimination claims by using preconceived
orders; (32) cause PLAINTIFF to be denied the claims of his CASE in the COURT;
(33) deceive PLAINTIFF into believing the tribunal was fair and unbiased; (34)
deceive PLAINTIFF into believing his claims were frivolous; (35) devalue or stagnate
PLAINTIFF'S discrimination claims in his CASE; (36) devalue PLAINTIFF'S default
claims in his CASE; (37) deteriorate the physical, psychological or emotional welfare
of the party PLAINTIFF witness; (38) modify PLAINTIFF'S behavior using harsh
and unfair means;(39) play mind games, spread disinformation, use psychological
projection and create propaganda to make PLAINTIFF think that he was crazy or
unreasonable, or just for the sake of personal gratification and the enjoyment of
exercising power and control over PLAINTIFF; (40) defeat the PLAINTIFF'S
[Motion to Default, at 7] and [Complaint, at 1] by using preconceived motions,
objections or orders; (41) to suppress and conceal the material facts and arguments;
(42) to share PLAINTIFF'S true identity with each CONSPIRATOR; (43) monitor
PLAINTIFF'S activities through the CM/ECF database; (44) to perform any act
required in the furtherance of the CONSPIRACY; (45) cooperate in the commission
of an illegal or wrongful act in furtherance of said CONSPIRACY; (46) do their part
to achieve that underlying unlawful scheme or CONSPIRACY with each conspirator
intending to bring about the tortious injury that was the subject of the private
agreement; (47) a common plan or design to commit a tortious act in furtherance of

ATTACHED EXHIBIT A-1

the CONSPIRACY; (48) engage in unlawful conduct regardless of whether the CONSPIRACY violated a duty imposed by tort law or a statute; (49) deter the US Attorney General from entering into the CASE.

118.   CONSPIRATORS, each of them, starting on June 8, 2020,  knowingly and willingly conspired and privately agreed, through legal compulsion or pressure tactics, that all of the COURT'S orders in the PLAINTIFF'S CASE, would be intentionally preconceived, not according to law and instead in accordance with the CONSPIRACY agreement of privity in an effort to steer PLAINTIFF'S CASE in the direction of the CONSPIRACY'S objectives.

119.   CONSPIRATORS, each of them, starting on June 8, 2020, or soon thereafter, willingly conspired and privately agreed, that through pressure tactics, deceit or trickery, that some or all of the arguments or objections put forth by TWITTER'S legal counsel would be intentionally preconceived or in accordance with JOHNSTONE'S and MCAULIFFE'S legal advice, the CONSPIRACY and the private agreement, which would provide cover or a false justification for any foregoing preconceived COURT orders.

120.   JOHNSTONE continued her ILLEGAL POLICY throughout the PLAINTIFF'S CASE out of ill will, maliciousness or spite and for the purpose of injuring PLAINTIFF and reaching the CONPIRACY'S objectives.

ATTACHED EXHIBIT A-1

121.    MCAULIFFE'S and JOHNSTONE'S acts of omission were deliberately indifferent to the risk presented by the ILLEGAL POLICY in effect at the time of PLAINTIFF'S injury.

122.    MCAULIFFE and JOHNSTONE, privately agreed together and with other CONSPIRATORS, agreed in advance to rule favorably for TWITTER, and to utilize legal compulsion and preconceived orders using their power and control as judges within the COURT, as a means of controlling the behavior of the PLAINTIFF through coercive control through their preconceived motions, objections or orders.

123.    MCAULIFFE and JOHNSTONE, privately agreed together and with the other CONSPIRATORS, to utilize economic coercion or economic abuse through these preconceived orders, and agreed in advance to rule favorably in favor of TWITTER, thus limiting PLAINTIFF'S actions, as PLAINTIFF was Pro Se, and may have lacked the necessary resources to resist the abuse, or to control and intimidate PLAINTIFF to influence PLAINTIFF to give up on his CASE or to make him feel that he did not have an equal voice or a cause of action, in his CASE.

124.    All acts overt or otherwise or actions attempted, taken, omitted, committed or partially or wholly completed by JOHNSTONE, MCAULIFFE, SCHWARTZ and ECK, individually or combined, include any/all acts or omission stated throughout this Verified Complaint and are said to be committed intentionally, knowingly, willingly, maliciously, purposely and conscious of what the other CONSPIRATORS independent actions were to be, and to further the private

ATTACHED EXHIBIT A-1

agreement between the CONSPIRATORS, the CONSPIRACY, its objectives, and are stated to be "at all times material acts" and "material" to the PLAINTIFF'S damages resulting from any number or combination of those acts.

### E.    OVERT ACTS RESULTING IN INJURY TO THE PLAINTIFF

125.    Each act committed by the CONSPIRATORS in furtherance of the CONSPIRACY or its objectives, deprived PLAINTIFF of his federally-protected fundamental U.S. Constitutional rights which existed in his discriminatory claims against TWITTER which contained a reasonable basis of fact or law, and deprived PLAINTIFF rights of: (1) due process and adequate, effective, and meaningful access to the Courts and justice guaranteed by the First and Fourteenth Amendments to the United States Constitution; (2) petition or right to seek judicial redress for grievances including the Due  Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV, and the First Amendment's Petition Clause of the United States Constitution; (3) due process to an impartial tribunal under the Fifth Amendment; (4) right to a jury trial under the Seventh Amendment; (5) right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

126.    Each overt act in furtherance of the CONSPIRACY deprived PLAINTIFF of his person and property without due process of law, was twofold in that the injury inflicted by the underlying cause of harm of discrimination and the injury caused by the ensuing coverup which include; (1) diminished leverage in any

ATTACHED EXHIBIT A-1

contract settlement negotiations; (2) diminished leverage in his discrimination claims (3) losses in contract; (4) losses in contract negotiations; (5) loss of any positive leverage of claims contained in [Complaint, at 1]; (6) loss of any positive leverage of [Default Motion, at 7]; (7) loss of any privileges of a Magistrate facilitating any settlement; (8) loss of any good faith mediation, alternative dispute resolution, arbitration, or any early neutral evaluation or minitrial; (9) loss of bargaining power, resulting in an inequality of bargaining power which threatened any impasse; (10) negative leverage giving TWITTER coercive power to punish the PLAINTIFF for bringing his claims or motions to the COURT; (11) the opportunity to seek relief for his discrimination claims before a jury. (12) loss of appeals fees; (13) economic damage that would be recognized in an ordinary tort suit; (14) emotional distress and suffering resulting from a deprivation of his constitutional rights generally addressed by common law torts; (15) physical stress causing him mental pain, mental agony, anguish, indignity suffered, severe headaches, exhaustion, sleeplessness, bodily stress & fatigue and other physical symptoms; (16) moral disenfranchisement that constitutional torts are intended to protect against; (17) loss of economic advantages, direct expenses incurred, loss of time, loss of family time, costs spent in bringing his claims before the COURT in his CASE, and his subsequent 4 Appeals of that CASE, and now these claims in this Verified Complaint; (18) any attorneys' fees spent bringing this lawsuit.

ATTACHED EXHIBIT A-1

127.   This shameful matter of this CONSPIRACY also magnifies PLAINTIFF'S discrimination injuries he suffered at the hands of TWITTER and the residual effects of his discrimination claims being unjustly dismissed.

128.   This shameful matter of this CONSPIRACY also posed a substantial risk of harm to PLAINTIFF'S two young children who were not parties to PLAINTIFF'S CASE.

## IV.   PLAINTIFF'S CASE

129.   On June 1, 2020, SCHWARTZ, COIE, O&R and ECK, as counsel for TWITTER, illegally submitted, a [Dismiss Motion, at 3] to the COURT. See CASE Docket at [PE 072]

130.   On June 4, 2020, ECK, because he knew that SCHWARTZ'S [Dismiss Motion, at 3] was illegal and not within the COURT'S rules, and for personal and professional purposes, e-mailed PLAINTIFF in which he stated that SCHWARTZ, **"intends to file a motion for pro hac vice admission"** and that SCHWARTZ and ECK **"will ask the Court to allow Attorney Schwartz to appear and practice"** before the COURT. See [PE 073].

131.   On June 8, 2020, or soon after PLAINTIFF submitted his [Motion to Default, at 7], JOHNSTONE and MCAULIFFE, in personal pursuits, and in furtherance of the CONSPIRACY, through established communication (See III.A above-A PRIVATE CONSPIRACY AGREEMENT), analyzed the material facts of TWITTER'S position in the CASE and engaged in the practice of law, by "legally"

ATTACHED EXHIBIT A-1

advising COIE, SCHWARTZ, O&R and ECK, as counsel for TWITTER, a specific course of action to utilize preconceived motion, objection and orders to conceal, omit and deny all the material facts of the CONSPIRACY in PLAINTIFF'S CASE based on the applicable laws.

132. In acts to further the CONSPIRACYS' objectives, and soon after PLAINTIFF submitted his [Motion to Default, at 7] to the COURT. Instead of revealing the true circumstances regarding JOHNSTONE'S ILLEGAL POLICY, and the actual bias of the COURT in favor of TWITTER, each CONSPIRATOR did everything in their individual and combined power to omit, cover up and conceal the material facts of the CONSPIRACY, and, through submittals or pleadings to the COURT by SCHWARTZ and ECK or through preconceived COURT orders of the COURT, and as directed by JOHNSTONE and MCAULIFFE.

133. On June 8, 2020, PLAINTIFF submitted a [Motion to Default, at 7] and [Declaration, at 7.1], to the COURT, stating inter alia that, because the [Motion to Dismiss, at 3] was submitted by an attorney prohibited from practicing in the COURT, that ECK'S e-mail collaborates SCHWARTZ'S ineligibility to appear before the COURT, and that it was illegal and prohibited and therefore non-conforming, should be stricken by the clerk under L.R'(s). 5.2 and 77.2, and constitutes a failure to plead or defend, and therefore TWITTER was in default under Fed. Rule(s) 55(a) and L.R. 55.1(a).

ATTACHED EXHIBIT A-1

134.   On June 15, 2020, PLAINTIFF submitted a [Strike Motion, at 14], a [MOL, at 14-1] and [Declaration, at 14-2], to the COURT, stating similar arguments made in his [Default Motion, at 7], and that, SCHWARTZ, in her [Pro Hac Motion, at 9], readily admits in her own words that she was not at the time she submitted her [Motion to Dismiss, at 3], eligible for admission to the bar of the COURT.

135.   On June 19, 2020, obedient to the legal or illegal advice given by JOHNSTONE and MCAULIFFE, SCHWARTZ, COIE, O&R and ECK, as counsel for TWITTER in acts to further the CONSPIRACYS' objectives, submitted an [Objection, at 17.], [MOL, at 17.1], [Objection, at 18.1], and [MOL, at 18.1], to the COURT, with the intent to deceive, mislead and steer the arguments so that any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to be legitimate and not preconceived, in which SCHWARTZ, ECK, O & R and COIE put forth material misrepresentations that adequate that notice under Fed. Rule 55(b) satisfies a Fed. Rule 55(a) pleading or defense, that there was no basis to disregard TWITTER'S [Dismiss Motion, at 3], and provided no Rule 12 arguments or case law in support thereof. [Doc. 17-1, at 2.] In their objection and MOL, SCHWARTZ and ECK provide absolutely no case law in support of this Fed. Rule 55(a) theory and also contradicted ECK'S e-mail statement and SCHWARTZS', [Pro Hac Motion, at 9], which both confirm the fact that SCHWARTZ was not allowed to "appear or practice" before the COURT when she submitted it to the COURT, the [Dismiss Motion, at 3].

ATTACHED EXHIBIT A-1

136.    On June 26, 2020, PLAINTIFF submitted an [Objection, at 31] and [MOL, at 31-1], to the COURT, advancing similar arguments made in [Default Motion, at 7] and "Noticed" that Rules of the COURT and laws should be followed, and that fair play is essential for equal justice under the law and that PLAINTIFF would be prejudiced if the rules and laws were not followed.

