**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Daniel E. Hall, Plaintiff,
v.
Twitter Inc., Defendant.

**Case No. 1:20-cv-536-SE**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AND DEFAULT JUDGMENT

## I. Submittals by Non-Bar Members

1.  Attorney Schwartz's "unauthorized practice of law" in submitting to the Court on behalf of a corporate client, (Doc. 3) and (Doc. 3.1), prior to being admitted by the Court and prior to taking the oath prescribed in N.H. RSA 311:6 and in violation of N.H. RSA 311:7 should be stricken from the record or not be allowed to be re-filed. See Plaintiff's Request for Default by Clerk, [Doc. 7], Plaintiff's Motion to Strike [Doc. 14], Plaintiffs Motion to Strike and Motion to Default filed on October 27, 2022. To date, Twitter has made no attempt to file a proper answer to the Summons.

## II. Misrepresentations

2.  Twitter, through its attorneys, intentionally misrepresented or omitted facts through written statements that were critical to the outcome of the case thus far, and this Court should take notice of the "deference to the deep-rooted policy in favor of the repose of judgments." See Hazel-Atlas Co. v. Hartford Co., 322 U.S. 244–45, 64 S. Ct. 997 (1944); *Estate of Stonehill,* 660 F.3d 415,. 452 (9th Cir. 2011). Twitter purposely

misconstrued and mischaracterizes Rule 55(b) requirements and the holdings held in *Key Bank,* [1] and knew or should have known that LR's 12 and 4 come with a higher burden than Ru1e 55(b)(2) than just notice when submitting a response to a Summons.

    3.    Twitter deliberately mischaracterized the laws [2] and rules and concealed the facts of the unofficial policy and a bias Court which were central to the dispute of Plaintiff's Doc. 7 Motion to Default and other Motions, materially cheating, which prevented Plaintiff from ascertaining those central facts of Judge Johnstone's illegal policies and the bias of the Court in favor of Twitter and its attorneys and fully evaluating and analyzing the issues in dispute. Nothing less than outright default and judgment would deter similar misconduct.

    4.    Attorney Eck's signature on the Doc. 3 Motion and Doc. 3.1 MOL does not change the fact that the motion was presented by and on behalf of the Defendant Corporation by an Attorney who was not authorized to practice law before this Court. Attorney Schwartz's absence of her signature is moot, as she still "presented" the Motion and MOL to the Court by including her name onto the document while

---

[1] Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n, 874 F.2d 274, 277 (5th Cir. 1989); See Doc. 17-1.

[2] *Key Bank of Maine v. Tablecloth Textile Co. Corp.,* 74 F.3d 349, 353 (1st Cir. 1996) decided that a mailing constituted an appearance under Federal Rules of Civil Procedure 55(b)(2), and not under the more stringent Local Rule 55.1(a) as characterized by Twitter, which has the additional requirements that any answer to be presented under Fed. R. Civ. P. 12, in which the time to respond is 21 days after being served with the summons and complaint and within Fed. R. Civ. P. 12(b), and that Fed. R. Civ. P. 12(b), does not state that this would include, nor should it include, any illegal OR scandalous responses. See Doc. 17-1.

advocating and representing Twitter the Defendant in a responsive pleading before the Court.[Surreply, at Doc. 34] to [Twitter Reply, at Doc. 5], which were all advocated by Twitter. See Fed. R. Civ. P. 11, only one attorney needs to sign.

### III. Ex-Parte Communication

5.  We know that Twitter was directed by "a" Court to file a Response, in the Appeals Court, by 12 p.m. on Monday, September 28. [3] This admittance by Twitter indicates ex-parte communications and collaboration between "a" Court and Twitter, where, here, this Court is now advising, giving legal advice and directing Twitter ex parte to file a response to the Appeals Court in replying to Appellant's (Plaintiff's) Motion to Stay, [4] which was then filed in the Appeals Court.

