## TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………….i

TABLE OF AUTHORITIES…………………………………………………………ii

I. BACKGROUND…………………………………………………………………1

II. RECUSAL……………………………………………………………………..1

III. PROCESS OF RE-APPOINTMENT………………………………………………2

IV. RULES FOR JUDICIAL CONDUCT……………………………………………4

V. EVIDENCE IN FRONT OF RE-APPOINTMENT PANEL……………………………5

VI. RECUSAL REQUIRED BY STATUTE……………………………………………5

    A. Disqualification Based on § 144………………………………………………5

    B. Disqualification Based on Question of Partiality: Section 455(a)……………………..7

    C. Disqualification: Based on Personal Bias or Knowledge: Section 455(b)………….8

VII.    DUE PROCESS REQUIRES RECUSAL………………………………………9

    A. The Requirements of Due Process……………………………………………9

    B. The Process That Is Due Process…………………………………………….12

IX. SUMMARY ARGUMENTS………………………………………………………12

X. CONCLUSION…………………………………………………………………18

NOTICE OF MOTION…………………………………………..………………………iii

CERTIFICATE OF COUNSEL…………………………………………………………..iv

i

# AUTHORITIES

**U.S. SUPREME COURT**

Accord, Hurtado v. California, 110 U.S. 516, 537 (1884)                                           9

*Berger v. United States*, 255 U.S. 22, 24 (1921)                                                6

*Bracy v. Gramley* 520 U.S. 899 (1997).                                                          10

*Caperton v. A. T. Massey Coal Co., Inc.*, 556 U.S. ___, No. 08–22, slip op.
at 6,                                                                                    11,12,18

*Carey v. Piphus*, 435 U.S. 247, 259 (1978).                                                     10

*Dennis v. United States* 339 U.S. 162 (1950),                                                    7

*Gibson v. Berryhill,* 411 U.S. 564 (1973                                                        10

*Goldberg v. Kelly,* 397 U.S. 254, 271 (1970).                                           10,11,12,17

*Greene v. McElroy*, 360 U.S. 474, 496–97 (1959).                                                11

*Hagar v. Reclamation Dist.,* 111 U.S. 701, 708 (1884).                                           9

*ICC v. Louisville & Nashville R.R.*, 227 U.S. 88, 93–94 (1913).                                 11

In re *Murchison,* 349 U.S. 133, 136 (1955).                                                 9,12,18

*Liljeberg v. Health Svcs. Acq. Corp.,* 486 U.S. 847 (1988),                                      7

*Liteky v. United States*, 510 U.S. 540, 548 (1994).                                              7

*Marchant v. Pennsylvania R.R.,* 153 U.S. 380, 386 (1894);                                        9

*Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242 (1980);                                           10

*Mathews v. Eldridge*, 424 U.S. 319, 344 (1976).                                              10,11

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1982).                                                 12

*Schweiker v. McClure,* 456 U.S. 188, 195 (1982).                                                10

*Schweiker v. McClure,* 456 U.S. 188, 195 (1982);                                                16

*Tumey v. Ohio*, 273 U.S. 510, 523 (1927),                                                       11

*United States v. Morgan*, 313 U.S. 409, 421 (1941);     16

*United States v. Wood, 299 U.S. 133 (1936);*     2, 7

*Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016).     9,12,18

*Withrow v. Larkin,* 421 U.S. 35, 47 (1975     16,18

*Wong Yang Sung v. McGrath,* 339 U. S. 41-45, 339 U. S. (1950).     10

**FIRST CIRCUIT**

*Blizard v. Frechette*, 601 F.2d 1217, 1220 (1st Cir.1979).     8

*Logue v. Dore*, 103 F.3d 1040, 1045 (1st Cir. *1997)*     16

*United States v. Chantal*, 902 F.2d 1018, 1023 (1st Cir.1990).     8

*United States v. Kelley*, 712 F.2d 884, 889 (1st Cir.1983).     6

**FEDERAL COURTS**

*Baldwin Hardware Corp. v. Franksu Enter. Corp.,* 78 F.3d 550, 557 (Fed. Cir. 1996);     7

*Blanche Rd. Corp. v. Bensalem Township,* 57 F.3d 253, 266 (3d Cir. 1995);     7

*Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000),     5

*Edgar v. K.L.,* 93 F.3d 256, 259 (7th Cir. 1996);     8

In re *Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998);     7

*Kennedy v. Great Atlantic Pacific Tea Co., Inc.,* 551 F.2d 593, 597 (5th Cir. 1977);     17

*Nicodemus v. Chrysler Corp.,* 596 F.2d 152, 155-56 (6th Cir. 1979)     17

*Ouachita Nat. Bank v. Tosco Corp*., 686 F.2d 1291, 1301 (8th Cir. 1982), aff'd 716 F.2d 485 (8th Cir. 1983) (en banc).     17

*Phillips v. Join Legislative Committee on Performance & Expenditure Review*,
637 F.2d 1014, 1019 (5th Cir. 1981), cert denied, 456 U.S. 960 (1982).     18

*Price Bros. Co. v. Philadelphia Gear Corp., 629 F.2d 444, 447 (6th Cir. 1980);*     17

