# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **Verogna** | ) | |
| | ) | **Case #: 1:21-cv-01047-LM** |
| v. | ) | |
| | ) | **PLAINTIFF'S RULE** |
| **JOHNSTONE, et. al,** | ) | **59(e) MOTION TO** |
| | ) | **VACATE** |

## PLAINITIFF'S RULE 59(e) MOTION TO VACATE
## ORDER AND JUDGMENT

1.     Pursuant to Local Rule LR 59(e), Sensa Verogna, the "Plaintiff" hereby

requests that the Court Vacate its January 27, 2022, Order of the Court and its Judgment

Order on January 28, 2022, because there is newly discovered or previously unavailable

information that was either unknown or understood and therefore not available when

the Recusal Motion was made and to prevent a manifest error of law and fact,  on the

grounds the Order and Judgement (1) were based upon clear errors of law or fact; (2)

were determined by an objectively bias judge; (3) utilized an incorrect legal standard; (4)

misapplied the law to the relevant facts; (5) contain errors of judgment that are obvious

and indisputable; (6) completely disregarded the material facts of the case; (7) are against

the  weight  of  credible  evidence;  and  (8)  genuine  issues  of  material  fact  exist.

preponderance of evidence standard The Order also paints a picture of a Court that

had its mind made up before dismissing the Plaintiff's claims for lack of jurisdiction for

judicial immunity and, alternatively, because it is frivolous, is based on an "indisputably

meritless legal theory", and that there is no arguable basis under the law stated in the Complaint, at 1, ("COMPLAINT"). Within this Order and Judgment exist manifest errors of judgment in law and fact that warrant reversal of the entire Order. This Court has misinterpreted one or more of the Plaintiffs' allegations, and such errors have had influence in the outcome and constitute a manifest error of law and fact. The COMPLAINT does not seek changes to any order in Case No. 20-536.

3.      The Courts Order which howls "frivolous" and "conclusionary" is simply overblown rhetoric and hocus pocus which attempts to mask the reality that Plaintiff's arguments are based in undisputed facts and governing case law. Reminiscent of Orders from Case No. 20-536, where the Judge does all the heavy lifting for the Defendant(s), the Judge's ruling here is in error as it completely lacks an arguable basis in law, is without basis in the record, and should be voided for objective bias or reversed completely. When compared, Plaintiff's COMPLAINT" and the "RECUSE MOTION" at 9, versus the January 27, 2022, Dismissal "Order", what stands out other than the mis-application of the law, is that the Order ignores the facts alleged, the direct evidence presented of an ILLEGAL POLICY, and instead propagandizes by telling stories, falsehoods and half-truths in the 1100 Club, (See Attached Declaration), while avoiding the issues playing Word Trivia. (See Below). The Order uses approx. 1,100 of its 4,214 words to spread falsehoods and half-truths in an attempt to label the Plaintiff as a "disgruntled" litigant who alleges "frivolous", fantastic or delusional scenarios which fail to state any claims, while at the same time misapplying laws and basic

doctrines, the issues, the direct evidence and the facts of the case.(see chart below). Even as a carcass, the COMPLAINT alleges acts of retaliation by all conspirators, to which each is liable for the acts of each other, and to which judicial immunity does not attach.



## WORD TRIVIA

| Keyword | Complaint | Order | Recusal Motion | Recusal MOL | Recusal Declar. |
|---|---|---|---|---|---|
| word count | 15,747 | 4,214 | 581 | 4,991 | 1,151 |
| page count | 107 | 17 | 3 | 20 | 6 |
| 1985(2) | 14 | 5 | 0 | 0 | 0 |
| clause i | 8 | | | | |
| promulgat(ing), (ted) | 5 | | | 1 | 1 |
| illegal | 75 | 1 | 5 | 6 | 8 |
| policy(ies) | 46 | 1 | 4 | 8 | 6 |
| illegal policy(ies) | 35 | | 4 | 6 | 6 |
| submitted | 104 | | | | |
| bias(ed)(es) | 49 | 5 | | 29 | 6 |
| fraud | 30 | | | | |
| fraud upon the court | 22 | | | | |
| coerc(e)(ing)(cion)(cing) | 17 | | | | |
| force(d) | 15 | 1 | | | |
| testif(y)(ied)(ing) | 10 | | | | 3 |
| deter | 25 | | | | |
| omit(ting)(ted) | 13 | 1 | 4 | | |
| Duty | 8 | | | | |
| Duties | 3 | | 2 | 9 | 1 |
| Administrative | 1 | | 4 | 17 | 7 |
| Adminstrator | | | 2 | 6 | 2 |
| personal knowledge | | | 2 | 7 | 6 |
| frivolous | 6 | 9 | | | |
| meritless | 4 | 1 | | | |
| conclusory | | 4 | | | |
| class-based | | 2 | | | |

Plaintiff complains he is detered from a federal court proceeding.

Incontrovertible evidence of a fraudulent & illegal policy creating bias of the court.

Order fails to address the issues, and when it does it's in the wrong context- (1985)(2).

Recusal motion based upon, illegal policies, administrative position & personal knowledge of the chief judge.

Order ignores the content of recusal motion, labels frivolous, then dismisses

4.     The Order purposely recasts the COMPLAINT as a 1985(2) case, when it is actually a 1985(2)(clause i) case, which allows [it] to incorrectly include a "class-based, invidiously discriminatory animus," which isn't a requirement under (clause i). The "Collateral Attack" position is void on its face because Case No. 20-536 is still open and ongoing. Judge McCafferty totally disregards her Administrative Article III position within the Court in not recusing herself, paints the case as frivolous and dismisses it outright, when she knows that the Court, herself included, with evidence of JOHNSTONE'S ILLEGAL POLICIES in hand, just recently voted to re-appoint JOHNSTONE for good behavior to another term, partly based on her past performance and merit. (Cannon 3(B)(3)). With this vote for re-appointment, Judge McCafferty, has already decided Plaintiffs case, which in turn makes her objectively bias, a material witness under her Cannon 3(B) administrative responsibilities and makes her order unconstitutional. The Court perpetuates the falsehood that the COMPLAINT only alleges judicial acts when the Plaintiff has alleged many non-judicial, off-bench, personal acts to which no immunity would not apply. Judges are also personally liable for the acts of co-conspirators which cannot be considered judicial acts.

5.     JOHNSTONE doesn't have the power to write her own rules or policies, she doesn't have the power to implement or utilize those policies. Any judge, including JOHNSTONE, would therefore lack any power to adjudicate while knowing and utilizing or endorsing those illegal policies.

## I. JUDGE MCCAFFERTY ERRED AS A MATTER OF LAW AND FACT THAT RECUSAL WAS UNWARRANTED AS THE ORDER IS UNCONSTITUTIONAL AND VIOLATES PLAINTIFF'S DUE PROCESS RIGHTS

6.      Plaintiff alleged, in part, in his Recuse Motion, at 9, that Judge McCafferty's "impartiality might reasonably be questioned," given (1) her role as chief administrator of the District Court; (2) Due Process requires recusal as she is a fact witness to JOHNSTONE'S ILLEGAL POLICY; and (3) that it would create actual bias and an intolerable risk to Due Process of an unbiased tribunal.  As this is the only issue brought up prior to the Order, Plaintiff avers "new information", or previously unavailable information that was either unknown or understood and therefore not available when the Recusal Motion submitted, (See Attached Declaration), which provides proof that cannot reasonably be disputed, that because Judge McCafferty, as an Article III judge on the Court who just recently voted within a group of 5 other justices to re-appoint JOHNSTONE to another term as Magistrate Judge, and is simultaneously the author of this Order, and the Plaintiff's claims are opposite regarding JOHNSTONES behavior surrounding her ILLEGAL POLICY, the Order creates an actual bias and an unconstitutional tribunal, and violates Plaintiff's due process guarantees of "an absence of actual bias" on the part of a judge. [1] In other words, she

---

[1] The Order violates Plaintiff's constitutional rights of the Due Process Clause of U.S. CONST. AMEND XIV, which requires recusal as Judge McCafferty is a fact witness's to the ILLEGAL POLICY, and also violates Plaintiff's rights Due Process under the U.S. CONST. AMEND V as actual bias exists.

had knowledge of JOHNSTONE'S ILLEGAL POLICY in hand when she voted to re-appoint JOHNSTONE to another term. She had already made up her mind prior to the Order, that JOHNSTONE'S off-bench acts of promulgating, utilizing, and applying "illegal rules" to cases in the Court were of good character, merit and committed to equal justice, which is opposite of what the Plaintiff alleges in his COMPLAINT. This makes her a rotten jurist as she is objectively biased in favor of JOHNSTONE, and her vote to re-appoint re-affirms that fact.

