# 2015 New Hampshire Revised Statutes
# Title XXX - OCCUPATIONS AND PROFESSIONS
# Chapter 311 - ATTORNEYS AND COUNSELORS
# Section 311:7 - Prohibition.

**Universal Citation:** NH Rev Stat § 311:7 (2015)

**311:7 Prohibition. –** No person shall be permitted commonly to practice as an attorney in court unless he has been admitted by the court and taken the oath prescribed in RSA 311:6.

**Source.** RS 177:6. CS 187:6. GS 199:6. GL 218:6. PS 213:6. PL 325:7. RL 381:7.

EXHIBIT 073

## Rule 5.5.  Unauthorized Practice Of Law;  Multijurisdictional Practice Of Law

(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

(b) A lawyer who is not admitted to practice in this jurisdiction shall not:

(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

(c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:

(1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter;

(2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;

(3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission; or

(4) are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.

(d) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that:

(1) are provided to the lawyer's employer or its organizational affiliates and are not services for which the forum requires pro hac vice admission; or

(2) are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction.

EXHIBIT 074

## 2004 ABA Model Code Comment
### RULE 5.5 UNAUTHORIZED PRACTICE OF LAW;
### MULTIJURISDICTIONAL PRACTICE OF LAW

[I] A lawyer may practice law only in a jurisdiction in which the lawyer is authorized to practice. A lawyer may be admitted to practice law in a jurisdiction on a regular basis or may be authorized by court rule or order or by law to practice for a limited purpose or on a restricted basis. Paragraph (a) applies to unauthorized practice of law by a lawyer, whether through the lawyer's direct action or by the lawyer assisting another person.

(2) The definition of the practice of law is established by law and varies from one jurisdiction to another. Whatever the definition, limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons. This Rule does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work. See Rule 5.3.

(3) A lawyer may provide professional advice and instruction to nonlawyers whose employment requires knowledge of the law; for example, claims adjusters, employees of financial or commercial institutions, social workers, accountants and persons employed in government agencies. Lawyers also may assist independent nonlawyers, such as paraprofessionals, who are authorized by the law of a jurisdiction to provide particular law-related services. In addition, a lawyer may counsel nonlawyers who wish to proceed pro se.

(4) Other than as authorized by law or this Rule, a lawyer who is not admitted to practice generally in this jurisdiction violates paragraph (b) if the lawyer establishes an office or other systematic and continuous presence in this jurisdiction for the practice of law. Presence may be systematic and continuous even if the lawyer is not physically present here. Such a lawyer must not hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction. See also Rules 7.l(a) and 7.S(b).

(5) There are occasions in which a lawyer admitted to practice in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction under circumstances that do not create an unreasonable risk to the interests of their clients, the public or the courts. Paragraph (c) identifies four such circumstances. The fact that conduct is not so identified does not imply that the conduct is or is not authorized. With the exception of paragraphs (d)(l) and (d)(2), this Rule does not authorize a lawyer to establish an office or other systematic and continuous presence in this jurisdiction without being admitted to practice generally here.

(61 There is no single test to determine whether a lawyer's services are provided on a "temporary basis" in this jurisdiction, and may therefore be permissible under paragraph (c). Services may be "temporary" even though the lawyer provides services in this jurisdiction on a recurring basis, or for an extended period of time, as when the lawyer is representing a client in a single lengthy negotiation or litigation.

(7) Paragraphs (c) and (d) apply to lawyers who are admitted to practice law in any United States jurisdiction, which includes the District of Columbia and any state, territory or commonwealth of the United States. The word "admitted" in paragraph (c) contemplates that the lawyer is authorized to practice in the jurisdiction in which the lawyer is admitted and excludes a lawyer who while technically admitted is not authorized to practice, because, for example, the lawyer is on inactive status.

EXHIBIT 074

[8] Paragraph (c)(1) recognizes that the interests of clients and the public are protected if a lawyer admitted only in another jurisdiction associates with a lawyer licensed to practice in this jurisdiction. For this paragraph to apply, however, the lawyer admitted to practice in this jurisdiction must actively participate in and share responsibility for the representation of the client.

[9] Lawyers not admitted to practice generally in a jurisdiction may be authorized by law or order of a tribunal or an administrative agency to appear before the tribunal or agency. This authority may be granted pursuant to formal rules governing admission pro hac vice or pursuant to informal practice of the tribunal or agency. Under paragraph (c)(2), a lawyer does not violate this Rule when the lawyer appears before a tribunal or agency pursuant to such authority. To the extent that a court rule or other law of this jurisdiction requires a lawyer who is not admitted to practice in this jurisdiction to obtain admission pro hac vice before appearing before a tribunal or administrative agency, this Rule requires the lawyer to obtain that authority.

[10] Paragraph (c)(2) also provides that a lawyer rendering services in this jurisdiction on a temporary basis does not violate this Rule when the lawyer engages in conduct in anticipation of a proceeding or hearing in a jurisdiction in which the lawyer is authorized to practice law or in which the lawyer reasonably expects to be admitted pro hac vice. Examples of such conduct include meetings with the client, interviews of potential witnesses, and the review of documents. Similarly, a lawyer admitted only in another jurisdiction may engage in conduct temporarily in this jurisdiction in connection with pending litigation in another jurisdiction in which the lawyer is or reasonably expects to be authorized to appear, including taking depositions in this jurisdiction.

[11] When a lawyer has been or reasonably expects to be admitted to appear before a court or administrative agency, paragraph (c)(2) also permits conduct by lawyers who are associated with that lawyer in the matter, but who do not expect to appear before the court or administrative agency. For example, subordinate lawyers may conduct research, review documents, and attend meetings with witnesses in support of the lawyer responsible for the litigation.

[12] Paragraph (c)(3) permits a lawyer admitted to practice law in another jurisdiction to perform services on a temporary basis in this jurisdiction if those services are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice. The lawyer, however, must obtain admission pro hac vice in the case of a court-annexed arbitration or mediation or otherwise if court rules or law so require.

[13] Paragraph (c)(4) permits a lawyer admitted in another jurisdiction to provide certain legal services on a temporary basis in this jurisdiction that arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted but are not within paragraphs (c)(2) or (c)(3). These services include both legal services and services that nonlawyers may perform but that are considered the practice of law when performed by lawyers.

[14] Paragraphs (c)(3) and (c)(4) require that the services arise out of or be reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted. A variety of factors evidence such a relationship. The lawyer's client may have been previously represented by the lawyer, or may be resident in or have substantial contacts with the jurisdiction in which the lawyer is admitted. The matter, although involving other jurisdictions, may have a significant connection with that jurisdiction. In other cases, significant aspects of the lawyer's work might be conducted in that jurisdiction or a significant aspect of the matter may involve the law of that jurisdiction. The necessary relationship might arise when the client's activities

EXHIBIT 074

or the legal issues involve multiple jurisdictions, such as when the officers of a multinational corporation survey potential business sites and seek the services of their lawyer in assessing the relative merits of each. In addition, the services may draw on the lawyer's recognized expertise developed through the regular practice of law on behalf of clients in matters involving a particular body of federal, nationally-uniform, foreign, or international law.

[15] Paragraph (d) identifies two circumstances in which a lawyer who is admitted to practice in another United States jurisdiction, and is not disbarred or suspended from practice in any jurisdiction, may establish an office or other systematic and continuous presence in this jurisdiction for the practice of law as well as provide legal services on a temporary basis. Except as provided in paragraphs (d)(1) and (d)(2), a lawyer who is admitted to practice law in another jurisdiction and who establishes an office or other systematic or continuous presence in this jurisdiction must become admitted to practice law generally in this jurisdiction.

[16] Paragraph (d)(1) applies to a lawyer who is employed by a client to provide legal services to the client or its organizational affiliates, i.e., entities that control, are controlled by, or are under common control with the employer. This paragraph does not authorize the provision of personal legal services to the employer's officers or employees. The paragraph applies to in-house corporate lawyers, government lawyers and others who are employed to render legal services to the employer. The lawyer's ability to represent the employer outside the jurisdiction in which the lawyer is licensed generally serves the interests of the employer and does not create an unreasonable risk to the client and others because the employer is well situated to assess the lawyer's qualifications and the quality of the lawyer's work.

[17] If an employed lawyer establishes an office or other systematic presence in this jurisdiction for the purpose of rendering legal services to the employer, the lawyer may be subject to registration or other requirements, including assessments for client protection funds and mandatory continuing legal education.

[18] Paragraph (d)(2) recognizes that a lawyer may provide legal services in a jurisdiction in which the lawyer is not licensed when authorized to do so by federal or other law, which includes statute, court rule, executive regulation or judicial precedent.

[19] A lawyer who practices law in this jurisdiction pursuant to paragraphs (c) or (d) or otherwise is subject to the disciplinary authority of this jurisdiction. See Rule 8.5(a).

[20] In some circumstances, a lawyer who practices law in this jurisdiction pursuant to paragraphs (c) or (d) may have to inform the client that the lawyer is not licensed to practice law in this jurisdiction. For example, that may be required when the representation occurs primarily in this jurisdiction and requires knowledge of the law of this jurisdiction. See Rule 1.4(b).

[21] Paragraphs (c) and (d) do not authorize communications advertising legal services to prospective clients in this jurisdiction by lawyers who are admitted to practice in other jurisdictions. Whether and how lawyers may communicate the availability of their services to prospective clients in this jurisdiction is governed by Rules 7.1 to 7.5.

EXHIBIT 074

other response must be filed by the nonmoving party separate from other pleadings and in accordance with Rule 7.1.

**(c)    Certified Copy of State Court Record.**  The removing party shall file with the clerk's office a certified or attested copy of the state court record within fourteen (14) days of the filing of the notice of removal.

**(d)    Remand.**  Whenever the court remands an action to state court, the clerk's office shall send a certified copy of the remand order and docket entries to the state court clerk's office.

