UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Daniel E. Hall

 v.              Case No. 20-cv-536-SE
                 Opinion No. 2023 DNH 054

Twitter, Inc.

O R D E R

  Title II of the Civil Rights Act of 1964, 42 U.S.C. § 1981, prohibits discrimination on the basis of race. But it does not protect against discrimination based on a person's political beliefs, even when those political beliefs are purportedly favored by a particular race. At bottom, that is what plaintiff Daniel Hall's complaint alleges: that defendant Twitter, Inc. suspended his account because of his conservative viewpoints, and that Twitter's action constitutes racial discrimination because he and the majority of conservatives are white. Case law directly contradicts that theory and, as such, Hall's § 1981 claim fails. So, too, do his other theories of liability against Twitter and the court therefore grants Twitter's motion to dismiss. Doc. no. 3.

Standard of Review

  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). Under this plausibility standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This pleading requirement demands "more than a sheer possibility that [the] defendant has acted unlawfully," or "facts that are merely consistent with [the] defendant's liability." Id. (quotation omitted). Although the complaint need not set forth detailed factual allegations, it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

In deciding a motion to dismiss, the court takes the non-conclusory factual allegations in the complaint as true and resolves reasonable inferences in favor of the nonmoving party. Doe v. Stonehill College, Inc., 55 F.4th 302, 316 (1st Cir. 2022). The court "may also consider facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss." Breiding v. Eversource Energy, 939 F.3d 47,

---

[1] Hall's complaint is 57 pages long and is accompanied by 429 pages of exhibits. Although a motion to dismiss is ordinarily based on the properly pleaded allegations in the complaint, exhibits attached to the complaint are considered part of the complaint for the purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

49 (1st Cir. 2019) (quotation omitted). When the plaintiff is a pro se litigant, the court construes his complaint liberally. Boivin v. Black, 225 F. 3d 36, 43 (1st Cir. 2000).

Background

Hall's relationship with Twitter began in March 2019 when he signed a Twitter user agreement for services through the website Twitter.com, under the pseudonym "Senza Vergogna."[2] Hall alleges that on December 5, 2019, Twitter banned him from using many of the services offered at Twitter.com. He states that he is still able to log into his Twitter.com account, @Basta_Lies, but his cover photograph is blocked out and his posted materials and followers are missing. Hall has learned that his account does not exist except to him.

The problems between Hall and Twitter began with a Tweet he posted in late 2019:

> If I had special powers I would reach through that video and Bitch slap that commie Bitch who is yelling like a 3-year old!!!

---

[2] In the exhibits submitted with his complaint, Hall's pseudonym is "Senza Vergogna" and his Twitter account is identified as "Senza Vergogna @ Basta_Lies." Hall identified himself as "Sensa Verogna" in his complaint filed in this case and in subsequent filings. The correct spelling of Hall's pseudonym is not material, however, because the court denied Hall's request to proceed under his pseudonym. Doc. no. 54.

Doc. no. 1, ¶ 18(a). In response, Twitter locked Hall's account on November 7, 2019, for seven days for violating Twitter's rules against hateful conduct and stated that:

> You may not promote violence against, threaten, or harass other people on the basis of race, ethnicity, national origin, sexual orientation, gender, gender identity, religious affiliation, age, disability, or serious disease.

Id. Twitter notified Hall "that repeated violations may lead to a permanent suspension of [his] account." Doc. no. 1-2 at 72.

Undeterred by Twitter's warning, Hall posted a Tweet, apparently aimed at a woman who was the subject of a Washington Post article about how President Trump had belittled her. Doc. no. 1-2 at 74. Hall wrote:

> Ya, let's all get all cutesy with a fkcn #Traitor who should be hung if found guilty!!

Doc. no. 1, ¶ 18(b). On December 5, 2019, Twitter permanently suspended Hall's account because he violated Twitter's rules against abuse and harassment and provided the following notice:

> You may not engage in the targeted harassment of someone, or incite other people to do so. This includes wishing or hoping that someone experiences physical harm.

Doc. no. 1-2 at 73. Twitter also notified Hall that "if you attempt to evade a permanent suspension by creating new accounts, we will suspend your new accounts." Id.

4

Hall appealed Twitter's decision to suspend his account, asserting that the cited Tweet did not violate Twitter's rules because it only recited the United States Code that a traitor who is found guilty of treason would or could be hung. Doc. no. 1-2 at 76. On December 7, 2019, Twitter notified Hall that his account would not be restored because his Tweets were in violation of the Twitter rules against targeted abuse. Doc. no. 1-2 at 79.

Hall filed the instant suit against Twitter in May 2020. Doc. no. 1. He alleges claims that Twitter's decision to suspend his account violated 42 U.S.C. § 1981 (Count I); Title II of the Civil Rights Act, 42 U.S.C. § 2000a, and RSA 354-A:17 (Count II); and his state and federal constitutional rights (Count III). Hall filed a series of motions for legal determinations about Twitter's status, requesting to be allowed to proceed anonymously, and other matters. The court largely denied Hall's motions. Doc. no. 54 & endorsed orders July 8, 2020, through September 28, 2020.

