IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Daniel E. Hall, Hall,<br>     v.<br>Twitter Inc., Defendant. | Case No. 1:20-cv-536-SE |

### HALL'S RULE 60(b) MOTION TO VOID JUDGMENTS

1. Pursuant to Fed. R. Civ. P. 60(b), Hall, Daniel E. "Hall" motions to void all the Court's Orders and Judgments, on the grounds that the United States District Court for the District of New Hampshire failed to provide an unbiased tribunal and on the grounds of fraud by the defendant Twitter.

2. Having demonstrated strong evidence the Court misinterpreted Hall's Complaint or otherwise misapplied the facts to the law, through his Rule 59(e) motion, his Rule 60 motion, and through this Rule 60 motion, demonstrate the Court; (1) utilized illegal policies when determining Hall's motion to Strike when it failed to consider substantive State Laws, (2) and all three judges displayed a bias in favor of the defendant Twitter, (3) Twitter has made numerous misrepresentations, omissions so as to form a pattern of fraud before the Court, vacating and voiding the Order(s) and judgment will not be an empty exercise." Bouret–Echevarria, 784 F.3d at 46 (quoting Superline, 953 F.2d at 20). Twitter will not suffer any prejudice from the restoration of the [D. 1] Complaint, which this court has erroneously and prematurely dismissed.

**Magistrate Johnstone-**

3. Starting on April 26, 2018, "Magistrate Johnstone" was, on a continuous basis, intentionally ignoring New Hampshire law and established official court pro hac vice rules, and

instead promulged, implemented, managed and adopted her own non-public alternative admission procedures, within her administrative case management duties, that make pro hac vice laws and rule provisions unnecessary and for the specific reason of, allowing partner attorneys from the law firm of Perkins Coie, LLP. "COIE", Ryan "Mrazik" and Julie "Schwartz", the privilege of practicing before the Court although they lacked the requirements of eligibility set forth in Local Rule 83.2 and in violation of New Hampshire State RSA 311:7 and all to the benefit of the defendant, Twitter.

4. Magistrate Johnstone's unwritten, illegal pro hac vice "unofficial policies", allowed COIE and partner attorneys of COIE, on 68 separate occasions, the privilege of practicing before the Court, even though these attorneys lacked any of the requirements of eligibility demanded under Local Rules 83.1 and 83.2 to practice before the Court and in violation of New Hampshire Statute 311:7. Magistrate Johnstone assumed case management duties in all these cases, including Hall's.

5. In case number 1:17-cv-00749-JD, Magistrate Johnstone's unofficial pro hac vice policies allowed COIE attorney Mrazik to file the following on behalf of and as counsel for "Google" Inc., "YouTube", Inc. and "Twitter", Inc., on 6 separate occasions. [See Hall's Attached Exhibit 002-008]. Judge Joseph A. DiClerico, Jr presiding.

6. In case number 1:18-cv-00203-PB, Magistrate Johnstone's unofficial pro hac vice policies allowed COIE attorney Mrazik to file the following on behalf of and as counsel for Google, YouTube, and Twitter, on 30 separate occasions. [See id. 002, 009-038]. Judge Paul J. Barbadoro presiding.

7. In case number 1:17-cv-00733-PB, Magistrate Johnstone's unofficial pro hac vice policies allowed COIE attorney Mrazik to file the following on behalf of and as counsel for Google,

YouTube, and Twitter, on 31 separate occasions. [See id. 002, 039-69], Judge Paul J. Barbadoro presiding.

8. In Hall's case, Magistrate Johnstone's unofficial pro hac vice policies allowed COIE attorney Schwartz to file the following on behalf of Twitter, Inc.. Exhibit 070 June 1, 2020, Document 3, Twitter Motion to Dismiss. [See id. 002 and 070]. Steven J. McAuliffe presiding.