137.    On June 26, 2020, obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, SCHWARTZ, COIE, O&R and ECK, as counsel for TWITTER, in an act to further the CONSPIRACYS' objectives, submitted an [Objection, at 25] to the COURT, with the intent to deceive, mislead and steer the arguments so that any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to be legitimate and not preconceived, in which SCHWARTZ, ECK, O & R and COIE put forth material misrepresentations or phony arguments that SCHWARTZ'S actions of submitting the [Dismiss Motion, at 3] when she was ineligible and unauthorized were **"typical practice"** and **"consistent with New Hampshire's Rules of Professional Responsibility. N.H. Rule 5.5(c)(2)"** when in fact, under paragraph 5.5(c)(2), to the extent that a court rule or other law of this jurisdiction requires a lawyer who is not admitted to practice in this jurisdiction to obtain admission pro hac vice before appearing before a tribunal or administrative agency, this Rule requires the lawyer to obtain that authority, which SCHWARTZ did not, prior to her [Dismiss Motion, at 3] submittal, and in direct contradiction to ECK'S admittance of those facts in his e-mail and in contradiction to SCHWARTZS'

ATTACHED EXHIBIT A-1

and ECK'S acknowledgement in its [Objection, at 22], when acknowledging that SCHWARTZ did not even apply for Pro Hac Vice until a week after submitting the [Dismiss Motion, at 3].

138.    On July 2, 2020, PLAINTIFF submitted a [Reply Objection, at 34] to the COURT, and points out that an "appearance" under 5.5(c)(2) requires pro hac vice admission prior to any submittal because the rules and laws require it.

139.    On July 8, 2020, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an effort to suppress the material facts of the CONSPIRACY, ordered and denied without explanation or hearing, PLAINTIFF'S [Dismiss Motion, at 7]  with an order that was so perverse and contrary to the spirit of the law that it raises little doubt to the partiality/bias of MCAULIFFE and the COURT in PLAINTIFF'S CASE. MCAULIFFE'S July 8, 2020, order: (1) was inconsistent and contrary to acts of congress and the Federal Rules of Practice and Procedure; (2) discarded the US Constitution; (3) was determined utilizing unofficial rules and procedures; (4) was determined using JOHNSTONE'S ILLEGAL POLICY; (5) disregarded the COURTS' own Rules;  (6) disregarded Judicial Cannons of obeying the law and fair play; (7) ignored established Federal case law; (8) did not adhere to the controlling standards established by the Rules of Decision Act; (9) created new law rather than interpreting the existing law because MCAULIFFE'S work was creative, political and personal, rather than co-trained, legal, and institutional; (10) was not related to any proper governmental objective and imposed

ATTACHED EXHIBIT A-1

on PLAINTIFF, a burden that constitutes an arbitrary deprivation of PLAINITFF'S liberty in violation of the Due Process Clause; (11) failed to adhere to the law strictly and contrary to the facts present in this CASE; (12) usurped the power of the governing state authority when it passed judgment contrary to the wisdom and efficacy of New Hampshire RSA 311:7; (13) usurped the state's operative authority to craft unauthorized practice measures for attorneys and private individuals, as MCAULIFFE lacked the power to decide which measures are "likely to be the most effective for the protection of the public"; (14) usurped MCAULIFFE'S judicial power as he was acting beyond his jurisdiction; (15) ignored the facts presented; (16) ignored ECK'S e-mail statements of admittance; (17) ignored SCHWARTZ'S statements of admittance; (18) was not based on facts in the record; (19) was reached without due process of law and a fair tribunal; (20) is unconstitutional and therefore void; (21) was ultra vires  or "invalid". (22) was made without subject matter jurisdiction; (23) was contrary to N.H.R.S.A. 311:6 and 311:7; (24) usurped the state's operative authority to craft unauthorized practice measures for attorneys and private individuals; (25) failed to apply or even acknowledge the framework governing unauthorized practice of law in New Hampshire Courts. This extraordinary error allowed the COURT to create a blanket exception for unauthorized practice of law for TWITTER'S attorney, SCHWARTZ; (26) failed to be constrained by widely agreed upon legal canons of construction; (27) was a deliberate act interfering with the disposition of PLAINTIFF'S claims; (28) extended the entire course of litigation; (29)

Page **49** of 107

ATTACHED EXHIBIT A-1

prejudiced PLAINTIFF severely and undeservingly; (30) was decided upon information outside the 4 corners of the case; (31) violated PLAINTIFF'S substantive due process rights by exceeding its judicial authority;  (32) violated PLAINTIFF'S procedural due process rights by failing to ensure that the adjudication process, under valid laws and rules, was fair and impartial; (33) failed to equal protect the "Non-attorney" PLAINTIFF and in favor of the "Professional" class of attorneys; (34) wrongly declared that TWITTER and it's attorney SCHWARTZ had not violated New Hampshire law; (35) was preconceived in furtherance of the CONSPIRACY. (36) was a preconceived determination upon the merits and without subject matter jurisdiction.

140.    On July 22, 2020, PLAINTIFF submitted an [Objection, at Dkt. 39] and [MOL, at Dkt.39-1], to the COURT, in response to the July 8, 2020, order. PLAINTIFF advanced similar arguments of [Dkt. 7] and averred that the laws, rules and facts were not applied to the denied order. PLAINTIFF strongly suggested bias of the COURT in favor of ECK because of his extensive training within the confines of the COURT itself. PLAINTIFF could sense something wasn't right but was not able to identify or uncover any other evidence to further support a claim of bias at this time.

141.    On August 4, 2020, obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, SCHWARTZ, COIE, O&R and ECK, as counsel for TWITTER in an act to further the CONSPIRACYS' objectives, and in an effort

ATTACHED EXHIBIT A-1

to suppress the material facts of the CONSPIRACY, submitted an [Objection, at 43],
an [Objection, at 44], to the COURT, and on August 25, 2020, submitted an
[Objection, at 53], with the intent to deceive, mislead and steer the arguments so that
any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to
be legitimate and not preconceived, in which SCHWARTZ, ECK, O & R and COIE
put forth material misrepresentations and bogus arguments that adequate notice under
Fed. Rule 55(b) satisfies a Fed. Rule 55(a) pleading or defense. Again, SCHWARTZ
and ECK provided absolutely no case law in support of this Fed. Rule 55(a) theory
and also contradicted ECK'S e-mail statement, [Attached Exhibit 069], and
SCHWARTZ' [Pro Hac Motion, at 9], which both confirm the fact that SCHWARTZ
was not allowed to "appear or practice" before the COURT when she submitted to
the COURT, the [Dismiss Motion, at 3]. JOHNSTONE, in case #1:18-cv-00203-PB,
further advances the PLAINTIFF'S argument that an "appearance" has absolutely
zero bearing on a default, and states;

> **"Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure,
> the entry of a default against a defendant in a case is appropriate
> only upon a showing that that party "has failed to plead or
> otherwise defend." Fed. R. Civ. P. 55(a). See [PE 074]**

142.    On August 11, 2020, PLAINTIFF submitted an [Objection, at Dkt. 48]
and [MOL, at Dkt. 48-1], to the COURT, and again averred that the laws, rules and
facts were not applied to the order. PLAINTIFF strongly suggested bias of the
COURT in favor of ECK because of his extensive training within the COURT.

PLAINTIFF could smell something wasn't right, and noticed the COURT of PLAINTIFF'S constitutional rights being violated, but was not able to identify or uncover any other evidence to further support any claims of bias or underlying unfair treatment at this time.

143.    On August 13, 2020, MCAULLIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an effort to suppress the material facts of the CONSPIRACY, ordered and denied without explanation or hearing, PLAINTIFF'S [Objection, at Dkt. 39], which was so perverse and contrary to the spirit of the law that it raises little doubt to the partiality/bias of MCAULLIFE and the COURT in PLAINTIFF'S CASE. MCAULIFFE'S August 13, 2020, order accomplished all that was accomplished through MCAULIFFE'S July 8, 2020, order as described in Paragraph 139 above.

144.    MCAULIFFE knowingly, willingly and purposely ignored the rules, the laws and case precedents to deny PLAINTIFF'S [Default Motion, at 7] and his [Reconsideration Motion, at 39].

145.    On August 28, 2020, JOHNSTONE, in a preconceived act to further the CONSPIRACYS' objectives, and in an act to suppress the material facts of the CONSPIRACY, ordered and denied as moot PLAINTIFF'S leave [Objection, at Dkt. 48] as the court had denied PLAINTIFF'S [Objection, at Dkt. 39] through its August 13, 2020, order.

ATTACHED EXHIBIT A-1

146.    On March 27, 2020, by ADM-1 ORDER 20-11, signed by Chief Judge Landya B. McCafferty, See [PE 075], the COURT allowed Pro Se Litigants to file documents by e-mail due to the exigent circumstances created by Covid-19. Under 1.a., authorized submission of paper filings to be e-mailed to ecfintake@nhd.uscourts.gov.

147.    Beginning on May 4, 2020, PLAINTIFF, in his CASE, and ignorant to ADM-1 ORDER 20-11, filed every pleading, motion, objection, brief or other pleadings exclusively though the COURTS' depository box using paper or computer discs, sealed in an envelope or via the US Postal Service. PLAINTIFF, in his appeals of his CASE, either presented his pleadings or briefs by either through hand delivery to the Appeals Court or in a sealed envelope delivered via the US Postal Service.

148.    On August 19, 2020, JOHNSTONE, in a preconceived act to further the CONSPIRACYS' objectives, and deter or burden PLAINTFF, ordered and granted in part, PLAINTIFF'S [Clarification Motion, at 41], but stated and ordered that, **"Plaintiff… may not file documents electronically, including by email to the Clerk",** which is in direct contradiction to ADM-1 ORDER 20-11 which should have allowed PLAINTIFF to file pleadings through e-mail, in an effort to make it more difficult or deter the PLAINTIFF from submitting further pleadings with the COURT.

149.    On August 6, 2020, PLAINTIFF, submitted a Rule 5.1 [Motion Challenging the Constitutionality of TITLE 47 U.S.C. § 230, at 45], to the COURT,

which contained no more than 13, 000 words, used a monospaced faced font and contains less than 1,300 lines and included a Fed. Rule 32 (g) Certificate of Compliance required under Fed. R C.P., Rule, 32(a)(7)(B).

150.   On Friday, August 14, 2020,  obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, SCHWARTZ, COIE, O&R and ECK, as counsel for TWITTER, in an act to further the CONSPIRACYS' objectives, and in an act to suppress the material facts of PLAINTIFFS claims, submitted an [Extension of Time Motion, at 51], to the COURT, knowing that MCAULLIFE had planned to judicially intimidate PLAINTIFF and dismiss PLAINTIFF'S CASE by the end of the current month, so that TWITTER would never be required to respond to the Rule 5.1 [Motion Challenging the Constitutionality of TITLE 47 U.S.C. § 230, at 45], and that it would also deter the US Attorney General from entering the case, and with the intent to deceive, mislead and steer the arguments so that any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to be legitimate and not preconceived, in which SCHWARTZ, ECK, O & R and COIE put forth material misrepresentations that;

> **"Plaintiff's Motion contravenes the page limits of the Local Rules and prejudices Twitter by depriving it of an adequate time to prepare an appropriate response or other challenge to Plaintiff's voluminous filing, should one be required"**

151.   And although PLAINTIFF was given until August 28, 2020, to respond to the [Extension of Time Motion, at 51], on Monday, August 17, 2020,

ATTACHED EXHIBIT A-1

JOHNSTONE, in a preconceived act to further the CONSPIRACYS' objectives, and in an act to suppress the material facts of PLAINTIFFS claims, knowing that PLAINTIFF'S page limits were within Local Rules, ordered and granted an extension of time for TWITTER to file an objection, knowing that MCAULLIFE had planned to judicially intimidate PLAINTIFF and dismiss PLAINTIFF'S CASE by the end of the current month, so that TWITTER would never be required to respond to the Rule 5.1 [Motion Challenging the Constitutionality of TITLE 47 U.S.C § 230, at 45], and that it would also deter the US Attorney General from entering the case.