6.  In a Doc. 93 Motion filed on September 28, 2022, Twitter states;

**"Far from some "collaboration" between Twitter and Judge McAuliffe, the above interaction did not involve Judge McAuliffe at all. It instead referred to a directive Twitter received from an Administrative Attorney for the United States Court of Appeals for the First Circuit, setting a less-than-one-business-day deadline for Twitter to respond to Plaintiff's mooted emergency motion."**

7.  In its Doc. 93 Motion, Twitter attempts to shade Judge McAuliffe's actions with just a bald statement, (without any supporting affidavit or documentation), implicating some unknown Administrative Attorney for the United States Court of

---

[3] Twitter was directed (by the Court) to file this Response by 12 p.m. on Monday, September 28.
[4] Case: 20-1933 Document: 00117648436, Filed: 09/28/2020 First Federal Circuit Court of Appeals.

Appeals for the First Circuit as the person collaborating ex parte directives and legal advice directly to Twitter, and not to Twitter's attorneys or through an Appeals Court order.

## VIII. PUNISHMENT

8.  The Judiciary Act of 1789, 1 Stat. 73, 83, was the first federal statute recognizing the contempt power of the federal courts. Powers that may be limited by statutes and by rules. *Chambers v. NASCO, Inc.,* 501 U.S. 47 (1991). "explicit authority to cite an individual for contempt". 18 U.S.C. §§ 401 & 402; 28 U.S.C. § 1826. (power to punish, seventeenth section). *Ex parte Robinson,* 86 U.S. (19 Wall) 505, 510 (1873) ("The moment the courts of the US were called into existence and invested with jurisdiction over any subject, they became possessed of this power [i.e., the contempt power]."). The power to punish acts of contempt has been recognized as inherent in all courts. *Chambers*, at 32; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980); *Gompers v. Buck's Stove & Range Co., 221 U.S.* 418 (1911); Courts have the authority to do what courts have traditionally done in order to accomplish their assigned tasks. *(19 Wall.)* 505, 510 (1874); *Chambers* 32, 43–46.

9.  Twitter has (1) attempted to deprive the court of jurisdiction by acts of fraud, most of which were performed inside the confines of this District Court, and according to Twitter itself, the Appeals Court (2) filed false and frivolous pleadings, and (3) "attempted, by other tactics of delay, oppression, harassment and massive expense to the Plaintiff, to reduce Plaintiff to exhausted compliance." (4) brought some of the

same behaviors to this Appeals Court. *Chambers*, at 2123, (5) and concealed the bias of the Court and unconstitutionality of the proceedings throughout the entire proceedings.

10. Twitter should be sanctioned severely with *at least* 30 days' pay to achieve the deterrent effect. *Pacific Packaging Products, Inc. v. Barenboim, et al.* Superior Court of Commonwealth of Massachusetts, Middlesex County, Case No. 0981-cv-04320. ("unconscionable scheme"). With focus on "character and purpose" of the sanction imposed, *Gompers,* at 418, and considered to be civil in nature it if is remedial and intended to benefit the complainant. *Gompers*, at 441. (coercing future compliance). *Hicks v. Feiock*, 485 U.S. 624 (1988).

11. Power to assess such fees as a sanction when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as when the party practices a fraud upon the court, *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575 (1946); delaying litigation or hampers enforcement. *Hutto v. Finney,* 437 U.S. 678 (1978); summary contempt. *Farmer v. Strickland,* 652 F.2d 427, 434 (5th Cir. 1981), cert. denied, 455 U.S. 944 (1982).