*Reserve Mining Co. v. Lord*, 529 F.2d 181, 186 (8th Cir. 1976);     17

*U.S. v. Torres* 128 F.3d 38 (2d Cir. 1997).[     2

*United States v. Arnpriester,* 37 F.3d 466, 467 (9th Cir. 1994).     8

*United States v. Balistrieri,* 779 F.2d 1191, 1199 (7th Cir.1985)     6

*United States v. Chandler*, 996 F.2d 1073, 1104 (11th Cir. 1993).     7

*United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998);     7

*United States v. Frankenthal*, 582 F.2d 1102, 1107 (7th Cir. 1978);     17

*United States v. Jeffers*, 532 F.2d 1101, 1112 (7th Cir.1976).     6

*United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992);     7

*United States v. Silba*, 624 F.2d 864, 868 (9th Cir. 1980).     7

*United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir.1993)     6

*United States v. Thompson*, 483 F.2d 527 (3d Cir. 1973);     6

*United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996).     7

*Whitaker v. McLean*, 118 F.2d 596, 596 (D.C. Cir. 1941)).     17

**STATE AUTHORITIES**

*In re Disqualification of Murphy,* 110 Ohio St. 3d 1206, 1207-8 (Ohio
2005),     2,8

*State ex rel. Turner v. Marshall (1931), 123 Ohio St. 586, 587, 176 N.E.
454,*     7

**STATUTES**

28 U.S.C. § 144                                                                    Passim
28 U.S.C. § 455                                                                    Passim
28 U.S.C. § 631.                                                                        2
28 U.S.C. § 631(b)(5),                                                                  2
28 U.S.C. § 631(b).                                                                    14
28 U.S.C. § 631(i).                                                                    14

**CODE OF JUDICIAL CONDUCT**

Canon 3B(6) & cmt.                                                                      5
Canon 3,C, (1)(e).                                                                      8
Canon 3,C, (1)(b).                                                                      9
Canon 3(E)(1)                                                                           2


**"RULES" FOR JUDICIAL-CONDUCT AND JUDICIAL-DISABILITY PROCEEDINGS, as Amended March 12, 2019,**

Article I., 1(b)                                                                     4,13
Article I., 2(a)                                                                     4,13
Article II., 4(a)(1)(A)                                                              4,13
Article II., 4(a)(1)(C)                                                              4,13
Article II., 4(a)(6)                                                                 4,13
Article II., 4(a)(7).                                                                4,13


**OTHER AUTHORITIES**

U.S. CONST. AMEND V                                                                    17

*Cf.* § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d).                   11


The Selection, Appointment, And Reappointment Of United States
Magistrate Judges March 2010 Judges Information Series No. 2,                       4,5,6


Code of Conduct for United States Judges (Guide, Vol. 2A, Ch. 2).
(effective March 12, 2019)                                                            14


The Federal Magistrate Act of 1979 (Pub. L. No. 96-82; 93 Stat. 643)                   2
Fed. R .Evid. 605                                                                     17

**CASES EFFECTED**

Case No. 1:21-cv-01047-LM                                                               5
Case No. 1:19-cv-009 78-JL                                                              5
Case No. 1:17-cv-00733-PB                                                               5
Case No. 1:18-cv-00203-PB                                                               5
Case No. 1:17-cv-00749-JD                                                               5

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

Daniel E. Hall, Plaintiff,

v.

Twitter Inc., Defendant.

**Case No. 1:20-cv-536-SE**

## PLAINTIFF'S ATTACHED "MOL" IN SUPPORT
## TO RECUSE HONORABLE JUDGE ELLIOT

### I. BACKGROUND

1. Honorable "Judge Elliot" was sworn in as an Article I District Judge on December 22, 2021. (Declaration, Attached Exhibit A).

2. Upon information and belief, on or around January 3, 2022, the Court posted public notice of the re-appointment of Judge Johnstone.

3. On January 13, 2022, Plaintiff, aka Sensa Verogna, filed a comment to the Merit Selection Panel. (Id. Attached Exhibit B). Within these comments, Plaintiff cites his [Rule 60 Motion, at 74].

4. On February 28, 2022, Plaintiff, aka Sensa Verogna, filed an amended comments to the Merit Selection Panel, (Id. Attached Exhibit C), attaching his [Rule 59(e) Motion] objections filed in Case No. 1:21-cv-01047-LM. (Id. Attached Exhibit D)

5. Judge Johnstone was reappointed to a second eight-year term effective June 16, 2022.

6. Upon information and belief, Judge Elliot, an Article III justice, participated in the re-appointment process of voting, in chambers, among other Article III judges, which voted to re-appoint Judge Johnstone, despite her bad behavior.

### II. RECUSAL

7. Federal Courts recognize three possible grounds for challenges for cause: those based on actual bias, those based on implied bias, and those based on "inferable" bias.  *U.S. v. Torres* 128 F.3d 38 (2d Cir. 1997).[1]

8. A judge should step aside or be removed if a reasonable and objective observer would harbor serious doubts about the judge's impartiality.  Canon 3(E)(1) of the Code of Judicial Conduct ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned"); See *In re Disqualification of Murphy,* 110 Ohio St. 3d 1206, 1207-8 (Ohio 2005), (Preservation of public confidence).

## III. PROCESS OF RE-APPOINTMENT

9. A United States magistrate judge is a judicial officer of the district court, appointed by majority vote of the district judges of the court, including Judge Elliot. [2] The Selection, Appointment, And Reappointment Of United States Magistrate Judges March 2010 Judges Information Series No. 2, pge. 1. Hereafter as ("Magistrate Book").