7.     The process for reappointment of a Magistrate Judge shares many of the same basic elements of the process for initial consideration, selection, and appointment, with modification for the fact that the evaluation is of a known individual already holding the position of Magistrate Judge rather than a pool of new applicants for a vacant position. If a district court desires to consider reappointment of a Magistrate Judge (it can choose not to, by a majority vote of the District Judges), the first step is the issuance of a public notice well before the expiration of the incumbent Magistrate Judge's current term, noting the court's consideration of reappointment of the incumbent Magistrate Judge and seeking comments from the bar and public to assist the members of a merit selection panel in its evaluation on whether to recommend reappointment to the district court. A key difference in the notice of reappointment consideration is that it does not seek applications for the position, but rather comments on the person under consideration for reappointment. The reappointment process also includes appointment by the district court of a merit selection panel, the composition

of which is the same as that appointed to consider the selection of a new Magistrate Judge. The attributes considered by the panel are much the same as those considered by panels evaluating candidates for initial appointment—good character, judgment, legal ability, temperament, and a commitment to equal justice under the law. https://www.fedbar.org/wp-content/uploads/2014/05/RMJ-feature4-mayjun14-pdf-1.pdf

8.    The Court was noticed of JOHNSTONE'S ILLEGAL POLICY since Plaintiff's [Rule 60 motion, at 74]*, on March 18, 2021, and his [McAuliffe Recusal Motion, at 77], on April 16, 2021, in Case No. 20-536, and with the COMPLAINT filed in this action on December 8, 2021, complaining, inter alia, that JOHNSTONE ran an illegal policy through the Court 68 times, favoring one defendant and it's counsel from COIE. (* Case No. 20-536 is stated as [###], throughout).

9.    Upon information and belief, on January 3, 2022, the Court posted notice of the re-appointment of JOHNSTONE.

10.    Any Article III Judge of the District Court, in their administrative duties, bears responsibility for both legal and illegal policies or rules administered by the Court and for any number of critical administrative decisions, including if any administrative actions are to be taken, reprimands given, whether policies need to be adjusted or rules changed, which witnesses to interview.

11.    So shortly prior to January 3, 2022, Six (6) Article III judges of the District

Court [2] were required within their duties to consider, give notice and instructions or a (mandate) to the merit selection panel "that it does not seek applications for the position" of the Magistrate Judge in the next term.

12.     Within that consideration, all six judges, including Judge McCafferty, agreed and decided that JOHNSTONE, despite her ILLEGAL POLICY; (1) would be their selection for Magistrate Judge in the next term; (2) was selected pursuant to standards and procedures promulgated by the Judicial Conference of the United States.[3];  (3) Was of good moral character and committed to equal justice under the law. [4]; (4) should not be impeached or removed from her current appointment for incompetency,  misconduct, neglect of duty; (5) and exercised fairly re-appointment only on the basis of merit. See (Cannon 3(B)(3)); which is opposite of what Plaintiff alleges in his COMPLAINT. The Court cannot make rules that favor one defendant or a group of lawyers because it creates favoritism and bias of the Court.

13.     Judge McCafferty's vote was necessary to the re-appointment mandate. The fact that Judge McCafferty's vote is not dispositive and may mean only that she was successful in persuading most members of the Court to accept her position—an

---

[2] Current Article III justices on the Court are; Honorable Chief District Justice Landya B. "McCafferty"; Honorable Justice Joseph Normand "Laplante"; Honorable Justice Paul "Barbadoro"; Honorable Justice Joseph A. "DiClerico Jr."; Honorable Samantha D. "Elliott"; Honorable Steven J. McAuliffe, "MCAULIFFE";
[3] See 28 U.S.C. § 631(b).
[4] See 28 U.S.C. § 631(i).

outcome that does not lessen the unfairness to the Plaintiff. [5]  A multimember court must not have its guarantee of neutrality undermined, for the appearance of bias demeans the reputation and integrity not just of one jurist, but of the larger institution of which he or she is a part.

14.     Presumably, all 6 judges, and most certainly Judge McCafferty because she is the judge here, read and had previous knowledge of the actions stated in Plaintiff's Complaint(s) of judicial misconduct, including irrefutable proof of JOHNSTONE'S ILLEGAL POLICY, Judge McCafferty and the other 5 justices still voted and expressed an opinion including the merit of  JOHNSTONE'S off-bench conduct such as criminal behavior, improper use of a judge's authority, and now have a predisposition to the Plaintiff's claims.

15.     Given the positions stated, issues avoided, falsehoods and half-truths within the Order, Judge McCafferty displays a deep-seated and unequivocal antagonism that would render fair judgment impossible, as she appears to be psychologically wedded to her previous position to re-appoint JOHNSTONE, and **that *it is* permissible for JOHNSTONE to run an illegal policy through the Court 68 times, favoring one defendant and it's counsel from COIE, creating a biased and unconstitutional Court**, which is contrary to the Plaintiff's claims and incontrovertible

_____

[5] Because an appellate panel's deliberations are confidential, it is neither possible nor productive to inquire whether the jurist in question might have influenced the views of his or her colleagues during the decision-making process

proof of an ILLEGAL POLICY. Judge McCafferty has consciously or unconsciously avoided the appearance of having erred or changed her position, which obviously carries far more weight with the judge than the Plaintiffs arguments. In addition, Judge McCafferty's "own personal knowledge and impression" of Case No. 20-536, acquired through her role as the chief administrator, she has an interest in the outcome as JOHNSTONE'S ILLEGAL POLICY was administered under her supervision.

16.     Partiality in favor of the government may raise a defendant's due process concerns. "Just as there is a prohibition against a judge adjudicating a case where he was also an has an interest.

17.     Due process guarantees "an absence of actual bias" on the part of a judge. When Judge McCafferty performed due diligence under her duties prior to the vote on re-appointment, she had to have investigated the allegations in the COMPLAINT to come to an informed decision regarding JOHNSTONES' merits and behaviors.  DID she interview other employees?, DID she interview the two judges? Or all judges? Did she interview herself? Were damages to potential parties even discussed? When Judge McCafferty voted with the other 5 Article III justices to re-appoint JOHNSTONE, they did so regardless of her ILLEGAL POLICY, and in the process she/they created actual bias towards Plaintiff's case, therefore creating favoritism towards JOHNSTONE, which created an unconstitutional tribunal which violates Plaintiffs rights to Due Process as Judge McCafferty failed to recuse herself and produced the Order dismissing the case. The Order is a clear error of judgment and Judge McCafferty

has applied the wrong legal standards and neglected the facts in record. The Court

should void or reverse this Order.

## II. THE COURT ERRED AS A MATTER OF LAW AND FACT THAT PLAINTIFF'S SUIT IS AN IMPROPER COLLATERAL ATTACK ON RULINGS OF ANOTHER COURT AND THEREFORE LACKS JURISDICTION TO HEAR IT.

18.     Plaintiff argues that none of the four elements required for a successful

application of collateral estoppel have been satisfied; "(1) the issue sought to be

precluded must be the same as that involved in the prior action; (2) the issue must have

been actually litigated; (3) the issue must have been determined by a valid and binding

final judgment; and (4) the determination of the issue must have been essential to the

judgment.

19.     The issue(s) sought to be precluded through the Order, [6] are different

from those involved in the prior action, [7]  the issues here have never explicitly been

litigated or decided, are not identical, an even if they were, they were non- fulfilling the

finality requirement, as the case is still open, [8] and not final.

_____

[6] The Order incorrectly states that the core factual premise of the suit is "that the rulings made by Judges McAuliffe and Johnstone in Case No. 20-536 were incorrect.". See also, [Attached Declaration, The 1100 Club].

[7] Compare the issues here of violating Plaintiff's statutory right to access to a federal court Section 1985(2)(i), neglect to prevent a 1985(2)(i) violation, and violations under the U.S. Constitution by federal officers versus his original claims in Case No. 20-536, which are discrimination in contract, discrimination in public accommodation, and first amendment rights to free speech and rights to assembly.

[8] Plaintiff's original Case No. 20-536 is currently on Appeal in the United States Court of Appeals for The First Circuit, Case Nos. 20-1933, 20-2005, 20-2091 and 21-1317(consolidated). [Recusal Motion, at 9-1, ¶ 1].

**Sensa Verogna is a plaintiff in 2 cases.**

| 1:20-cv-00536-SM | Verogna v. Twitter Inc. | filed 05/04/20 | |
| 1:21-cv-01047-LM | Verogna v. Johnstone et al | filed 12/08/21 | closed 01/28/22 |

20.    Because none of the four elements required for a successful application of collateral estoppel have been satisfied and it would be unfair to apply to the action here, as Plaintiff's COMPLAINT does not seek an appeal of the rulings due to disagreements, and made by another federal judge, the Court erred in utilizing a false core factual premise that Plaintiff brings this action because he disagrees with previous orders in Case No. 20-536, and erred in law by mis-applying the facts on record to the correct legal standard by applying collateral estoppel in a still open case and then dismissing the action for want of jurisdiction on that basis.

21.    Lastly, even if the Appeals Court concludes in Case No. 20-536  that there was no fraud upon the Court as alleged in Plaintiff's [Rule 60 Motion, at 74], the standard of proof for fraud upon the court was "clear and convincing", versus the lower standard of proof required in this conspiracy case which carries a lower "preponderance of evidence" standard, and therefore collateral estoppel would not apply in this case. Even if the underlying factual questions were the same, which they are not,  the earlier case required clear and convincing, and this case only requires proof by a preponderance of evidence.