(§§ (a), (b), and (c) amended 1/1/97; § (b) amended 1/1/98; § (a) amended 1/1/06; §§ (a) and (c) amended 12/1/09; § (a) amended 12/1/15; § (b) amended 12/1/17)

### 83.1    Bar of District Court

**(a)    Eligibility.**  Any active member in good standing of the bar of the Supreme Court of New Hampshire is eligible for admission to the bar of this court.  The bar of this court shall consist of those attorneys who have previously been admitted to the bar of this court and those who have been admitted pursuant to subsection (b).

**(b)    Procedure for Admission.**  Each applicant for admission to the bar of this court shall complete the attorney admission application electronically, using the PACER system at www.pacer.gov.  The required fee is published on the court's website. Submission of a completed application to the bar of this court constitutes the applicant's consent to have the clerk's office obtain the applicant's public and non-public disciplinary history from the New Hampshire Attorney Discipline Office.  During the process of reviewing an application for admission, the court, or clerk's office personnel, may formally or informally request the applicant provide additional information.

Upon the court's approval of the application, the applicant shall be admitted to the bar of this court upon taking the prescribed oath or affirmation. Applicants must be sworn in as members of the district's bar within one year of the date their application is approved or their application will be deemed inactive and a new application will be required.

Upon payment of the admission fee as published on the court's website, which includes a fee for deposit to the United States District Court Library Fund, the applicant shall then be a member of the bar of this court.

**(c)    Applicant Character and Fitness.**  Should the court have a question regarding an applicant's character or fitness to practice in this district, the applicant shall have the burden of proving good moral character and fitness to the court by clear and convincing evidence.  In resolving the issue, the court may consider the Character and Fitness Standards set forth in New Hampshire Supreme Court Rule 42B.  The chief judge, or a designated judicial officer, shall decide any question regarding an applicant's character and fitness to practice in this district.  The court may also appoint a member of its bar to investigate or prosecute an applicant's character and fitness to practice.

If the court is considering the possibility of finding that an applicant lacks the character or fitness to practice in this district, the applicant shall (1) be given written notice of the reasons

EXHIBIT 075

for that potential finding, (2) be given an opportunity and deadline to respond in writing, and (3) be notified of the right to request a hearing. The applicant may also request the complete record of the application from the court. If the applicant does not timely respond to the written notice, the application will be deemed withdrawn. If the applicant provides a response and/or requests a hearing, a hearing shall be scheduled and the matter shall be resolved by written decision. The applicant may voluntarily withdraw an application for admission at any time prior to the issuance of a final written decision.

**(d)   Special Admissions.**   Upon motion and by order of the court, in special circumstances, a person may be admitted to the bar of this court at any time, whether or not the person has complied with all of the admissions requirements provided under the rules.  However, the requirements that the person to be admitted take an oath or affirmation and pay the prescribed fee shall be satisfied and shall not be waived.

**(e)   Reinstatement After Taking Inactive Status or Resigning.**   Any attorney who takes inactive status or resigns must reapply for admission as set forth in subsections (a) and (b) before resuming practice in this court.

**(f)   Continued Membership.**   Active membership in good standing in any of the following is a precondition to continued membership in the bar of this court:  The bar of the highest court of a state, the District of Columbia, the Commonwealth of Puerto Rico, the Territory of Guam, the Commonwealth of the Northern Mariana Islands, or the Virgin Islands of the United States.

(§ (b) amended 1/1/97, 1/1/98; §§ (b) and (c) amended 1/1/04; § (b) amended 6/1/04; § (a) amended and § (d) added 1/1/05; § (b) amended 1/1/06; § (a) amended and § (e) added 12/1/09; § (b) amended 12/1/11; § (b) amended 12/1/13; § (b) amended 12/1/15; § (b) amended, § (c) added, former §§ (c) through (e) relettered 12/1/19)

**83.2     Practice by Persons Not Members of the Bar of This Court**

**(a)   Attorneys for the United States.**   An attorney who is in good standing as a member of the bar in every jurisdiction in which admitted to practice, and who is not subject to pending disciplinary proceedings as a member of the bar in any jurisdiction, may appear and practice in this court as an attorney for the United States, or for any agency of the United States, or for an officer of the United States in an official capacity.  The court may at any time revoke such permission for good cause without a hearing and any attorney appearing pursuant to this rule is subject to the disciplinary rules and jurisdiction of this court.

**(b)   Pro Hac Vice Admissions.**   Any attorney who is a member in good standing of the bar of any court of the United States or of the highest court of any state may appear and practice before this court in that action at the court's discretion and on motion by a member of the bar of this court who is actively associated with him or her in a particular action.  The court may at any time revoke such permission for good cause without a hearing.  An attorney so permitted to practice before this court in a particular action shall at all times remain associated in the action with a member of the bar of this court upon whom all process, notices, and other papers shall be served, who shall sign all filings submitted to the court and whose attendance is required at all proceedings, unless excused by the court.

EXHIBIT 075

An attorney for the United States who is not eligible for admission under subsection (a) of this rule may apply for admission under this subsection.

> **(1)   Supporting Affidavit.**  An affidavit from the attorney seeking admission pro hac vice shall be attached to the motion for admission.  The affidavit must include:
>
>> (A)  the attorney's office address and telephone number;
>>
>> (B)  a listing of court(s) to which the attorney has been admitted to practice and the year(s) of admission;
>>
>> (C)  a statement that the attorney is in good standing and eligible to practice in the court(s);
>>
>> (D)  a statement that the attorney is not currently suspended or disbarred in any jurisdiction;
>>
>> (E)  a statement describing the nature and status of any (1) denials of admission to practice before any court, (2) previously imposed or pending disciplinary matters involving the attorney, and (3) prior felony or misdemeanor criminal convictions; and
>>
>> (F)  a statement disclosing and explaining any prior denials or revocations of pro hac vice status in any court.
>
> **(2)   Fee for Admission.**  A motion for admission pro hac vice must be accompanied by a fee as published on the court's website.  The court will not refund the fee if the motion is denied.

**(c)   Appearance in Court by Law Students and Graduates.**  A second or third year student at, or a graduate of, an accredited United States law school, who is certified under N.H. Supreme Court Rule 36 and whose supervising attorney under said rule is a member of the bar of this court, may appear before the court on behalf of any indigent person(s), the State of New Hampshire, a State agency, or a State subdivision, or the United States government under the general supervision of such supervising attorney. The presence of the supervising attorney in court shall be required in all cases, and the supervising attorney shall be required to review, sign and file pleadings in all cases.

**(d)   Other Persons.**  Persons who are not members of the bar of this court and to whom subsections (a), (b), and (c) are not applicable will be allowed to appear before this court only on their own behalf.

(§ (b)(2) amended 1/1/97, 1/1/03, 1/1/07; § (a) amended 12/1/09; § (b)(1)(F) added, §§ (b)(1)(E) and (b)(2) amended 12/1/11, § (c) amended 6/6/16; § (b)(1)(B) amended 12/1/17; § (b)(1)(E) amended 12/1/19)

## 83.3   Conferred Disciplinary Jurisdiction

Any attorney admitted or permitted to practice before this court shall be deemed to have conferred disciplinary jurisdiction upon this court for any alleged attorney misconduct arising

EXHIBIT 075

by a dismissal or default judgment.  As a condition of withdrawal, the attorney shall notify the clerk's office, in writing, of the client's last known address.

**(e)    Change of Address.**  An attorney or pro se party who has appeared before the court on a matter is under a continuing duty to notify the clerk's office of any change of address and telephone number.  Counsel or pro se parties who fail to provide the clerk's office with their current address in accordance with this rule are not entitled to notice.

(§ (d) amended 1/1/97; § (a)(4) added 1/1/98; prior § (a)(4) stricken 1/1/01; § (a)(4) added 1/1/05; § (a)(1)(A) amended and renamed § (a), §§ (a)(2)-(4) omitted 1/1/08; § (c) amended 12/1/09; § (c) amended 12/1/11; § (d) amended 12/1/13)

### 83.7    Limited Representation by Counsel

**(a)    Limited Representation Within Court Discretion**.  To the extent permitted by Rule 1.2 of the New Hampshire Rules of Professional Conduct, an attorney may provide limited representation to an otherwise unrepresented litigant in a non-criminal case at the discretion of the presiding judge upon motion filed by the attorney seeking to provide the limited representation.

**(b)    Motion for Limited Appearance**.  The motion shall state precisely the scope of the limited representation to be provided.

**(c)    Scope of Limited Appearance**.  The attorney's involvement in the matter shall be limited to the scope of the representation described in the motion.  An attorney who is providing limited representation pursuant to this rule and files any pleading or motion outside the stated scope of limited representation, shall be deemed to have amended the scope of the limited representation to include such filing.

**(d)    Documents Prepared with Counsel**.  An attorney may draft or assist in drafting pleadings, motions, or other documents to be filed in this court only if the court has granted the attorney leave to provide limited representation pursuant to this rule.  The attorney shall be subject to, and must sign and serve the filings pursuant to, the local rules and the Federal Rules of Civil Procedure.

**(e)    Notice of Completion**.  Any limited representation by an attorney under this rule shall automatically terminate upon completion of the specified scope of representation provided that the attorney files and serves on all parties or their counsel a "Notice of Completion of Limited Representation," that conforms to Civil Form 6. An attorney who seeks to withdraw prior to the completion of the specified scope of limited representation must comply with LR 83.6(d).

**(f)    Change of Address/Telephone Number**. The requirements of LR 83.6(e) apply to any party and attorney appearing in any case in which this limited representation rule is invoked.

(Added 12/1/13)

EXHIBIT 076

## AUTHORITY FOR PROMULGATION OF RULES

### TITLE 28, UNITED STATES CODE

#### § 2072. Rules of procedure and evidence; power to prescribe

(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals.

(b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

(c) Such rules may define when a ruling of a district court is final for the purposes of appeal under section 1291 of this title.

(Added Pub. L. 100–702, title IV, § 401(a), Nov. 19, 1988, 102 Stat. 4648, eff. Dec. 1, 1988; amended Pub. L. 101–650, title III, §§ 315, 321, Dec. 1, 1990, 104 Stat. 5115, 5117.)

#### § 2073. Rules of procedure and evidence; method of prescribing

(a)(1) The Judicial Conference shall prescribe and publish the procedures for the consideration of proposed rules under this section.