Hall then filed several interlocutory appeals. Doc. nos. 57, 63, 64, & 69. While Hall's appeals were pending, this court denied Twitter's motion to dismiss (doc. no. 3), along with other pending motions, without prejudice to the parties' right to renew the motions after the First Circuit Court of Appeals resolved Hall's interlocutory appeals. Endorsed Order March 8,

5

2021. Despite his pending appeals, Hall continued to file motions, which the court denied. Hall filed another interlocutory appeal on April 19, 2021, and an amended notice of interlocutory appeal on April 26, 2021. Doc. nos. 78 & 81. The First Circuit Court of Appeals affirmed the court's orders and dismissed Hall's remaining appeals, but Hall moved for rehearing. Doc. no. 87 & endorsed order Sept. 15, 2022. The First Circuit issued its mandate on Hall's interlocutory appeals on September 29, 2022, which allowed the case to proceed.[3]

As permitted, the parties then renewed several of their motions that the court had denied without prejudice pending resolution of the interlocutory appeals. Hall also moved for the recusal of the undersigned judge and to transfer the case to a different district. The court denied both motions. Endorsed Order Nov. 23, 2022. Hall filed an interlocutory appeal of the order denying those motions. Doc. no. 125. Hall then withdrew his appeal, and the First Circuit issued its mandate on January 5, 2023.

---

[3] Because of the possibility of the appearance of partiality after the merger of the law firm representing Twitter with another firm with whom the sitting judge, Judge McAuliffe, has a relationship, he recused himself from the case on October 11, 2022. See doc. no. 98. The case was then reassigned to the undersigned judge.

The court has ruled on all pending motions other than Twitter's renewed motion to dismiss. With Hall's most recent interlocutory appeal now resolved, the court turns to that motion.

## Discussion

In support of dismissal, Twitter argues that each Count fails to allege at least one necessary element. Twitter also contends that it is immune from Hall's claims under the Communications Decency Act ("CDA"), 47 U.S.C. § 230.[4] Hall disputes Twitter's arguments and contends that the court should permit his claims to proceed.

### I. Count I – Racial Discrimination in Violation of § 1981

In Count I, Hall alleges that Twitter violated the provisions of 42 U.S.C. § 1981 by discriminating against him on the basis of race, that is, "because he was white." Doc. no. 1, ¶¶ 141, 147. Twitter argues that Hall fails to allege any basis for racial discrimination.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in

---

[4] Alternatively, Twitter asks that the court transfer the case, or any part that remains after the court decides the motion to dismiss, to the Northern District of California.

every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."[5] An essential element of a viable claim of racial discrimination under § 1981 is that the defendant discriminated against the plaintiff on the basis of his or her race. See, e.g., Hammond v. Kmart Corp., 733 F.3d 360, 362 (1st Cir. 2013); Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002).

Although Hall acknowledges that he operated his Twitter account pseudonymously, he alleges that Twitter was aware that he was white because he espoused Republican and conservative viewpoints in his Tweets. His complaint cites a research study stating that "Republican and Republican-leaning voters continue to be overwhelmingly white: 83% of Republican registered voters are white non-Hispanics with conservative beliefs, similar to" his beliefs. Doc. no. 1, ¶ 23. He contends that because Republicans and conservative voters are largely white, the court can infer that Twitter was aware that Hall was white.[6] The court disagrees.

---

[5] The Supreme Court has held that § 1981 protects white persons, in addition to non-white persons, from discrimination. McDonald v. Santa Fe Trail Trans. Co., 427 U.S. 273, 287 (1976).

[6] In his objection, Hall notes that his Twitter account displayed a picture of a white man. Doc. no. 13-2, ¶ 28. It is unclear if Hall himself is displayed in the picture.

8

Moreover, even assuming that Hall's allegations supported the inference that Twitter knew he was white when it suspended his account, he has not alleged any facts to show that Twitter suspended his account because he is white. At best, Hall alleges that Twitter discriminated against him because of his political beliefs, and that those beliefs are overwhelmingly held by white individuals. Section "1981, however generously construed, does not prohibit discrimination on the basis of political affiliation." Keating v. Carey, 706 F.2d 377, 384 (2d Cir. 1983); see Dartmouth Rev. v. Dartmouth Coll., 709 F. Supp. 32, 37 (D.N.H. 1989), aff'd, 889 F.2d 13 (1st Cir. 1989). Instead, "to sufficiently state a claim under § 1981, plaintiffs must allege some facts that demonstrate that their race was the reason for defendants' actions." Dartmouth Rev., 709 F. Supp. at 36 (quotation and alterations omitted). Viewing Hall's complaint generously, he has not done so.

In sum, Hall has failed to allege that Twitter discriminated against him on the basis of his race. Therefore, the court dismisses his claim in Count I.