9. Magistrate Johnstone, in her official capacity and within her administrative duties; (1) implemented and executed an illegal policy that was officially and informally adopted as custom by the District Court. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Monell, 436 U.S. 658). (2) was the final policymaking authority when it came to implementing or deciding Pro Hac Vice policies. Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83 (1986). (3) was a federal official, in her individual, legislative and administrative capacities intentionally caused constitutional torts under color of her authority.

10. Magistrate Johnstone, who was given the task of preliminary case review and pre-trial adjudication authorization by the court, was active in Hall's case to which Schwartz was a participant, as well as all cases in which Mrazik practiced unauthorized practice of law "UPL", in the District Court.

11. Hall was denied the services of a Magistrate Judge in this case as Magistrate Johnstone was, in fact, bias in favor of Twitter, and when she held that there would be no pretrial conference in her June 3, 2020, Order.

12. Magistrate Johnstone's was duty-bound to at the very least disclose her unofficial policies to Hall and failed in those duties owed Hall.

13. Magistrate Johnstone who, through bias, unofficial policies or outright corruption, prevented Hall from getting a fair proceeding in the District Court.

14.    In all these cases, to which Exhibits 002-070 were introduced to the Court, both Mrazik and Schwartz invoked the processes of the Court in a matter pending before it, exercising their legal training and judgment concerning the impact of Hall's pleadings upon Twitter. [See Hall's Exhibits 002-070]. These actions constituted UPL. When Mrazik and Schwartz appeared before the Court of record for the purpose of transacting business with the court in connection with Twitter's pending litigation or when Mrazik and Schwartz sought to invoke the processes of the Court in a matter pending before it, both were engaging in the practice of law. It is uniformly held that many of activities which Mrazik and Schwartz participated in and advised Twitter, such as writing and interpreting contracts, agreements and the giving of legal advice in general, constitute practicing law in New Hampshire. Ark. Bar Assoc. v. Union Nat'l Bank, 224 Ark. 48, 53-54, 273 S.W.2d 408, 411-412 (1954). Additionally, neither Mrazik nor Schwartz obtained permission to appear pro hac vice and therefore had engaged in the UPL when appearing before the Court and acted as officers of the court and were rendering a service to the Court.

15.    Twitter hired COIE, Mrazik and Schwartz to represent its interests in New Hampshire Federal Court cases and constitute the UPL, including within the interpretation of New Hampshire laws.

16.    Attorney Mrazik did not apply to the Court, on the record, in any of these cases. It is undisputed that Attorney Schwartz did not apply to the Court until June 8, 2020, one week after her motion to dismiss was filed. Applying to the Court is only the preliminary step to being granted pro hac vice status.

17.    Attorneys Mrazik and Schwartz, who were not at the time members of the district's bar, must and failed to complete any of the requirements prior to appearing before the Court.

18. The act of giving favors or privilege(s) to appear and plead before the Court to Twitter and their attorneys when they are not entitled too, is non-judicial because it does not require an exercise of judicial discretion or a determination of the parties' rights and are therefore ministerial, administrative, or legislative acts. Acts typically, a layperson could perform. Acts not to be confused with the act of adjudicating a pro hac vice motion entitling them to a judgement, after an objection.

19. Magistrate Johnstone was duty-bound to at the very least disclose to Hall her unofficial policies or that Orders would be based upon her illegal policy which allowed Schwartz to practice unauthorized before the court, and failed in those duties owed Hall.

**Judge McAuliffe-**

20. Judge McAuliffe's 7/08/2020 Order failed to apply state substantive law and only federal rules for procedural matters in a diversity case, as prescribed by 28 U.S. Code § 1652.

21. Judge McAuliffe's 7/08/2020 Order applied Magistrate Johnstone's illegal and unconstitutional policy instead of substantive state laws. .

22. Judge McAuliffe's 9/21/2020 Order was an act taken in complete absence of any jurisdiction and a clear violation of Hall's Fifth Amendment rights to Due Process as McAuliffe was in fact notified [See Dkt. 56] that Hall intended to file his Appeal and Notice to the Court by Sept. 28, 2020, and therefore the Court lacked any subject matter jurisdiction as no mandate had returned from the Appeals Court for this very issue. [See Dkt. 61].