152. On June 22, 2020, SCHWARTZ, COIE, O&R and ECK, as counsel for TWITTER, obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, in an act to further the CONSPIRACYS' objectives, and in an act to suppress the material facts of the ILLEGAL POLICY, submitted an [Objection MOL, at 22-1], to the COURT, with the intent to deceive, mislead and steer the arguments so that any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to be legitimate and not preconceived, in which SCHWARTZ, ECK, O & R and COIE put forth material misrepresentations that SCHWARTZ'S submittal of the [Dismiss Motion, at 3] while not a member of the bar is **"highly typical practice"** and **"did not constitute unauthorized practice of law"** when in fact it was illegal and an unauthorized practice of law in violation of New Hampshire RSA 311:7 and in direct contradiction to ECK'S admittance of those facts in his e-mail and in contradiction to SCHWARTZS' and ECK'S acknowledgement in its

[Objection, at 22], when acknowledging that SCHWARTZ did not even apply for Pro Hac Vice until a week after submitting the [Dismiss Motion, at 3].

153.    On August 19, 2020, JOHNSTONE, in an act to further the CONSPIRACYS' objectives, and in an act to suppress the material facts of her own ILLEGAL POLICY, or to conceal SCHWARTZS' illegal act of submitting her [Dismiss Motion, at 3], ordered and granted TWITTER'S, SCHWARTZ, COIE, O&R and ECK'S, [Pro Hac Motion, at 9] although SCHWARTZ submitted the [Dismiss Motion, at 3] prior to being eligible to the bar of the COURT which was illegal and unauthorized practice of law in violation of New Hampshire RSA 311:7.

154.    On July 29, 2020, PLAINTIFF, in an effort to build his CASE that TWITTER'S [Dismiss Motion, at 3] was "admittedly" illegal and non-conforming, filed a [Judicial Notice Motion, at 42] requesting judicial notice of "facts" relevant to TWITTER'S [Dismiss Motion, at 3], and the acknowledgement of facts such as; (1) Attorney Schwartz's [Default Motion, at 3] is defined as an appearance before the Court; (2) Attorney Schwartz; (a). is an attorney admitted to practice in another state; (b). submitted a motion to the court on behalf of herself; (c). submitted the motion to the court on behalf of TWITTER.

155.    On August 12, 2020, SCHWARTZ, COIE, O&R and ECK, as counsel for TWITTER, obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, in an act to further the CONSPIRACYS' objectives, and in an act to suppress the material facts of the ILLEGAL POLICY, submitted an [Objection, at

ATTACHED EXHIBIT A-1

50], to the COURT, with the intent to deceive, mislead and steer the arguments so that any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to be legitimate and not preconceived, in which SCHWARTZ, ECK, O & R and COIE put forth material misrepresentations that; (1) falsely describe PLAINTIFF'S [Default Motion, at 7] and [Judicial Notice Motion, at 42] as advocating that "Twitter's Motion to Dismiss does not qualify as an "appearance", when in fact, PLAINTIFF advocated that **"TWITTER has failed to plead or otherwise defend the [Complaint, at 1]",** because it was illegal and nonconforming to the rules; (2) falsely describing PLAINTIFF'S [Judicial Notice Motion, at 42], as advocating that "Twitter's Motion to Dismiss does not qualify as an "appearance", when in fact, PLAINTIFF advocated and sought the opposite and notice of the fact that "Attorney Schwartz's [Default Motion, at 3] is defined as an appearance before the Court".

156. In an August 27, 2020, MCAULIFFE, in a preconceived act to further any number of the CONSPIRACYS' objectives, and in an act to suppress the material facts of the ILLEGAL POLICY, ordered and denied PLAINTIFF'S [Judicial Notice Motion, at 42], stating in pertinent part; 50 "facts".... PLAINTIFF seeks notice on **"seem more directly related to his efforts to disqualify Twitter's counsel"** which is totally unsupported by substantial, credible evidence in the record, and stated that; **"Those "facts" will be resolved in due course, as necessary to resolve the parties' dispute"** in an effort to conceal or further any number of the CONSPIRACY'S objectives.

ATTACHED EXHIBIT A-1

157.   MCAULIFFE'S August 27, 2020, order pertaining to Judicial Notice: (1) failed to adhere to the law strictly and contrary to the facts present in this CASE; (2) usurped MCAULIFFE'S judicial power as he was acting beyond his jurisdiction; (3) ignored the facts presented; (4) ignored ECK'S e-mail statements of admittance; (5) ignored SCHWARTZ'S statements of admittance; (6) was not based on facts in the record; (7) ignored established Federal case law; (8) was reached without due process of law and a fair tribunal; (9) is unconstitutional and therefore void; (10) was ultra vires  or "invalid". (11) was made without subject matter jurisdiction; (12) failed to apply or even acknowledge the framework governing declaratory judgments' (13) failed to be constrained by widely agreed upon legal canons of construction; (14) was a deliberate act interfering with the disposition of PLAINTIFF'S claims; (15) extended the entire course of litigation; (16) prejudiced PLAINTIFF severely and undeservingly; (17) was decided upon information outside the 4 corners of the case; (18) violated PLAINTIFF'S substantive due process rights by exceeding its judicial authority; (19) violated PLAINTIFF'S procedural due process rights by failing to ensure that the adjudication process, under valid laws and rules, was fair and impartial; (20) was preconceived in furtherance of the CONSPIRACY; (21) was made without subject matter jurisdiction. (22) was a preconceived determination upon the merits and without subject  matter jurisdiction.

158.   On May 29, 2020, PLAINTIFF filed a declaratory [Public Accommodation, at 5] and [MOL, at 5-1], stating, in pertinent part; that TWITTER

ATTACHED EXHIBIT A-1

was a public accommodation under law under 42 U.S.C. § 2000a(b) & N.H. Rev Stat§ 155:39-a, because TWITTER'S facility in San Francisco, contains and houses a covered establishment within its facility, Bon Appetit Management Co., which holds itself out as serving the public and patrons of that covered establishment would, in fact, bring TWITTER within the reach and definition of 42 U.S.C. § 2000a(b)4 and (c)(4) and facts to which TWITTER provided no rebuttal argument in its [Dismiss Motion, at 3] and its [Objection, at 10].

159. On August 27, 2020, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an act to suppress the material facts that; (1) TWITTER was in fact a "covered establishment" under 42 U.S.C. § 2000a(b) & N.H. Rev Stat§ 155:39-a, because it housed Bon Appetit Management Co. within this facility, (2) TWITTER failed to rebut these material facts and waived any argument to PLAINTIFF'S Bon Appetit claims, ordered and denied PLAINTIFF'S [Public Accommodation, at 5] stating in pertinent part; "Such declaratory relief is neither proper nor necessary" when in fact; (1) declaratory relief is alternative or cumulative and not exclusive or extraordinary and was appropriate pursuant to 28 U.S.C. §§ 2201 and Rule 57 of the Federal Rules of Civil Procedure, as it may have "terminated the controversy of public accommodation" and answered one of PLAINTIFF'S claims; (2) TWITTER made no objection to these material facts.

160. On August 27, 2020, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an act to dismiss PLAINTIFF'S claims, ordered

ATTACHED EXHIBIT A-1

and denied PLAINTIFF'S [State Actor Motion, at 16], and [Public Forum Motion, at 16], stating in pertinent part; **"Such declaratory relief is neither proper nor necessary"** when in fact declaratory relief is alternative or cumulative and not exclusive or extraordinary and was appropriate pursuant to 28 U.S.C. §§ 2201 and Rule 57 of the Federal Rules of Civil Procedure, as it may have "terminated the controversy of state actor" and answered one of PLAINTIFF'S claims.

161.    On August 27, 2020, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an act to suppress the material facts of the CONSPIRACY and in an effort to judicially intimidate, coerce, compel, pressure, force and threaten the PLAINTIFF to not file any reconsideration motion or any notices of appeal of this order, by closing the courthouse doors, imposing costs and legal fees, ordered and granted TWITTER'S [Stay Motion, at 24], stating in pertinent part;

> **"neither party shall file any additional papers, pleadings, notices, or motions with the court, except as necessary on an emergency basis and only with prior leave of the court (that is, by way of first seeking, and obtaining, leave to file). Failure to comply with this order may expose the violator to an order imposing costs and legal fees.**

162.    On August 27, 2020, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an effort to judicially intimidate, coerce, compel, pressure, force and threaten the PLAINTIFF to reveal his name and true identity, ordered and denied PLAINTIFF'S [Anonymous Motion, at 15] and compelled

ATTACHED EXHIBIT A-1

PLAINTIFF to reveal his true identity to the COURT on or before September 17, 2020, with an order that was so perverse and contrary to the spirit of the law that it raises little doubt to the partiality/bias of MCAULIFFE and the COURT in PLAINTIFF'S CASE.

163.   On September 10, 2020, PLAINTIFF filed an [Emergency Reconsideration Motion, at 55] to request for Reconsideration of the August 27, 2020, orders.

164.   On September 14, 2020, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an effort to suppress the material facts of the CONSPIRACY, suppress or close out any interlocutory appeal process relating to the PLAINTIFF'S true identity and coerce or intimidate PLAINTIFF into revealing his true identity prior to any appeal process, ordered and denied PLAINTIFF'S [Emergency Reconsideration Motion, at 55], the reconsideration of any of his orders and compelled PLAINTIFF to reveal his true identity to the COURT on or before September 17, 2020.

165.   On a September 17, 2020, PLAINTIFF filed an [Delay Compulsion Motion, at 56] asking the COURT to delay compulsion of his true identity, as he;

> **"intends file a 28 U.S.C. § 1291 appeal of the Courts August 27, 2020, final "Order" with the United States Court of Appeals for the First Circuit by September 28, 2020, regarding Plaintiffs Motion to Proceed Anonymously."**

ATTACHED EXHIBIT A-1

166.   On September 21, 2020, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an effort to suppress the material facts of the CONSPIRACY and in an effort to judicially intimidate, coerce, compel, pressure, force and threaten the PLAINTIFF to give up his name and appeal rights, ordered and denied PLAINTIFF'S [Delay Compulsion Motion, at 56], and compelled PLAINTIFF to reveal his true identity to the COURT on or before September 25, 2020, and 3 days prior to the appeal deadline, regardless of any "Notice of Appeal" by the PLAINTIFF, while jurisdiction lie with the Appeals Court, stated in pertinent part;

> **"[Plaintiff] "offers no explanation for his failure to comply other than that he intends to appeal the order. This motion to delay or modify is denied. Plaintiff shall file the required disclosure on or before the close of business on Friday, September 25, 2020, or the case will be dismissed for want of prosecution."**

167.   Through the September 21, 2020, [Compulsion Order], MCAULLIFFE, orchestrated an appeals trap by issuing a trap type order which would be trigged by non-compliance of the PLAINTIFF, so as to; (1) confuse the issue of interlocutory or final judgments, (2) disorientate by utilizing an uncommon and complicated type of order more commonly used in criminal cases, and (3) to punish the pro se PLAINTIFF by issuing an order more commonly used in a criminal action, so that PLAINTIFF would more than likely lose some or all of his appeal rights to appeal for lack of immediate understanding of such an order.

ATTACHED EXHIBIT A-1

168.    On September 25, 2020, on or around 10 am, and hours before MCAULIFFES order deadline of **"close of business"**,  PLAINTIFF, submitted to the COURT, a formal [Notice of Appeal, at 57], and also submitted a Motion to Partially Stay the COURTS' orders with the Appeals Court, until the Appeals Court has a chance to weigh in on the subject of PLAINTIFF'S true identity.

169.    On September 28, 2020, order, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an effort to suppress the material facts of the CONSPIRACY, ordered a full stay of the CASE, and stating in pertinent part;

> **"As an appeal has been filed, and dismissal was inevitable for failure to comply - thus essentially a final order."**

170.    McAuliffe's acts of dismissing the entire case, and re-affirming that dismissal, were oppressive, violated the rights of the Appellant, and reeks of unnecessary harshness and severity, especially after notice of an intent to appeal. MCAULIFFE was predisposed to deny PLAINTIFF'S [Default Motion, at 7], as the unofficial policies may be exposed and was not part of the CONSPIRATORS SCHEME.

171.    On October 1, 2020, PLAINTIFF, filed an [Emergency Reconsideration Motion, at 61], asking the COURT to reconsider its September 21, 2020, and September 28, 2020, orders because the PLAINTIFF had 'Noticed" the COURT within the form of Fed. R. App. P. 3(c), with his [Delay Compulsion Motion, at 56].