12. This Court should order a remedial fine, paid to Plaintiff, for either direct contempt as they continued to bring the fraud to the Appeals Court, and now again back to this Court. See *Ex parte Terry,* 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888) (May be immediately adjudged and sanctioned summarily, or for indirect contempt for the fraud upon the Court. *International Union, United Mine Workers of America v. Bagwell*, 114 S.Ct. 2552, 2561 (1994), as Twitter intended to obstruct, disrupt, or interfere with

the administration of justice, through bad-faith litigation. *In re Williams,* 509 F.2d 949, 960 (2d Cir. 1975); need for immediate vindication of the Court's dignity and authority. *United States v. Wilson,* 421 U.S. 309, 318 (1975); (may rely on informed discretion, outside rules). *Chambers*, at 2123. This Court should impose fines and sanctions for the fraud Twitter perpetrated and for the bad faith Twitter displayed toward both Plaintiff and the institution of both the District and Appeal Courts Court's throughout the litigation.

13. The district court also maintains a variety of tools at its disposal to sanction a party who violates discovery orders, from staying the proceedings to entering default judgment against the disobedient party. Fed.R.Civ.P. 37(b)(2)(A). District courts may impose such sanctions with an eye both to penalize the particular noncompliance and to deter others from engaging in the same tactics. *Companion Health Servs., Inc. v. Kurtz,* 675 F.3d 75, 84 (1st Cir.2012) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam)) *See AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015) (Penalty for discovery order violations.) See Crispin-Taveras v. Municipality of Carolina 647 F.3d 1 (1st Cir. 2011), stating that default judgment "provides a useful remedy when a litigant is confronted by an obstructionist adversary and plays a constructive role in maintaining the orderly and efficient administration of justice" and "Although entry of default judgment is a "drastic sanction," it nonetheless "provides a useful remedy" where, as here, "a litigant is confronted by an obstructionist adversary." (internal quotation marks

omitted). See also *Remexcel Managerial Consultants v. Arlequín*, 583 F.3d 45, 51 (1st Cir. 2009), same.

**V. Argument**

14. A finding of fraud on the court may warrant termination of the proceedings in the non-offending party's favor. See *McMunn v Mem. Sloan-Kettering Cancer Ctr.* (191 F Supp 2d 440, 462 (SD NY 2002), [defendant] deserves harsh sanction of dismissal"]; *Shangold v. Walt Disney Co.,* 275 F. App'x 72, 2006 WL 71672, at *5 (2d Cir. 2008)*, (plaintiff's fabrication of evidence warrants dismissal); *Hargrove v Riley*, 2007 WL 389003, *11 (E.D.N.Y. 2007), (same); *DAG Jewish Directories*, 2010 WL 3219292, at *5 (E.D.N.Y. 2008), (same). For "when a party lies to the court and [its] adversary intentionally, repeatedly, and about issues central to the truth-finding process, it can fairly be said that [the party] has forfeited [the] right to have [the] claim decided on the merits" (*McMunn,* 191 F Supp 2d at 445). Therefore, once a court concludes that clear and convincing evidence establishes fraud on the court, it may strike a pleading and enter a default judgment.

15. At a minimum, the evidence and facts demonstrate a "unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." between the Court, Twitter and Twitter's Counsel, *Am. Tobacco Co. v. U.S.,* 328 U.S. 781, 810 (1946), and that Plaintiff was deprived of Constitutional and federally protected rights, to a predisposed, non-prejudicial or non-bias forum. *Murphy v. Mount Carmel High School*, 543 F.2d 1189, 1191 (7th Cir. 1976). McAuliffe, Johnstone,

Twitter and Twitter's counsel positively or tacitly came to a "mutual understanding" to try to accomplish a common and unlawful plan which influenced, obstructed, and impeded the due administration of justice of Plaintiff's Case. See Doc. 74 and Hall v Johnstone, Case No. 1:21-cv-01047-LM. This mutual understanding was designed for the purpose of impeding, hindering, obstructing, or defeating Plaintiff's case in any manner possible, with the intent to deny and deprive Plaintiff the equal protection, or equal privileges of the law, or to knowingly injure him or his property for lawfully enforcing, or attempting to enforce federal and state racial discrimination laws of contract and public accommodation against Twitter.