10. The process for reappointment of a Magistrate Judge shares many of the same basic elements of the process for initial consideration, selection, and appointment, with modification for the fact than a pool of new applicants for a vacant position. If a district court desires to consider the first step is the issuance of a public notice well before the expiration of the incumbent Magistrate Judge's current

_____

[1] Pertinent here are "Actual bias is "bias in fact" — the existence of a state of mind that leads to an inference that the person will not act with entire impartiality. *United States v. Wood, 299 U.S. 133 (1936); U.S. v. Torres, 128* F.3d 38, 43 (2d Cir. 1997) "Implied or presumed bias is "bias conclusively presumed as a matter of law." *Wood,* 299 U.S. at 133. " *Torres,* 128, at 45. (implied bias disqualification is mandatory.)

[2] The Federal Magistrate Act of 1979 (Pub. L. No. 96-82; 93 Stat. 643) established certain minimum standards and procedures for the selection and appointment of United States magistrate judges, which are codified at 28 U.S.C. § 631. In accordance with 28 U.S.C. § 631(b)(5), the Judicial Conference of the United States has promulgated the Regulations of the Judicial Conference of the United States Establishing Standards and Procedures for the Appointment and Reappointment of United States Magistrate Judges ( Id. Appendix J).

term, noting the court's consideration of reappointment of the incumbent Magistrate Judge and taking comments from the bar and public to assist the members of a merit selection panel in its evaluation on whether to recommend reappointment to the district court. A key difference in the notice of reappointment consideration is that it does not take applications for the position, but rather comments on the person under consideration for reappointment. The reappointment process also includes appointment by the district court of a merit selection panel, the composition of which is the same as that appointed to consider the selection of a new Magistrate Judge. The attributes considered by the panel are much the same as those considered by panels evaluating candidates for initial appointment— good (moral) character, judgment, legal ability, temperament, and a commitment to equal justice under the law.  Magistrate book Pge. 11.

11. The merit selection panel is appointed by majority vote of the district judges of the court. Magistrate book, Pge. 21. The court must establish a merit selection panel to assist the district judges in their determination to reappoint the incumbent. Magistrate book, Pge. 39. Normally, an incumbent magistrate judge who has performed well in the position should be reappointed to another term of office. Magistrate book, Pge. 37.

12. When the court has determined that it desires to consider the reappointment of the incumbent and the public notice has been published, the panel does not take applications for the position. It merely reviews the incumbent's performance in office as a magistrate judge, and considers comments received from members of the bar and the public, and any other pertinent evidence as to the incumbent's good character, judgment, legal ability, temperament, and commitment to equal justice under the law. The panel and the court itself should determine how the panel should appraise the incumbent's performance. All written comments should be considered carefully. An interview with the incumbent would generally be useful. Also the panel might want to interview selected individuals

who have actual and reliable knowledge of the incumbent's performance. To encourage candor, the panel should assure individuals who comment on the incumbent's performance that their names will not be disclosed. As a matter of fairness, however, the magistrate judge should be given an opportunity to appear personally before the panel to respond to any negative comments that have been received and to answer any questions regarding his or her performance. Magistrate book, Pges. 39-40. Reappointment Of An Incumbent Magistrate Judge To A New Term.

## IV. RULES FOR JUDICIAL CONDUCT

13. A United States Magistrate Judge is a "covered" judge under the Rules for Judicial Conduct. "RULES" FOR JUDICIAL-CONDUCT AND JUDICIAL-DISABILITY PROCEEDINGS, as Amended March 12, 2019, Article I., 1(b).

14. These "Rules" govern proceedings under the Judicial Conduct and Disability Act (Act), 28 U.S.C. §§ 351–364, to determine whether a covered judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts. Id. Article I., 1(a).

15. These "Rules" provide mandatory and nationally uniform provisions governing the substantive and procedural aspects of misconduct. Id. Article I., 2(a).

16. Cognizable misconduct, within the Rules, includes, but is not limited to: using the judge's office to obtain special treatment for friends or relatives. Id. Article II., 4(a)(1)(A); engaging in improper ex parte communications with parties or counsel for one side in a case. Id. Article II., 4(a)(1)(C); failing to call to the attention of the relevant chief district judge or chief circuit judge any reliable information reasonably likely to constitute judicial misconduct. Id. Article II., 4(a)(6); conduct occurring outside the performance of official duties if the conduct is reasonably likely to have a prejudicial effect on the administration of the business of the courts, including a substantial and widespread lowering of public confidence in the courts among reasonable people. Id. Article II., 4(a)(7).

17. The overarching goal of such action should be to prevent harm to those affected by the misconduct and to prevent recurrence.  Code of Conduct for United States Judges, Canon 3B(6) & cmt.

## V. EVIDENCE IN FRONT OF RE-APPOINTMENT PANEL

18. The Court was noticed of Judge Johnstone's illegal policy on March 18, 2021, Plaintiff filed Doc. 74, Exhibits at 74.1 and on April 16, 2021, McAuliffe Recusal Motion, Doc. at 77, and with the [COMPLAINT, at 1], filed in Case No. 1:21-cv-01047-LM on December 9, 2021, Plaintiff has made well known to the Court Judge Johnstone's actions such as promulgating and utilizing illegal policies; disregarding laws; using the judge's office to obtain special treatment for the defendant Twitter; and among other acts committed in; Case No. 1:19-cv-009 78-JL, involving Justice Joseph Normand Laplante and Judge Johnstone, which was live from September 17, 2019, through January 28, 2021; Case No. 1:17-cv-00733-PB, involving Justice Paul Barbadoro and Judge Johnstone, which was live from December 21, 2017, through April 25, 2019; Case No. 1:18-cv-00203-PB, involving Justice Paul Barbadoro and JOHNSTONE, which was live from March 5, 2018, through April 4, 2019; Case No. 1:17-cv-00749-JD, involving Justice Joseph A. DiClerico Jr. and Judge Johnstone, which was live from December 21, 2017, through June 12, 2018.