**III. THE COURT ERRED AS A MATTER OF LAW AND FACT IN HOLDING THAT PLAINTIFF HAS NO CAUSE OF ACTION UNDER SECTION 1985(2)(Clause i) and 1985(3) (clause iii), BECAUSE HE DID NOT ALLEGE ACTS WITH A CLASS-BASED, INVIDIOUSLY DISCRIMINATORY ANIMUS.**

22.     COUNT I of the COMPLAINT clearly states that it is a statutory action for violations of 42 U.S.C. § 1985(2)(clause i), under the damage remedies provided in 42 U.S.C. 1985(3) (clause iii). COMPLAINT, ¶¶¶, 1, 218, 219].[9]

23.     The first clause of Section 1985(2), provides in relevant part:

> **If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified.**

24.     That clause must be read in conjunction with the third and final clause of Section 1985(3), which provides the remedy:

> **[I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.**

_____

[9] "Section 1985(2)" is mentioned in the body of Count I, but clearly states in the header of claim I, and in four other areas of the COMPLAINT that the claims made are for (Clause i) of , Section 1985(2)(Clause i) and not for Section 1985(2) as stated in the order. **See COMPLAINT at page 1** 42 U.S.C. § 1985(2)(clause i), ("Section 1985(2)"); id, page **8,** 42 U.S.C. § 1985(2)(clause i); **page 80 Header, COUNT I: 42 U.S.C. § 1985(2)(CLAUSE I) AND § 1985(3).**

25.     Section 1985(2) (clause i) protects the integrity of federal judicial proceedings by proscribing conspiracies to deter a witness from attending or testifying in federal court or to injure a witness in his person or property for having done so. Section 1985(3) (clause iii) provides a remedy in damages to anyone "injured in his person or property" or deprived of a federal right or privilege as the result of a conspiracy proscribed by Section 1985(2) (clause i). Section 1985(3) (clause iii), specifies the remedy for conspiracies proscribed by Section 1985(2) (clause i), and for conspiracies proscribed by the other provisions of Section 1985.  Plaintiff has alleged sufficient acts and injury to sustain an action under both provisions. A prospective plaintiff need not allege a class- or race-based discriminatory animus in order to maintain a private cause of action under 42 U.S.C. § 1985(2)(clause i). Unlike Section 1985(2) clause 2, which contains equal protection language, Section 1985(2)(clause i) does not contain such language and lacks similar equal protection language. Congress intended the first clause to guard against conspiracies which directly affect the federal judicial process. See Section 1985(2) Clause One Does Not Require Allegations of Class- or Race-Based Discriminatory Animus.

26.     Because Section 1985(2) (clause i) and Section 1985(3)(clause iii), have no class-based, invidious discriminatory animus requirement, and because 1985(3) (clause iii), simply provides a remedy for Section 1985 violations, the Court erred in law by requiring the Plaintiff to allege class-based, invidious discriminatory animus in his COMPLAINT, and to the correct legal standard of (clause i) and erred in utilizing a

false core factual premise that all Section 1985 suits require a class-based, invidious discriminatory animus, and then dismissing the case for want of jurisdiction on that basis.

## IV. PLAINTIFF HAS PROPERLY ALLEGED A CONSPIRACY UNDER 42 U.S. Code § 1985(2)(Clause i) AND A CAUSE FOR REMEDY UNDER 42 U.S.C. 1985(3) (clause iii)

27.     In pertinent part; 42 U.S. Code § 1985(2)(Clause i) states; If two or more persons…. conspire to deter……… by force, intimidation, or threat………..any party or witness in any court of the United States………..from <u>attending such court,</u> or from <u>testifying</u> to any matter pending therein, <u>freely, fully, and truthfully</u>…………. or <u>to injure</u> such <u>party</u> or witness in his person or property on account of his <u>having so attended or testified</u>; ………….

28.     Only "slight evidence" is needed to allow the jury to find that the defendant was a member. Plaintiff need not present direct evidence to prove the agreement, and can prove it with circumstantial evidence.

29.     A single act by any member of the conspiracy is sufficient to satisfy this element, as long as the act was committed to further the conspiracy and tended towards that end. Acts as innocent as writing a letter or talking on the telephone may constitute sufficient overt acts.

30.     Conspiracies are typically proved by circumstantial evidence. '[S]ince such participation, cooperation or unity of action is difficult to prove by direct evidence, it can be inferred from the nature of the act done, the relation of the parties, the interests

of the alleged conspirators, and other circumstances such as "unity of purpose", *or alleged* intent to effectuate the object of the conspiracy.

31.    JOHNSTONE, MCAULIFFE, ECK and SCWARTZ, conspired to scheme and explicitly privately agreed, in part, to: (1) conceal from PLAINTIFF; (a) the fraud upon the COURT; (b) JOHNSTONE'S ILLEGAL POLICY; (c) the bias of the COURT in favor of TWITTER; (d) past, present and ongoing use of JOHNSTONE'S ILLEGAL POLICY by COIE, MRAZIK, and SCHWARTZ; (e) JOHNSTONE'S and MCAULIFFE'S ex-parte legal advice given to TWITTER'S counsel; (2) defeat PLAINTIFF'S [Default Motion, at 7], and other motions, by using preconceived motions, objections or orders; (3) to defeat the PLAINTIFF'S COMPLAINT prior to addressing the merits of his claims by using preconceived motions, objections or orders; (4) wrongly interfere with PLAINTIFF'S access to federal court to pursue his discrimination and constitutional claims by: (a) judicially intimidating, coercing, forcing, and deterring PLAINTIFF from attending and continuing his CASE in the COURT; (b) retaliating against PLAINTIFF for bringing his CASE before the COURT; (c) retaliating and punishing PLAINTIFF for discovering and bringing to light or public scrutiny, the fraud that was being perpetrated against the COURT, JOHNSTONE'S ILLEGAL POLICY, and the bias of the COURT in favor of TWITTER through his various default claims in the COURT. (5) share the true identity of PLAINTIFF in an effort to monitor PLAINTIFF's actions or strategies. COMPLAINT, ¶ 15.

32.     In a quick summary, the COMPLAINT lists *at least* seventy non-judicial acts by all Defendants combined. **[Attached Declaration, Overt Acts to Further the Conspiracy, 1-52]** Each person [is] responsible for a distinct act or of the acts of other co-conspirators.

(1)     JOHNSTONE committed at least twelve acts, and in part; promulgated, implemented ILLEGAL POLICY [id, ¶ 1]; gave legal advice. [id, ¶ 2], [id, ¶ 36], privately conspired [id, ¶ 3]; determined Order utilizing JOHNSTONE'S ILLEGAL POLICY [id, ¶ 16]; disclosed personal CM/ECF information [id, ¶ 51]; communicated ex-parte with defense counsel [id, ¶ 25], [id, ¶ 34], [id, ¶ 52]; concealed by scheme material facts of JOHNSTONE'S ILLEGAL POLICY [id, ¶ 17]; judicially intimidated, coerced, deterred Plaintiff [id, ¶ 18], [id, ¶24].

(2)     MCAULIFFE committed at least thirty acts, and in part; gave legal advice. [id, ¶ 2], [id, ¶ 36]; privately conspired [id, ¶ 3]; determined Order utilizing JOHNSTONE'S ILLEGAL POLICY [id, 9], [id, ¶ 14]; disclosed personal CM/ECF information [id, ¶ 51], communicated ex-parte with defense counsel [id, ¶ 34], [id, ¶ 52]; concealed by scheme material facts of JOHNSTONE'S ILLEGAL POLICY [id, ¶ 7], [id, ¶ 12], [id, ¶ 19], [id, ¶ 27], [id, ¶ 29], [id, ¶ 32], [id, ¶ 38], [id, ¶ 48], [id, ¶ 49]; judicially intimidated, coerced, deterred, Plaintiff [id, ¶ 8], [id, ¶ 13], [id, ¶ 23], [id, ¶ 28], [id, ¶ 30], [id, ¶ 33],  [id, ¶ 39], [id, ¶ 50]; acted to suppress the material facts [id, ¶ 20], [id, ¶ 21], [id, ¶ 22], [id, ¶ 23]; ordered without jurisdiction [id, ¶ 37].

(3)      ECK committed at least eighteen acts, and in part; privately conspired [id,

¶ 3] and, submitted material misrepresentations to the Court or the Appeals Court. [id,

4], [id, ¶ 5], [id, ¶ 6], [id, ¶ 10], [id, ¶ 11], [id, 15], [id, ¶ 26], [id, ¶ 31], [id, ¶ 40], [id, ¶ 41],

[id, ¶ 42], [id, ¶ 43], [id, ¶ 44], [id, ¶ 45], [id, ¶ 46], [id, ¶ 47], [id, ¶ 53].

(4)      SCHWARTZ committed at least ten acts, and in part; privately conspired

[id, ¶ 3] and, submitted material misrepresentations to the Court or the Appeals Court.