(2) The Judicial Conference may authorize the appointment of committees to assist the Conference by recommending rules to be prescribed under sections 2072 and 2075 of this title. Each such committee shall consist of members of the bench and the professional bar, and trial and appellate judges.

(b) The Judicial Conference shall authorize the appointment of a standing committee on rules of practice, procedure, and evidence under subsection (a) of this section. Such standing committee shall review each recommendation of any other committees so appointed and recommend to the Judicial Conference rules of practice, procedure, and evidence and such changes in rules proposed by a committee appointed under subsection (a)(2) of this section as may be necessary to maintain consistency and otherwise promote the interest of justice.

(c)(1) Each meeting for the transaction of business under this chapter by any committee appointed under this section shall be open to the public, except when the committee so meeting, in open session and with a majority present, determines that it is in the public interest that all or part of the remainder of the meeting on that day shall be closed to the public, and states the reason for so closing the meeting. Minutes of each meeting for the transaction of business under this chapter shall be maintained by the committee and made available to the public, except that any portion of such minutes, relating to a closed meeting and made available to the public, may contain such deletions as may be necessary to avoid frustrating the purposes of closing the meeting.

(v)

EXHIBIT 077

(2) Any meeting for the transaction of business under this chapter, by a committee appointed under this section, shall be preceded by sufficient notice to enable all interested persons to attend.

(d) In making a recommendation under this section or under section 2072 or 2075, the body making that recommendation shall provide a proposed rule, an explanatory note on the rule, and a written report explaining the body's action, including any minority or other separate views.

(e) Failure to comply with this section does not invalidate a rule prescribed under section 2072 or 2075 of this title.

(Added Pub. L. 100–702, title IV, §401(a), Nov. 19, 1988, 102 Stat. 4649, eff. Dec. 1, 1988; amended Pub. L. 103–394, title I, §104(e), Oct. 22, 1994, 108 Stat. 4110.)

### § 2074. Rules of procedure and evidence; submission to Congress; effective date

(a) The Supreme Court shall transmit to the Congress not later than May 1 of the year in which a rule prescribed under section 2072 is to become effective a copy of the proposed rule. Such rule shall take effect no earlier than December 1 of the year in which such rule is so transmitted unless otherwise provided by law. The Supreme Court may fix the extent such rule shall apply to proceedings then pending, except that the Supreme Court shall not require the application of such rule to further proceedings then pending to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies.

(b) Any such rule creating, abolishing, or modifying an evidentiary privilege shall have no force or effect unless approved by Act of Congress.

(Added Pub. L. 100–702, title IV, §401(a), Nov. 19, 1988, 102 Stat. 4649, eff. Dec. 1, 1988.)

EXHIBIT 077

# HISTORICAL NOTE

The Supreme Court prescribes rules of civil procedure for the district courts pursuant to section 2072 of Title 28, United States Code, as enacted by Title IV "Rules Enabling Act" of Pub. L. 100–702 (approved Nov. 19, 1988, 102 Stat. 4648), effective December 1, 1988. Pursuant to section 2074 of Title 28, the Supreme Court transmits to Congress (not later than May 1 of the year in which a rule prescribed under section 2072 is to become effective) a copy of the proposed rule. The rule takes effect no earlier than December 1 of the year in which the rule is transmitted unless otherwise provided by law.

By act of June 19, 1934, ch. 651, 48 Stat. 1064 (subsequently 28 United States Code, § 2072), the Supreme Court was authorized to prescribe general rules of civil procedure for the district courts. The rules, and subsequent amendments, were not to take effect until (1) they had been first reported to Congress by the Attorney General at the beginning of a regular session and (2) after the close of that session.

Under a 1949 amendment to 28 U.S.C., § 2072, the Chief Justice of the United States, instead of the Attorney General, reported the rules to Congress. In 1950, section 2072 was further amended so that amendments to the rules could be reported to Congress not later than May 1 each year and become effective 90 days after being reported. Effective December 1, 1988, section 2072 was repealed and supplanted by new sections 2072 and 2074, see first paragraph of Historical Note above.

The original rules, pursuant to act of June 19, 1934, were adopted by order of the Court on December 20, 1937, transmitted to Congress by the Attorney General on January 3, 1938, and became effective September 16, 1938 (308 U.S. 645; Cong. Rec., vol. 83, pt. 1, p. 13, Exec. Comm. 905; H. Doc. 460 and H. Doc. 588, 75th Cong.)

Rule 81(a)(6) was abrogated by order of the Court on December 28, 1939, transmitted to Congress by the Attorney General on January 3, 1940, effective April 3, 1941 (308 U.S. 642; Cong. Rec., vol. 86, pt. 1, p. 14, Exec. Comm. 1152).

Further amendments were adopted by the Court by order dated December 27, 1946, transmitted to Congress by the Attorney General on January 3, 1947, and became effective March 19, 1948 (329 U.S. 839; Cong. Rec., vol. 93, pt. 1, p. 41, Exec. Comm. 32; H. Doc. 46 and H. Doc. 473, 80th Cong.). The amendments affected Rules 6, 7, 12, 13, 14, 17, 24, 26, 27, 28, 33, 34, 36, 41, 45, 52, 54, 56, 58, 59, 60, 62, 65, 66, 68, 73, 75, 77, 79, 81, 84, and 86, and Forms 17, 20, 22, and 25.

Additional amendments were adopted by the Court by order dated December 29, 1948, transmitted to Congress by the Attorney General on January 3, 1949, and became effective October 20, 1949 (335 U.S. 919; Cong. Rec., vol. 95, pt. 1, p. 94, Exec. Comm. 24; H.

EXHIBIT 078

Doc. 33, 81st Cong.). The amendments affected Rules 1, 17, 22, 24, 25, 27, 37, 45, 57, 60, 62, 65, 66, 67, 69, 72, 73, 74, 75, 76, 79, 81, 82, and 86, and Forms 1, 19, 22, 23, and 27.

Amendment to Rule 81(a)(7) and new Rule 71A and Forms 28 and 29 were adopted by the Court by order dated April 30, 1951, transmitted to Congress on May 1, 1951, and became effective August 1, 1951 (341 U.S. 959; Cong. Rec., vol. 97, pt. 4, p. 4666, Exec. Comm. 414; H. Doc. 121, 82d Cong.).

Additional amendments were adopted by the Court by order dated April 17, 1961, transmitted to Congress by the Chief Justice on April 18, 1961, and became effective July 19, 1961 (368 U.S. 1009; Cong. Rec., vol. 107, pt. 5, p. 6524, Exec. Comm. 821). The amendments affected Rules 25, 54, 62, and 86, and Forms 2 and 19.

Additional amendments were adopted by the Court by order dated January 21, 1963, transmitted to Congress by the Chief Justice (374 U.S. 861; Cong. Rec., vol. 109, pt. 1, p. 1037, Exec. Comm. 267; H. Doc. 48, 88th Cong.), and became effective July 1, 1963, by order of the Court dated March 18, 1963 (374 U.S. 861; Cong. Rec., vol. 109, pt. 4, p. 4639, Exec. Comm. 569; H. Doc. 48, pt. 2, 88th Cong.; see also H. Doc. 67, 88th Cong.). The amendments affected Rules 4, 5, 6, 7, 12, 13, 14, 15, 24, 25, 26, 28, 30, 41, 49, 50, 52, 56, 58, 71A, 77, 79, 81, and 86, and Forms 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 18, 21, 22–A, and 22–B, and added Forms 30, 31, and 32.

Additional amendments were adopted by the Court by order dated February 28, 1966, transmitted to Congress by the Chief Justice on the same day (383 U.S. 1029; Cong. Rec., vol. 112, pt. 4, p. 4229, Exec. Comm. 2094; H. Doc. 391, 89th Cong.), and became effective July 1, 1966. The amendments affected Rules 1, 4, 8, 9, 12, 13, 14, 15, 17, 18, 19, 20, 23, 24, 26, 38, 41, 42, 43, 44, 47, 53, 59, 65, 68, 73, 74, 75, 81, and 82, and Forms 2 and 15, and added Rules 23.1, 23.2, 44.1, and 65.1, and Supplementary Rules A, B, C, D, E, and F for certain Admiralty and Maritime claims. The amendments govern all proceedings in actions brought after they became effective and also all further proceedings in actions then pending, except to the extent that in the opinion of the Court an application in a particular action then pending would not be feasible or would work injustice, in which event the former procedure applies.

In addition, Rule 6(c) of the Rules of Civil Procedure promulgated by the Court on December 20, 1937, effective September 16, 1938; Rule 2 of the Rules for Practice and Procedure under section 25 of an act to amend and consolidate the acts respecting copyright, approved March 4, 1909, promulgated by the Court on June 1, 1909, effective July 1, 1909; and the Rules of Practice in Admiralty and Maritime Cases, promulgated by the Court on December 6, 1920, effective March 7, 1921, as revised, amended and supplemented, were rescinded, effective July 1, 1966.

Additional amendments were adopted by the Court by order dated December 4, 1967, transmitted to Congress by the Chief Justice on January 15, 1968 (389 U.S. 1121; Cong. Rec., vol. 114, pt. 1, p. 113, Exec. Comm. 1361; H. Doc. 204, 90th Cong.), and became effective July 1, 1968. The amendments affected Rules 6(b), 9(h), 41(a)(1), 77(d), 81(a), and abrogated the chapter heading ''IX. Appeals'' and Rules 72–76, and Form 27.

Additional amendments were adopted by the Court by order dated March 30, 1970, transmitted to Congress by the Chief Justice

EXHIBIT 078

on the same day (398 U.S. 977; Cong. Rec., vol. 116, pt. 7, p. 9861, Exec. Comm. 1839; H. Doc. 91–291), and became effective July 1, 1970. The amendments affected Rules 5(a), 9(h), 26, 29 to 37, 45(d), and 69(a), and Form 24.

On March 1, 1971, the Court adopted additional amendments, which were transmitted to Congress by the Chief Justice on the same day (401 U.S. 1017; Cong. Rec., vol. 117, pt. 4, p. 4629, Exec. Comm. 341; H. Doc. 92–57), and became effective July 1, 1971. The amendments affected Rules 6(a), 27(a)(4), 30(b)(6), 77(c), and 81(a)(2).