II. Count II – Racial Discrimination in Violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, and RSA 354-A:17

In Count II, Hall alleges that Twitter discriminated against him by suspending his account because he is white in

9

violation of the Civil Rights Act of 1964, § 2000a, as well as New Hampshire's Law Against Discrimination, New Hampshire Revised Statute Annotated ("RSA") 354-A:17. At the outset, Hall's racial discrimination claims in Count II suffer from the same failure as his racial discrimination claim in Count I: he fails to allege that Twitter suspended his account because he is white.

Hall's claims in Count II fail for an additional reason, as Twitter argues in its motion to dismiss: both the Civil Rights Act of 1964 and RSA 354-A:17 prohibit racial discrimination in places of "public accommodation." See, e.g., Selden v. Airbnb, Inc., 4 F.4th 148, 154 (D.C. Cir. 2021) ("Title II of the Civil Rights Act of 1964 . . . (codified at 42 U.S.C. § 2000a) . . . prohibits discrimination on the basis of race in public accommodations."); Brady v. Weeks Med. Ctr., No. 19-cv-655-SM, 2019 WL 6529870, at *4 (D.N.H. Nov. 12, 2019) (stating New Hampshire's Law Against Discrimination, RSA 354-A:17, protects the right of every individual to have equal access to places of public accommodation and prohibits discriminatory practices based on race). Companies, including Twitter, that provide only online services, however, are not places of public accommodation for the purposes of Title II of the Civil Rights Act of 1964, § 2000a. See, e.g., Lewis v. Google LLC, 851 F. App'x 723, 724 (9th Cir. 2021), cert. denied, 142 S. Ct. 434 (2021); Elansari

v. Meta, Inc., No. 21-5325, 2022 WL 4635860, at *3 (E.D. Pa. Sept. 30, 2022); Martillo v. Twitter Inc., No. 21-11119-RGS, 2021 WL 8999587, at *1 (D. Mass. Oct. 15, 2021).

The New Hampshire Supreme Court has not had occasion to address the meaning of public accommodation in this context. But when construing RSA 354-A, the New Hampshire Supreme Court has looked to the way federal courts interpret the Civil Rights Act of 1964. See Burnap v. Somersworth Sch. Dist., 172 N.H. 632, 636–37 (2019) ("In interpreting RSA chapter 354-A, we are aided by the experience of the federal courts in construing the similar provisions of Title VII of the 1964 Civil Rights Act." (citation omitted)). Therefore, the court also looks to federal guidance as to the proper interpretation of RSA 354-A and concludes that Twitter is not a place of public accommodation under that statute.

Because Twitter is not a place of public accommodation, and because Hall does not allege facts sufficient to establish that Twitter was motivated by his race, Hall cannot show that Twitter violated § 2000a or RSA 354-A:17. The court therefore dismisses Count II.

III. Count III – Violation of State and Federal Constitutional Rights

Hall alleges that Twitter suspended his account because of

11

the content of his Tweets in violation of his right to free speech, expression, and assembly under the First Amendment of the United States Constitution and Part I, Articles 22 and 32 of the New Hampshire Constitution. He also asserts violation of his rights to due process and equal protection under both constitutions.

The First Amendment protections, along with the Fourteenth Amendment protections for due process and equal protection, apply only against governmental action, that is, restrictions or discrimination imposed by state actors. 42 U.S.C. § 1983; Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir. 2013); see also Jarvis v. Village Gun Shop, Inc, 805 F.3d 1, 8 (1st Cir. 2015). Governmental action is also a required element of a claim under the New Hampshire Constitution. HippoPress, LLC v. SMG, 150 N.H. 304, 308 (2003). As Twitter argues, it is a private company, not a government or state actor, and Hall has not shown that the state action doctrine would apply in the circumstances of this case. See, e.g., O'Handley v. Weber, No. 22-15071, 2023 WL 2443073, at *4-5 (9th Cir. Mar. 10, 2023); Berenson v. Twitter, Inc., No. C 21-09818 WHA, 2022 WL 1289049, at *3 (N.D. Cal. Apr. 29, 2022); Freedom Watch, Inc. v. Google, Inc., 368 F. Supp. 3d 30, 40-41 (D.D.C. 2019), aff'd, 816 F. App'x 497 (D.C. Cir. 2020).

Because Twitter is not a state actor, Hall does not state viable claims for constitutional violations as alleged in Count III. Therefore, the court dismisses that Count.

## IV. Result

For the reasons stated above, the court dismisses Hall's claims on the merits. Therefore, there is no need to address Twitter's defense based on immunity under § 230 or the other defenses raised. Also, because the case is dismissed, the court will not address that part of the motion seeking to transfer the case to the Norther District of California.

## Conclusion

For the foregoing reasons, Twitter's motion to dismiss (document no. 3) is granted. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

May 9, 2023

cc: Daniel E. Hall, pro se.
    Counsel of record.