23. Judge McAuliffe's 9/28/2020 Order dismissing Hall's Complaint was an act taken in complete absence of any jurisdiction and a clear violation of Hall's Seventh Amendment guarantees the right to a jury trial in suits at common law, where the value in controversy exceeded twenty dollars.

24. Judge McAuliffe's 03/08/2021 Order denying (D. 14 and 46), to renewing them following resolution of Hall's interlocutory appeal, failed to apply state substantive law and only federal rules for procedural matters in a diversity case, as prescribed by 28 U.S. Code § 1652.

25. Judge McAuliffe's 8/29/2022 Order was an act taken in complete absence of any jurisdiction and a clear violation of Hall's Fifth Amendment rights to Due Process as McAuliffe was in fact notified [D. 56] that Hall intended to file his Appeal and Notice to the Court by Sept. 28, 2020, and therefore the Court lacked any subject matter jurisdiction as no mandate had returned from the Appeals Court for this very issue. [See D. 90].

26. Judge McAuliffe was duty-bound to at the very least disclose to Hall Johnstone's unofficial policies or that Orders would be based upon Johnstone's illegal policy to allow Schwartz to practice unauthorized before the court, and failed in those duties owed Hall.

**Judge Elliot-**

27. While a member of the Judicial Commission to re-appoint Magistrate Johnstone, Judge Elliot was aware of the material facts of Hall's complaints concerning Magistrate Johnstone's illegal policy through her administrative position. Her participation in the Commission influenced her decision, judges have an obligation to maintain an appearance of impartiality that goes beyond mere actual impartiality.

28. Judge Elliot's "D. 124 Order" failed to apply state substantive law and only federal rules for procedural matters in a diversity case, as prescribed by 28 U.S. Code § 1652.

29. Judge Elliot's "D. 124 Order" applied Magistrate Johnstone's unconstitutional and illegal policy instead of following substantive state laws.

30. Judge Elliot's "D. 139 Order" dismissing Hall's Complaint was an act taken in complete absence of any jurisdiction and a clear violation of Hall's Seventh Amendment guarantees the right to a jury trial in suits at common law, where the value in controversy exceeded twenty dollars.

31. Judge Elliot's "D. 139 Order" dismissing Hall's Complaint was an act taken in complete absence of any jurisdiction and a clear violation of Hall's Fifth Amendment rights to Due Process as Judge Elliot should have recused herself.

32. Because Judge Elliot was disqualified under § 455 at the time she entered each of her orders and judgment in favor of Twitter, they should be set aside.  See Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 850-51 (1988).

**Defendant Twitter-**

33. Twitter submitted pleadings to the Court, with the intent to deceive, mislead and steer the arguments so that any proceeding order by Judges McAuliffe or Johnstone would appear on its face to be legitimate and not preconceived which include;

(1) illegally submitting a motion to dismiss [D. 3] through an attorney not authorized to practice law at the bar of the Court, fully expecting to enjoy the privileges of Johnstone's illegal policies.

(2) submitting an [Objection, at 17], [MOL, at 17.1], [Objection, at 18.1], and [MOL, at 18.1], which put forth material misrepresentations that adequate that notice under Fed. Rule 55(b) satisfies a Fed. Rule 55(a) pleading or defense, that there was no basis to disregard Twitter's [D. 3] submittal on behalf of Twitter, and provided no Rule 12 arguments or case law in support thereof. [Doc. 17-1, at 2.] In their objection Twitter provides absolutely no case law in support of this Fed. Rule 55(a) theory which is also contradicted Eck's e-mail statement and Schwartz', [D. 9] pro hac vice application.

(3) submitting an [Objection MOL, at 22-1], which put forth material misrepresentations that Schwartz's submittal of the [D. 3] while not a member of the bar is "highly typical practice" and "did not constitute unauthorized practice of law".