ATTACHED EXHIBIT A-1

172.   On October 6, 2020, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an effort to suppress the material facts of the CONSPIRACY, ordered and denied without explanation, PLAINTIFF'S [Emergency Reconsideration Motion, at 61], regardless of any notice given by the PLAINTIFF, and while jurisdiction lie with the Appeals Court.

173.   On March 8, 2021, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an effort to suppress the material facts of the CONSPIRACY, ordered and denied TWITTERS' [Dismiss Motion, at 3] which would enable TWITTER to elude any default resulting in its original filings, PLAINTIFF'S [Strike Motion, at 14] because if he answered the simple question of the Rule 3 conformity, TWITTER would have been in default, including judgment as no excuse existed, [Rule 5.1 Motion, at 45] so that the question regarding the constitutionality of Section 230 would never be answered, and the [Default II Motion, at 46], as there continued to be no excuse for TWITTER not to have refiled its illegal [Dismiss Motion, at 3].

174.   On March 18, 2021, PLAINTIFF filed an [Emergency Rule 60 Motion, at 74], asking the COURT to set aside all its orders due to fraud upon the COURT and bias of the COURT.

175.   On March 19, 2020, MCAULIFFE, in a preconceived act to further the CONSPIRACYS' objectives, and in an effort to further suppress the material facts of the CONSPIRACY, ordered and purposely denied without explanation, within 1 day,

ATTACHED EXHIBIT A-1

PLAINTIFF'S [Emergency Rule 60 Motion, at 74] and failed to acknowledge JOHNSTONE'S ILLEGAL POLICY, the fraud and the bias of the COURT.

176. MCAULIFFE'S: (1) August 27, 2020, order pertaining to Public Accommodation, State Actor, and to Public Forum, Staying the Proceeding, Anonymous, are identical to some or all of the characteristics described and set forth in Paragraph 157, 1-22 above; (2) September 14, 2020, order pertaining to any Reconsideration of MCAULIFF'ES August 27, 2020; (3) September 28, 2020, order pertaining to Compulsion; (4) October 6, 2020, order pertaining to PLAINTIFF'S [Emergency Reconsideration Motion, at 61]; (5) March 8, 2021, order pertaining to PLAINTIFF'S [Strike Motion, at 14], [Rule 5.1 Motion, at 45], and [Default II Motion, at 46]; (6) March 19, 2021, order pertaining to [Emergency Rule 60 Motion, at 74], are identical to, and share all of the characteristics described and set forth in Paragraph 157, 1-22 above.

177. Beginning on May 4, 2020, PLAINTIFF, in his CASE, and ignorant to ADM-1 ORDER 20-11, filed most every pleading, motion, objection, brief or other pleadings exclusively though the COURTS' depository box using paper or computer discs, sealed in an envelope or via the US Postal Service. PLAINTIFF, in his appeals of his CASE, either presented his pleadings or briefs by either through hand delivery to the Appeals Court or in a sealed envelope delivered via the US Postal Service.

ATTACHED EXHIBIT A-1

178.    In both PLAINTIFF'S CASE and his subsequent Appeals, not once has he utilized the COURTS' CM/ECF in order to file any document with the COURT or the Appeals Court.

179.    CM/ECF is the federal courts' case management and electronic case filing system. It allows courts to maintain case dockets and documents in electronic form and to permit electronic filing of case documents over the Internet.

180.    PLAINTIFF did in fact have an account under his true identity, which he has disclosed to no one as he was proceeding anonymously, but that account information would have only been in the possession of the COURT, or the PLAINTIFF, and not in the possession of TWITTER'S legal counsel, PEREZ or SCHWARTZ.

181.    PLAINTIFF has never revealed to the COURT his true identity.

182.    PLAINTIFF revealed his true identity to the Appeals Court through a sealed procedure and circumstance on March 25, 2021.

183.    In the Appeals Court, SCHWARTZ, PEREZ, and COIE, as counsel for TWITTER,  filed four pleadings, objections or briefs in which either PEREZ or SCHWARTZ certified that the PLAINTIFF, under his anonymous name of Sensa Verogna [was] a registered ECF Filer;

> I certify that the following parties are registered as ECF Filers and that they will be served by the CM/ECF system: Sensa Verogna. /s/ David A. Perez Case: 20-1933 Document: 00117648436 Page: 10 Date Filed: 09/28/2020

ATTACHED EXHIBIT A-1

I certify that the following parties are registered as ECF Filers and that they will be served by the CM/ECF system: Sensa Verogna. /s/ Julie E. Schwartz. Case: 20-1933 Document: 00117660077 Page: 6 Date Filed: 10/23/2020

I certify that the following parties are registered as ECF Filers and that they will be served by the CM/ECF system: Sensa Verogna. /s/ Julie E. Schwartz. Case: 20-1933 Document: 00117672006 Page: 4 Date Filed: 11/23/2020

I certify that the following parties are registered as ECF Filers and that they will be served by the CM/ECF system: Sensa Verogna. /s/ Julie E. Schwartz. Case: 21-1317 Document: 00117734150 Page: 3 Date Filed: 04/27/2021.

I certify that the following parties are registered as ECF Filers and that they will be served by the CM/ECF system: Sensa Verogna. /s/ Julie E. Schwartz. Case: 21-1317 Document: 00117741927 Page: 3 Date Filed: 05/17/2021

184.    SCHWARTZ, COIE, O&R and ECK, as counsel for TWITTER, knew of PLAINTIFF'S true identity prior to May 4, 2020, but, upon information and belief, lacked access to the COURT'S CM/ECF database of users.

185.    On or about June 8, 2020, JOHNSTONE and MCAULIFFE disclosed PLAINTIFF'S personal CM/ECF information to SCHWARTZ, COIE, O&R and ECK, in violation of the Privacy Act of 1974. JOHNSTONE, MCAULIFFE and ECK, SCHWARTZ and PEREZ, as counsel for TWITTER,  in preconceived acts to further the CONSPIRACYS' objectives, with the intent to eavesdrop, track or spy on the PLAINTIFF, communicated back and forth ex-parte, using prior established conduits, PLAINTIFF'S true identity and CM/ECF account information.

ATTACHED EXHIBIT A-1

186.    With PLAINTIFF'S true identity and CM/ECF account information in hand, each of the CONSPIRATORS could now search PLAINTIFF'S name through the COURT'S CM/ECF database and did use it to secretly eavesdrop track or spy on PLAINTIFFS research efforts and further the objectives of the SCHEME or CONSPIRACY so as to give CONSPIRATORS insight or other valuable information.

187.    On September 28, 2020, PEREZ and COIE, as counsel for TWITTER, obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, in an act directed by JOHNSTONE and MCAULIFFE, and in acts to further the CONSPIRACYS' objectives, submitted a response [Case: 20-1933 Document: 00117648436] in the Appeals Court. In this response, PEREZ states, in pertinent part;

> **"Twitter was directed to file this Response by 12 p.m. on Monday, September 28. Shortly before Twitter filed this Response, the District Court issued an order stating "Plaintiff did not comply with the court's extended disclosure order but instead filed an 'interlocutory' appeal on the final day allowed. As an appeal has been filed, and dismissal was inevitable for failure to comply - thus essentially a final order - this court will stay further action pending resolution of plaintiff's appeal." This stay likely moots Appellant's Motion but, at the request of the Court, Twitter nonetheless submits this Response on the merits of a stay.**

188.    On September 28, 2020, JOHNSTONE and MCAULIFFE, in acts to direct the PLAINTIFF'S CASE with an unseen hand, and to further the CONSPIRACYS' objectives, communicated ex-parte and directed or "legally" advised TWITTER, through its counsel, ECK, SCHWARTZ and PEREZ, using prior

ATTACHED EXHIBIT A-1

established conduits, to submit an immediate response objection in the Appeals Court.

189.   CONSPIRATORS used these ex-parte communications to further the CONSPIRACY'S objectives and utilized information gained from having an insight into the PLAINTIFF'S private research and a pre-view of PLAINTIFFS positions or arguments.

190.   On September 28, 2020, in Case: 20-1933, JOHNSTONE and MCAULIFFE, in personal pursuits, and in acts to further the CONSPIRACY, and through established communication (See III.A above-A PRIVATE CONSPIRACY AGREEMENT), analyzed the material facts of TWITTERS position in the CASE and engaged in the practice of law, by giving COIE, SCHWARTZ, O&R and ECK, as counsel for TWITTER,  a specific course of action to quickly file a response in PLAINTIFF'S Appeals Case: 20-1933,  based on the applicable laws.

191.   On September 28, 2020, in Case: 20-1933, SCHWARTZ, PEREZ, COIE, as counsel for TWITTER, obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, submitted a Response to PLAINTIFF'S motion to partially stay the proceedings in the COURT, with the intent to deceive, mislead and steer the arguments so that any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to be legitimate and not preconceived, in which PEREZ and COIE attempted to mislead the Appeals Court on evidentiary and legal points, and purposely made material misrepresentations regarding issues before

ATTACHED EXHIBIT A-1

the Appeals Court, in stating that; (1) **"[T]he only "evidence" before the Court was Appellant's purely speculative declaration",** when the record reflected that the "evidence" was not speculative, but undisputed, and when referring to the COURTS August 28, 2020, order that (2) **"Appellant's request for anonymity focused *only* on the "reasonable fear" factor",** when in fact the order infers that the Appellant focuses *much* attention and certainly doesn't infer it was the only one argument made concerning the Megless Doctrine prerequisites as pronounced and misleadingly advanced by PEREZ, COIE and TWITTER, and (3) the COURTS August 28, 2020, was not a final order while simultaneously arguing that it was still an interlocutory order.

192.    On October 23, 2020, in Case: 20-1933, SCHWARTZ, PEREZ, COIE, O&R and ECK, as counsel for TWITTER, obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, submitted a Response to PLAINTIFF'S motion to consolidate appeals, with the intent to deceive, mislead and steer the arguments so that any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to be legitimate and not preconceived, in which SCHWARTZ and COIE attempted to mislead the Appeals Court on evidentiary and legal points, and purposely made material misrepresentations regarding issues before the Appeals Court, in stating that; the COURTS August 28, 2020, order was final while simultaneously arguing that it was an interlocutory order which are not appealable in federal courts.

ATTACHED EXHIBIT A-1

193.    On November 23, 2020, in Case: 20-1933, SCHWARTZ, PEREZ, COIE, O&R and ECK, as counsel for TWITTER, obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, submitted a Reply Brief to the Appeals Court, with the intent to deceive, mislead the Appeals Court on evidentiary and legal points, and purposely made material misrepresentations regarding issues before the Appeals Court, in referencing that the COURTS August 28, 2020, order was final while simultaneously arguing that it was an interlocutory order which are not appealable in federal courts.

194.    On August 9, 2021, Case: 20-1933, SCHWARTZ, PEREZ, COIE, O&R and ECK, as counsel for TWITTER, obedient to the illegal or legal advice given by JOHNSTONE and MCAULIFFE, submitted a Reply Brief to the Appeals Court, with the intent to deceive, mislead and steer the arguments so that any proceeding order by MCAULIFFE or JOHNSTONE would appear on its face to be legitimate and not preconceived, in which SCHWARTZ and COIE attempted to mislead the Appeals Court on evidentiary and legal points, and purposely made material misrepresentations regarding issues before the Appeals Court, in arguing and stating that; (1) the District Court's August 28, 2020, order denying PLAINTIFF'S [Anonymous Motion, at 15], was not a final judgment when dismissal of a case without prejudice is a final judgment under the final judgment rule and is therefore appealable. CONSPIRATORS, each of them, personally, and together, through a course of conduct, schemed delayed, impeded, covered up and concealed the

ATTACHED EXHIBIT A-1

existence of evidence and testimony related to a Federal civil rights action brought

against TWITTER in a duly instituted judicial proceeding and prevented justice from

being duly administered in PLAINTIFF'S CASE.