16.    Twitters material false statements were designed to mislead, as Attorney Eck, through his e-mail, (Doc. 7-2), admitted from the start that Schwarz was not authorized to be before the Court on June 1, 2020. Lawyers have a positive duty to refrain from intentional tortious acts. Twitters actions in court deliberately inflicted severe emotional distress upon Plaintiff by interfering with his civil rights, conspiring against him and blatantly abusing the legal process thereby causing him physical injuries on top of the original racial discrimination suffered. Twitters' conduct can be characterized as deliberate, intentional, wrongful, unlawful, willful, extreme, outrageous, distressful and demonstrates a determination to inflict punishment, loss, or pain onto Plaintiff which were motivated by evil motive or intent. See *Irizarry v. Quiros*, 722 F.2d 869, 872 (1st Cir. 1983).

17. Plaintiff was forced to bring his Case under extremely prejudicial circumstances and was injured directly as a result of independent acts of misconduct inspired by this mutual agreement. Plaintiff is a reasonable person who has been forced to expend countless hours, spend thousands of dollars, in his honest efforts and attempts to rectify the entire matter, to protect and defend his liberty and due process rights and privileges- and should not be treated as a second-class citizen. Plaintiff has suffered emotional distress, loss of self-esteem, mental anguish, and other intangible harms such as loss of bargaining power to negotiate any settlement, and through no fault of his own.

18. The Court should not allow Twitter to re-file its Doc. 3 Motion and Doc. 3.1 MOL because both were void from conception. Twitter gained considerable leverage in secretly knowing and concealing that most of the Court justices were and still are biased in [its] favor. Plaintiff's chances of returning to the First Federal District Court and receiving a Constitutional unbiased tribunal would seem nil, unlikely, and fruitless, as this District Court, and all of its judges, are objectively bias to this case and will now be further biased against Plaintiff and still in favor of Twitter.

19. Without severe sanctions, the Court will not be able to deter future similar criminality such as taking over a U.S. Federal Court. See Attached Exhibit A, Illegal Policy Benefactors. Twitter's bogus Key Bank and Notice arguments demonstrate that they only way Twitter won any argument was with the Courts biased help. In all its submittals to the Court, Twitter never mentioned the 66 times prior that the Court

allowed this type of illegal behavior because it enjoyed the benefits and was complicit in the fraud and the fraud upon the Court.

**Wherefore**, Plaintiff requests that the Court grant Plaintiff a default judgment against Twitter in the punitive amount of $410,958,900.00 [5] which is equivalent to 30 days income to punish Twitter and to deter others from similar conduct in compromising and corrupting the Court and destroying the judicial machinery of the Federal Courts of the United States.

Respectfully,

/s/ Daniel E. Hall
Aka, Sensa Verogna
SensaVerogna@gmail.com

---

[5] Twitter 2021 revenue was over $5,000,000,000.00* or $13,698,630.00 per day x 30 days = $410,958,900.00.
*https://www.statista.com/statistics/204211/worldwide-twitter revenue/#:~:text=In%20the%20most%20recently%20reported,has%20seen%20in%20recent%20years.

"I declare, certify, verify and state declare pursuant to U.S. 28 U.S Code 1746 and under penalty of perjury that the foregoing is true and correct. "I declare, certify, verify and state declare pursuant to 50 U.S.C. app. § 521(4), that to the best of my knowledge, Twitter, Inc. is not a servicemember of any United States military forces. Signed this 27th day of October 2022 in the State of New Hampshire.

*/s/ Daniel E. Hall*
Daniel E. Hall

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October 2022, the foregoing document was made upon the Defendant, through its attorneys of record to Jonathan M. Eck jeck@orr-reno.com and Julie E. Schwartz, Esq., JSchwartz@perkinscoie.com and Indraneel Sur, Lead Attorney. U.S. DOJ, indraneel.sur@usdoj.gov