19. Also, the Article III judges received notice of Judge Johnstone's illegal policy through comments submitted on January 13, 2022, and as amended on February 28, 2022.  above ¶  3 and ¶ 4.  also Magistrate book, Pges. 39-40.

## VI. RECUSAL REQUIRED BY STATUTE

### A. Disqualification Based on § 144

20. 28 U.S.C. "Section 144" aims exclusively at actual bias, is triggered by a party's timely and sufficient affidavit, [and] applies only to district judges and "must convince a reasonable person that bias actually exists." *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000), or the judge has a personal bias or

prejudice either against him or in favor of any adverse party." 28 U.S.C. 144. The basis of the disqualification is that personal bias or prejudice exists, by reason of which the judge is unable to impartially exercise his functions in the particular case. The factual allegations must be established by more than a prima facie case, but not beyond a reasonable doubt that the mind of the judge is closed to justice.

21. An affidavit is only considered sufficient to support disqualification if the facts and reasons provided "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment" *Berger v. United States*, 255 U.S. 22, 24 (1921), or when a "reasonable man would conclude on the facts stated [in the affidavit] that the district judge had a special bias against the defendant." *United States v. Thompson*, 483 F.2d 527 (3d Cir. 1973); also 28 U.S.C. § 144.

22. Section 144 is unusual because it requires that the district judge accept the affidavit as true even though it may contain averments that are false and may be known to be so to the judge. *United States v. Kelley*, 712 F.2d 884, 889 (1st Cir.1983).

23. When a judge receives a timely motion under Section 144, the judge must evaluate the sufficiency of the motion and affidavit, but not their truth or falsity. The judge must disqualify himself or herself if the motion alleges facts sufficient to show judicial bias, even if the judge knows the factual allegations to be false. *United States v. Jeffers*, 532 F.2d 1101, 1112 (7th Cir.1976). At the same time, however, the facts alleged must be sufficiently definite and particular to convince a reasonable person that bias exists. Conclusions, opinions, or rumors are not sufficient. *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir.1993) (citing *United States v. Balistrieri,* 779 F.2d 1191, 1199 (7th Cir.1985)). In addition, the Seventh Circuit has instructed, because Section 144 is weighted in favor of recusal, its requirements must be construed strictly to prevent abuse. *Sykes*, 7 F.3d at 1339.

24. "[I]t is apparent that the two sections (144 and 455) are not redundant but are complementary...." *United States v. Silba*, 624 F.2d 864, 868 (9th Cir. 1980).

### B. Disqualification Based on Question of Partiality: Section 455(a)

25. In relevant part, 28 U.S.C. § 455(a) requires that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

26. "The test under Section 455(a) is whether an objective, disinterested, lay observer fully informed of the facts on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Chandler*, 996 F.2d 1073, 1104 (11th Cir. 1993). Objective test, based on all relevant circumstances. *Liteky v. United States*, 510 U.S. 540, 548 (1994). "Recusal [is] required whenever `impartiality might reasonably be questioned.'" Id.

27. The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists[.] *Liljeberg v. Health Svcs. Acq. Corp.,* 486 U.S. 847 (1988), 2204-2205. "It is the appearance of bias or partiality that matters here, not actual bias." *United States v. Tucker*, 78 F.3d 1313, 1324 (8th Cir. 1996). *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998); "reasonable person" standard. [3]

28. In the present case, terms like "average person on the street," or "reasonable man (or woman)," See ("average man" test, *United States v. Wood*, 299 U.S. 123,(1936)), *Dennis v. United States* 339 U.S. 162 (1950), or "impartiality might reasonably be questioned," are all implicated in the present motion. Judge Elliot's duties on the panel and her judicial duties on the bench might well cause a reasonable and objective observer to question the judge's impartiality regarding Plaintiff's claims. *State ex rel.*

---

[3] , e.g., In re *Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998); *Baldwin Hardware Corp. v. Franksu Enter. Corp.,* 78 F.3d 550, 557 (Fed. Cir. 1996); *Blanche Rd. Corp. v. Bensalem Township,* 57 F.3d 253, 266 (3d Cir. 1995); *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992);

*Turner v. Marshall* (1931), 123 Ohio St. 586, 587, 176 N.E. 454, ("[i]t is of vital importance that the litigant should believe that he will have a fair trial."). Because the plaintiff in this case has called into question the fairness of the judge's dual roles, and because a reasonable and objective observer might well share those concerns, the Court should  conclude that the affidavit of disqualification should be granted. *In re Disqualification of Murphy*, 110 Ohio St. 3d 1206, 1208 (Ohio 2005).