[id, ¶ 4], [id, ¶ 5], [id, ¶ 6], [id, ¶ 10], [id, ¶ 11], [id, ¶ 15], [id, ¶ 40], [id, ¶ 42], [id, ¶ 53].

(5)      Additionally, these acts by JOHNSTONE and MCAULIFFE are doubled

when you consider the retaliation factor, as each act was done in the furtherance of the

Conspiracy's objective, which was to retaliate against the Plaintiff.

33.      Plaintiff's COMPLAINT also alleges that, JOHNSTONE, acting under

the pretense of her administrative capacity;

(1)      promulged, implemented, managed and adopted unofficial alternative

            admission procedures or an illegal POLICY [id. ¶ 94];

(2)      utilized this POLICY for the benefit of the defendant Twitter and its

            counsel in a Federal Court, allowing MRAZIK the privilege of

            appearing before the Court 68 times and allowed SCHWARTZ to

            appear and submit a [Dismiss Motion, at 3], although both lacked the

            requirements of eligibility.  COMPLAINT, ¶ ¶ 21 through 93.

(3)      omitted from the Plaintiff, the material facts of the POLICY.

34.     When Plaintiff unknowingly challenged the use of the ILLEGAL POLICY with his [Default Motion, at 7], each of the four Defendants knowingly and intentionally, <u>privately conspired</u> against him to deter his claims in Federal Court, in an effort to conceal the material facts of the ILLEGAL POLICY from Plaintiff and the Court. In the furtherance of this conspiracy, each defendant*;

(1)     <u>communicated through normal channels</u>; COMPLAINT, ¶ 106

(2)     <u>with a motive</u> and unity of purpose; [id, ¶ 107-114]

(3)     <u>with knowledge</u> of the material facts; [id, ¶ 115]

(4)     arrived at a <u>mutual understanding</u> or agreement, either spoken or unspoken, through a unity of purpose to work together to achieve the overall objective of the conspiracy, [id, ¶ 117]

(3)     <u>to deter by force</u>, intimidation, threat or, retaliation  …[the] party, witness Plaintiff in the First District Court [id, ¶¶ 117, 161, 162, 166, 243.]

(4)     <u>from attending</u> such court, or from testifying to any matter pending therein, freely, fully, and truthfully [id, ¶¶¶ 117, 243, 256], and

(5)     <u>injured</u> Plaintiff in his person or property on account of his having commenced and continued his case. [id, ¶ 235].

* [All counts to include retaliation]

35.     The COMPLAINT alleges many facts to plausibly state a conspiracy. Direct evidence and factual enhancements include;

    (1)    <u>MRAZIK'S 66 submittals to the Court,</u> prior to Plaintiff's case being filed, which             evidences;

        a. JOHNSTONE created and administered an ILLEGAL POLICY;

        b. an illegal policy that favors Twitter or COIE attorneys;

        c. actual, continuous use and pattern of the ILLEGAL POLICY;

        d. actual, continuous pattern of conspiracy between JOHNSTONE and COIE attorney;

        e. the ILLEGAL POLICY was used before/in front of many judges of the district;

        f. a bias of the Court that favors Twitter or COIE attorneys;

        g. ex-parte communications between JOHNSTONE and COIE attorney of a conspiratorial nature;

        h. established channels of communications between Twitter, COIE attorneys and the Court;

        i. an off-bench relationship existed between JOHNSTONE and MRAZIK;

        j. JOHNSTONE omitted material facts of the bias of the Court and her ILLEGAL POLICY to respective Plaintiffs;

        k. a motive to deter or retaliate against, the Plaintiff;

(2)    <u>SCHWARTZ'S 2 submittals to the Court</u>, in the Plaintiff's case evidences;

        a. acknowledgement of an illegal policy to benefit Twitter attorneys;

        b. JOHNSTONE created and administered an ILLEGAL POLICY;

        c. an illegal policy that favors Twitter or COIE attorneys;

        d. actual, continuous use and pattern of the ILLEGAL POLICY;

        e. actual, continuous pattern of conspiracy between JOHNSTONE and COIE attorney;

        f. a bias of the Court that favors Twitter or COIE attorneys;

g. ex-parte communications between JOHNSTONE and a COIE attorney of a conspiratorial nature.;

h. established channels of communications between COIE attorneys and the Court;

i. an off-bench relationship existed between JOHNSTONE and MRAZIK;

j. a motive to deter or retaliate against, the Plaintiff.

(3)   ECK'S e-mail, which evidences;

a. ECK'S original frame of mind, that SCHWARTZ was not eligible for bar when she submitted Twitter's Dismiss Motion;

b. that ECK'S and SCHWARTZ'S submittals thereafter were all in contradiction of ECK'S e-mail, and therefore a misrepresentation of material fact;

c. that ECK switched position after agreeing to join the Conspiracy;

(4)   Twitter's reply brief to the Appeals Court, which evidences;

a. ex-parte communications between COIE attorney and the Court of a conspiratorial nature.
b. channels of communication;

c. bias in favor of Twitter or its attorneys;

d. legal advice given by the Court to COIE attorney;

e. a continued conspiracy between the JOHNSTONE and COIE attorneys;

(5)   JOHNSTONE'S Court's Orders, which evidences;

a. bias of the Court in favor of Twitter and COIE Attorneys;

b. channels of communication;

c. concealment or omitting of material facts of the ILLEGAL POLICY from Plaintiff;

d. judicial intimidation in denying privileges to Plaintiff;

e. coercion to deter Plaintiff in his claims;

f. JOHNSTONE omitted material facts of the bias of the Court and JOHNSTONE'S ILLEGAL POLICY to the Plaintiff;

(6)   <u>MCAULIFFE'S Court's Orders</u>, which evidences;

a. JOHNSTONE'S ILLEGAL POLICY was utilized in determining Plaintiff's default motion and reconsideration of the order denying default.

b. an illegal policy that favors Twitter or COIE attorneys;

c. actual, continuous use and pattern of the ILLEGAL POLICY;

d. actual, continuous pattern of conspiracy;

e. a bias of the Court that favors Twitter or COIE attorneys;

f. MCAULIFFE omitted material facts of the bias of the Court and JOHNSTONE'S ILLEGAL POLICY to the Plaintiff;

g.  judicial intimidation, retaliation against the Plaintiff;

h. a pattern of Orders that lack any legal authority;

(7)   <u>ECK'S and SCHWARTZ'S motions to the Court</u> evidences;

a. material misrepresentations to the Court or the Appeals Court;

b. a pattern of material misrepresentations;

c. ECK and SCHWARZ omitted material facts of the bias of the Court and JOHNSTONE'S ILLEGAL POLICY to the Plaintiff.

## V. PLAINTIFF HAS PROPERLY ALLEGED CLAIMS UNDER 42 U.S.C. § 1986 AND THE COURT ERRED AS A MATTER OF LAW AND FACT IN FINDING THAT PLAINTIFF HAS NO CAUSE OF ACTION UNDER SECTION 1986 BECAUSE CLAIM ONE FAILED TO ALLEGE ACTS WITH A CLASS-BASED, INVIDIOUSLY DISCRIMINATORY ANIMUS UNDER 1985.

36.   The   COMPLAINT   states   sufficient   claims   that   "Persons"

JOHNSTONE, MCAULIFFE, SCHWARTZ and ECK all privately participated

actively in the CONSPIRACY, and therefore: (1) had actual knowledge of the Section

1985 CONSPIRACY; (2) had the power as officers of the COURT to prevent or aid in preventing the commission of the Section 1985 violation, and were in the optimal position to prevent it; (3) but neglected or refused to prevent the Section 1985 CONSPIRACY; and (4) wrongful acts were committed against the PLAINTIFF in furtherance of the CONSPIRACY; (5) which could have been prevented by reasonable diligence. COMPLAINT, ¶ 262-266.

37.    JOHNSTONE, in disregarding her obligation under departmental rules, evidences her failure to exercise reasonable diligence in connection with her own ILLEGAL POLICY. By neglecting to scrutinize and deter the efforts of MCAULIFFE, SCHWARTZ and ECK to conceal the truth or existence of her POLICY, and the CONSPIRACY and its objectives, from the PLAINTIFF, COMPLAINT, ¶ 264.

38.    MCAULIFFE, in disregarding his obligation under departmental rules evidences his failure to exercise reasonable diligence in connection with JOHNSTONE'S ILLEGAL POLICY. By neglecting to scrutinize and deter the efforts of JOHNSTONE, SCHWARTZ and ECK to conceal the truth or existence of JOHNSTONE'S POLICY, and the CONSPIRACY and its objectives, from the PLAINTIFF, MCAULIFFE is liable under Section 1986. COMPLAINT, ¶ 265.

39.    Because the Court errored in requiring a class- or race-based discriminatory animus, and because the COMPLAINT alleges plausible violations under Section 1985(2) (clause i) and Section 1985(3) (clause iii), the Order should be reversed and Plaintiff's claims under Section 1986 should be re-instated.

## VI. PLAINTIFF HAS PROPERLY ALLEGED CLAIMS UNDER THE BIVENS DOCTRINE AND THE COURT ERRED AS A MATTER OF LAW AND FACT IN FINDING THAT PLAINTIFF HAS NO CAUSE OF ACTION UNDER BIVENS.