Further amendments were proposed by the Court in its orders dated November 20 and December 18, 1972, and transmitted to Congress by the Chief Justice on February 5, 1973 (409 U.S. 1132 and 419 U.S. 1133; Cong. Rec., vol. 119, pt. 3, p. 3247, Exec. Comm. 359; H. Doc. 93–46). Although these amendments were to have become effective July 1, 1973, Public Law 93–12 (approved March 30, 1973, 87 Stat. 9) provided that the proposed amendments ''shall have no force or effect except to the extent, and with such amendments, as they may be expressly approved by Act of Congress.'' Section 3 of Public Law 93–595 (approved January 2, 1975, 88 Stat. 1949) approved the amendments proposed by the Court, to be effective July 1, 1975. The amendments affected Rules 30(c), 43, and 44.1, and abrogated Rule 32(c).

On April 29, 1980, the Court adopted additional amendments, which were transmitted to Congress by the Chief Justice on the same day (446 U.S. 995; Cong. Rec., vol. 126, pt. 8, p. 9535, Exec. Comm. 4260; H. Doc. 96–306), and became effective August 1, 1980. The amendments affected Rules 4, 5, 26, 28, 30, 32, 33, 34, 37, and 45.

Section 205(a) and (b) of Public Law 96–481 (approved October 21, 1980, 94 Stat. 2330) repealed Rule 37(f) and deleted the corresponding item from the Table of Contents, to be effective October 1, 1981.

Amendments to Rule 4 were adopted by the Court by order dated April 28, 1982, transmitted to Congress by the Chief Justice on the same day (456 U.S. 1013; Cong. Rec., vol. 128, pt. 6, p. 8191, Exec. Comm. 3822; H. Doc. 97–173), and became effective August 1, 1982. However, Public Law 97–227 (approved August 2, 1982, 96 Stat. 246) provided that the amendments to Rule 4 shall take effect on October 1, 1983, unless previously approved, disapproved, or modified by Act of Congress, and further provided that this Act shall be effective as of August 1, 1982, but shall not apply to the service of process that takes place between August 1, 1982, and the date of enactment of this Act [August 2, 1982]. Section 5 of Public Law 97–462 (approved January 12, 1983, 96 Stat. 2530) provided that the amendments to Rule 4 the effective date of which was delayed by Public Law 97–227 shall not take effect. Sections 2 to 4 of Public Law 97–462 amended Rule 4(a), (c) to (e), and (g), added Rule 4(j), and added Form 18–A in the Appendix of Forms, effective 45 days after enactment of Public Law 97–462 [February 26, 1983].

Additional amendments were adopted by the Court by order dated April 28, 1983, transmitted to Congress by the Chief Justice on the same day (461 U.S. 1095; Cong. Rec., vol. 129, pt. 8, p. 10479, Exec. Comm. 1027; H. Doc. 98–54), and became effective August 1, 1983. The amendments included new Rules 26(g), 53(f), 72 through

EXHIBIT 078

76 and new Official Forms 33 and 34, and amendments to Rules 6(b), 7(b), 11, 16, 26(a), (b), 52(a), 53(a), (b), (c), and 67.

Additional amendments were adopted by the Court by order dated April 29, 1985, transmitted to Congress by the Chief Justice on the same day (471 U.S. 1153; Cong. Rec., vol. 131, pt. 7, p. 9826, Exec. Comm. 1156; H. Doc. 99–63), and became effective August 1, 1985. The amendments affected Rules 6(a), 45(d)(2), 52(a), 71A(h), and 83, Official Form 18–A, and Rules B(1), C(3), and E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Additional amendments were adopted by the Court by order dated March 2, 1987, transmitted to Congress by the Chief Justice on the same day (480 U.S. 953; Cong. Rec., vol. 133, pt. 4, p. 4484, Exec. Comm. 714; H. Doc. 100–40), and became effective August 1, 1987. The amendments affected Rules 4(b), (d)(1), (e), (i)(1), 5(b), (e), 6(e), 8(a), (b), (e)(2), 9(a), 11, 12(a), (b), (e) to (g), 13(a), (e), (f), 14, 15, 16(f), 17, 18, 19(a), (b), 20(b), 22(1), 23(c)(2), 23.1, 24(a), 25(b), (d), 26(b)(3), (e)(1), (2), (f)(5), (g), 27(a)(1), (b), 28(b), 30(b)(1), (2), (4), (6), (7), (c), (e), (f)(1), (g), 31(a), (b), 32(a)(4), 34(a), 35(a), (b)(1), (2), 36, 37(a)(2), (b)(2), (c), (d), (g), 38(c), (d), 41(a)(2), (b), 43(f), 44(a)(1), 44.1, 45(c), (f), 46, 49(a), 50(b), (d), 51, 53(a), (c) to (e)(1), (3), (5), 54(c), 55(a), (b), (e), 56(a), (b), (e) to (g), 60(b), 62(f), 63, 65(b), 65.1, 68, 69, 71, 71A(d)(2), (3)(ii), (e) to (g), (j), 73(b), 75(b)(2), (c)(1), (2), (4), 77(c), 78, and 81(c), and Rules B, C(3), (6), E(2)(b), (4)(b), (c), (5)(c), (9)(b), (c), and F(1) to (6) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Additional amendments were adopted by the Court by order dated April 25, 1988, transmitted to Congress by the Chief Justice on the same day (485 U.S. 1043; Cong. Rec., vol. 134, pt. 7, p. 9154, Exec. Comm. 3515; H. Doc. 100–185), and became effective August 1, 1988. The amendments affected Rules 17(a) and 71A(e).

Section 7047(b) of Public Law 100–690 (approved November 18, 1988, 102 Stat. 4401) amended Rule 35. Section 7049 of Public Law 100–690, which directed amendment of Rule 17(a) by striking ''with him'', and section 7050 of Public Law 100–690, which directed amendment of Rule 71A(e) by striking ''taking of the defendants property'' and inserting ''taking of the defendant's property'', could not be executed because of the intervening amendments to those Rules by the Court by order dated April 25, 1988, effective August 1, 1988.

Additional amendments were adopted by the Court by order dated April 30, 1991, transmitted to Congress by the Chief Justice on the same day (500 U.S. 963; Cong. Rec., vol. 137, pt. 7, p. 9721, Ex. Comm. 1190; H. Doc. 102–77), and became effective December 1, 1991. The amendments affected Rules 5, 15, 24, 34, 35, 41, 44, 45, 47, 48, 50, 52, 53, 63, 72, and 77, the headings for chapters VIII and IX, and Rules C and E of the Supplemental Rules for Certain Admiralty and Maritime Claims, added new Official Forms 1A and 1B, and abrogated Form 18–A.

Section 11 of Pub. L. 102–198 (approved December 9, 1991, 105 Stat. 1626) amended Rule 15(c)(3) as transmitted to Congress by the Supreme Court to become effective on December 1, 1991; provided that Forms 1A and 1B included in the transmittal shall not be effective; and provided that Form 18–A, abrogated by the Supreme Court in the transmittal, effective December 1, 1991, shall continue in effect on or after that date.

EXHIBIT 078

Additional amendments were adopted by the Court by order dated April 22, 1993, transmitted to Congress by the Chief Justice on the same day (507 U.S. 1089; Cong. Rec., vol. 139, pt. 6, p. 8127, Exec. Comm. 1102; H. Doc. 103–74), and became effective December 1, 1993. The amendments affected Rules 1, 4, 5, 11, 12, 15, 16, 26, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 50, 52, 53, 54, 58, 71A, 72, 73, 74, 75, and 76, added new Rule 4.1, affected Forms 2, 33, 34, and 34A, added new Forms 1A, 1B, and 35, and abrogated Form 18–A.

Additional amendments were adopted by the Court by order dated April 27, 1995, transmitted to Congress by the Chief Justice on the same day (514 U.S. 1151; Cong. Rec., vol. 141, pt. 8, p. 11745, Ex. Comm. 804; H. Doc. 104–64), and became effective December 1, 1995. The amendments affected Rules 50, 52, 59, and 83.

Additional amendments were adopted by the Court by order dated April 23, 1996, transmitted to Congress by the Chief Justice on the same day (517 U.S. 1279; Cong. Rec., vol. 142, pt. 6, p. 8831, Ex. Comm. 2487; H. Doc. 104–201), and became effective December 1, 1996. The amendments affected Rules 5 and 43.

Additional amendments were adopted by the Court by order dated April 11, 1997, transmitted to Congress by the Chief Justice on the same day (520 U.S. 1305; Cong. Rec., vol. 143, pt. 4, p. 5550, Ex. Comm. 2795; H. Doc. 105–67), and became effective December 1, 1997. The amendments affected Rules 9 and 73, abrogated Rules 74, 75, and 76, and affected Forms 33 and 34.

Additional amendments were adopted by the Court by order dated April 24, 1998, transmitted to Congress by the Chief Justice on the same day (523 U.S. 1221; H. Doc. 105–266), and became effective December 1, 1998. The amendments affected Rule 23.

Additional amendments were adopted by the Court by order dated April 26, 1999, transmitted to Congress by the Chief Justice on the same day (526 U.S. 1183; Cong. Rec., vol. 145, pt. 6, p. 7907, Ex. Comm. 1787; H. Doc. 106–54), and became effective December 1, 1999. The amendments affected Rule 6 and Form 2.

Additional amendments were adopted by the Court by order dated April 17, 2000, transmitted to Congress by the Chief Justice on the same day (529 U.S. 1155; Cong. Rec., vol. 146, pt. 5, p. 6328, Ex. Comm. 7336; H. Doc. 106–228), and became effective December 1, 2000. The amendments affected Rules 4, 5, 12, 14, 26, 30, and 37 and Rules B, C, and E of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Additional amendments were adopted by the Court by order dated April 23, 2001, transmitted to Congress by the Chief Justice on the same day (532 U.S. 992; Cong. Rec., vol. 147, pt. 5, p. 6126, Ex. Comm. 1575; H. Doc. 107–61), and became effective December 1, 2001. The amendments affected Rules 5, 6, 65, 77, 81, and 82.