(4) submitting an [Objection, at 25] which put forth material misrepresentations or phony arguments that Schwartz' actions of submitting the [D. 3] Motion when she was ineligible and unauthorized were "typical practice" and "consistent with New Hampshire's Rules of Professional Responsibility. N.H. Rule 5.5(c)(2)" when in fact, under paragraph 5.5(c)(2), to the extent that a court rule or other law of this jurisdiction requires a lawyer who is not admitted to practice in this jurisdiction to obtain admission pro hac vice before appearing before a tribunal or administrative agency, this Rule requires the lawyer to obtain that authority, which Schwartz did not, prior to her [D. 3] submittal on behalf of Twitter, and in direct contradiction to Eck's admittance of those facts in his e-mail and in contradiction to Schwartz' and Eck's acknowledgement in its [Objection, at 22], when acknowledging that Schwartz did not even apply for Pro Hac Vice until a week after submitting the [D. 3] motion.

(5) submitting an [Objection, at 43], an [Objection, at 44], and an [Objection, at 53], which put forth material misrepresentations and bogus arguments that adequate notice under Fed. Rule 55(b) satisfies a Fed. Rule 55(a) pleading or defense.

(6) submitting an [Objection, at 50], which put forth material misrepresentations that; (1) falsely describe Hall's [Default Motion, at 7] and [Judicial Notice Motion, at 42] as advocating that "Twitter's Motion to Dismiss does not qualify as an "appearance", when in fact, Hall advocated that "Twitter has failed to plead or otherwise defend the [Complaint, at 1]", because it was illegal and nonconforming to the rules; (2) falsely describing Hall's [Judicial Notice Motion, at 42], as advocating that "Twitter's Motion to Dismiss does not qualify as an "appearance", when

in fact, Hall advocated and sought the opposite and notice of the fact that "Attorney Schwartz's motion at [D. 3] is defined as an appearance before the Court".

(7) submitting to the Appeals Court in case Case: 20-1933, a Response to Hall's motion to partially stay the proceedings in the Court, in which Twitter attempted to mislead the Appeals Court on evidentiary and legal points, and purposely made material misrepresentations regarding issues before the Appeals Court, in stating that; (1) "[T]he only "evidence" before the Court was Appellant's purely speculative declaration", when the record reflected that the "evidence" was not speculative, but undisputed, and when referring to the Court's August 28, 2020, order that (2) "Appellant's request for anonymity focused only on the "reasonable fear" factor", when in fact the order infers that the Appellant focuses much attention and certainly doesn't infer it was the only one argument made concerning the Megless Doctrine prerequisites as pronounced and misleadingly advanced by Twitter.

(8) submitting an [Objection, at 106] which put forth material misrepresentations that Hall was "once again attempting to relitigate issues that have been already decided, when the Court had never answered Hall's original [Strike motion, at 14].

(9) submitting an [Objection, at 106], [Objection, at 107], [Objection, at 108], which put forth material misrepresentations that; (a) Hall "does not set forth any new factual or legal grounds for such relief", when Hall put forth the additional allegations of fraud (b) adequate notice under Fed. Rule 55(b) satisfies a Fed. Rule 55(a) pleading or defense, (c) Johnstone's illegal policy was devised to approve any pro hac "application", when Hall alleged that Johnstone's illegal policies were administered so that the application process would be non-existent.

33.     Twitter via it's attorneys, was duty-bound to at the very least disclose to Hall Johnstone's unofficial policies and the past favors the Court had granted Twitter in the past, and failed to disclose those facts to Hall.

**Hall's Due Process Rights-**

34.     Although the Fifth Amendment Due Process Clause is brief, important parts of the Supreme Court's constitutional doctrine rest on it. At the most general level, the clause reiterates the principle of the rule of law: the government must act in accordance with legal rules and not contrary to them. A more specific application of the Clause is the doctrine today called "procedural due process," which concerns the fairness and lawfulness of decision-making methods used by the courts and the executive. Governmental actors violate due process when they frustrate the fairness of proceedings, such as when a judge is biased against a party in a civil action. Likewise, fair notice and the opportunity to be heard are due process requirements in criminal, civil, and other proceedings.