## V.    ADDITIONAL FRAUD UPON THE COURT

195.    Shortly before September 8, 2020, in Case number 1:19-cv-00978-JL,

(hereinafter as "Delima 2" with Docket described hereinafter as "{Motion, at #}"),

JOHNSTONE, in a personal pursuit, and in acts to further the CONSPIRACY, and

through established communication (See III.A above-A PRIVATE CONSPIRACY

AGREEMENT), analyzed the material facts of TWITTERS position in the Delima 2

and engaged in the practice of law, by giving COIE, MRAZIK, O&R and ECK, as

counsel for TWITTER,  a specific course of action to conceal COIE and MRAZIKS

existence or role in the case so he could guide this case with an unseen hand, and to

conceal the material facts of the CONSPRACY, advised COIE, MRAZIK, O&R and

ECK, to keep MRAZIK'S (aka. "**Lyin Ryan**") name off any pleadings forwarded to

the COURT by COIE and ECK, as it was illegal, and her ILLEGAL POLICY would

no longer provide him cover for his illegal acts.

196.    On September 8, 2020, in Delima 2 , O&R and ECK, as counsel of

record for TWITTER and Google LLC., obedient to the illegal or legal advice given

by JOHNSTONE, in acts to further the CONSPIRACYS' objectives, submitted a

{Dismiss Motion, at 10}, {Judicial Notice, at 11}, {Transfer Motion, at 12} and

ATTACHED EXHIBIT A-1

purposely made the material misrepresentation that these pleadings were O&R and ECK'S own creation when in fact they were drafted entirely, "substantially" or "manifestly written", created and authored by COIE and MRAZIK, .

197.    On September 22, 2020, in Delima 2, O&R and ECK, as counsel of record for TWITTER and Google LLC., obedient to the illegal or legal advice given by JOHNSTONE, in acts to further the CONSPIRACYS' objectives, submitted a {Stay Motion, at 19}, {Judicial Notice, at 20}, {Objection, at 21} and purposely made the material misrepresentation that these pleadings were O&R and ECK'S own creation when in fact they were drafted entirely, "substantially" or "manifestly written", created and authored by COIE and MRAZIK, .

198.    Contained within the September 22, 2020, {Judicial Notice, at 20}, O&R and ECK state to the COURT, in pertinent part;

> **"Here, the Court may take judicial notice of ......another pro se litigant bringing similar "censorship" claims (Exhibit B). [I.e. The August 28, 2020, order of the COURT in PLAINTIFF'S CASE].**
>
> **"Exhibit B is relevant because it shows that courts in this District have similarly stayed proceedings against pro se plaintiffs with a propensity to inundate the Court and parties with frivolous motions in suits regarding similar claims." "Accordingly, the Court may properly take judicial notice of [Exhibit B]". [i.e.. The PLAINTIFF'S CASE, with Exhibit B illustrating [Order, at 54, page 9].**

199.    The August 28, 2020, order states, in pertinent part; "as well as his demonstrated propensity to file numerous meritless and/or unnecessary motions".

ATTACHED EXHIBIT A-1

200.   What MRAZIK through ECK fails to state to the COURT in the {Judicial Notice, at 20}, is that frivolous claims are synonymous with meritless claims, which they are not, as frivolous cases are those in which a judge can determine that "the plaintiff has no arguable basis to believe that she may establish the defendant's liability on the basis of any of the legal theories she alleges." In contrast, meritless cases are those in which the judge "determines, after adversarial briefing or discovery, that a plaintiff's theory of relief is insufficient or that a reasonable jury could not find facts that would allow a plaintiff to recover." In other words, frivolous cases are generally losers from the outset which had not, to date, been determined in this CASE. Meritless cases might be losers, but the only way to determine that status is to engage in some amount of adversarial practice.

201.   In submitting {Judicial Notice, at 20}, COIE, MRAZIK, O&R and ECK as counsel for TWITTER and Google LLC., and to further the CONSPIRACYS' objectives, purposely made the material misrepresentations to the COURT in stating that; (1) Delima 2 and PLAINTIFF'S CASE were   similar "censorship" claims which they were not; and that, (2) the PLAINTIFF'S claims were frivolous, which they were not.

202.   On November 5, 2020, in Delima 2, O&R and ECK, as counsel for TWITTER and Google LLC., in an act to further the CONSPIRACYS' objectives, attended a hearing and omitted material facts of the CONSPIRACY, in front of

ATTACHED EXHIBIT A-1

honorable Justice Joseph LaPlante. Judge Laplante shines ECK'S apples and states, in

pertinent part;

> "Now, I do want to say this: It seems like you're under the
> impression that I'm somehow in cahoots with this man, Mr. Eck. I
> can assure you that I am not. You both stand as equals at the bar
> here; nobody has an edge over anybody else."

> "He's a lawyer who works in our community. I'm familiar with
> him because he does appear in this court on occasion, but we
> don't have any kind of relationship whatsoever in or out of the
> Court."

> "When and if Mr. Eck -- and he's not going to object to anything
> I'm telling you, because he knows the rules."

> "He [ECK] has professional obligations never to take advantage of
> someone who doesn't have an attorney. That's just a very
> simplistic way of putting it, but there are rules that say he may
> never try to seek an advantage over you by his superior knowledge
> of law or procedure, okay?"

> "Mr. Eck is a very reputable attorney who is known to have high
> ethics."

203.    On December 8, 2020, in Delima 2, O&R and ECK, as counsel for

TWITTER and Google LLC., obedient to the illegal or legal advice given by

JOHNSTONE, in an act to further the CONSPIRACYS' objectives, and at

JOHNSTONES direction, submitted an {Extension Motion, at 32} and purposely

made the material misrepresentation that this pleading was O&R and ECK'S own

creation when in fact they were drafted entirely, "substantially" or "manifestly

written", created and authored by COIE and MRAZIK, .

ATTACHED EXHIBIT A-1

204.    On December 17, 2020, in Delima 2, O&R and ECK, as counsel for TWITTER and Google LLC., obedient to the illegal or legal advice given by JOHNSTONE, in an act to further the CONSPIRACYS' objectives, illegally submitted a {Reply Motion, at 34} and purposely made the material misrepresentation that this pleading was O&R and ECK'S own creation when in fact they were drafted entirely, "substantially" or "manifestly written", created and authored by COIE and MRAZIK, .

205.    On December 24, 2020, in Delima 2, O&R and ECK, as counsel for TWITTER and Google LLC., obedient to the illegal or legal advice given by JOHNSTONE, in an act to further the CONSPIRACYS' objectives, filed a {Pro Hac Vice Motion, at 37}, because ECK did not possess the legal knowledge or have the legal background to make such pleadings and did not author any pleadings in the case.

206.    On January 8, 2021, in Delima 2, Judge Laplante granted MRAZIK the privilege of appearing before the COURT on behalf of TWITTER and Google LLC.

207.    On January 19, 2021, in Delima 2, COIE, MRAZIK, O&R and ECK, as counsel for TWITTER and Google LLC., obedient to the illegal or legal advice given by JOHNSTONE, in an act to further the CONSPIRACYS' objectives, and at JOHNSTONES direction, submitted an {Appearance, at 38}, and omitted material facts of the CONSPIRACY, on behalf of MRAZIK because he possessed the legal knowledge, legal background to make such arguments on the pleadings as he drafted

ATTACHED EXHIBIT A-1

entirely, "substantially" or "manifestly wrote", all the pleadings submitted on behalf of

TWITTER and Google LLC. in this case.

208.   On January 21, 2021, in Delima 2, O&R and ECK, as counsel for

TWITTER and Google LLC., in an acts to further the CONSPIRACYS' objectives,

attended a hearing, and omitted material facts of the CONSPIRACY, and that all the

pleadings on behalf of TWITTER and Google LLC., were drafted entirely,

"substantially" or "manifestly written", created and authored by COIE and MRAZIK,

and were not O&R and ECK'S own creation when in fact they and through legal

counsel COIE and MRAZIK, and in which only MRAZIK presented arguments and

subconsciously admits his involvement in the brief and states, in pertinent part;

> **"I think some of the case law in *our* briefing"**

> **"I think we've set out in *our* briefing cases that have addressed each of the issues"**

> **"The various cases that we cite in *our* briefing"**

209.   Throughout the Delima 2 case, JOHNSTONE, O&R and ECK,  and

COIE and MRAZIK and others unknown, schemed or conspired together so that; (1)

COIE and MRAZIK could still guide this case with an unseen hand by having O&R

and ECK submit to the COURT, pleadings that appear at face, to be O&R'S and

ECK's creations, for pleadings which were drafted entirely, "substantially" or

"manifestly written" and authored by COIE and MRAZIK; (2) MRAZIK could

ATTACHED EXHIBIT A-1

continue to escape the obligation imposed on members of the bar and typified by Federal Rules of Civil Procedure, Rule 11.

210.   In Delima 2, COIE and MRAZIK,  authored all pleadings and guided the course of litigation with an unseen hand, and upon JOHNSTONES advice and direction, while standing in the shadows of the Courthouse door, as ECK did not possess the legal knowledge or have the legal background to make such pleadings.

211.   In Delima 2, JOHNSTONE, O&R and ECK, aided and abetted such practice by COIE and MRAZIK, in submitting to the COURT, all MRAZIK'S and COIE'S pleadings to the COURT with the actual and constructive knowledge that the work would be presented to the COURT as ECK'S and O&R'S own creation and not COIE'S and MRAZIK'S creation. [4]

212.   In Delima 2, JOHNSTONE, MRAZIK, COIE, O&R and ECK,  knew that COIE and MRAZIK would not be policed pursuant to the applicable ethical, professional, and substantive rules forbidding ghostwritten briefs which is generally enforced by the COURT on its members of the bar since no other party to the existing litigation was aware of MRAZIK'S ghost-writing "existence", and because MRAZIK failed to sign any of the pleadings regardless of the circuit COURTS rules

---

[4] Attorneys should err on the side of caution and "disclose the assistance to the court and opposing counsel in nearly every case".  N.H. State Bar Ass'n Ethics Comm., Unbundled Services - Assisting the Pro Se Litigant (1999), (ghostwriting violates "the spirit" of Rule 11). (A practice, we cannot approve). Ellis v. State of Maine, 448 F.2d 1325, 1328 (1st Cir. 1971)

which require that a lawyer acknowledge the giving of his advice by the signing of his name, and inappropriately shielding COIE and MRAZIK from responsibility and accountability for their actions and counsel in the case.

213.    In Delima 2, JOHNSTONE, MRAZIK, COIE, O&R and ECK, knew of JOHNSTONE'S ILLEGAL POLICY, the prior fraud upon the COURT, and the bias of the COURT in favor of TWITTER, and knowingly and specifically kept COIE and MRAZIK in the shadows where he could not be seen and purposely concealed material facts of the ILLEGAL POLICY, fraud and bias from the party plaintiff in this case.

214.    In submitting all of their pleadings described above in paragraphs 106, 107,   113, 114, 115, 117, to the COURT and while attending both hearings in the matter of Delima 2, COIE, MRAZIK O&R and ECK, and upon JOHNSTONE'S legal or illegal advice, (1) purposely concealed and misrepresented to the COURT and Justice Laplante, that these all these pleadings were created by O&R and ECK, when in fact they were drafted entirely, "substantially" or "manifestly written" and authored by COIE and MRAZIK for the specific reason of; (a) concealing JOHNSTONE'S ILLEGAL POLICY, (b) concealing the CONSPIRACY and its objectives, and; (2) purposely used [Order 54] when they had knowledge that that order was preconceived, (3) committed such acts to further the CONSPIRACY and its objectives.

215.    In Delima 2, MRAZIK, a non-member of the COURT'S bar, failed to motion or apply to the COURT for pro hac vice under LR 83.2 until late in the case as it would be necessary for him to argue his own writings and legal arguments. Something ECK could not complete as he lacked the skills or knowledge, and did not write any of the pleadings submitted to the COURT.

### COUNT I: 42 U.S.C. § 1985(2)(CLAUSE I) AND § 1985(3)

216.    PLAINTIFF incorporates by reference and realleges paragraphs 1 through 215 set forth above.

217.    This Count is brought by PLAINTIFF against all DEFENDANTS, whether by the direct acts of each CONSPIRATOR or through the acts of any other CO-CONSPIRATOR.