### C. Disqualification: Based on Personal Bias or Knowledge: Section 455(b)

29. 28 U.S.C. § 455(b)(1) states that a judge shall disqualify herself… "where he has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding." 455(b)(1)--does not require that bias or prejudice in fact be established. *United States v. Chantal*, 902 F.2d 1018, 1023 (1st Cir.1990). It does mean that where the appearance of partiality exists, recusal is required regardless of the judge's own inner conviction that he or she can decide the case fairly despite the circumstances. *Blizard v. Frechette*, 601 F.2d 1217, 1220 (1st Cir.1979). Section 455 is primarily concerned with knowledge gained "outside a courthouse". in Judge Elliot's case, knowledge acquired in an administrative capacity as an Article III judge, has not entered the record to which it may be controverted or tested by the tools of the adversary process. . . . Off-the-record briefings in chambers leave no trace in the record—and in this case Judge Elliot would be forbidding any attempt at legitimate reconstruction. . . . This is 'personal' knowledge . . . ." *Edgar v. K.L.,* 93 F.3d 256, 259 (7th Cir. 1996); 28 U.S.C. § 455(b)(3) states that a judge shall disqualify herself… Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy; Canon 3,C, (1)(e).  also, The Ninth Circuit held that a judge, who was formerly a U.S. attorney when the case at hand was under investigation, should have recused himself from ruling on the appellant's motion for a new trial. *United States v. Arnpriester,* 37 F.3d 466, 467 (9th Cir. 1994). The

court noted that its analysis "imputes to the United States Attorney the knowledge and acts of his assistants." Id. The court held that both sections 455(a) and (b) required recusal in this case. 28 U.S.C. § 455(b)(5) (iv) states that a judge "shall disqualify himself… is to the judge's knowledge likely to be a material witness in the proceeding. Canon 3,C, (1)(b).

## VII.   DUE PROCESS REQUIRES RECUSAL

### A. The Requirements of Due Process.

30. Fundamentally, due process U.S. CONST. AMEND V guarantees "an absence of actual bias" on the part of a judge. In re *Murchison,* 349 U.S. 133, 136 (1955). The Supreme Court has imposed an objective standard here, too, that asks whether "as an objective matter, the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016).

31. Due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power. *Marchant v. Pennsylvania R.R.,* 153 U.S. 380, 386 (1894); (In a civil proceeding), *Hagar v. Reclamation Dist.,* 111 U.S. 701, 708 (1884). "Due process of law is [process which], following the forms of law, is appropriate to the case and just to the parties affected. It must be pursued in the ordinary mode prescribed by law; it must be adapted to the end to be attained; and whenever necessary to the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. Any legal proceeding enforced by public authority, whether sanctioned by age or custom or newly devised in the discretion of the legislative power, which regards and preserves these principles of liberty and justice, must be held to be due process of law." Id. at 708; Accord, Hurtado v. California, 110 U.S. 516, 537 (1884).

32. First, "[p]rocedural due process rules under U.S. CONST. AMEND XIV are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus*, 435 U.S. 247, 259 (1978). "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases." *Mathews v. Eldridge*, 424 U.S. 319, 344 (1976). At times, the Court has also stressed the dignitary importance of procedural rights, the worth of being able to defend one's interests even if one cannot change the result. *Carey v. Piphus,* at 266–67; *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242 (1980); The core of these requirements is an impartial tribunal. *Bracy v. Gramley* 520 U.S. 899 (1997). Due process also requires an opportunity for confrontation and cross-examination, and for discovery; that a decision be made based on the record.

33. An impartial decisionmaker is an essential right in civil proceedings. *Goldberg v. Kelly,* 397 U.S. 254, 271 (1970). "The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. . . . At the same time, it preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Marshall,* 238, 242; *Schweiker v. McClure,* 456 U.S. 188, 195 (1982). Thus, a showing of bias or of strong implications of bias was deemed made. *Gibson v. Berryhill,* 411 U.S. 564 (1973). Or the conduct of deportation hearings by a person who, while he had not investigated the case heard, was also an investigator who must judge the results of others' investigations just as one of them would someday judge his, raised a substantial problem which was resolved through statutory construction. One of the fundamental purposes of the Act was to ameliorate the evils resulting from the practice of commingling in one person the duties of prosecutor and judge.  *Wong Yang Sung v. McGrath,* 339 U. S. 41-45, 339 U. S.  (1950).

34. Due Process Clause incorporated the common-law rule that a judge must recuse himself when he has 'a direct, personal, substantial, pecuniary interest' in a case." *Caperton v. A. T. Massey Coal Co. , Inc.*, 556 U.S. ___, No. 08–22, slip op. at 6, quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927), there "are circumstances 'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" 556 U.S. ___, No. 08–22, slip op. at 6 (citations omitted). "a conflict arising from his participation in an earlier proceeding." 556 U.S. ___, No. 08–22, slip op. at 7, 9. In such cases, "[t]he inquiry is an objective one. The Court asks not whether the judge is actually subjectively biased, but whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" 556 U.S. ___, No. 08–22, slip op. at 11 (citations omitted). Relying on *Caperton*, which the Court viewed as having set forth an "objective standard" that requires recusal when the likelihood of bias on the part of the judge is "too high to be constitutionally tolerable," *Id.* (internal quotations omitted).

35. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly,* 397 U.S. 254, 269 (1970). *also ICC v. Louisville & Nashville R.R.*, 227 U.S. 88, 93–94 (1913). *Cf.* § 7(c) of the Administrative Procedure Act, 5 U.S.C. § 556(d). "This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny." *Greene v. McElroy*, 360 U.S. 474, 496–97 (1959).