### A.   BIVENS AND DUE PROCESS

40.    Plaintiff alleges violation of his (1) due process and adequate, effective, and meaningful access to the Courts and justice guaranteed by the First and Fourteenth Amendments to the United States Constitution; (2) petition or right to seek judicial redress for grievances including the Due Process Clauses of the Fifth and Fourteenth Amendments, the Privileges and Immunities Clause of Article IV, and the First Amendment's Petition Clause of the United States Constitution; (3) due process to an impartial tribunal under the Fifth Amendment; (4) right to a jury trial under the Seventh Amendment; (5) right to equal protection of the laws guaranteed by the Fifth Amendment to the United States Constitution, (Compl., 250], and brought suit under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Bivens "allows constitutional claims against federal officials, in their individual capacities, for actions taken under color of federal law."

41.    The due process clause of the fifth amendment provides that: "No person shall . . . be deprived of life, liberty, or property, without due process of law ...." U.S. Const. amend. V. It applies to actions of the federal government, not those of private individuals. The standards used for determining the existence of federal government

action under the fifth amendment are identical to those used for finding state action under the fourteenth amendment.

42.    Since Plaintiff does have a constitutional right to petition the courts, he is entitled a decision by an impartial tribunal for his discrimination claims, which carries with it a right to jury trial. See 42 U.S.C. § 1981a(c)(1), and his right to equal protection of governing laws.

43.    *Bivens* establishes, as a general proposition, "that victims of a constitutional violation perpetrated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits." The purpose of Bivens is to deter individual federal officers from committing constitutional violations.

44.    The Bivens doctrine allows constitutional claims against federal officials, in their individual capacities, for actions taken under color of federal law. "In order to establish liability under Bivens, a plaintiff must first show that the conduct complained of was committed by a person acting under color of federal law in his individual capacity. Secondly, a plaintiff must show the defendant's conduct deprived a "person of rights, privileges or immunities secured by the Constitution or laws of the United States." "There are two aspects to the second inquiry: 1) there must have been a deprivation of federally protected rights, privileges or immunities, and 2) the conduct complained of must have been causally connected to the deprivation. The Plaintiff, having brought this Bivens action has plead that each Government-official defendant,

JOHNSTONE and MCAULIFFE, through each of the official's own individual actions, has violated the Constitution.

45.     A Bivens constitutional tort claim very similar to a 1983 lawsuit. However, the defendants in Bivens claims are federal officials, not state or local officers. There are several other subtle differences between the two types of claims, as well. Bivens claims have to be made against individual officers. Bivens also only covers violations of the U.S. Constitution, while 1983 claims also encompass violations of federal law.

46.     To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a depravation [sic] of civil rights in furtherance of the conspiracy by a party to the conspiracy."); ("In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right.").

## B.     **JOHNSTONE and MCAULIFFE**

47.     The COMPLAINT pleads all the necessary elements to file a Bivens claim against JOHNSTONE and MCAULIFFE. First, the individual defendant-judges, were both federal officers ("defendants-officers"), who were allegedly acting under the "pretense" of law by either participating in a federal civil action or presumably issuing orders based upon the facts and applicable laws. COMPLAINT, ¶ 276. Moreover, plaintiff alleges defendants-officers were acting in their individual, not official capacities, in promulgating, administering or promoting the ILLEGAL POLICY, and then purposely omitting those material facts to the Plaintiff and actively convincing the

Plaintiff that legal policies were being used, and that the orders were based upon the facts and applicable laws, when in fact they were not.

48.     JOHNSTONE, under the color or pretense of law, intentionally, maliciously and recklessly disregarded PLAINTIFF'S rights, mis-used the authority and power that she possessed by virtue of being a Magistrate Judge, and with the intent to injure PLAINTIFF, and with a substantial certainty that her actions would injure PLAINFIFF, violated PLAINTIFF'S constitutional rights, intentionally and deliberately caused a deprivation to PLAINTIFF and did so deprive PLAINTIFF of his liberty and his property when she "promulged, implemented and managed illegal pro hac vice and bar admission rules and unofficial court policies or an ILLEGAL POLICY she promulgated herself, contrary to the established official rules of the COURT and in violation of state law, to benefit TWITTER, COIE and partner attorneys MRAZIK and SCHWARTZ of COIE, with the privilege of practicing before the COURT, even though these attorneys lacked the requirements to practice before the court, and then concealing and omitting these material facts to the PLAINTIFF during his CASE. See also, (concealing or omitting material facts) COMPLAINT, ¶ 18.

49.     MCAULIFFE, under the color of law, knowingly, intentionally, maliciously and recklessly disregarded PLAINTIFF'S rights, mis-used the authority and power that he possessed by virtue of being a District Judge, and with the intent to injure PLAINTIFF, and with a substantial certainty that his actions would injure PLAINFIFF and violate PLAINTIFF'S constitutional rights, intentionally and deliberately caused a

deprivation to PLAINTIFF and did so deprive PLAINTIFF of his constitutional rights of due process and a fair tribunal, his right to a jury trial, his liberty and his property when he concealed material facts of JOHNSTONE'S ILLEGAL POLICY, the bias of the COURT and the fraud upon the COURT, to the PLAINTIFF while presiding over PLAINTIFF'S CASE. COMPLAINT, ¶ 286.

50.    JOHNSTONE and MCAULIFFE also had constructive knowledge of each other's violations of Plaintiff's constitutional rights, yet made a conscious and deliberate choice not to investigate or do anything about it. COMPLAINT, ¶ 285 and ¶  289]. (willfully blind to alleged violations). COMPLAINT, ¶ 291; (failed in their duties, [id, ¶ 292]. Neglected their duties [id, ¶ 264-266].

51.    JOHNSTONE'S and MCAULIFFE'S acts of arbitrary interference outside their judicial capacities or function, taken in absence of all jurisdiction to impede or thwart PLAINTIFF'S claims, or to retaliate against him, were committed with an impermissible purpose and motivation which cannot be described as legitimate acts designed to improve any Government objectives. COMPLAINT, ¶ 295.

52.    JOHNSTONE, in disregarding her obligation under departmental rules, evidences her failure to exercise reasonable diligence in connection with her own ILLEGAL POLICY. By neglecting to scrutinize and deter the efforts of MCAULIFFE, SCHWARTZ and ECK to conceal the truth or existence of her POLICY, and the CONSPIRACY and its objectives, from the PLAINTIFF'S COMPLAINT, ¶ 264.

53.     MCAULIFFE, in disregarding his obligation under departmental rules
evidences his failure to exercise reasonable diligence in connection with
JOHNSTONE'S ILLEGAL POLICY. By neglecting to scrutinize and deter the efforts
of JOHNSTONE, SCHWARTZ and ECK to conceal the truth or existence of
JOHNSTONE'S POLICY, and the CONSPIRACY and its objectives, from the
PLAINTIFF, MCAULIFFE is liable under Section 1986. COMPLAINT, ¶ 265].

54.     For Plaintiff's claim to be cognizable under Bivens he must establish that
JOHNSTONE and MCAULIFFE were acting under color of Federal law and in so
doing deprived him of some right, privilege, or immunity guaranteed by the
Constitution or laws of the United States. See 42 U.S.C. § 1983, and beyond the
preponderance of evidence standard.

55.     The COMPLAINT states sufficient claims that each defendant violated
Plaintiff's (1) due process and adequate, effective, and meaningful access to the Courts
and justice guaranteed by the First and Fourteenth Amendments to the United States
Constitution; (2) due process rights under the Fifth Amendment, which at minimum
requires an impartial tribunal; (3) right to a jury trial under the Seventh Amendment,
and; (4) his right to equal protection of the laws guaranteed by the Fifth Amendment.
COMPLAINT, ¶ ¶ ¶ ¶ ¶ 1, 18, 125, 240, and 250.

56.     The COMPLAINT sufficiently alleges civil rights violations, and the
alleged causes of such violations were the acts of the defendants-officers. Therefore,

for pleading purposes, Plaintiff states a colorable Bivens claims against these two Defendants-officers for non-judicial acts.

### C.   ECK AND SCHWARTZ

57.     Public policy favors a duty, running from an attorney representing a party to a commercial transaction, not to make fraudulent misrepresentations to an attorney representing the adverse party in the transaction." Neglecting to tell the whole story by purposefully omitting important facts could serve to assist criminal activity. Even though ECK and SCHWARTZ had a duty not to make fraudulent statements, ECK and SCHWARTZ misrepresented the illegality of their Motion to Dismiss, SCHWARTZS' pro hac vice status, while omitting material facts of the ILLEGAL POLICY, as an attorney can be liable to a nonclient, even an adversary in litigation, for fraud or deceit.

58.     ECK and SCHWARTZ'S as TWITTER'S counsel, failed to disclose material fact of the ILLEGAL POLICY to a tribunal when disclosure was necessary to avoid assisting criminal or fraudulent acts by TWITTER, and submitted material misrepresentations which were acts of intentionally hiding the ILLEGAL POLICY and then fabrication of a material facts, which, if known to the Plaintiff, could have terminated, or significantly altered the basis of a contract, deal, transaction, or settlement.