Additional amendments were adopted by the Court by order dated April 29, 2002, transmitted to Congress by the Chief Justice on the same day (535 U.S. 1147; Cong. Rec., vol. 148, pt. 5, p. 6813, Ex. Comm. 6623; H. Doc. 107–204), and became effective December 1, 2002. The amendments affected Rules 54, 58, and 81 and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims and added new Rule 7.1.

Additional amendments were adopted by the Court by order dated March 27, 2003, transmitted to Congress by the Chief Justice on the same day (538 U.S. 1083; Cong. Rec., vol. 149, pt. 6, p. 7689,

EXHIBIT 078

Ex. Comm. 1493; H. Doc. 108–56), and became effective December 1, 2003. The amendments affected Rules 23, 51, 53, 54, and 71A and Forms 19, 31, and 32.

Additional amendments were adopted by the Court by order dated April 25, 2005, transmitted to Congress by the Chief Justice on the same day (544 U.S. 1173; Cong. Rec., vol. 151, pt. 7, p. 8784, Ex. Comm. 1906; H. Doc. 109–23), and became effective December 1, 2005. The amendments affected Rules 6, 27, and 45, and Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

Additional amendments were adopted by the Court by order dated April 12, 2006, transmitted to Congress by the Chief Justice on the same day (547 U.S. 1233; Cong. Rec., vol. 152, pt. 6, p. 7213, Ex. Comm. 7317; H. Doc. 109–105), and became effective December 1, 2006. The amendments affected Rules 5, 9, 14, 16, 24, 26, 33, 34, 37, 45, 50, and 65.1, added new Rule 5.1, affected Form 35, affected Rules A, C, and E of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and added new Rule G to such Supplemental Rules.

Additional amendments were adopted by the Court by order dated April 30, 2007, transmitted to Congress by the Chief Justice on the same day (550 U.S. 1003; Cong. Rec., vol. 153, pt. 8, p. 10612, Ex. Comm. 1377; H. Doc. 110–27), and became effective December 1, 2007. The amendments affected Rules 1 through 86 and added new Rule 5.2; Forms 1 through 35 were amended to become restyled Forms 1 through 82.

An additional amendment was adopted by the Court by order dated April 23, 2008, transmitted to Congress by the Chief Justice on the same day (553 U.S. 1149; Cong. Rec., vol. 154, pt. 8, p. 11078, Ex. Comm. 6881; H. Doc. 110–117), and became effective December 1, 2008. The amendment affected Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

Additional amendments were adopted by the Court by order dated March 26, 2009, transmitted to Congress by the Chief Justice on March 25, 2009 (556 U.S. 1341; Cong. Rec., vol. 155, pt. 8, p. 10210, Ex. Comm. 1264; H. Doc. 111–29), and became effective December 1, 2009. The amendments affected Rules 6, 12, 13, 14, 15, 23, 27, 32, 38, 48, 50, 52, 53, 54, 55, 56, 59, 62, 65, 68, 71.1, 72, and 81, added new Rule 62.1, and affected Forms 3, 4, and 60, and Rules B, C, and G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

Additional amendments were adopted by the Court by order dated April 28, 2010, transmitted to Congress by the Chief Justice on the same day (559 U.S. 1139; Cong. Rec., vol. 156, pt. 6, p. 8139, Ex. Comm. 7473; H. Doc. 111–111), and became effective December 1, 2010. The amendments affected Rules 8, 26, and 56, and Form 52.

Additional amendments were adopted by the Court by order dated April 16, 2013, transmitted to Congress by the Chief Justice on the same day (569 U.S. 1149; Cong. Rec., vol. 159, pt. 5, p. 6968, Ex. Comm. 1495; H. Doc. 113–29), and became effective December 1, 2013. The amendments affected Rules 37 and 45.

An additional amendment was adopted by the Court by order dated April 25, 2014, transmitted to Congress by the Chief Justice on the same day (572 U.S. 1217; Cong. Rec., vol. 160, p. H7933, Daily

EXHIBIT 078

Issue, Ex. Comm. 7579; H. Doc. 113–163), and became effective December 1, 2014. The amendment affected Rule 77.

Additional amendments were adopted by the Court by order dated April 29, 2015, transmitted to Congress by the Chief Justice on the same day (575 U.S.——; Cong. Rec., vol. 161, p. H2790, Daily Issue, Ex. Comm. 1373; H. Doc. 114–33), and became effective December 1, 2015. The amendments affected Rules 1, 4, 16, 26, 30, 31, 33, 34, 37, and 55, abrogated Rule 84, and abrogated the Appendix of Forms (Forms 1 through 82).

Additional amendments were adopted by the Court by order dated April 28, 2016, transmitted to Congress by the Chief Justice on the same day (578 U.S.——; Cong. Rec., vol. 162, p. H2147, Daily Issue, Ex. Comm. 5233; H. Doc. 114–128), and became effective December 1, 2016. The amendments affected Rules 4, 6, and 82.

An additional amendment was adopted by the Court by order dated April 27, 2017, transmitted to Congress by the Chief Justice on the same day (581 U.S.——; Cong. Rec., vol. 163, p. H4175, Daily Issue, Ex. Comm. 1255; H. Doc. 115–33), and became effective December 1, 2017. The amendment affected Rule 4.

Additional amendments were adopted by the Court by order dated April 26, 2018, transmitted to Congress by the Chief Justice on the same day (584 U.S.——; Cong. Rec., vol. 164, p. H3927, Daily Issue, Ex. Comm. 4789; H. Doc. 115–119), and became effective December 1, 2018. The amendments affected Rules 5, 23, 62, and 65.1.

### Committee Notes

Committee Notes prepared by the Committee on Rules of Practice and Procedure and the Advisory Committee on the Federal Rules of Civil Procedure, Judicial Conference of the United States, explaining the purpose and intent of the amendments are set out in the Appendix to Title 28, United States Code, following the particular rule to which they relate. In addition, the rules and amendments, together with Committee Notes, are set out in the House documents listed above.

EXHIBIT 078

party. But costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law. The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action.

(2) *Attorney's Fees.*

(A) *Claim to Be by Motion.* A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.

(B) *Timing and Contents of the Motion.* Unless a statute or a court order provides otherwise, the motion must:

(i) be filed no later than 14 days after the entry of judgment;

(ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;

(iii) state the amount sought or provide a fair estimate of it; and

(iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

(C) *Proceedings.* Subject to Rule 23(h), the court must, on a party's request, give an opportunity for adversary submissions on the motion in accordance with Rule 43(c) or 78. The court may decide issues of liability for fees before receiving submissions on the value of services. The court must find the facts and state its conclusions of law as provided in Rule 52(a).

(D) *Special Procedures by Local Rule; Reference to a Master or a Magistrate Judge.* By local rule, the court may establish special procedures to resolve fee-related issues without extensive evidentiary hearings. Also, the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter.

(E) *Exceptions.* Subparagraphs (A)–(D) do not apply to claims for fees and expenses as sanctions for violating these rules or as sanctions under 28 U.S.C. § 1927.

(As amended Dec. 27, 1946, eff. Mar. 19, 1948; Apr. 17, 1961, eff. July 19, 1961; Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 2002, eff. Dec. 1, 2002; Mar. 27, 2003, eff. Dec. 1, 2003; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009.)

**Rule 55. Default; Default Judgment**

(a) ENTERING A DEFAULT. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) ENTERING A DEFAULT JUDGMENT.

(1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk— on the plaintiff's request, with an affidavit showing the

EXHIBIT 079

amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

(2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

    (A) conduct an accounting;

    (B) determine the amount of damages;

    (C) establish the truth of any allegation by evidence; or

    (D) investigate any other matter.

(c) SETTING ASIDE A DEFAULT OR A DEFAULT JUDGMENT. The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).

(d) JUDGMENT AGAINST THE UNITED STATES. A default judgment may be entered against the United States, its officers, or its agencies only if the claimant establishes a claim or right to relief by evidence that satisfies the court.

(As amended Mar. 2, 1987, eff. Aug. 1, 1987; Apr. 30, 2007, eff. Dec. 1, 2007; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 29, 2015, eff. Dec. 1, 2015.)

## Rule 56. Summary Judgment

(a) MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT. A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

(b) TIME TO FILE A MOTION. Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.

(c) PROCEDURES.

(1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

    (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

EXHIBIT 079

No. 94-2044

United States Court of Appeals, First Circuit

# Key Bank of Maine v. Tablecloth Textile Co.

74 F.3d 349 (1st Cir. 1996)

Decided Jan 30, 1996

No. 94-2044.

Heard September 12, 1995.

350 Decided January 30, 1996. *350

Eric A. Deutsch, with whom Testa, Hurwitz Thibeault, Boston, MA, Peter G. Cary and Mittel, Asen, Eggert, Hunter Altshuler, Portland, ME, were on brief for appellants.

Thomas A. Cox, with whom Jennifer S. Begel and Friedman Babcock, Portland, ME, were on brief for appellee.

Appeal from the United States District Court for the District of Maine, Hon. Morton A. Brody, U.S. District Judge.

Before TORRUELLA, Chief Judge, LYNCH, Circuit Judge, and STEARNS,– District Judge.

– Of the District of Massachusetts, sitting by designation.

TORRUELLA, Chief Judge.

Defendants-Appellants Tablecloth Textile Company Corp., ("Tablecloth"), Post Sherman Textile Company, Inc. ("P S") and Stuart Sherman ("Sherman") (collectively referred to as the "Appellants") appeal the denial of their motion to

351 set aside a default *351 judgment and for leave to file a late responsive pleading. We reverse, holding that because the notice requirement of Rule 55(b)(2) of the Federal Rules of Civil Procedure was not observed, and because Appellants provided strong evidence that the damage award was erroneously calculated, the

default judgment must be set aside and the case remanded for further proceedings consistent with this opinion.