35.     Another, more controversial application of the Clause is the doctrine today called "substantive due process," which extends beyond the methods government institutions use to make decisions, and places substantive limits on governmental authority. There are long-standing debates regarding whether the text and history of the Fifth Amendment Due Process Clause support the concept of "substantive due process" that has been embraced by most of the current Supreme Court justices in varying degrees. These differences of opinion necessarily are informed by interpretations of the meaning and relevance of the historical evidence, the meaning of the words used by the Framers in the Clause and whose understanding of that meaning is relevant, and more fundamental views of whether the meaning of the Constitution was fixed when written or can change over time. Despite the lack of consensus over the scope of substantive due process, the

meaning of the Fifth Amendment Due Process Clause in the procedural context is relatively settled as a matter of Supreme Court jurisprudence.

36. Although both the Fifth and Fourteenth Amendments have Due Process Clauses (the Fifth Amendment Due Process Clause constraining the authority of the federal government and the identical Due Process Clause of the Fourteenth Amendment constraining only state governments), there is only one Equal Protection Clause, and it applies only to the States. The Court has also found that the Due Process Clause of the Fifth Amendment imposes on the federal government restrictions that are almost identical to those imposed on the States by the Equal Protection Clause of the Fourteenth Amendment.

37. Access to the courts is a fundamental right protected by the Constitution. Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953, 959 (6th Cir.1986). Hall was denied Due Process under the Fifth Amendment, which at a minimum requires an impartial tribunal. Mullane v. Central Hanover Bank (1950).

38. The right to an impartial judge is based on the Due Process Clause of the United States Constitution and is expressly set forth in many state constitutions.[1] In addition, state codes of judicial conduct require that judges be impartial.

39. The Supreme Court has deemed the due process guarantees of the Fifth and Fourteenth Amendments to protect certain substantive rights that are not listed (or "enumerated") in the Constitution. The idea is that certain liberties are so important that they cannot be infringed without a compelling reason no matter how much process is given.

---

[1] See U.S. Constitution, Amend. XIV, § 1 ("No state shall . . . deprive any person of life, liberty, or property, without due process of law[.]"). See, e.g., MA Const., art. XXIX, § 1 ("[I]t is the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit.").

40. The Seventh Amendment guarantees the right to a jury trial in suits "at common law, where the value in controversy shall exceed twenty dollars." Despite the reference to suits "at common law," it is settled that the "right to a jury trial includes more than common law forms of action recognized in 1791" when the Seventh Amendment was adopted, and "extends to causes of action created by Congress." The reference to "common law" suits refers to suits for legal, i.e., monetary, as opposed to equitable relief. The federal Constitution guarantees the right to jury trial in civil actions in federal courts. See U.S. Const. amend VII.

41. The term "due process of law," when applied to judicial proceedings, means a course of legal proceedings according to those rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. Pennoyer v. Neff, 95 U.S. 714 (1878).

42. Hall had a right to due process and the privilege of being able to bring constitutional torts to this federal court and in front of a jury, and was denied this right.

**Discussion-**

43. Judge Johnstone's self-promulgated unofficial pro hac vice policies, intentionally;

(1) circumvented the District Courts prescribed local rules governing practice and procedure which are governed by both statute and the Federal Rules of Practice and Procedure to benefit the Defendant in Hall's case. 28 U.S.C. §§ 2071(a)-(b); Fed. R. Civ. P. 83.2.

(2) were inconsistent and contrary with both Acts of Congress and the Federal Rules of Practice and Procedure as they were not prescribed; (a) by the U.S. Supreme Court under the Rules Enabling Act of 1934; (b) through recommendations from the Rules Advisory Committee. 28 U.S.C. § 2071(b) ("Any rule prescribed by a court, other than the Supreme Court, under subsection (a) shall be prescribed only after giving appropriate public notice and an opportunity for

comment."); or (c) after notice and an opportunity for bench, bar, and general public, comments; or (d) by the District Court who*, has never determined that there was an immediate need for these unofficial policies, and to date the District Court has not*, filed any such notice or opportunity for comment as prescribed by § 2071(e) regarding these unofficial policies. (*according to Public Court records).