218.    42 U.S.C. § 1985(2)(clause i) prohibits conspiracies either to deter, by force, threat, or intimidation, any party or witness from attending or testifying freely, fully, and truthfully in a federal court or to injure any party or witness in his person or property because he attended or testified in federal court.

219.    42 U.S.C. 1985(3) (clause iii) provides a remedy in damages to anyone who is injured in his person or property or deprived of a federal right or privilege as a result of an act in furtherance of a conspiracy prohibited under any part of Section 1985, including clause one of Section 1985(2).

ATTACHED EXHIBIT A-1

220. The PLAINTIFF, at all relevant times, is and has been a "Party" or potential "witness" within the meaning of Section 1985(2).

221. Each DEFENDANT, at all relevant times, is and has been a "person" within the meaning of Section 1985(2).

222. The COURT, at all relevant times, is a "federal court" within the meaning of Section 1985(2), and within the jurisdiction of the federal judicial branch of the United States.

223. JOHNSTONE, at all times material, portrayed herself to the PLAINTIFF to be a magistrate judge in the PLAINTIFF'S CASE.

224. MCAULIFFE, at all times material, portrayed himself to the PLAINTIFF to be a district judge in the PLAINTIFF'S CASE.

225. PLAINTIFF, at all times material, presumed he was in a judicial/party relationship with JOHNSTONE and knew JOHNSTONE only to be a Magistrate Judge of the COURT and MCAULLIFFE only to be a District Judge presiding over certain aspects of his CASE, and expected that both judges would adhere to the laws and rules of the COURT.

226. JOHNSTONE and MCAULIFFE had a duty, and failed in that duty to provide PLAINTIFF due process and a fair proceeding in his CASE in the COURT.

227. MCAULIFFE failed in his owed duty to the PLAINTIFF in not answering the question of subject matter jurisdiction prior to answering upon the merits with his August 27, 2020, order in the CASE, or such matters as Section 230

ATTACHED EXHIBIT A-1

immunity, TWITTER'S forum selection clause prior to any judgement on the merits, and failed his independent obligation to determine and ensure whether subject-matter jurisdiction existed prior to flexing the COURTS power.

228.   MCAULIFFE had constructive knowledge of JOHNSTONE'S, and vis versa, violations of the PLAINTIFF'S constitutional rights, yet made a conscious and deliberate choice not to investigate or do anything about it.

229.   MCAULIFFE was willfully blind to the existence of SCHWARTZS' illegal pleading, even after the PLAINTIFF noticed the COURT, or was deliberately indifferent to the alleged violation of PLAINTIFF'S constitutional rights, and made a deliberate ad conscious choice not to act and then concealed material facts when confronted with a problem that required the taking of affirmative steps.

230.   JOHNSTONE and MCAULIFFE ruled on the merits of the CASE, in all their orders, through "hypothetical jurisdiction" which illegally allowed the COURT to rule on issues of law before adjudicating jurisdiction, and without first determining that the Court had any subject matter jurisdiction over the PLAINTIFF'S claims.

231.   MCAULIFFE, in acts to furtherance of the CONSPIRACY'S objectives, pronounced upon the law's meaning or constitutionality when it had no jurisdiction to do so, and by very definition, were ultra vires acts.

ATTACHED EXHIBIT A-1

232.   JOHNSTONE and MCAULIFFE'S behavior demonstrates deliberate indifference to conduct that [was] itself violative of PLAINTIFF'S constitutional rights.

233.   JOHNSTONE   and   MCAULIFFE,   in   furtherance   of   the CONSPIRACY'S objectives, exercised the Federal District Courts jurisdiction not specifically authorized by any federal statute.

234.   JOHNSTONE   and   MCAULIFFE   lacked   the   statutory   and constitutional grant of personal and subject matter jurisdiction.

235.   DEFENDANTS, each of them, committed acts of; (1) concealing material facts of the CONPSIRACY; (2) conspiring against and coercing the PLAINTIFF; (3) giving legal advice; (4) aiding and abetting SCHWARTZ, MRAZIK and ECK; (5) preventing, hindering and concealing SCHWARTZS' violations; (6) obstructing justice; (7) disclosing personal information, and, JOHNSTONE (8) legislating her own court rules; and (9) MCAULIFFE acting without personal jurisdiction; and (10) MCAULIFFE acting without jurisdiction after jurisdiction was divested to the Appeals Court, whether through JOHNSTONE and MCAULIFFE, in committing unnatural judicial or illegal acts or SCHWARTZ and ECK'S committing acts in the furtherance of the CONSPIRACY, each are responsible for the acts of each other which damaged PLAINTIFF in his person and property.

236.   CONSPIRATORS, each of them, in the jurisdiction of the federal judicial branch, knowingly and willfully privately conspired to commit and did commit

ATTACHED EXHIBIT A-1

affirmative acts constituting a trick, scheme, or device within the meaning of 18 U.S.C. § 371, by which CONSPIRATORS sought to conceal or omit material facts of: (1) JOHNSTONE'S ILLEGAL POLICY; (2) MRAZIK'S previous and continuing fraud upon the COURT; (3) JOHNSTONE and MCAULIFF'ES bias in favor of TWITTER; (4) the COURTS' bias in favor of TWITTER; (5) the private CONSPIRACY against PLAINTIFF; (6) JOHNSTONE and MCAULIFF'ES continuous legal advice given to TWITTER, COIE, SCHWARTZ, O&R and ECK; from the PLAINTIFF and the COURT, and within the meaning of 18 U.S.C § 1001.

237.   CONSPIRATORS, each of them, in the jurisdiction of the federal judicial branch, knowingly and willfully, through acts to further the CONSPIRACY, committed affirmative acts constituting a trick, scheme, or device by which each CONSPIRATOR made materially false, fictitious, or fraudulent statements and representations, or half-truths to prevent the disclosure of the true facts, when each CONSPIRATOR had a duty to speak the truth, and within the meaning of 18 U.S.C § 1001.

238.   JOHNSTONE, in addition to privately conspiring with COIE and MRAZIK, , then MRAZIK, COIE, O&R and ECK in Delima 2, and then COIE, SCHWARTZ, O&R and ECK in PLAINTIFF'S CASE, within the meaning of 18 U.S.C. § 371, and legislating her own COURT POLICY in violation of the U.S. Constitution, acted to aid and abet MRAZIK, in committing his 70 plus UPL violations, and SCHWARTZ'S committing her 1 UPL violation of NH RSA 311;7,

**ATTACHED EXHIBIT A-1**

within the meaning of 18 U.S.C. § 2(a), and acted as an accessory after the fact, within the meaning of 18 U.S.C. § 3, with the intention of preventing or hindering by concealing by scheme or trick or omitting the material facts of MRAZIK'S and SCHWARTZ' actual violations, and her bias in favor of TWITTER from IP CASE Plaintiffs, Plaintiff Delima, PLAINTIFF and the COURT, within the meaning of 18 U.S.C. § 1001.

239.   MCAULIFFE, in addition to privately conspiring with COIE, SCHWARTZ, O&R and ECK, in PLAINTIFF'S CASE, within the meaning of 18 U.S.C. § 371, acted to aid and abet SCHWARTZ in committing her 1 UPL violation of NH RSA 311;7, within the meaning of 18 U.S.C. § 2(a), and acted as an accessory after the fact, within the meaning of 18 U.S.C. § 3, with the intention of preventing or hindering by concealing by scheme or trick or omitting the material facts of MRAZIK'S and SCHWARTS' actual violations, and her bias in favor of TWITTER from the PLAINTIFF and the COURT, within the meaning of 18 U.S.C. § 1001.

240.   JOHNSTONE and MCAULIFFE knew or should have known that: (1) concealing material facts in a judicial branch of the United States would violate 18 U.S.C § 1001; (2) conspiring and acts of coercion against the PLAINTIFF would violate 18 U.S.C. § 371; (3) giving legal advice to TWITTER would violate 28 U.S.C § 454; (4) aiding and abetting MRAZIK and SCHWARTZ would violate 18 U.S.C. § 2(a); (5) acting as an accessory after the fact, would violate 18 U.S.C. § 3; (6) obstructing justice would violate 18 U.S.C § 1503; (7) disclosing personal information

ATTACHED EXHIBIT A-1

in violation of the Privacy Act of 1974; (8) legislating your own rules would violate Article III of the Constitution; (9) acting without jurisdiction would violate Appeal Court Rules and case precedents, would create a bias tribunal and would violate PLAINTIFF'S Constitutional Rights to; (1) due process and adequate, effective, and meaningful access to the Courts and justice guaranteed by the First and Fourteenth Amendments to the United States Constitution; (2) petition or right to seek judicial redress for grievances including the Due Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV, and the First Amendment's Petition Clause of the United States Constitution; (3) due process to an impartial tribunal under the Fifth Amendment; (4) right to a jury trial under the Seventh Amendment; (5) right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

241. CONSPIRATORS, each of them, corruptly or by threats or force, influenced, obstructed, deter and impeded, or endeavored to influence, PLAINTIFFS' pending judicial CASE by corruptly obstructing and impeding, or endeavors to influence, intimidate, officer in or of any court of the United States, the due administration of justice within the meaning of 18 U.S.C § 1503 and Section 1985(2), which deprived PLAINTIFF of the due orderly administration of law and justice.

242. All acts of each CONSPIRATOR were completed and performed by them subsequent to June 8, 2021, in relation to the CASE, were done and performed in collusion to effect the private CONSPIRACY SCHEME and to deter, by force,

ATTACHED EXHIBIT A-1

threat, or intimidation, the party witness PLAINTIFF from attending or testifying freely, fully, and truthfully in the COURT and from continuing his pending discriminations and constitutional claims in the COURT within the meaning of Section 1985(2).

243. CONSPIRATORS, each of them, in an effort to conceal material facts and dispose of PLAINTIFFS CASE, privately conspired to retaliate, intimidate, and deter using the force of preconceived court orders, judicial intimidation or threat, the party witness PLAINTIFF, for initiating discrimination and default claims against TWITTER and from continuing, attending and testifying in his CASE for those claims before a District Court of the United States, resulting in deprivation of rights and injuries to PLAINTIFF in his person and property.

244. In committing the aforementioned illegal or legal overt acts in furtherance of the CONSPIRACY, each individual CONSPIRATOR was a CONSPIRATOR under Section 1985(2), and PLAINTIFF was injured in his person and property and denied federal rights and Constitutional privileges as a result of these acts and the private CONSPIRACY, and in violation of Section 1985(2).

245. Each CONSPIRATORIAL act described herein was completed intentionally and with the purpose of deterring the PLAINTIFF in his discrimination and constitutional claims against TWITTER in his CASE, in the COURT.

246. At all relevant times, DEFENDANT CONSPIRATORS, each of them, through the CONSPIRACY SCHEME, have (1) knowingly, willfully and intentionally

ATTACHED EXHIBIT A-1

privately conspired and agreed to conduct and participate in the conduct of the affairs of the CONSPIRACY as alleged above; (2) agreed to and did conspire to injure PLAINTIFF willfully and maliciously in his person and property through acts in furtherance of the CONSPIRACY.

247.    CONSPIRATORS, each of them, had a positive duty to refrain from intentional tortious acts. Each of the CONSPIRATOR'S actions deliberately inflicted severe emotional distress upon the PLAINTIFF by interfering with his constitutional rights, conspiring against him and blatantly abusing the legal process thereby causing him physical injuries. CONSPIRATORS' conduct was deliberate, willful, extreme, outrageous, distressful and such it is intolerable in our society. PLAINTIFF has been forced to expend countless hours, money and lost family time, in his honest efforts and attempts to rectify the entire matter, to protect and defend his liberty and property rights and privileges, and to not be treated as a second-class citizen.

248.    In acts or acts to effect the object of the conspiracy, each CONSPIRATOR conspired together to defraud the United States Federal Court of legal or legitimate orders, in violation of 18 U.S.C. § 371.

249.    Even if some of the CONSPIRATORS did not agree to harm PLAINTIFF specifically, the purpose of the acts they engaged in were to advance the overall object of the CONSPIRACY, and the harm to PLAINTIFF was a reasonably foreseeable consequence of CONSPIRATORS' actions or in the unlawful arrangement directed at the PLAINTIFF to an unconstitutional action.