36. Although this issue arises principally in the administrative law area, it applies generally to decisions on the record. "[T]he decisionmaker's conclusion . . . must rest solely on the legal rules and evidence adduced at the hearing. *Mathews,* 424 U.S. 319 (1976), In *Goldberg* the Court held that the pretermination hearing must include the following elements: (1) "timely and adequate notice detailing the reasons for a proposed termination"; (2) "an effective opportunity [for the recipient] to defend by

confronting any adverse witnesses and by presenting his own arguments and evidence orally"; (3) retained counsel, if desired; (4) an "impartial" decisionmaker; (5) a decision resting "solely on the legal rules and evidence adduced at the hearing"; (6) a statement of reasons for the decision and the evidence relied on. *Goldberg*, 397 U.S., at 266 -271.

## B. The Process That Is Due Process

37. Due process in this case would preserve the liberty and property interests stated in Plaintiff's Doc. 1 COMPLAINT. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1982). "The requirements of procedural due process apply to the deprivation of interests encompassed by the U.S. CONST. AMEND XIV protection of liberty and property.

38. The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton*, 556 U. S., at 881. Of particular relevance to the instant case, the Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case. *Murchison*, 349 U. S., at 136–137. This objective risk of bias is reflected in the due process maxim that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome." Id., at 136. *Williams v. Pennsylvania*, 579 U.S. ___ (2016).

## IX. SUMMARY ARGUMENTS

39. Accepting the declaration as true, Judge Elliot's impartiality might reasonably be questioned, given her role as an Article III judge on the Court who just recently voted within a group of 5 other justices [5] to re-appoint Judge Johnstone to another term as Magistrate Judge. A decision which provides the highest evidence of actual bias or "bias in fact" and demonstrates the existence of a state of mind that leads a reasonable person to an inference that Judge Elliot will not act with entire impartiality, and also

demonstrates an implied or presumed bias which is conclusively presumed as a matter of Constitutional law, for which disqualification is mandatory as this panel vote cannot be contradicted.

40. Judge Elliot's impartiality might reasonably be questioned, given her panel vote or the panel's vote, which, despite the incontrovertible evidence presented by the Plaintiff, advocates in favor of Judge Johnstone's duel role and her promulgation and utilization of her own unconstitutional court rules, [6] which was conduct occurring outside the performance of official duties, [7] conduct prejudicial to the effective and expeditious administration of the business of the courts, [8] which demonstrates special treatment for Twitter and its Attorneys, [9] which occurred over a period of over 2 years indicating the engagement in improper ex parte communications, [10] and the failing to call to the attention of the relevant chief district judge of this Illegal Policy, [11] which undoubtably had a prejudicial effect on the administration of the business of the courts, [12], which certainly cannot be actions construed to be within the mandatory and nationally uniform provisions contained within Article I., 2(a), regarding judicial conduct.

41. With evidence of Judge Johnstone's Illegal Policies in hand, Judge Elliot just recently voted to re-

---

[5] Article III justices believed to be on the panel are; Honorable Chief District Justice Landya B. "McCafferty"; Honorable Justice Joseph Normand Laplante; Honorable Justice Paul Barbadoro; Honorable Justice Joseph A. DiClerico Jr.; Honorable Samantha D. Elliott; Honorable Steven J. McAuliffe.

[6] A Magistrate judge such as Judge Johnstone does not possess the power to write her own rules or policies, she doesn't have the power to implement or utilize those policies. Any judge, including Judge Johnstone, would therefore lack any power to adjudicate while knowing and utilizing or endorsing those illegal policies.

[7] in violation Article II., 4(a)(7).

[8] in violation of Article I., 1(a).

[9] In violation of Article II., 4(a)(1)(A).

[10] In violation of Article II., 4(a)(1)(C

[11] In violation of Article II., 4(a)(6);

[12] In violation of Article II., 4(a)(7).

appoint Judge Johnstone for good behavior to another term, partly based on her past performance and merit. (Cannon 3(B)(3)). With this vote for re-appointment, Judge Elliot, has already decided Plaintiffs claims such as his , which in turn makes her objectively bias, a material witness under her Cannon 3(B) administrative responsibilities and would make any order from her unconstitutional.

42. Within that consideration, all six judges, including Judge Elliot, agreed and decided that Judge Johnstone, despite her Illegal Policy; (1) would be their selection for Magistrate Judge in the next term; (2) was selected pursuant to standards and procedures promulgated by the Judicial Conference of the United States.[13];  (3) Was of good moral character and committed to equal justice under the law. [14]; (4) should not be impeached or removed from her current appointment for incompetency, misconduct, neglect of duty; (5) and exercised fairly re-appointment only on the basis of merit. (Cannon 3(B)(3)); which is opposite of what Plaintiff alleges in his COMPLAINT. The Court cannot make rules that favor one defendant or a group of lawyers because it creates favoritism and bias of the Court.