59.     Because Twitter created the bias unconstitutional Court, its defense counsel (ECK and SCHWARTZ) owed a duty to the Plaintiff to disclose the ILLEGAL

POLICY, the Order incorrectly surmises that Bivens does not apply to ECK and SCHWARTZ, while simultaneously stating that non-state or federal actors may in some cases be liable for constitutional violations if they conspire with a state or federal actor, and citing, which is alleged here.

60.     Private individuals act under color of state law when they conspire with a state official to violate a person's civil rights. The Supreme Court describes the proof necessary to establish a conspiracy between public officials and private citizens. The Court stated that the plaintiff had to demonstrate that the alleged conspirators "had a 'meeting of the minds' and thus reached an understanding" to take action that would deprive the plaintiff of her civil rights, and that mere joint action will not suffice. The requisite "understanding" may, however, be shown by circumstantial evidence'" and the factfinder is usually allowed to determine whether the showing has been made.

61.     The COMPLAINT alleges ECK and SCHWARTZ were knowing and willing participants in joint action with the federal defendant-officers, and that ECK and SCHWARTZ engaged in a conspiracy with JOHNSTONE and MCAULIFFE to deprive Plaintiff of his federal rights.

### D.     **CONCLUSION**

62.     Defendants, each of them, in the jurisdiction of the federal judicial branch, knowingly and willfully privately conspired to commit and did commit affirmative acts constituting a trick, scheme, or device within the meaning of 18 U.S.C. § 371, by which CONSPIRATORS sought to conceal or omit material facts of: (1) JOHNSTONE'S

ILLEGAL POLICY; (2) MRAZIK'S previous and continuing fraud upon the COURT; (3) JOHNSTONE and MCAULIFF'ES bias in favor of TWITTER; (4) the COURTS' bias in favor of TWITTER; (5) the private CONSPIRACY to retaliate against PLAINTIFF; (6) JOHNSTONE and MCAULIFF'ES continuous legal advice given to TWITTER, COIE, SCHWARTZ, O&R and ECK; from the PLAINTIFF and the COURT, and within the meaning of 18 U.S.C § 1001. COMPLAINT at 235-237].

63.    Each Defendant committed acts enumerated in paragraph 235 of the Verified COMPLAINT are responsible for the acts of each other which damaged PLAINTIFF in his person and property. COMPLAINT, ¶ 296, and each of them, knew or should have known all that is enumerated in paragraph 240 of the COMPLAINT. COMPLAINT, ¶ 296].

64.    Each Defendant had a duty to disclose this to the Plaintiff in the case, but omitted the facts surrounding the ILLEGAL POLICY, knowingly and purposely, with hopes it would deter or stop Plaintiff from proceeding with his case, which, in this case, did work. COMPLAINT, ¶ 296].

65.    The COMPLAINT alleges the conduct, time, place, and persons responsible for the responsible for the alleged civil rights violations, alleges a 'meeting of the minds' and that an understanding was reached to take action that would deprive Plaintiff of his civil rights, and that it was willful participation ... meaning voluntary, uncoerced participation by each defendant.

66.     The COMPLAINT states sufficient claims that Plaintiff was injured in his person and property and deprived of a federal rights and privileges as a result of acts in furtherance of the CONSPIRACY prohibited under Section 1985. 42 U.S.C. 1985(3) (clause iii). Plaintiff is entitled to recover his damages occasioned by such injuries under 42 U.S.C. 1985(3), and against each DEFENDANT, jointly and severally. See COMPLAINT, ¶¶ 125-128]. The Court has jurisdiction under both the claim and the remedy.

67.     Plaintiff petitioner has made out violations, in the least, of his Fifth Amendment rights and will be entitled to relief under Bivens for all violations, if he can prove that ECK and SCHWARTZ and JOHNSTONE and MCAULIFFE, in the course of employment, reached an understanding to omit the material facts of JOHNSTONE'S ILLEGAL POLICY, the bias of the Court, and deter or retaliate against, Plaintiff from his case, in the First Federal District Court of New Hampshire.

68.     Because the COMPLAINT alleges that the conduct complained was committed by person(s) acting under the pretense of federal law in their individual capacities, and has alleged and demonstrated that, each defendant's conduct deprived Plaintiff of his "person of rights, privileges or immunities secured by the Constitution or laws of the United States.", the Court errored and should reverse its decision.


**VII. THE COURT ERRED AS A MATTER OF LAW AND FACT THAT JUDICIAL IMMUNITY PROVIDES COMPLETE IMMUNITY TO ALL DEFENDANTS FROM THIS SUIT.**

A.    **MCAULIFFE AND JOHNSTONE**

1.    **OVERVIEW**

69.    The Order incorrectly states that all actions alleged in the COMPLAINT are "indisputably judicial in nature", then posits and concludes that single handedly composing your own rules of the Court, giving legal advice to one party, joining a conspiracy to deter the Plaintiff in his case, omitting material facts, communicating ex-parted in an ongoing case with only one party, deciding motions with objective bias and without jurisdiction, and the acts of other co-conspirators, are *all* judicial in nature. The COMPLAINT posits that the acts alleged were not judicial in nature whatsoever, and if they were they were without jurisdiction.

70.    [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The analysis of qualified immunity involves two questions. One question is whether "the officer's conduct violated a constitutional right." Another question is whether any such constitutional right was "clearly established,"  and in particular, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

71.    The Supreme Court has made it clear that the doctrine of immunity should not be applied broadly and indiscriminately, but should be invoked only to the extent

necessary to effect its purpose. We also must look beyond the status of the party seeking immunity and consider the nature of the conduct for which immunity is sought.

72.     When courts have spoken of immunity for acts within the jurisdiction of a judge, they have declared that the doctrine insulates judges from civil liability "for acts committed within their *judicial* jurisdiction," or "for acts within [their] *judicial* role," or for "their *judicial* acts." Thus judicial immunity does not automatically attach to all categories of conduct in which a judge may properly engage, but only to those acts that are of a judicial nature. Judicial immunity does not include immunity from prospective collateral relief.

73.     Following the Supreme Court's guidance, the lower courts "must engage in a two-part inquiry to determine whether judicial immunity is applicable." First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.'" "'Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" "With respect to the first inquiry, 'the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'" The courts must "'draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges,' such as administrative acts."

74.     With respect to the second inquiry, [courts] must distinguish between acts in the 'clear absence of all jurisdiction,' which do not enjoy the protection of absolute immunity, and acts that are merely in 'excess of jurisdiction,' which do enjoy that protection. A judge will be subject to liability when he has acted in the 'clear absence of all jurisdiction.

75.     Absolute judicial immunity applies only to claims based on judicial acts. ("[J]udges are entitled to absolute immunity from liability based on actions taken in their official judicial capacity.")

76.     A government officer is entitled to qualified immunity from Bivens liability on a Rule 12(c) motion unless (1) "the facts that a plaintiff has alleged ... make out a violation of a constitutional right" and (2) "the right at issue was 'clearly established' at the time of [the official's] alleged misconduct." A right is clearly established only if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

77.     Based upon the allegations in the COMPLAINT JOHNSTONE and MCAULIFFE, could not even carry their burden of proof for qualified immunity because they would not be able to demonstrate that they were discharging the protected function of the position when performing the acts of legislation, conspiracy, retaliation, giving legal advice, ex-parte communications, deterring a party from federal court or deciding case motions base upon made up rules or acts of self-legislation. Public policy would not, could not, require an exemption for these type of acts.

78.     Rule 56 of the Federal Rules of Civil Procedure provides that disputed questions of fact ordinarily may not be decided on motions for summary judgment. And an official's subjective good faith has been considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury.

## 2.     NON-JUDICIAL ACTS

79.     The Supreme Court has posited that whether or not an act is judicial depends on "the `nature' and `function' of the act, not the `act' itself." Typically, courts look to two factors in making this determination. First, courts look to the nature of the act, i.e. whether the act is a measure normally performed by a judge. Second, courts evaluate the expectations of the parties, i.e. whether the parties dealt with the judge in her judicial capacity.

80.     The COMPLAINT does more than point an accusing finger, it plausibly alleges an independent criminal venture. Many acts alleged are outside the scope of their official duty" and not actions taken as part of their "their judicial functions" or related to the individual judges' actions in their roles as judges. The factors determining whether an act by a judge is "judicial" relate to the nature of the act itself (whether it is a function normally performed by a judge) and the expectation of the parties (whether they dealt with the judge in his judicial capacity).

81.     In a quick summary, the COMPLAINT lists at least 70 non-judicial acts by all Defendants combined. Each person [is] responsible for a distinct act.

(1)     JOHNSTONE committed at least 12 acts, and in part; promulgated, implemented ILLEGAL POLICY [id, ¶ 1]; gave legal advice. [id, ¶ 2], [id, ¶ 36], privately conspired [id, ¶ 3]; determined Order utilizing JOHNSTONE'S ILLEGAL POLICY [id, ¶ 16]; disclosed personal CM/ECF information [id, ¶ 51]; communicated ex-parte with defense counsel [id, ¶ 25], [id, ¶ 34], [id, ¶ 52]; concealed by scheme material facts of JOHNSTONE'S ILLEGAL POLICY [id, ¶ 17]; judicially intimidated, coerced, deterred Plaintiff [id, ¶ 18], [id, ¶24].