# I. *BACKGROUND*

The record in the present action reveals the following. The dispute underlying this appeal arose out of the sale of assets, particularly the licenses and inventory of a Maine corporation which was in default on its obligations to Plaintiff-Appellee Key Bank of Maine ("Key Bank" or the "Appellee"). On December 27, 1993, Key Bank commenced an action against the Appellants by filing a complaint in the U.S. District Court for the District of Maine, alleging that Tablecloth breached its obligations to Key Bank under various contracts and promissory notes and that Sherman and P S were jointly and severally liable along with Tablecloth pursuant to an executed guaranty dated January 13, 1992. On December 30, 1993, service was made on the Appellants. The answer to the complaint was due on January 19, 1994, a date which came and passed with Appellants filing neither an answer nor a formal appearance.

On January 10, 1994, Key Bank's Maine counsel, Laurie B. Perzley, received a telephone call from Appellants' then-counsel in New York, Stephen Brown, indicating that Appellants wanted to pursue settlement negotiations. Perzley received a similar telephone call on January 20, 1994, from Sherman's brother, Tom Sherman, Esq. Stuart Sherman was subsequently informed by his brother that Appellants were already in default, at which point Sherman transferred the matter to the

1

EXHIBIT 080

attention of corporate counsel for P S and Tablecloth in New York, Ronit Fischer. Sherman implored Fisher to contact Key Bank's counsel and Vice President, Michael Lugli, to request additional time to respond to the complaint and to see if the parties could negotiate a settlement.

During the last week of January 1994, Fischer and Lugli spoke by telephone. The substance of their conversation was memorialized in Fischer's letter to Lugli dated February 1, 1994 (the "February 1 letter"). The February 1 letter evidences Appellants' understanding (i) that it served to commence settlement negotiations; (ii) that Key Bank would not request a default judgment unless and until it was determined that settlement negotiations had failed; (iii) that prior to seeking a default judgment, Key Bank would notify Fischer so that Appellants could seek Maine counsel and file the appropriate pleadings; and (iv) that, if negotiations failed, the letter's settlement offer would not prejudice either party's position in litigation. The February 1 letter also discussed "behind the scenes" circumstances that provided grounds for Appellants' defenses.

In response, Lugli penned a letter dated February 4, 1994 (the "February 4 letter"), indicating Appellee's willingness to enter into negotiations, if they "could be accomplished quickly." The letter requested financial information, enclosed Key Bank forms to be used, provided a February 16, 1994 deadline, and stated that Lugli would "instruct counsel to continue with the legal proceeding" were the deadline not met. Appellants did not submit the financial information by the deadline. Fischer maintains that although she received the financial questionnaire meant to be completed and submitted by Sherman, she "do[es] not recall" whether the package contained "a demand letter from Key Bank" dated February 4, 1994, indicating that a default would be sought unless all requested information was presented to Key Bank by February 16, 1994.

On February 25, 1994, Key Bank filed a response to the court's order to show cause why the action should not be dismissed for lack of prosecution along with an application to the district court clerk for entry of the default. Although Key Bank was aware that Appellants were represented by counsel who had requested notice before Key Bank sought to have default entered, it chose not to serve Appellants with those papers. On February 28, 1994, the clerk entered a default in favor of Key Bank under *352 Fed.R.Civ.P. 55(a) because of Tablecloth's failure to file a responsive pleading. On April 1, 1994, Appellee filed a motion for a default judgment, once again choosing not to serve Appellants. On April 8, 1994, the district court entered the default judgment ex-parte in the amount of $693,871.44, based on the affidavits and the unanswered request for admissions submitted by Key Bank.

During oral argument counsel for Key Bank admitted that Key Bank never sent Appellants notice of, or copies of any pleadings filed in connection with, these court actions. Key Bank further conceded that Appellants only learned of the entry of the default and of the default judgment in July 1994, when Key Bank's counsel, David Burke, contacted Fischer (who no longer was involved in the matter) to discuss execution of the judgment. Burke was referred to John Stahl, the controller for Post Sherman, and they conducted settlement discussions through the remainder of July. Burke rejected a settlement offer on July 12, 1994, and informed Stahl that if a satisfactory settlement was not reached by August 1, 1994, Appellee would enforce the judgment. On July 25, 1994, Lugli received the financial information requested in February 1994 from Sherman.

The parties failed to reach a settlement by August 1, 1994. Accordingly, on August 15, 1994, Appellants filed a motion to set aside the default judgment and a motion to allow a late answer, along with supporting affidavits that detailed the inaccuracies of the damages as established by the

EXHIBIT 080

unanswered request for admissions. On September 2, 1994, the district court denied Tablecloth's motion to set aside the default judgment and for leave to file a late responsive pleading (the "motion"). The district court stated that Appellants failed to meet their burden under Fed.R.Civ.P. 60(b), because their conduct did not constitute excusable neglect and they did not provide sufficient elaboration permitting the district court to determine that they had a meritorious defense (the "Order"). This appeal was filed on September 29, 1994. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. *DISCUSSION*

Despite the additional issues raised, disposition of this appeal begins and ends with the inquiry into whether the district court erred when it denied Appellants' motion to set aside the default judgment entered against them. We review the denial of a motion to set aside a default judgment for an abuse of discretion.[1] *Cotto v. United States*, 993 F.2d 274, 277 (1st Cir. 1993) (discussing motion for Rule 60(b) relief); *LeShore v. County of Worcester*, 945 F.2d 471, 472 (1st Cir. 1991) (explaining motion for Rule 55(c) relief); *U.S. v. One Urban Lot Located at 1 Street A-1*, 885 F.2d 994 (1st Cir. 1989) (noting that review of motions for relief under Rule 55(c) is less demanding than that governing those seeking relief under Rule 60(b)); *see also In Re Roxford Foods, Inc.*, 12 F.3d 875 (9th Cir. 1993).

[1] Fed.R.Civ.P. 55(c) states:

> For good cause shown, the court may set aside an entry of default and, if judgment by default has been entered, likewise set it aside in accordance with Rule 60(b).

Fed.R.Civ.P. 60(b) provides in part:

On motion and upon such terms as are just, the court may relieve a party or party's legal representative from a final judgment, Order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud, . . . misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, Order, or proceeding was entered or taken.

In their appeal of the denial of their motion to set aside default judgment, Appellants argue that they "appeared" in the action below for purposes of Rule 55(b)(2) [2] and, thus, were entitled to written notice[3] *353 three days prior to the entry of the default judgment. Appellants contend that because Appellee failed to satisfy the notice requirement of Rule 55(b)(2), the district court abused its discretion when it denied their motion, because, in so doing, it implicitly held that Appellee was not required to provide them with notice.[4] Predictably, Appellee disputes that Appellants appeared below and maintains that, under Rule 5(a), it was not required to provide Appellants with notice of the default pleadings.[5]

[2] Fed.R.Civ.P. 55(b)(2) reads, in pertinent part:

> If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.

EXHIBIT 080

3   We note that although written notice is contemplated under the Rule, it need not necessarily be in any particular form. "The major consideration is that the party is made aware that a default judgment may be entered against him." Wilson, 564 F.2d at 369 (quoting 10 C. Wright A. Miller, *Federal Practice and Procedure* Section(s) 2687 (1973)).

4   We note that the district court's Order does not include a discussion of why Appellants failed to satisfy the requisite showing of excusable neglect and meritorious defenses for relief under Rule 60(b). Although absence of record indication that proper standards were applied in refusing to set aside a default has been held sufficient by itself to justify reversal, we need not decide this case on that limited basis. *Keegal v. Key West Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980) (citing *Medunic v. Lederer*, 533 F.2d 891 (3d Cir. 1976)).

5   Rule 5(a) provides that:

> No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the method provided for service of summons in Rule 4.

Although appearance in an action typically involves some presentation or submission to the court — a feature missing here — we have held that a defaulting party "has appeared" for Rule 55 purposes if it has "indicated to the moving party a clear purpose to defend the suit." *Muniz v. Vidal*, 739 F.2d 699, 700 (1st Cir. 1984) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Our review of both the case law we cited in *Muniz* and the decisions since *Muniz* reveals there is ample support for our finding that Appellants' "informal

contacts" with Key Bank demonstrated a clear intent to defend, and thus that they "appeared" in the action below.[6]

6   *See, e.g., Lutomski v. Panther Valley Corn Exchange*, 653 F.2d 270, 271 (6th Cir. 1981) (finding appearance where defendants contacted plaintiffs and made clear that the damages sought were excessive); *H.F. Livermore*, 432 F.2d at 691 (finding appearance where exchanges between parties were normal effort to see if dispute could be settled and neither party doubted that suit would be contested if efforts failed); *Dalminter v. Jesse Edwards*, 27 F.R.D. 491, 493 (S.D.Tex. 1961) (finding appearance where defendant contacted plaintiff's counsel by letter); *see also Keegal v. Key West Caribbean Trading Co., Inc.*, 627 F.2d 373, 374 (D.C. Cir. 1980) (finding, *inter alia*, that assurances upon which defendants relied were part of, and grew out of, settlement negotiations which courts seek to encourage); *Liberty National Bank and Trust Co. v. Yackovich*, 99 F.R.D. 58 (W.D.Penn. 1982) (setting aside default judgment because failure to answer was based upon reliance on agreement with plaintiff's counsel that notice would be provided prior to seeking default judgment); *Cf. J. Slotnick Co. v. Clemco Industries*, 127 F.R.D. 435, 438-39 (D.Mass. 1989) (finding defendant did not appear where defendant was served with copy of plaintiff's motion for default, received notice from court clerk of entry of default, failed to respond to either plaintiff's motion or clerk's notice, and never displayed a clear purpose to defend).

Here, Appellants "indications" of their intent are primarily evidenced by the February 1 letter from Fischer to Lugli. The letter, supplemented by affidavits on record, demonstrates that Fischer explained to Lugli that, because both P S and Sherman had limited access to funds and were considering bankruptcy, available funds were better spent on the business, repaying Key Bank,

4

EXHIBIT 080

and negotiating a settlement, than on litigating the matter. More importantly, the February 1 letter made clear Appellants' understanding that (i) the letter served to commence settlement negotiations; (ii) during the negotiations Key Bank "will forbear from filing a default motion based on [P S's] failure to answer [in the action below]"; (iii) if "at *any time* [Key Bank] determines that the negotiations are not proceeding to a positive conclusion," it would notify Appellants so that they could retain Maine counsel to enter "the appropriate pleadings" (emphasis original); and (iv) reiterated that Appellants' "settlement offer was made without prejudice to each party's respective positions in litigation should the parties be unable to reach an amicable solution." The February 1 letter, in its review of the facts involved *354 and the bases for Appellants' settlement offer, also detailed Appellants' defenses and counterclaims in the event settlement negotiations failed.