(3) were inconsistent with current laws, contrary to the rules announced by the judiciary, and were not governed in their operation by rules of procedure.

(4) denied the existence of general law N.H. RSA 311:7.

(5) usurped and preempted the power of the governing state authority when it passed judgment contrary to the wisdom and efficacy of N.H. RSA 311:7.

(6) were substantially biased in favor of COIE partner attorneys and the Defendant Twitter.

44. Procedural due process," which concerns the fairness and lawfulness of decision-making methods used by the courts and the executive. Governmental actors violate due process when they frustrate the fairness of proceedings, such as when a judge is biased against a party in a civil action. Likewise, fair notice and the opportunity to be heard are due process requirements in criminal, civil, and other proceedings.

**The Orders and Judgment are Void-**

45. In considering whether a judgment should be set aside because it is a nullity, there is no discretion in the trial court. If a judgment is void it must be vacated.

46. The Court, through the actions of these three Judges, acted in a manner inconsistent with due process of law, and therefore it's judgments are void. See: Wright and Miller, Federal Practice and Procedure: Civil, § 2862, pp. 199-200.

47. The Court and it's Judges have demonstrated actual bias in favor of the Defendant Twitter, utilized unofficial policies in their decision making, and acted in a manner inconsistent with due process of law. The rendering of these judgments, preconceived in Twitter's favor, were reached without due process of law, are without jurisdiction and are void as the United States is forbidden by the fundamental law to take either life, liberty or property without due process of law, and its courts are included in this prohibition. Bass v. Hoagland, 172 F.2d 205 (5th Cir. 1949).

48. The fairness and lawfulness of the decision-making methods used by the Court violated due process because they frustrated the fairness of proceedings, such as when Magistrate Johnstone used illegal policies to favor Twitter, or Judge McAuliffe's bias through his unlawful orders, or the unofficial policies which were utilized and promoted to give favors to Twitter, instead of using the rules and the rule of law, and Judge Elliot's failure to recuse herself and failing to apply substantive state laws.

49. The DOJ failed to properly supervise all three judges and allowed the illegal acts to ferment into an illegal policy and bias which was administered by the Court. City of Canton v. Harris, 489 U.S. 378, 388 (1989).

**Conclusion-**

50. There is enough evidence to support a claim that;

(1) the Court and its justices allowed COIE and partner attorneys of COIE, on 68 separate occasions, the privilege of practicing before the Court, even though these out-of-state attorneys lacked any of the requirements of eligibility and that this Court was, in fact biased in favor of the Defendant Twitter, which, by virtue of Schwartz attempting to utilize Johnstone's policy, permeating Hall's case.

(2) Hall's Motions for Default [D. 7] and [D.101] and Hall's Strike Motions [D. 14] and [D. 100]; (a) were decided utilizing Johnstone's unofficial policies and not official policies of the Court. (b) were contrary to law, biased in fact and based on unofficial policies and not by rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. (c) that the Court was compromised or predisposed to being biased in favor of Defendant. If it had decided in favor of Hall, Johnstone's unofficial policies would then be revealed to the public as Twitter would argue that the Court has allowed them the privilege of appearing 68 times, prior, despite lacking any of the requirements of eligibility. (d) were decided upon information outside the case that had a direct bearing on the Courts decisions. (e ) the Court was predisposed so as to protect itself.

(3) the Courts' demonstratable bias permeated ALL the Orders of the Court.

(4) Johnstone lacked the authority to promulgate unofficial policies, by herself, that would favor the Defendant Twitter and it's attorneys.

(5) Johnstone's unofficial policies are unconstitutional.

(6) Johnstone's unofficial policies were not authorized by statute, operated with no restrictions, unlimited power, and without any established standards to govern its exercise, and were not disclosed to Hall by either the Judges or the defendant.