ATTACHED EXHIBIT A-1

250. As a direct and proximate consequence of the DEFENDANTS' CONSPIRACY, and by the independent overt acts of misconduct perpetrated by the individual co-conspirators in the furtherance of said CONSPIRACY, in violation of § 1985(2)(clause i), PLAINTIFF has been injured directly & proximately in his person and property and deprived of clearly established Constitutional Rights of: (1) due process and adequate, effective, and meaningful access to the Courts and justice guaranteed by the First and Fourteenth Amendments to the United States Constitution; (2) petition or right to seek judicial redress for grievances including the Due Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV, and the First Amendment's Petition Clause of the United States Constitution; (3) due process to an impartial tribunal under the Fifth Amendment; (4) right to a jury trial under the Seventh Amendment; (5) right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution, and was a substantial cause of his failure to obtain judicial relief in the COURT, causing PLAINTIFF to suffer monetary and compensatory damages, which include; (1) diminished leverage in any contract settlement negotiations; (2) diminished leverage in his discrimination claims (3) losses in contract; (4) losses in contract negotiations; (5) loss of any positive leverage of claims contained in [Complaint, at 1]; (6) loss of any positive leverage of [Default Motion, at 7]; (7) loss of any privileges of a Magistrate facilitating any settlement; (8) loss of any good faith mediation, alternative dispute resolution, arbitration, or any early neutral evaluation or

ATTACHED EXHIBIT A-1

minitrial; (9) loss of bargaining power, resulting in an inequality of bargaining power which threatened any impasse; (10) negative leverage giving TWITTER coercive power to punish the PLAINTIFF for bringing his claims or motions to the COURT; (11) the opportunity to seek relief for his discrimination claims before a jury. (12) loss of appeals fees; (13) economic damage that would be recognized in an ordinary tort suit; (14) emotional distress and suffering resulting from a deprivation of his constitutional rights generally addressed by common law torts; (15) physical stress causing him mental pain, mental agony, anguish, indignity suffered, severe headaches, exhaustion, sleeplessness, bodily stress & fatigue and other physical symptoms; (16) moral disenfranchisement that constitutional torts are intended to protect against; (17) loss of economic advantages, direct expenses incurred, loss of time, loss of family time, costs spent in bringing his claims before the COURT in his CASE, and his subsequent 4 Appeals of that CASE, and now these claims in this Verified Complaint; (18) any attorneys' fees spent bringing this lawsuit and in an amount not less than **$250,000,000**. Said damages to be proven at the time of trial.

251.   PLAINTIFF has been "injured in his person and property" by the acts of the CONSPIRATORS, and he is entitled to recover his damages occasioned by such injury under 42 U.S.C. 1985(3), and against each DEFENDANT, jointly and severally. Had the COURT, JOHNSTONE and MCAULIFFE not been bias in favor of TWITTER, and had these conspiratorial acts by each DEFENDANT, not been committed against PLAINTIFF, TWITTER would have defaulted in the CASE, the

ATTACHED EXHIBIT A-1

PLAINTIFF'S claims would have been heard by an unbiased tribunal, and PLAINTIFF would have been awarded the **250,000,000** as stated in the [Complaint, at 1], or would have been able to continue with his claims or at minimum, have been in a better contract bargaining position with TWITTER, who, to date, had no reason to bargain, as they knew the COURT was biased in their favor.

252. In all the cases where JOHNSTONE'S ILLEGAL POLICY was applied, defendant TWITTER also benefitted, as this ILLEGAL POLICY established biases in favor of TWITTER.

253. PLAINTIFF'S injuries were the product of JOHNSTONE'S and MCAULIFFE'S overt acts of concealing or omitting JOHNSTONE'S ILLEGAL POLICY, giving TWITTER and it's counsel "legal" advice, preconceiving their orders without jurisdiction and were a moving force behind PLAINTIFF'S injuries.

254. JOHNSTONE and MCAULIFFE are not immune from liability as each of their actions were without jurisdiction and outside the parameters of their relationship with the PLAINTIFF, and outside their judicial role or scope of function and with a clear absence of all jurisdiction, in the CASE.

255. JOHNSTONE and MCAULIFFE are not entitled to qualified immunity on PLAINTIFF'S due process claims based on the First, Fifth and Fourteenth Amendments because any reasonable judge would have recognized that the circumstances were impermissibly coercive, bias, concealing, and that JOHNSTONE and MCAULIFFE (1)violated a federal statutory or constitutional rights of the

ATTACHED EXHIBIT A-1

PLAINTIFF, and (2) the unlawfulness of JOHNSTONE and MCAULIFFE'S
conduct was clearly established at the time. "any reasonable official in the
defendant's position would have known that the challenged conduct is illegal 'in the
particular circumstances that he or she faced.'"

256. Because PLAINTIFF'S claim I for discrimination in contract and his
claim II for discrimination in a public accommodation were meritorious as alleged in
his [Complaint, at 1], gained him positive leverage in his CASE and because other
disgruntled persons may try and duplicate the complaint and cause TWITTER further
harm, , a biased JOHNSTONE cancelled any pre-trial conference and any possibility
of negotiation so that TWITTER would not suffer any negative leverage. Because the
PLAINTIFF'S claim for [Default, at 7] was meritorious, gaining him even more
positive leverage, and the possibility that he may uncover or expose JOHNSTONE'S
ILLEGAL POLICY, CONSPIRATORS, by using negative leverage, schemed to
eliminate any positive leverage gained by the PLAINTIFF, using 15 pleadings and 18
orders of the COURT by having SCHWARTZ and ECK throw up softballs (submit
misrepresentations of material fact) See MODEL RULES OF PROF'L CONDUCT
R. 4.1 (1983)., then have JOHNSTONE and MCAULIFFE hit it out of the park with
(preconceived orders) utilizing their power and ability to impose consequences onto
the PLAINTIFF, in an effort to lessen or eliminate PLAINTIFF'S claims, or any
positive leverage PLAINTIFF had gained in his CASE, and coercing PLAINTIFF
into accepting a worse deal, or to compel PLAINTIFF to agree on terms that were

ATTACHED EXHIBIT A-1

not dictated by procedural law or by other factors, such as fairness or objective criteria, orders according to the law, and to conceal their actions while committing these acts. PLAINTIFF'S claims here could be argued to be parallel to any normal court proceeding (pleadings and orders), but the facts illustrate that JOHNSTONE, COIE and MRAZIK shared some type of out of COURT relationship with the ILLEGAL POLICY, SCHWARTZ sought to piggy back and utilize the POLICY, got caught by the PLAINTIFF which endangered TWITTER the customer, and each CONSPIRATOR'S livelihood and reputation, which made PLAINTIFF a direct target, so they conspired to deter PLAINTIFF in his CASE, by using concealment, force, judicial intimidation, coercion or threats, to deter or stop the PLAINTIFF from attending and continuing his CASE in the COURT.

## COUNT II: VIOLATION OF 42 U.S.C. § 1986

257. PLAINTIFF incorporates by reference and realleges paragraphs 1 through 256 set forth above.

258. This Count is brought by PLAINTIFF against all DEFENDANTS, whether by the direct acts of each CONSPIRATOR or through the acts of any other CO-CONSPIRATOR.

259. PLAINTIFF did not discover JOHNSTONE'S ILLEGAL POLICY, the fraud upon the COURT, or the bias of the COURT until December 9, 2020, while reviewing other cases in the COURT, which included searches for the defendant in the CASE, TWITER. See [PE 076].

ATTACHED EXHIBIT A-1

260.    42 U.S.C. § 1986 provides that every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in Section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented;

261.    DEFENDANTS, each of them, at all relevant times, is and has been a "person" within the meaning of Section 1985(2).

262.    As alleged in Count I, a conspiracy occurred pursuant to Section 1985(2) that resulted in injury to PLAINTIFF. The facts show DEFENDANTS, each of them, regardless of each of their standing within the CONSPIRACY, JOHNSTONE, MCAULIFFE, SCHWARTZ and ECK all participated actively in the CONSPIRACY, and therefore: (1) had actual knowledge of the Section 1985 CONSPIRACY; (2) had the power as officers of the COURT to prevent or aid in preventing the commission of the Section 1985 violation, and were in the optimal position to prevent it; (3) but neglected or refused to prevent the Section 1985 CONSPIRACY; and (4) wrongful acts were committed against the PLAINTIFF in furtherance of the CONSPIRACY; (5) which could have been prevented by reasonable diligence.

ATTACHED EXHIBIT A-1

263.   DEFENDANTS, each of them, neglected in their duty to prevent the furtherance of the CONSPIRACY, in violation of each of their duties enumerated in Section 1986, and had knowledge of wrongs visited upon PLAINTIFF, and although aware of the wrongs, as enumerated in paragraph 240 and 250 of this Verified Complaint, took no action to prevent them from occurring.

264.   JOHNSTONE, in disregarding her obligation under departmental rules, evidences her failure to exercise reasonable diligence in connection with her own ILLEGAL POLICY. By neglecting to scrutinize and deter the efforts of MCAULIFFE, SCHWARTZ and ECK to conceal the truth or existence of her POLICY, and the CONSPIRACY and its objectives, from the PLAINTIFF, JOHNSTONE is liable under Section 1986.

265.   MCAULIFFE, in disregarding his obligation under departmental rules evidences his failure to exercise reasonable diligence in connection with JOHNSTONE'S ILLEGAL POLICY. By neglecting to scrutinize and deter the efforts of JOHNSTONE, SCHWARTZ and ECK to conceal the truth or existence of JOHNSTONE'S POLICY, and the CONSPIRACY and its objectives, from the PLAINTIFF, MCAULIFFE is liable under Section 1986.

266.   SCHWARTZ and ECK disregarded their obligations under departmental rules evidences their failure to exercise reasonable diligence in connection with JOHNSTONE'S ILLEGAL POLICY. By neglecting to scrutinize and deter the efforts of JOHNSTONE and MCAULIFFE, and each other, to conceal

Page **95** of **107**

ATTACHED EXHIBIT A-1

the truth or existence of JOHNSTONE'S POLICY, and the CONSPIRACY and its objectives, from the PLAINTIFF, SCHWARTZ and ECK are liable under Section 1986.

267.   DEFENDANTS, each of them, knew or should have known all that is enumerated in paragraph 240 of this Verified Complaint.

268.   DEFENDANTS, each of them, committed acts enumerated in paragraph 235 of this Verified Complaint are responsible for the acts of each other which damaged PLAINTIFF in his person and property.

269.   As a direct and proximate consequence of the DEFENDANTS' neglect to prevent or aid in preventing the commission of the Section 1985 conspiracy acts described in Claim I, PLAINTIFF has suffered monetary and compensatory damages, as enumerated within paragraph 250 of this Verified Complaint, and in an amount not less than **$250,000,000**, and the DEFENDANTS, as ad hoc agents of one another, jointly and severally, are therefore liable to the injured PLAINTIFF, for all damages caused by such wrongful acts, which such person by reasonable diligence could have prevented in violation of 42 U.S.C. § 1986.

270.   PLAINTIFF has been "injured in his person and property" by the acts of the CONSPIRATORS and he is entitled to recover his damages occasioned by such injury against respondents jointly and severally.

271.   With these allegations, PLAINTIFF has met the elements of Section 1985(2) and Section 1986, and therefore all DEFENDANTS are liable for the harms

ATTACHED EXHIBIT A-1

enumerated in paragraph 250 of this Verified Complaint that PLAINTIFF suffered and that could have been prevented with reasonable diligence.

## COUNT III: BIVENS, (1971) VIOLATIONS

272. PLAINTIFF incorporates by reference and realleges paragraphs 1 through 271 set forth above.

273. This Count is brought by PLAINTIFF against all DEFENDANTS, whether by the direct acts of CONSPIRATOR or through the acts of any other CO-CONSPIRATOR and, against JOHNSTONE in her individual and personal capacity, and against MCAULIFFE, in his individual and personal capacity.

274. A Bivens action generally refers to a lawsuit for damages when a federal officer who is acting in the color of federal authority, violates the U.S. Constitution by federal officers acting.