43. Reasonable minds would believe that Judge Elliot has maintained and enforced high standards of conduct and has personally observed those standards in compliance with Canon 1, has respect for the laws at all times in compliance with Canon 2(A) and in a manner that promotes public confidence in the integrity and impartiality of the judiciary and has made a reasonable inquiry into Judge Johnstone's illegal policy, and actual improprieties under this standard which included violations of law, court rules, or other specific provisions of this Code.[15]

---

[13]  28 U.S.C. § 631(b).
[14]  28 U.S.C. § 631(i).
[15] Code of Conduct for United States Judges (Guide, Vol. 2A, Ch. 2). (effective March 12, 2019)

44. Judge Elliot's vote was necessary to the re-appointment mandate. The fact that Judge Elliot's vote is not dispositive and may mean only that she was successful in persuading most members of the Court to accept her position—an outcome that does not lessen the unfairness to Plaintiff. [16]  A multimember court must not have its guarantee of neutrality undermined, for the appearance of bias demeans the reputation and integrity not just of one jurist, but of the larger institution of which he or she is a part.

45. Presumably, all 6 judges, read and had previous knowledge of the actions stated in Plaintiff's Complaint(s) of judicial misconduct, including irrefutable proof of Johnstone's Illegal Policy, Judge Elliot and the other 5 justices still voted and expressed an opinion including the merit of  Judge Johnstone's off-bench conduct such as criminal behavior, improper use of a judge's authority, and now have a predisposition to the Plaintiff's claims alleging such behaviors.

46. Due process guarantees "an absence of actual bias" on the part of a judge. When Judge Elliot performed due diligence under her duties prior to the vote on re-appointment, she had to have investigated the allegations in Plaintiff's COMPLAINT to come to an informed decision regarding Judge Johnstone's' merits and behaviors.

47. Here, Judge Elliot was either compliant with her Article III administrative duties and has investigated Plaintiff's claims, and Judge Johnstone's illegal policy and thus has personal knowledge or "extrajudicial information" and not what she has learned through the case. Regardless of whether Judge Elliot voted for or against Johnstone's re-appointment, a reasonable person would surmise that she along with the other Article III judges have already come to a conclusion on the matter of the

_____

[16] Because an appellate panel's deliberations are confidential, it is neither possible nor productive to inquire whether the jurist in question might have influenced the views of his or her colleagues during the decision-making process

Plaintiff's case, given her administrative duties to the Court or her personal knowledge of the case.

48. Because there is a "presumption of honesty and integrity in those serving as adjudicators," *United States v. Morgan*, 313 U.S. 409, 421 (1941); *Schweiker v. McClure,* 456 U.S. 188, 195 (1982); *Withrow v. Larkin,* 421 U.S. 35, 47 (1975), the man on the street under the reasonable person standard would presume that Judge Elliot diligently discharged her Article III administrative duties and responsibilities and therefore;

    a.    has personal knowledge of disputed evidentiary facts concerning the proceeding and stemming from an extrajudicial source other than what Judge Elliot has learned from her participation in the case;

    b.    has personal knowledge of off-the-record briefings in chambers, administrative or other meetings with other justices, clerks or personnel which leave no trace in the record;

    c.    remains a serious risk that Judge Elliot would be influenced by an improper, if inadvertent, motive to validate and preserve the result obtained through any administrative process of re-appointment.

49. Given Judge Elliott's position as an Article III judge, a conflict arising from her position or participation as the re-appointment of Judge Johnstone in an earlier proceeding, presents a case of actual bias or a high probability of actual bias too high to be constitutionally tolerable because the average judge in Judge Elliott's position would be unlikely to be neutral. Furthermore, if not recused from the case, Judge Elliot would be commingling her duties as administrator, advocate and Judge, would not be an impartial decisionmaker, would be underhanded, and would violate Plaintiff's Fifth Amendment rights to an impartial tribunal. [17]

---

[17] Many cases have held that judges must not "become an advocate or otherwise use . . . judicial powers to advantage or disadvantage a party unfairly," *Logue v. Dore*, 103 F.3d 1040, 1045 (1st Cir.

50.  If Judge Elliot, being material fact witness to Judge Johnstone's previous actions were to continue

with this case, Plaintiff would lose constitutional due process rights regarding witnesses. She would

not be allowed to testify as a witness under Federal Rules of Evidence, Rule 605, [18] or be excluded

so that other witnesses' testimony could not be heard under , id. Rule 615. Plaintiff would also lose

his right to cross-examine to her personal knowledge of the matter under, id. Rule 602.  "Case[s] must

be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene, at* 474,

496, quoted with approval in *Goldberg v. Kelly,* 397 U.S. 254, 270 (1970). The right to confront,

interrogate or cross-examine and potentially impeach an adverse witness and that the decision be

based on the record are essential to a fair trial and due process under the U.S. CONST. AMEND XIV

regarding Plaintiff's liberty and property.

51. Based upon the declarations attached hereto, a "reasonable person" would be convinced that bias

existed and, certainly, "would harbor doubts" about Judge Elliot's impartiality. This recusal is

compelled since Ju's "impartiality might reasonably be questioned," 28 U.S.C. § 144 and 28 U.S.C. §

455. Likewise, the Due Process Clause of U.S. CONST. AMEND V, requires recusal under these

same circumstances, and in addition to Judge Elliot's value as a fact witness.