(2)     MCAULIFFE committed at least 30 acts, and in part; gave legal advice. [id, ¶ 2], [id, ¶ 36]; privately conspired [id, ¶ 3]; determined Order utilizing JOHNSTONE'S ILLEGAL POLICY [id, 9], [id, ¶ 14]; disclosed personal CM/ECF information [id, ¶ 51], communicated ex-parte with defense counsel [id, ¶ 34], [id, ¶ 52]; concealed by scheme material facts of JOHNSTONE'S ILLEGAL POLICY [id, ¶ 7], [id, ¶ 12], [id, ¶ 19], [id, ¶ 27], [id, ¶ 29], [id, ¶ 32], [id, ¶ 38], [id, ¶ 48], [id, ¶ 49]; judicially intimidated, coerced, deterred, Plaintiff [id, ¶ 8], [id, ¶ 13], [id, ¶ 23], [id, ¶ 28], [id, ¶ 30], [id, ¶ 33],  [id, ¶ 39], [id, ¶ 50]; acted to suppress the material facts [id, ¶ 20], [id, ¶ 21], [id, ¶ 22], [id, ¶ 23]; ordered without jurisdiction [id, ¶ 37].

82.     Additionally, these acts by JOHNSTONE and MCAULIFFE are doubled when you consider the retaliation factor, as each act was done in the furtherance of the Conspiracy's objective, which was to retaliate against the Plaintiff.

83.    Plaintiff submitted with his COMPLAINT irrefutable court record evidence, that JOHNSTONE, and other judges in the IP CASES, allowed Twitter and its counsel to appear before the Court although they lacked the requirements of eligibility, and that these special benefits continued for a period of over 2 years, and covering 68 submissions. Plaintiff alleges in his COMPLAINT that these submissions to the Court are direct evidence that this illegal policy existed over an extended period of time and through several cases and, is sufficient to raise a reasonable inference of the appearance of actual or apparent bias or prejudice, and demonstrates and establishes a bias of the Court for a particular entity.

84.    "As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damage on all of them, regardless of whether they actually commit the tort themselves. 'The effect of charging . . . conspiratorial conduct is to implicate all . . . who agree to the plan to commit the wrong as well as those who actually carry it out.' "

85.    Since conspiracy is a continuing offense, a defendant who has joined a conspiracy continues to violate the law 'through every moment of [the conspiracy's] existence. And, of course, the conspirator "becomes responsible for the acts of his co-conspirators in pursuit of their common plot" id, under the rule established in *Pinkerton v. United States*.

86.    Negligence may result from omission in respect of duty. But act and omission token different conceptions. Act denotes the affirmative. Omission denotes

the negative. Act is the expression of will, purpose. Omission is inaction. Act carries the idea of performance. Omission carries the idea of a refraining from action. Webster's New International Dictionary defines act, primarily as 'that which is done or doing; the exercise of power, or the effect of which power exerted is the cause; a performance; a deed.' That work thus defines omission: 'Act of omitting; state of being omitted; neglect or failure to do something; that which * * * is left undone.' "

87.    A failure to act or an omission can be an overt act, where the co-conspirator who failed to act had a legal duty to perform the act and he or she omitted performance in order to further the achievement of the objectives of the conspiracy.

88.    Because the COMPLAINT alleges non-judicial acts in the COMPLAINT, the Court erred in utilizing a false core factual premise that Plaintiff has only stated judicial acts and erred in law by mis-applying the facts on record to the correct legal standard by applying blanket immunity to all Defendants for non-judicial acts contained within the COMPLAINT and then dismissing the action against all Defendants for want of jurisdiction on the basis of immunity.

### 3.    ACTS WITHOUT JURISDICTION

89.    Plaintiff fully believes that judges should be insulated "from vexatious actions prosecuted by disgruntled litigants", but when the judiciary strips individuals' constitutional rights of legal protection from its citizens, their acts must not be condoned as our communities bear the consequences. Plaintiff did seek out the Court's jurisdiction by bringing Case No. 20-536 in this Court. Little did he know that Judges

JOHNSTONE and MCAULIFFE would be performing acts not in the scope of their employment and acting in "clear absence of all jurisdiction.", and outside the Court's jurisdiction when ruling on motions in that suit.

90.     Because federal courts of the United States are courts of limited jurisdiction, federal jurisdiction is never presumed. Our national government is one of delegated powers alone and their proceedings are erroneous if the jurisdiction be not shown upon them. In a limited government, a government limited by the constitution, the violation of a citizens rights should never be justified due to the overriding government goals or objectives, and that no branch of the government be allowed to extend its power beyond it's legal limits.

91.     The true scope of a government agent's authority is extremely important, since the limits of that authority are a question that has the potential to arise in virtually every interaction between a citizen and the Federal Government and the existence of authority is a prerequisite to holding the Government responsible for its actions either directly or through equitable estoppel. When a judicial officer acts entirely without jurisdiction or without compliance with jurisdiction requisites he may be held civilly liable for abuse of process even though his act involved a decision made in good faith, that he had jurisdiction.

92.     Here, the two judges were authorized to make orders utilizing official rules and policies that streamed down through Article III, but acted without authority when they decided motions utilizing an ILLEGAL POLICY not derived by Article III power.

It is clear that under "color" of law means under "pretense" of law. Thus acts of defendant-officers in the ambit of their personal pursuits are plainly excluded.

93.    The COMPLAINT alleges JOHNSTONE and MCAULIFFE knew or had the means of knowing of the defect of jurisdiction. And that there is a material distinction between a case where a party comes to an erroneous conclusion in a matter over which he has jurisdiction and a case where he acts wholly without jurisdiction.

94.    JOHNSTONE and MCAULIFEE lacked power and jurisdiction to act and make judgments or orders based upon the ILLEGAL POLICY, because these ILLEGAL POLICIES are not rooted in Article III power and are not judicial acts within the contemplation of law, however much it may have involved the exercise of judgment and discretion, but is merely the act of the individual, not the judge, assuming an authority he does not possess. For their wrongful acts of this nature, JOHNSTONE and MCAULIFFE are liable.

95.    If jurisdiction is defined as the authority to act officially in the matter then in hand, then how could it be contended that MCAULIFFE had a right to act utilizing an ILLEGAL POLICY when those illegal rules contain no official authority or power? No governmental action, such as MCAULIFFE'S, is proper unless a specific statute states that it is.

96.    "As to court of inferior and limited jurisdiction the general rule laid down is that the judge is not liable when he acts within, but is liable when he acts without, his

jurisdiction. This rule makes the liability depend upon the jurisdiction, using the latter word not as applicable to a case of mistaken exercise of a doubtful jurisdiction, but when under the pleadings and admitted or clearly proven facts there could be no possible jurisdiction.". In stating the general rule that the liability of a judicial officer for damages is dependent on the existence or non-existence of his jurisdiction, it is said in

97.    An objectively reasonable judge would not rule upon a motion based on an ILLEGAL POLICY. There is no way, given the record at hand, that MCAULIFFE could have believed that his orders, [id, 9], [id, 14],  which were dependent of the ILLEGAL POLICY, complied with the law or complied with the due process of the Fifth Amendment.

### B.    ECK AND SCHWARTZ

98.    Immunity cannot lie for a judicial act of another co-conspirator, nor would it lie if the acts performed by the co-conspirator(s) are non-judicial. Here, each defendant or co-conspirator may be immune for committing the act themselves, but would not be immune for acts of co-conspirators taken to further the private conspiracy. Historically at common law, judicial immunity does not insulate from damages liability those private persons who corruptly conspire with a judge. Immunity for an act does not negate the act taken to further the Conspiracy. Immunity does not extend to liability based on the acts of other private co-conspirators.

99.    A private party involved in such a conspiracy, even though not an official of the US Government, can be liable under Bivens. `Private persons, jointly engaged

with federal officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the federal government. It is enough that he is a willful participant in joint activity with the US. Government or its agents.

100.    When private individuals act under color of law when they conspire with a state official to violate a person's civil rights. Because the existence or nonexistence of a conspiracy is a factual issue that the jury, not the trial judge, the Order which dismisses the Bevins claims against ECK and SCHWARTZ should be reversed and the COMPLAINT re-instated.

## VIII. CONCLUSION

101.    When Judge McCafferty voted with the other 5 Article III justices to re-appoint JOHNSTONE, they did so regardless of her ILLEGAL POLICY, and in the process she/they created actual bias towards Plaintiff's case, therefore creating favoritism towards JOHNSTONE, which created an unconstitutional tribunal which violates Plaintiffs rights to Due Process as Judge McCafferty failed to recuse herself and produced the Order dismissing the case. The Order is a clear error of judgment and Judge McCafferty has applied the wrong legal standards of due process, is objectively bias, and neglected the facts in record. The Court should void or reverse this Order and Judgment as it is constitutionally intolerable.