Contrary to Appellee's assertions, once Appellants "appeared" for Rule 55 purposes they were entitled to notice of the application for default judgment under Rule 55(b)(2). We disagree with Appellee's argument that they were not required to provide notice under Rule 55(b)(2) because their February 4 letter effectively cancelled the intent to defend demonstrated in Appellants' February 1 letter. Specifically, Appellee argues that when the February 4 letter is considered together with Appellants' failure to respond by the February 16, 1994 deadline, it becomes clear that Appellee was not itself "on notice" in February 1994 that Appellants had a clear intent to defend. Appellants' failure to meet the deadline, Appellee maintains, was but another example of their "history of non-responsiveness."

We find Appellee's argument thoroughly unpersuasive, if not disingenuous. Appellants only two weeks before communicated a clear intent to defend.[7] Appellee also *knew* that Appellants were represented by counsel. Moreover, Appellee was well aware of Appellants' need to retain Maine

counsel and of Appellants' understanding that notice would precede Appellee's seeking entry of default. It was Appellee's duty when seeking entry of default and judgment by default to apprise the district court of Appellants' February 1 letter and to give notice as contemplated under Rule 55(b) (2).

> [7] We note that during oral argument, counsel for Appellee conceded that the February 1 letter, viewed on its own, demonstrated Appellants' intent to defend.

In addition, we are unpersuaded by Appellee's attempt to distinguish this case from *Muniz*. Appellee argues that, unlike in *Muniz*, the February 4 letter specifically put Appellants on notice that "if [Lugli] does not receive this [financial] information prior to [February 16, 1994], [Lugli] will instruct counsel to continue with the legal proceeding." Appellee relies on a case we distinguished in *Muniz, Wilson v. Moore Associates, Inc.*, 564 F.2d 366, 369 (9th Cir. 1977) (finding defendant's "informal contacts" insufficient to constitute an appearance because "plaintiff's 'informal contacts' provided actual, unqualified notice that delay would result in default"). Even assuming receipt of Key Bank's February 4 letter,[8] we do not find that Appellee's February 4 letter, which referred to "instruct[ing] counsel to continue with the legal proceeding," to amount to "actual, unqualified, notice that delay would result in default." As we noted in *Muniz*, in *Wilson* the defendant there neither filed a paper in court nor contacted opposing counsel. *Muniz*, 739 F.2d at 701; *see Charlton L. Davis Co., P.C. v. Fedder Data Center, Inc.*, 556 F.2d 308, 309 (5th Cir. 1977) (noting that cases where actual notice of impending default judgment was given do not provide guiding precedent for situations in which no notice of any sort was given). While Appellants here did not file any court documents, because of the agreement to pursue settlement negotiations and the need to retain Maine counsel, they did contact opposing counsel, explicitly communicated their intent to defend and their

EXHIBIT 080

understanding that Appellee would provide notice prior to seeking default so that they could retain Maine counsel.

> 8   We resolve the factual question as to Fischer's receipt of the February 4 letter in favor of Appellants because of the strong policy favoring resolving disputes on the merits. *LeShore*, 945 F.2d at 472 (quoting *Coon*, 867 F.2d at 76).

Furthermore, Appellants presented strong evidence that the figures upon which the default judgment is premised are erroneous.[9] While Appellants' evidence does not indicate they possess an "ironclad claim or defense which will guarantee success at trial," *Teamsters*, 953 F.2d 17, 21, the evidence *355 regarding the damages "does establish that [Appellants] possess a potentially meritorious claim or defense which, if proven, will bring success in its wake," at least as to the amount of damages. *Id.* The amount of damages involved is substantial, and the record suggests that the damage award is possibly erroneous by as much as $611,870. Thus, Appellants have given us good reason to believe that setting aside the judgment will not be a futile gesture. *Id.* at 20 (stating that a litigant, as a precondition to relief under Rule 60(b), must give the trial court reason to believe that vacating the judgment will not be an empty exercise); *Swink v. City of Pagedale*, 810 F.2d 791, 792 n. 2 (8th Cir. 1987) ("There is a strong public policy, supported by concepts of fundamental fairness in favor of trial on the merits, particularly when the monetary damages sought are substantial."); *Lutomski*, 653 F.2d at 271 (remanding case for a damages hearing where defendants conceded liability yet presented strong arguments that damages awarded were excessive).

> 9   We note that the fact that P S and Sherman have sought and received protection under the United States Bankruptcy Code does not affect our consideration of the issue of damages. Even though all actions in this appeal are stayed as respect to P S and Sherman pursuant to 11 U.S.C. § 362

(1994); *see Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206, 207 (2d Cir. 1986); *Association of St. Croix Condominium Owners v. St. Croix Hotel*, 682 F.2d 446, 449 (3d Cir. 1982), they are not stayed as respect to Tablecloth.

Finally, contrary to Appellee's claim, there is nothing in the record to suggest that Appellants would not defend the suit once settlement negotiations failed.[10] We also note that Appellants' motion to set aside the default judgment (dated August 15, 1994) was reasonably timely, considering that they only learned of the default and the default judgment in July 1994 and that negotiations continued until August 1, 1994.

> 10   We note that in addition to the February 1 letter, which discussed the grounds for Appellants' defenses, Key Bank was aware of potential defenses and counterclaims as early as December 1992 when it received a letter sent by Fischer, dated December 11, 1992, discussing why P S was not in default on the notes.

In sum, because we find that Appellants presented sufficient evidence of their intent to defend, they "appeared" in the action below, such that they were entitled to notice under Rule 55(b)(2) of Appellee's application seeking the default judgment.[11] We consider Appellee's failure to provide the requisite notice a grave error, we hold that the lack of notice, coupled with Appellants' showing of the existence of a potentially meritorious defense (at least as to the amount of damages), requires that the default judgment be set aside.[12] *See* Rule 60(b)(4), (6) (permitting judgment to be set aside where judgment is shown to be "void" or for "any other reason justifying relief"). The district court abused its discretion when it denied Appellants' motion to set aside the default judgment. Not only did it fail to recognize Appellants' clear intent to defend evidenced in the February 1 letter (or recognized it but decided, contrary to our holding in *Muniz*, that notice was

EXHIBIT 080

not required), it also failed to recognize Appellants' meritorious claim that the damage award was erroneously calculated.

> [11] By thus holding, we do not suggest that district courts should be compelled to vacate default judgments whenever a defendant communicates with the plaintiff after service of the complaint. *See Wilson*, 564 F.2d 370-71 (Wright, J., dissenting) ("I do not share the majority's fear that reversal here would compel district court's to vacate default judgments whenever a defendant communicates with the plaintiff after service of the complaint."). Instead, we simply re-affirm our rule that defendants who "appear" through informal contacts demonstrating a clear intent to defend are entitled to notice under Rule 55(b)(2). *Cf. Taylor v. Boston and Taunton Transportation Co.*, 720 F.2d 731, 733 (1st Cir. 1983) (discussing that not every act addressed to the court or related to the litigation will be deemed an appearance); *North Central Illinois Laborers' District Council v. S.J. Groves Sons Co., Inc.*, 842 F.2d 164, 168-70 (noting that Rule 55(b)(2)'s plain language, "has appeared in the action," evidences intent to impose a notice requirement only in limited circumstances).

> [12] Accordingly, we need not discuss the parties' remaining arguments regarding the existence of excusable neglect or whether the district court abused its discretion when it awarded damages ex-parte based largely on the unanswered request for admissions.

Although our conclusion that Key Bank's failure to provide notice as required by Rule 55(b)(2) necessitates that the default judgment be set aside, it is less clear whether there exists a basis for setting aside the entry of default itself under Fed.R.Civ.P. 55(c). We believe that, in the circumstances, it was incumbent upon Key Bank to live up to its representation that it would notify Appellants if it planned to seek entry of default. It is a separate question whether there exists "good

356 cause" for Appellants' default within *356 the meaning of Fed.R.Civ.P. 55(c). *See LeShore*, 945 F.2d at 472. While the district court had occasion to consider this issue, its order indicates that it declined to do so. We, however, are of the opinion that this issue is more appropriately resolved by the district court in the first instance on remand.

Although nothing more need be said, we nonetheless add that it would have been a simple matter for Appellee to have notified Appellants' counsel of the default proceedings. We find the language of *Charlton L. Davis* particularly on point:

> If the plaintiff felt [the defendant] was guilty of dilatory tactics and had no real defense, then notice under Rule 55 would have promptly resolved the matter. Instead, plaintiff sought to reap tactical advantage from [defendant's] prior neglect by acquiring by stealth a decision sheltered by the rules which protect final judgments. Such practice is what Rule 55 is designed to prevent.

*Charlton L. Davis*, 556 F.2d at 309. We reiterate that this rule rests upon the view that the Federal Rules of Civil Procedure are designed to be fair, that Rule 55(b)(2) was promulgated to protect "parties who, although delaying in a formal sense by failing to file pleadings within the twenty-one day period, have otherwise indicated to the moving party a clear purpose to defend the suit," *H.F. Livermore*, 432 F.2d at 691, and our traditional preference for resolution of cases on the merits while giving due consideration to practical requirements of judicial administration. *See Cotto*, 993 F.2d at 277-80; *Teamsters*, 953 F.2d at 19-21; *LeShore*, 945 F.2d at 472-73; *see also In Re Roxford Foods, Inc.*, 12 F.3d 875, 879-81 (9th Cir. 1993).