(7) that Hall did not receive a fair opportunity to present his claims in any of these proceedings as the judge or tribunal were not impartial.

(8) the rules used did not come from official channels and therefore are unconstitutional and a violation of Halls rights to equal protection and due process.

51. Both Judges, McAuliffe and Elliot: (1) failed to adhere to the law strictly and contrary to the facts present in this case; (2) usurped judicial power as he was acting beyond his jurisdiction;

(3) ignored the facts presented; (4) ignored Eck's e-mail statements of admittance; (5) ignored Schwartz statements of admittance; (6) was not based on facts in the record; (7) ignored established State Law; (8) was reached without due process of law and a fair tribunal; (9) is unconstitutional and therefore void; (10) was ultra vires or "invalid". (11) was made without subject matter jurisdiction; (12) failed to apply or even acknowledge the framework governing declaratory judgments' (13) failed to be constrained by widely agreed upon legal canons of construction; (14) was a deliberate act interfering with the disposition of Hall's claims; (15) extended the entire course of litigation; (16) prejudiced Hall severely and undeservingly; (17) was decided upon information outside the 4 corners of the case; (18) violated Hall's substantive due process rights by exceeding its judicial authority; (19) violated Hall's procedural due process rights by failing to ensure that the adjudication process, under valid laws and rules, was fair and impartial.

52. Judge Elliot was aware of the material facts of Hall's complaints concerning Magistrate Johnstone's illegal policy through her administrative position and then ignored substantive State Laws and the material facts of Magistrate Johnstone's illegal policies when resolving issues in this case. Judge Elliot also dismissed the case when she had notice Hall was pursuing Mandamus rights to Recusal though an appeal. See [Doc. 130] and [Case: 22-1987 Document: 00117957469, Filed: 12/21/2022] and [Case: 22-1987 Document: 00117968144 Filed: 01/25/2023 Entry ID: 6545369]. This influenced her decision, and even if it did not , judges have an obligation to maintain an appearance of impartiality that goes beyond mere actual impartiality. Under Federal Rule of Civil Procedure 60(b), the final judgment should be vacated as it is just to do so in circumstances such as these. See also (Recusal- Plaintiff's Rule 59 Motion). Because Judge Elliot was disqualified under § 455 at the time she entered each of these orders and judgment in favor of Twitter, they

should be set aside. See Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 850-51 (1988).

53. Twitter has enough misrepresentations to form a pattern of fraud. Twitter knew to play along with the bias Court and to continue to conceal Magistrate Johnstone's illegal policy to which Twitter benefitted from the Court's now 68 substantiated favors documented in related Court records. See Lopez-Rosario v. Programa Seasonal Head Start/Early Head Start De La Diocesis De Mayaguez, Inc., 140 F. Supp. 3d 214, 219 (D.P.R. 2015). Fraud by an opposing party, or other is grounds for relief under Rule 60(b).

54. The conduct of this Court is clearly repugnant to the concept of due process and does not look like an impartial tribunal or due process of law under the Constitution. Because it is absolutely imperative that people have full faith and confidence in the judicial process, and because there is evidence of actual bias, misrepresentations or fraud, the District Court should void all judgements and Orders made in this case as prescribed by Rule 60 and allow a different and uncompromised judge to take over.

WHEREFORE, for the reasons set forth above, Hall requests that this Court "void" any Orders or Judgments made by these three justices in this case.

Respectfully,

/s/ Daniel E. Hall
Aka, Sensa Verogna
SensaVerogna@gmail.com

## CERTIFICATE OF SERVICE

    I, Daniel E. Hall, certify that on June 7, 2023, I electronically filed the foregoing document using the CM/ECF system, which sent notification of such filing to the Defendants counsel of record, Kenneth M. Trujillo-Jamison at ktrujillo-jamison@willenken.com and Demetrio F. Aspiras at daspiras@dwmlaw.com, and Indraneel Sur, Lead Attorney for U.S. DOJ.


/s/ Daniel E. Hall
Aka, Sensa Verogna
SensaVerogna@gmail.com