275. The COURT is a Federal agency as defined by 28 U.S.C. § 2671.

276. JOHNSTONE and MCAULIFFE, at all times material herein, were federal officers and employees of the United States Department of Justice (DOJ), who at all times material acted in their individual capacity and acting under the color or pretense of federal authority when each of them violated and deprived the PLAINTIFF of his Constitutional Rights.

277. PLAINTIFF brings this BEVINS claim against JOHNSTONE and MCAULIFFE for damages intentionally caused by constitutional torts under color or pretense of her authority as PLAINTIFF is barred from any claim under The Federal

ATTACHED EXHIBIT A-1

Tort Claims Act (FTCA) as the acts alleged were intentional, and has no effective means other than the judiciary to vindicate these constitutionally protected rights caused by JOHNSTONE.

278.    PLAINTIFF lacks a statutory cause of action, or an available statutory cause of action does not provide a meaningful or appropriate remedy to vindicate these violated rights caused by JOHNSTONE and MCAULIFFE, to which damages could be imposed.

279.    PLAINTIFF, a US Citizen, has Constitutionally protected rights of: (1) due process and adequate, effective, and meaningful access to the Courts and justice; (2) petition or right to seek judicial redress for grievances; (3) due process to an impartial tribunal; (4) right to a jury trial in Civil actions; (5) right to equal protection of the laws.

280.    JOHNSTONE, under the color or pretense of law, intentionally, maliciously and recklessly disregarded PLAINTIFF'S rights, mis-used the authority and power that she possessed by virtue of being a Magistrate Judge, and with the intent to injure PLAINTIFF, and with a substantial certainty that her actions would injure PLAINFIFF, violated PLAINTIFF'S constitutional rights, intentionally and deliberately caused a deprivation to PLAINTIFF and did so deprive PLAINTIFF of his liberty and his property when she "promulged, implemented and managed illegal pro hac vice and bar admission rules and unofficial court policies or an ILLEGAL POLICY she promulgated herself, contrary to the established official rules of the

ATTACHED EXHIBIT A-1

COURT and in violation of state law, to benefit TWITTER, COIE and partner attorneys MRAZIK and SCHWARTZ of COIE, with the privilege of practicing before the COURT, even though these attorneys lacked the requirements to practice before the court, and then concealing and omitting these material facts to the PLAINTIFF during his CASE.

281.   JOHNSTONE, without authority, changed the privilege standard used to determine pro hac vice admissions for COIE partner attorneys, creating immediate bias and proximately causing the deprivation of the PLAINTIFF'S Due Process Rights of a non-bias tribunal and secured by the Constitution and laws of the United States through her own acts and omissions.

282.   JOHNSTONE'S acts of promulging, implementing and managing illegal pro hac vice and bar admission rules and unofficial court policies or an ILLEGAL POLICY she promulgated herself instead of the established official policies, demonstrates a violation of the PLAINTIFF'S due process rights to an unbiased tribunal and should be understood by any reasonably official that such actions would violate the PLAINTIFF'S constitutionally protected rights as all of her actions benefited the Defendant TWITTER in the PLAINTIFF'S CASE.

283.   This ILLEGAL POLICY intentionally, negatively and disproportionally affected the pro se PLAINTIFF and deprived him specifically of his federal rights to liberty, due process and fair and unbiased proceedings, and his rights to his property in negotiating any contract or property settlement of his losses through honest

ATTACHED EXHIBIT A-1

negotiations and is attributable to the enforcement of this ILLEGAL POLICY and JOHNSTONE'S omission to the PLAINTIFF, this ILLEGAL POLICY, the bias of the COURT and the fraud upon the COURT.

284. PLAINTIFF'S Constitutional violations resulting from the ILLEGAL POLICY was officially adopted and promulgated by JOHNSTONE who was responsible for the day-to-day maintenance of the PLAINTIFF'S CASE and who had constructive notice of it, yet did nothing to modify it. Thus, JOHNSTONE is liable for the foreseeable consequences of such conduct if she would have known of it but for his deliberate indifference or willful blindness, as she had the power and authority to alleviate it.

285. JOHNSTONE had constructive knowledge of MCALIFFE'S violations of the PLAINTIFF'S constitutional rights, yet made a conscious and deliberate choice not to investigate or do anything about it.

286. MCAULIFFE, under the color of law, knowingly, intentionally, maliciously and recklessly disregarded PLAINTIFF'S rights, mis-used the authority and power that he possessed by virtue of being a District Judge, and with the intent to injure PLAINTIFF, and with a substantial certainty that his actions would injure PLAINFIFF and violate PLAINTIFF'S constitutional rights, intentionally and deliberately caused a deprivation to PLAINTIFF and did so deprive PLAINTIFF of his constitutional rights of due process and a fair tribunal, his right to a jury trial, his liberty and his property when he concealed material facts of JOHNSTONE'S

ATTACHED EXHIBIT A-1

ILLEGAL POLICY, the bias of the COURT and the fraud upon the COURT, to the PLAINTIFF while presiding over PLAINTIFF'S CASE.

287.    MCAULIFFE, without authority, concealed the bias of the COURT, the fraud upon the COURT, and JOHNSTONE'S role in the fraud and bias, creating immediate bias and proximately causing the deprivation of the PLAINTIFF'S Due Process Rights secured by the Constitution and laws of the United States and the State of New Hampshire through his own acts concealment and omission.

288.    MCAULIFFE'S acts of concealment and omissions, demonstrates a violation of the PLAINTIFF'S due process rights to an unbiased tribunal and should be understood by any reasonably official that such actions would violate the PLAINTIFF'S constitutionally protected rights as all of his actions benefited Defendant TWITTER in the PLAINTIFF'S CASE.

289.    MCAULIFFE had constructive knowledge of JOHNSTONE'S violations of the PLAINTIFF'S constitutional rights, yet made a conscious and deliberate choice not to investigate or do anything about it.

290.    JOHNSTONE and MCAULIFFE violated the PLAINTIFF'S constitutional rights of Due Process, frustrated the fairness of proceedings and unfairly prejudiced the PLAINTFF in his rights which were so clearly established that a reasonable person would have known they were being violated. JOHNSTONE and MCAULIFFE acted with "oppression, fraud, and malice.

ATTACHED EXHIBIT A-1

291.   JOHNSTONE and MCAULIFFE were willfully and knowingly blind to the existence of SCHWARTZS' illegal pleading, or were deliberately indifferent to the alleged violation of PLAINTIFF'S constitutional rights, even after PLAINTIFF noticed the COURT, and made a deliberate and conscious choice not to act and conceal material facts and when confronted with a problem that required the taking of affirmative steps. JOHNSTONE and MCAULIFFES' behavior demonstrates deliberate indifference to conduct that [was] itself violative of PLAINTIFF'S constitutional rights.

292.   JOHNSTONE and MCAULIFFE failed in their duty as a judges in PLAINTIFF'S CASE, to respect and comply with the law in PLAINTIFF'S CASE, and failed in their duty to refrain from doing anything to impede PLAINTIFF'S claims, and took active affirmative and retaliatory steps to thwart PLAINTIFF'S claims for filing his [Complaint, at 1], [Motion to Default, at 7], and other motions to the COURT.

293.   JOHNSTONE and MCAULIFFE acted intentionally, recklessly, and in disproportion to the benefits conferred by legitimate goals of the Federal Government. .

294.   JOHNSTONE and MCAULIFFE had an interest in the outcome of PLAINTIFF'S CASE and failed to recuse themselves from the CASE.

295.   JOHNSTONE'S and MCAULIFFE'S acts of arbitrary interference outside their judicial capacities or function, taken in absence of all jurisdiction to

ATTACHED EXHIBIT A-1

impede or thwart PLAINTIFF'S claims were committed with an impermissible purpose and motivation which cannot be described as legitimate acts designed to improve any Government objectives.

296. DEFENDANTS, each of them, committed acts enumerated in paragraph 235 of this Verified Complaint are responsible for the acts of each other which damaged PLAINTIFF in his person and property.

297. DEFENDANTS, each of them, knew or should have known all that is enumerated in paragraph 240 of this Verified Complaint.

298. As a direct and proximate consequence of JOHNSTONES and MCAULIFFE'S act in violating PLAINTIFF'S Constitutional Rights under the color or pretense of law, as enumerated within paragraph 234 and throughout this Verified Complaint, PLAINTIFF has suffered monetary and compensatory damages, as enumerated within paragraph 250 of this Verified Complaint, and in an amount not less than **$250,000,000**, and the DEFENDANTS, as ad hoc agents of one another, jointly and severally, are therefore liable to the injured PLAINTIFF, for all damages caused by such wrongful acts, which such person by reasonable diligence should have known or could have prevented.

299. PLAINTIFF'S constitutional injuries resulted from the direct acts or omissions by JOHNSTONE and MCAULIFFE, or from indirect conduct that amounts to condonation or tacit authorization.

ATTACHED EXHIBIT A-1

300. In all the cases where JOHNSTONE'S ILLEGAL POLICY was applied, defendant TWITTER also benefitted, as this ILLEGAL POLICY established and demonstrates the COURTS' biases in favor of TWITTER.

301. PLAINTIFF'S constitutional injuries resulted from the direct acts or omissions by MCAULIFFE, or from indirect conduct that amounts to condonation or tacit authorization.

302. As a result of JOHNSTONE'S and MCAULIFFES conduct, PLAINTIFF suffered presumed damages for the loss of liberty from the civil rights violation, loss of leverage in any settlement of his claims, loss in settlement monies, compensatory damages, pain and suffering, including the emotional trauma of the civil rights violation and severe emotional distress. Such harm has long been a compensable injury under tort law as well as under Section 1985(2).

303. JOHNSTONE and MCAULIFFE are not immune from liability as each of their actions were without jurisdiction and outside the parameters of their relationship with the PLAINTIFF, and outside their judicial role or scope of function as they are expressly prohibited by existing law and with a clear absence of all jurisdiction, in the CASE.

304. JOHNSTONE and MCAULIFFE are not entitled to qualified immunity on PLAINTIFF'S due process claims based on the First, Fifth and Fourteenth Amendments because any reasonable judge would have recognized that the circumstances were impermissibly coercive, bias, concealing, and that JOHNSTONE

ATTACHED EXHIBIT A-1

and MCAULIFFE (1)violated a federal statutory or constitutional rights of the PLAINTIFF, and (2) the unlawfulness of JOHNSTONE and MCAULIFFE'S conduct was clearly established at the time that any reasonable official in the defendant's position would have known that the challenged conduct is illegal 'in the particular circumstances that he or she faced.

## Count IV: PUNITIVE DAMAGES

305. Plaintiff, having established a valid claim under subsection 1985(2), may be awarded attorneys' fees and punitive damages. See 42 U.S.C. § 1988; egregious or malicious behavior when committing unlawful acts.

306. The acts performed in the furtherance of the CONSPIRACY, including each of the individual acts, is unconscionable, as CONSPIRATORS attempted and in fact did deceive or make misrepresentations through the COURT system and machinery. Punitive damages are also warranted to deter these DEFENDANTS and others from engaging in such unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF respectfully requests judgment against

Defendants as follows:

A.     Award compensatory, consequential, exemplary and punitive damages to PLAINTIFF in an amount to be determined at trial;

ATTACHED EXHIBIT A-1

B.      Enjoin Defendants from violating PLAINTIFF'S rights under federal law;

C.      Order preservation of records and evidence in the format in which they are stored;

D.      Award attorneys' fees and costs under 42 U.S.C. § 1988 to PLAINTIFF; and

E.      Grant to PLAINTIFF whatever other relief is just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), PLAINTIFF demands a trial by jury of all issues so triable.

Dated: December 8, 2021

Respectfully submitted,

Plaintiff, Anonymously as Sensa Verogna
SensaVerogna@gmail.com

ATTACHED EXHIBIT A-1

"I declare, certify, verify and state declare pursuant to U.S. 28 U.S.C. 1746 and

under penalty of perjury that the foregoing is true and correct."

Dated: December 8, 2021,        By: _____

Plaintiff, Anonymously as Sensa Verogna

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2021, this VERIFIED COMPLAINT and ATTACHED EXIBITS- 001 THROUGH 076 was mailed via U.S. Postal Service to each Defendants' business address as listed above, with the attached NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS included.

ATTACHED EXHIBIT A-1