---

Cont… 1997); that a judge must remain detached and impartial, *Reserve Mining Co. v. Lord*, 529 F.2d
181, 186 (8th Cir. 1976); and that "a right to be tried by a judge who is reasonably free from bias is a
part of the fundamental right to a fair trial." *Nicodemus v. Chrysler Corp.,* 596 F.2d 152, 155-56 (6th Cir.
1979) (quoting *Whitaker v. McLean*, 118 F.2d 596, 596 (D.C. Cir. 1941)). An advocate can present the
cause, protect the record for subsequent review and preserve professional integrity
[18] Rule 605, entitled "Competency of judge as witness provides: "The judge presiding at trial may
not testify in that trial as a witness. No objection need be made to preserve the point." Fed. R .Evid.
605. The prohibition of Rule 605 anticipates situations where the presiding judge is called to testify as
a witness in the trial — "where the judge abandons the bench for the witness stand." Fed. R .Evid.
605 advisory committee's note.  *Price Bros. Co. v. Philadelphia Gear Corp.*, 629 F.2d 444, 447 (6th Cir.
1980); *United States v. Frankenthal*, 582 F.2d 1102, 1107 (7th Cir. 1978); *Kennedy v. Great Atlantic Pacific
Tea Co., Inc.,* 551 F.2d 593, 597 (5th Cir. 1977); *Ouachita Nat. Bank v. Tosco Corp.*, 686 F.2d 1291, 1301
(8th Cir. 1982), aff'd 716 F.2d 485 (8th Cir. 1983) (en banc).

## X. CONCLUSION

52.  All that must be demonstrated to compel recusal, then, is a showing of an appearance of bias ... sufficient to permit the average citizen reasonably to question a judge's impartiality. The appearance of bias here is terrifying and mandates disqualification.

53.  Plaintiff has shown that a reasonable person would harbor doubts about Judge Elliot's impartiality.'" *Phillips v. Join Legislative Committee on Performance & Expenditure Review*, 637 F.2d 1014, 1019 (5th Cir. 1981), cert denied, 456 U.S. 960 (1982).

54.  At the very least, there is an "intolerable risk of prejudgment", as Judge Elliot has had "prior conduct, prior knowledge or an administrative connection with the case", and a failure to recuse Judge Elliot from Plaintiff's case presents an unconstitutional risk of bias. *Williams,* at 579 U.S. ___ (2016) 579 U.S. ___, No. 15–5040, slip op. at 1 (2016).

55.  When a judge has served as an advocate for the State in the very case the court is now asked to adjudicate, a serious question arises as to whether the judge, even with the most diligent effort, could set aside any personal interest in the outcome. There is, furthermore, a risk that the judge "would be so psychologically wedded" to her previous position as an administrator that the judge "would consciously or unconsciously avoid the appearance of having erred or changed position." Withrow, 421 U.S., at 57, 95 S.Ct. 1456. In addition, the judge's "own personal knowledge and impression" of the case, acquired through his or her role in the prosecution, may carry far more weight with the judge than the parties' arguments to the court. Murchison, supra, at 138, 75 S.Ct. 623; also Caperton, supra, at 881, 129 S.Ct. 2252.

56.  The circumstances of this case lead any reasonable observer to believe that Judge Elliot has a personal interest in the outcome, and that her continued presence in the case would undermine the confidence in the impartiality of the federal judicial system and faith in the rule of law. U.S. CONST.

AMEND V  compels and the statutory bases of 28 U.S.C. § 455(a) and 28 U.S.C. § 455(b) require that Judge Elliot shall recuse herself from any further proceedings.

**Wherefore,** Plaintiff respectfully requests that Honorable Samantha D. Elliot, hereinafter recuse herself from this case by reason of 28 U.S.C. § 144 and 28 U.S.C. § 455 or due to the prejudice cast upon the Plaintiff and in his Constitutional Due Process Rights.

Respectfully,

/s/ Daniel E. Hall
Aka, Sensa Verogna
SensaVerogna@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Daniel E. Hall, Plaintiff,

v.

Twitter Inc., Defendant.

**Case No. 1:20-cv-536-SE**

## NOTICE OF MOTION

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT on October 30, 2022, the Plaintiff, proceeding pro se, will, and hereby do, move for the Disqualification of the Honorable Samantha D. Elliot, pursuant to 28 U.S.C. Sections § 144, on the grounds that she is prejudice against his claims and in favor of Twitter the Defendant. This motion will be based upon the attached points and authorities, the Declaration of Daniel E. Hall, the Certificate of Good Faith by Counsel of the Record, and all pleadings and records on file in this action.**

**The Plaintiff incorporates all arguments and exhibits presented in his October 30, 2022 Motion to Recuse, MOL and Declaration requesting recusal of Honorable Judge Elliot, Docs. 104, 104.1 and 104.2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Daniel E. Hall, Plaintiff,

v.

'I\vitter Inc., Defendant.

**Case No. 1:20-cv-536-SE**

### CERTIFICATE OF GOOD FAITH BY COUNSEL OF THE RECORD

I declare, certify, verify and state that I am pro se counsel of record for Plaintiff in the above-entitled cause, that I am informed as to the proceedings, and that the Declaration and application are made in good faith and not for the purpose of hindrance or delay.

Respectfully,

*Is/* Daniel E. Hall
Aka, Scnsa Verogna
SensaVerogna@gmail.com

"I declare, certify, verify and state declare pursuant to U.S. 28 U.S Code 1746 and under penalty of perjury that the foregoing is true and correct. Signed this __**3.")1**__ day of October 2022 in the State of New Hampshire.

*V=vll g.;;J*

Daniel E. Hall

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of October 2022, the foregoing document was made upon the Defendant, through its attorneys of record to Jonathan M. Eck jeck@orr-reno.com and Julie E. Schwartz, Esq., JSchwartz@perkinscoie.com and Indraneel Sur, Lead Attorney. U.S. DOJ, indraneel.sur@usdoj.gov