102.    Because none of the four elements required for a successful application

of collateral estoppel have been satisfied and it would be unfair to apply to the action here, as Plaintiff's COMPLAINT does not seek an appeal of the rulings due to disagreements, and made by another federal judge, the Court erred in utilizing a false core factual premise that Plaintiff brings this action because he disagrees with previous orders in Case No. 20-536, and erred in law by mis-applying the facts on record to the correct legal standard by applying collateral estoppel in a still open case and then dismissing the action for want of jurisdiction on that basis. Collateral estoppel would not apply as the standards of proof in this case are lower than in Case No. 20-536.

103.    Because Section 1985(2) (clause i) and Section 1985(3)(clause iii), have no class-based, invidious discriminatory animus requirement, and because 1985(3) (clause iii), simply provides a remedy for Section 1985 violations, the Court erred in law by requiring the Plaintiff to allege class-based, invidious discriminatory animus in his COMPLAINT, and to the correct legal standard of (clause i) and erred in utilizing a false core factual premise that all Section 1985 suits require a class-based, invidious discriminatory animus, and then dismissing the case for want of jurisdiction on that basis.

104.    Because the Court errored in requiring a class- or race-based discriminatory animus, and because the COMPLAINT alleges plausible violations under Section 1985(2) (clause i) and Section 1985(3) (clause iii), the Order should be reversed and Plaintiff's claims under Section 1986 should be re-instated.

105.   Because the COMPLAINT alleges that the conduct complained was committed by person(s) acting under the pretense of federal law in their individual capacities, and has alleged and demonstrated that, each defendant's conduct deprived Plaintiff of his "person of rights, privileges or immunities secured by the Constitution or laws of the United States. The Court errored and should reverse its decision.

106.   A judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. A judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Judges are also personally liable for the acts of co-conspirators which cannot be considered judicial acts.

107.   An objectively reasonable judge would not rule upon a motion based on an ILLEGAL POLICY. There is no way, given the record at hand, that MCAULIFFE could have believed that his orders, (Attached Overt Acts [id, 9], [id, 14],  which were dependent of the ILLEGAL POLICY, complied with the law or complied with the due process of the Fifth Amendment.

108.   When private individuals act under color of  law when they conspire with a state official to violate a person's civil rights. Because the existence or nonexistence of a conspiracy is a factual issue that the jury, not the trial judge, the Order which dismisses the Bevins claims against ECK and SCHWARTZ should be reversed and the COMPLAINT re-instated.

109.    Plaintiff loathes dropping the "k-bomb," but the metaphor "Kangaroo Court" can be intellectually justified and is illustrated throughout the Order. Plaintiff finds that a Kangaroo Court and both of his cases have uncanny similarities.

110.    Black's Law Dictionary is most helpful. It describes the kangaroo court as "1. A self-appointed tribunal or mock court in which the <u>principles of law and justice are disregarded, perverted, or parodied</u> . . . . 2. A court or tribunal characterized by unauthorized or irregular procedures, esp. so as to render a fair proceeding impossible. 3. A sham legal proceeding. 13. See Kangaroo Court, BLACK'S LAW DICTIONARY (9th ed. 2009).

111.    The definition found in West's Encyclopedia of American Law. It defines the term as meaning "a proceeding and its leaders who are considered sham, corrupt, and <u>without regard for the law."</u> 6 WEST'S ENCYCLOPEDIA OF AMERICAN LAW 103 (Jeffrey Lehman & Shirelle Phelps eds., 2d ed.

112.    Merriam-Webster defines kangaroo court as "a mock court in which the <u>principles of law and justice are disregarded or perverted</u>." The defiance of legal principles in this definition speaks to the <u>inequitable</u> and inferior nature of kangaroo courts. Kangaroo Court, MERRIAM-WEBSTER, www.merriam-webster.com

113.    Wikipedia defines a kangaroo court could also develop when the structure and operation of the forum result in an inferior brand of adjudication. www.Wikipedia.com.

114.    "As a general rule," it explains, a kangaroo court "is any proceeding that <u>attempts to imitate</u> a fair trial or hearing without the usual due process safeguards" since such "[c]onstitutional safeguards would stand in the way of a kangaroo court reaching its predetermined result."

115.        The Constititon doesn't mean whatever judges think it does. The Founders put the Constitution in writing and designed the judiciary to interpret it the same way. That way, judges can't just make it up as they go along. Today, this approach often is called "originalism" because the Constitution's original meaning is the one that counts, whether judges like it or not. The first three words of the Constitution are "we the people." We make the rules for government and government, including the judiciary, is supposed to follow those rules. If the Constitution meant whatever judges wanted it to mean, judges would be able to set their own rules. They would control the Constitution, not vice versa. Thomas Jefferson, for example, warned that if the Constitution means whatever judges want, it would be like "a mere thing of wax, that they could twist and shape it into any form they please." Supreme Court Justice Antonin Scalia once called "power-judging." The Founders designed the unelected judicial branch to be the "weakest" and "least dangerous."

116.    A kangaroo court is a court that <u>ignores recognized standards of law</u> or justice are inequitable, reduce procedural protections and generally degraded nature lead to strong likelihoods that they <u>produce unfair legal decisions</u>. Ostensibly, the term comes from the notion of justice proceeding "by leaps", like a kangaroo[8] – in other

words, "jumping over" (intentionally ignoring) evidence that would be in favor of one party. Another analogy is the reference to the pouch of a kangaroo, meaning the court is in someone's pocket.

117.    The Order obliterates any perception of the fair administration of justice. Judge McCafferty must know that she just voted on JOHNSTONE'S past behaviors of the Court and is blatant action of ignoring the rule of law, intentionally ignoring evidence and Plaintiff's rights, and continues the Conspiracy to protect JOHNSTONE and her prior actions.

118.    The Complaint plausibly alleges violations of 42 U.S. Code § 1985(2)(Clause i) in that Plaintiff alleges that two judges and two lawyers, conspired to deter the Plaintiff in his Court claims and jury trial and to retaliate against him for initiating and continuing with his claims and therefore suffered injuries in his person and property. ECK and SCHWARTZ would materially misrepresent the facts and omit material facts, and then MCAULLIFE or JOHNSTONE would then intentionally ignore evidence, ignore recognized standards of law, judicially intimidate the Plaintiff and produce unfair and unconstitutionally bias legal decisions against the Plaintiff in an effort to conceal or omit the material facts of JOHNSTONE'S ILLEGAL POLICY under the "pretense" of law, to which they succeeded. Had JOHNSTONE and MRAZIK not left a trail of fraud in the PUBLIC RECORD, Plaintiff would only be left with suspicions and circumstantial evidence of a bias Court. This clear and convincing direct evidence establishes direct links of; communications through normal

channels, through several cases, private off-bench relationship, motive, a mutual understanding, unity of purpose with knowledge of the material facts, between JOHNSTONE, MRAZIK, COIE and Twitter, <u>PRIOR</u> to the Plaintiff even filing his COMPLAINT. These same direct links naturally transfer to the Plaintiffs case as the Court is already bias in favor of COIE and Twitter and SCHWARTZ attempts to use the same POLICY in her initial defense of Twitter. More interestingly, because of the established bias of the Court in favor of COIE and Twitter, the "to deter" factor is a naturally built-in feature if the Court is in fact bias towards one party. Motive to retaliate against the Plaintiff is when he submitted his [Default Motion, at 7] which challenged the legality of SCHWARZ'S [Dismiss Motion, at 3] and indirectly and unknowingly challenged the ILLEGAL POLICY. This created a motive for the conspirators to deter and retaliate against him in an effort to shut him up, and keep him out of the Court.

119.   Each Defendant's conduct was intentional or showed an extreme indifference to the rights of others.

120.   Plaintiff attaches Memorandum of Law and Declaration in support thereof.

121.   Consent was sought, and denied by Defendants on record.

WHEREFORE, because the Order and Judgment (1) were based upon clear errors of law or fact; (2) were determined by an objectively bias judge; (3) utilized an incorrect legal standard; (4) misapplied the law to the relevant facts; (5) contain errors of

judgment that are obvious and indisputable; (6) completely disregarded the material

facts of the case; (7) are against the weight of credible evidence; and (8) genuine issues

of material fact exist, Plaintiff, respectfully requests that this Honorable Court, in light

of these factors, Declare Void or Vacate, both the January 27, 2022, Order and January

28, 2022, Judgment.


Respectfully,

/s/_____

Plaintiff, Anonymously as Sensa Verogna

SensaVerogna@gmail.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February 2022, the foregoing document was made upon the Defendants, through their attorneys of record to Dan L. Bagatell of Perkins Coie LLP for Julie E. Schwartz, Esq., via e-mail to DBagatell@perkinscoie.com, to Linda M. Smith of Morrison Mahoney LLP for Jonathan M. Eck, Esq., via e-mail to LDale@morrisonmahoney.com.


By: /s/_____

Plaintiff, Anonymously as Sensa Verogna

SensaVerogna@gmail.com