Before closing, we respond to an assertion raised by Appellee's counsel during oral argument to the effect that any appearance we found would apply only to P S, because the February 1 letter only

EXHIBIT 080

referred to P S. We disagree. Admittedly the February 1 letter states that Appellee will forbear from filing a default motion based on *P S'* failure to answer, and makes no mention of the failure to answer by Sherman or Tablecloth. Nevertheless, we do not find Appellee's argument persuasive. The record reveals that (i) Fischer launched the settlement negotiations at Sherman's request; (ii) the February 1 letter refers to Sherman as well in its discussion; (iii) Sherman is the president of both Tablecloth and P S; and (iv) Appellee's Complaint grounds joint and several liability on Sherman and P S as guarantors of the promissory notes executed by Tablecloth, which are the basis for Appellee's collection action below. Accordingly, we find it reasonable to read the February 1 letter which "serve[d] to commence settlement negotiations with [Key Bank] in the [action below]" as being intended to speak for all of the named defendants.

## III. *CONCLUSION*

For the foregoing reasons, we reverse the district court's Order, and vacate the default judgment. We leave to the district court on remand to determine whether, in the circumstances, there exists a basis for setting aside the entry of default pursuant to Fed.R.Civ.P. 55(c), and whether Appellants should accordingly be permitted to file a late responsive pleading.[13] While we disapprove of Appellee's behavior, we note Appellants' apparent inattention to negotiations and to the case below during the mid-February to July hiatus in communications. Consequently, we decline to award costs to Appellants.

> 13 Should the district court on remand find no basis for removing the default under Rule 55(c), a new proceeding as to the proper amount of damages would then be in order.

*Reversed and remanded.*

357 *357


8

EXHIBIT 080

No. 88-3952. Summary Calendar
United States Court of Appeals, Fifth Circuit

# Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n

874 F.2d 274 (5th Cir. 1989)
Decided Jun 2, 1989

No. 88-3952. Summary Calendar.

275 June 2, 1989. *275

Dwight Doskey, Cherbonnier, Ohlmeyer Doskey, Harvey, La., for plaintiff.

William E. Wright, Jr., Gary J. Giepert, New Orleans, La., for Pelican.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before RUBIN, GARWOOD, and DAVIS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue is whether a corporate defendant in a suit "appeared" in the action, within the meaning of Federal Rule of Civil Procedure 55(b)(2), when it mailed a motion to dismiss to the clerk of court and sent a copy to plaintiff's counsel, but the clerk refused to file it and returned it to the party because the motion did not comply with local rules. We hold that this mailing constituted an appearance and that a default judgment should not have been entered without three-days notice to the defendant.

## I.

Sun Bank of Ocala sued First Financial of Louisiana Savings and Loan Association on a letter of credit that First Financial had issued to it, alleging that, in reliance on the letter of credit, it had loaned approximately $500,000 to Double Development, Inc. and American First Mortgage Funding Corporation. The successor in interest to

First Financial, Pelican Homestead and Savings Association, filed a third-party complaint seeking indemnification from various parties, including American. On February 24, 1988, in accordance with the Louisiana Long Arm statute, Pelican served its complaint on American, which is domiciled in Florida.

Meanwhile, on January 18, 1988, the President of American, Charles DeMenzes, wrote the trial judge that he was attempting to retain counsel in New Orleans, but had not met with much success and, therefore, requested additional time to engage counsel. DeMenzes also wrote to counsel for Pelican informing him of American's efforts to obtain counsel, and several New Orleans lawyers subsequently communicated with Pelican's lawyer confirming these discussions. American never retained, however, any of the attorneys, and each attorney notified Pelican's counsel that he would not be acting for American. On June 14, pursuant to Pelican's request, the clerk of court entered a default against American because it had been served but had not answered within the time allowed by law. Neither the clerk nor the court, however, rendered judgment at this time.

On June 14, Pelican took DeMenzes' deposition at Ocala, Florida, where he was represented by local counsel. While DeMenzes never revealed in deposition that he planned to oppose the third-party demand, his deposition would have been unnecessary if judgment against American were to have been taken by default.

1

EXHIBIT 081

In July, 1988, DeMenzes, appearing *pro se* on American's behalf, mailed to the office of the clerk of court for the Eastern District of Louisiana a document captioned "Motion to Dismiss" and another document captioned "Memorandum in Support of Motion to Dismiss," and sent a copy of each document to Pelican's attorney. The clerk returned the original documents to DeMenzes with a letter stating that American had not complied with Local Rule 3.2 of the Eastern District of Louisiana, which requires that any motion be accompanied by a formal order setting the motion for hearing. *276 American made no attempt to refile the motion.

On August 16, 1988, Pelican filed a motion for a default judgment without providing notice to American. The district court entered judgment. Thereafter, American filed a motion to set aside the judgment, which the district court denied.

## II.

A defendant in federal court is entitled to an adequate opportunity to present a defense without suffering a possible default judgment. Fed.R.Civ.P. Rule 55(a) permits a default against a party when it "has failed to plead or otherwise defend" itself. Rule 55(b)(1) permits judgment by default to be entered by the clerk upon certain conditions. Rule 55(b)(2) requires, however, that the court, not the clerk, enter a default judgment "[i]f the party against whom judgment by default is sought has appeared in the action." In that event, the party "shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."

The Federal Rules of Civil Procedure are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver. Default judgments are a drastic remedy, not favored by the Federal Rules[1] and resorted to by courts only in extreme situations.[2] As the District of Columbia

Circuit has stated, they are "available only when the adversary process has been halted because of an essentially unresponsive party."[3]

> [1]  10 Wright, Miller Kane, Federal Practice and Procedure § 2681, p. 402-406.
>
> [2]  *Charlton L. Davis v. P.C. v. Fedder Data Center,* 556 F.2d 308, 309 (5th Cir. 1977); *E.F. Hutton Co., Inc. v. Moffatt,* 460 F.2d 284, 285 (5th Cir. 1972).
>
> [3]  *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C. Cir. 1970).

What constitutes an "appear[ance]" under Rule 55(b)(2), thus requiring both three-days notice and the entry of judgment by the court, is not, therefore, confined to physical appearances in court or the actual filing of a document in the record.[4] As Moore's treatise observes, "'[a]ppearance' is defined broadly ... to include a variety of informal acts on defendant's part which are responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim."[5] Thus, courts have held that a letter from a defendant's counsel to plaintiff's counsel and a telephone conversation between them, in both of which the defendant's lawyer indicated an intention to defend the suit, sufficed as an appearance under Rule 55(b)(2).[6]

> [4]  *See Lutomski v. Panther Valley Coin Exchange,* 653 F.2d 270, 271 (6th Cir. 1981); *H.F. Livermore Corp.,* 432 F.2d at 691; 6 Moore's Federal Practice ¶ 55.05[3], pp. 55-27; 10 Wright, Miller, and Kane, Federal Practice and Procedure § 2686, pp. 432-34; *cf. Baez v. S.S. Kresge Co.,* 518 F.2d 349, 350 (5th Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).
>
> [5]  6 Moore's Federal Practice ¶ 55-05[3], p 55-27.

EXHIBIT 081

6  *Charlton L. Davis,* 556 F.2d at 309; *H.F. Livermore Corp.,* 432 F.2d at 691-92; *Dalminter, Inc. v. Jessie Edwards, Inc.,* 27 F.R.D. 491, 492-93 (S.D.Tex. 1961); *cf. Port-Wide Container Co. v. Interstate Maintenance Corp.,* 440 F.2d 1195, 1196 (3rd Cir. 1971).

This circuit has specifically refused to require a party to file documents in the record in order to have "appeared" under Rule 55(b)(2). In *Turner v. Salvatierra* [7] and in *Charlton L. Davis Co. P.C. v. Fedder Data Center, Inc.,* we held off-the-record communications by defendant's counsel sufficient to satisfy the rule. In denying American's motion to set aside the default judgment, the district court sought to distinguish both of these cases. In *Turner,* an answer had actually been filed to a first complaint, although not to the second, similar complaint. In *Charlton L. Davis,* however, nothing had been filed in the record, and we still held a letter from defendant's lawyer to plaintiff's lawyer and a telephone conversation between them sufficient to require three-days notice. *277 While the plaintiff in *Charlton L. Davis* sought the default in stealth, the operative principle of that decision is generally applicable: "notice under Rule 55 would have promptly resolved the matter" if "the plaintiff felt [that the defendant] was guilty of dilatory tactics and had no real defense."[8]

7  580 F.2d 199 (5th Cir. 1978).

8  *Charlton L. Davis,* 556 F.2d at 309.

Pelican's counsel had received by mail a copy of American's motion to dismiss, even though the clerk's office had refused to accept it. The filing of a motion to dismiss is normally considered to constitute an appearance,[9] and, in this case, it should have clearly conveyed to Pelican American's intent to contest the suit. As in *Charlton L. Davis,* therefore, "[t]he plaintiff knew" from the correspondence that the defendant "had a clear purpose to defend the suit," thus requiring compliance with the provisions of Rule 55(b)(2).

9  *Mason v. Utley,* 259 F.2d 484, 485 (9th Cir. 1958); *see also* 6 Moore's Federal Practice ¶ 55.05[3], p. 55-27.

The district court also found that American's behavior exhibited a "clear record of delay or contumacious conduct" sufficient to sustain a default judgment. The district court, however, gave no explanation of these findings, and we find nothing in the record to indicate such delay or contumacy as to obviate the need for simple notice.

We are aware of the burden that delay imposes on litigants, and of a busy trial court's need to maintain an efficient procedural regimen that provides for trial on the merits in those cases that warrant trial. Courts, however, can deal with obstinate and dilatory parties in a variety of ways, and judgment by default should not be the first resort. In a suit that had been in progress for months and in which counsel for Pelican was fully aware that American had evinced a desire to defend itself, counsel might well have observed the courtesy of a bygone day that is still, fortunately, practiced by some members of our profession, of simply advising American that, if it continued to fail to plead formally, Pelican would be obliged to request a judgment by default.

Pelican contends that American should at least be required to show that it has a meritorious defense before the default is set aside. That argument, upon which we intimate no opinion, may be made by motion for summary judgment if, after being given notice, American formally appears. American and its counsel should, of course, comply with Rule 11 in whatever documents it may file.

For these reasons the default judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

casetext

EXHIBIT 081



EXHIBIT 081